IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, | § § § | Case No. 1:18-CV-637 |
| *Plaintiffs,* | § § | |
| v. | § § | |
| GURBIR S. GREWAL, individually, and in his official capacity as Attorney General of New Jersey; MICHAEL FEUER, individually, and in his official capacity as Los Angeles City Attorney, | § § § § § § | |
| *Defendants.* | § § | |

## DEFENDANT MICHAEL FEUER'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), 12(b)(2) AND 12(b)(6), AND TEXAS CIVIL PRACTICE & REMEDIES CODE SEC. 27.003

### [*FILED CONCURRENTLY WITH REQUEST FOR JUDICIAL NOTICE AND MOTIONS FOR ADMISSION PRO HAC VICE*]

Defendant Los Angeles City Attorney Michael Feuer, individually and in his official capacity ("the City Attorney"), moves for dismissal of the claims asserted against him under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).  The City Attorney further moves for dismissal of Counts Eight and Nine pursuant to the Texas Citizens Participation Act, Tex. Civ. Prac. & Rem. Code § 27.003.

## INTRODUCTION

To be clear: Plaintiffs Defense Distributed and the Second Amendment Foundation (collectively "Plaintiffs") have initiated this utterly frivolous lawsuit against the City Attorney in naked retaliation for his attempt to support a position in opposition to Defense Distributed – but a

position the City Attorney took on behalf of the residents of Los Angeles in support of the public safety of the City – in the matter of *Defense Distributed, et al., v. United States Department of State, et al.* (Case No. 15-CV-00372-RP) ("Underlying Action").  This retaliatory, frivolous action should be dismissed.

Defense Distributed publishes computer-aided design (CAD) data files that can be used to manufacture a virtually undetectable, untraceable gun with a 3D printer ("CAD files").  In the Underlying Action, Defense Distributed sued the federal government in an effort to invalidate the federal laws banning these CAD files, and the City Attorney publicly stated that he supported those federal laws.  Now, in this action, Plaintiffs assert that the City Attorney "threatened Defense Distributed with legal action" (Compl. ¶ 21), causing Defense Distributed to refrain from distributing the subject CAD files in Los Angeles.  These supposed threats of legal action are simply the City Attorney's public statements that he supports the federal ban on CAD files, yet Plaintiffs claim the City Attorney somehow violated *their* Free Speech and other constitutional rights by taking this stand against the CAD files.

All of Plaintiffs' claims against the City Attorney are predicated solely on three alleged acts.  First, on July 27, 2018, the City Attorney submitted a letter to this Court in the Underlying Action indicating the City's desire to intervene, based upon the City Attorney's concern that the widespread dissemination of 3D gun blueprints would pose serious threats to public safety, and urging the Court to reject a putative settlement that would authorize Defense Distributed to publish the CAD files online.  Compl. ¶¶ 17-22 & Ex. E.  Second, also on July 27, 2018, two representatives from the City Attorney's office telephonically monitored (but did not appear in) a hearing in the Underlying Action, concerning the motions of other parties to intervene in that proceeding.  *Id.* ¶ 23.  Finally, on July 28, 2018, the City Attorney issued a joint tweet linking to

a press release by Prosecutors Against Gun Violence, of which he is co-chair, "urging the U.S. State Department to block the online release of blueprints for do-it-yourself, 3D-printed guns." *Id*. Ex. G; *see id.* ¶¶ 24-25 & Ex. F.

Plaintiffs' attempt to find a viable federal action on these claims is completely untenable. Not only do these allegations fall far short of establishing a justiciable case or controversy or a basis for exercising personal jurisdiction over the Los Angeles City Attorney, but the complained-of acts are fully protected by the First Amendment and thus immunized from liability, by both the *Noerr-Pennington* doctrine and the Texas Citizens Participation Act, Tex. Civ. Prac. & Rem. Code §27.001 *et seq.* ("TCPA"), Texas's "anti-SLAPP" statute. Plaintiffs' lawsuit was filed in plain and simple retaliation for the City Attorney's outspoken advocacy against allowing the online distribution of 3D gun blueprints, in an attempt to deter him and other state and local public officials from engaging in such constitutionally-protected advocacy in the future. All claims against the City Attorney should be dismissed.

## FACTUAL BACKGROUND

### I.    The Underlying Action and the Washington Action

The Underlying Action.  Plaintiffs brought the Underlying Action against the U.S. State Department to challenge provisions of the International Traffic in Arms Regulations (ITAR) which, based on national security interests including aviation security concerns, barred Defense Distributed from publishing computer-aided design (CAD) data files that can be used to manufacture a "virtually undetectable," untraceable gun with a 3-D printer ("CAD files"). Request for Judicial Notice ("RJN") Ex. 1 at 3-5.  Plaintiffs sought a preliminarily injunction to bar enforcement of the ITAR, which the district court denied and the Fifth Circuit affirmed.

Despite its victories in court, the U.S. State Department subsequently settled with Plaintiffs, agreeing to seek permanent modification of the ITAR regulations – the ones both the District Court and the Fifth Circuit had upheld – so that they would no longer prevent publication of the CAD files, and to promptly implement temporary modifications to allow such CAD publications.  RJN Ex. 1 at 6:21-25.  The temporary modifications were published on July 27, 2018.  RJN Ex. 1 at 7:2-3; *see* Compl. Exs. A & B.  Given the important public safety issues raised, and the federal government's unexpected and unexplained reversal of its position, interested private parties moved to intervene and block the settlement; those motions were heard on July 27, 2018.  RJN Ex. 2.

On the day of that hearing, the City Attorney delivered a letter to the court in the Underlying Action, urging it to reject the settlement because of the serious public safety implications and to grant the pending motions to intervene, and expressing the City of Los Angeles' intent to file a motion to intervene.[1]  Compl. ¶¶ 17-22 & Ex. E.  At least two attorneys from the City Attorney's office listened to the July 27, 2018 hearing telephonically.  Compl. ¶ 23.  On July 28, 2018, the City Attorney jointly issued a tweet linking to a press release by Prosecutors Against Gun Violence, of which he is co-chair, urging the State Department to reject the proposed settlement with Defense Distributed.  Compl. ¶¶ 24-25 & Exs. F & G.  The court denied the pending motions to intervene on July 27, 2018.  RJN Ex. 1.  The court approved the settlement and dismissed the Underlying Action with prejudice on July 30, 2018.  *See* RJN Ex. 3.

The Washington Action.  On July 30, 2018, eight states and the District of Columbia filed a lawsuit in the Western District of Washington to stop the proposed regulatory change and to maintain the bar prohibiting publication of the CAD files.  That court issued a temporary

_____

[1] Since the Underlying Action was dismissed three days later, this motion was never filed.

restraining order on July 31, 2018, enjoining the proposed modification of the regulations, and then issued a preliminary injunction on August 27, 2018, which extended the existing regulations indefinitely, and barred the implementation of the proposed modifications that would have allowed the CAD publication.  RJN Ex. 2 at 7:4-16, 25:14-21.  The Washington Action is currently pending.

## II.     Plaintiffs' Complaint

Plaintiffs filed the subject Complaint on July 29, 2018, alleging nine counts, all of which are based on purported threats of litigation by the City Attorney.  *See* Compl. ¶¶ 33, 36, 38, 50, 53, 57, 61, 64,-65, 70, 76; *see also id.* ¶¶ 44-45 (asserting without factual basis that Defendants "forbid," "interrupt[ed]," and "prevent[ed]" Defense Distributed from distributing files).  The Complaint does not identify which laws Plaintiffs intend to violate to expose themselves to a possible enforcement action by the City Attorney.  Each of the counts depends on the same three factual allegations described above -- the letter from the City Attorney to the court in the Underlying Action ("the intervention letter"); the telephonic attendance in a hearing in the Underlying Action ("telephonic attendance"); and a joint tweet and press release by Prosecutors Against Gun Violence ("tweet").  Compl. ¶¶ 17-25 & Exs. D, F.  Similarly, these allegations are also the only basis Plaintiffs provide for asserting personal jurisdiction over the City Attorney.

## ARGUMENT AND AUTHORITIES

## I.     The Court Should Dismiss This Lawsuit for Lack of Case or Controversy.

### A.     Standard for Dismissal Under Rule 12(b)(1).

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction.  As a matter of constitutional law, federal courts do not have power to decide questions of law in a vacuum, but may only determine such matters that arise in the context of a

genuine "case" or "controversy" within the meaning of Article III.  *SEC v. Med. Cmte. for Human Rights*, 404 U.S. 403, 407 (1972); U.S. Const., art. III, § 2.  As the party invoking federal jurisdiction, a plaintiff has the burden to establish an existing case or controversy.  *Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 99 (1979).  Plaintiffs fail to satisfy at least three requisites of the "case or controversy" rule, each of which on its own supports dismissal of this action: (1) none of the purported claims are ripe; (2) Plaintiffs lack standing; and (3) Plaintiffs' claims are moot.

> ### B.     The Alleged Claims Are Not Ripe.

There is no case or controversy here because none of Plaintiffs' hypothetical claims are ripe.  Plaintiffs do not allege the City Attorney has taken any legal action against them, thus no enforcement action exists to challenge.  Instead, all of Plaintiffs' claims are predicated on speculation about a possible *future* enforcement action by the City Attorney.  *See* Compl. ¶¶ 33, 36, 38, 50, 53, 57, 61, 64,-65, 70, 76; *see also id.* ¶¶ 44-45.  Such a pre-enforcement complaint, however, is only permitted when it identifies and challenges the constitutionality of a particular state or local law.  For example, *Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 298-9 (1979), allowed a pre-enforcement constitutional challenge to a statute because the plaintiff was committed to a course of conduct that violated that challenged statute.  Plaintiffs have identified no such law here.[2]

In any event, Plaintiffs have entirely failed to establish that they faced any credible threats of enforcement from the City Attorney.  Plaintiffs primarily allege a "threat" in the City Attorney's intervention letter.  *See* Compl. ¶¶ 17-22 & Ex. E.  But the overriding purpose of that

---

[2] Plaintiffs reliance on *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) is misplaced, since those plaintiffs had already suffered actual economic loss from enforcement of the subject statutes, which statutes were specifically identified and challenged.  *See* Compl. ¶ 33.

letter was to persuade the court in the Underlying Action to reject the proposed settlement – not

to announce any intent to file charges or take any other action against Defense Distributed.  The

letter simply described the public safety implications of publishing the CAD files, and addressed

Los Angeles's status as an interested party with a substantial stake in the resolution of the

Underlying Action.

Indeed, Plaintiffs cite as the basis for this lawsuit portions of the City Attorney's letter

describing the general duty of the City Attorney to enforce "the gun laws of the City and

California" and "California civil and criminal laws," but those general statements cannot

reasonably be construed as threats of legal action against Defense Distributed.  *See* Compl.

¶¶ 19-20.  While Plaintiffs assert that the letter states that Plaintiffs "may have" violated

California law, the letter contains no such language.  Compl. ¶ 20 & Ex. E.  The City Attorney

has not issued a cease and desist letter to Plaintiffs or otherwise communicated with them to

threaten any legal action against them.  While Defense Distributed also alleges that the deputy

city attorneys "appeared" telephonically in the Underlying Action, and that the City Attorney

issued a tweet and press release on the issue, neither of these suggested any future action by the

City Attorney.  The tweet simply urged action by the State Department.  Compl. ¶¶ 23-25 & Exs.

F and G.

In short, Plaintiffs cannot and do not identify what enforcement action, if any, the City

Attorney would pursue in response to their future actions.  This necessarily fails the requirement

that a case or controversy describe "a substantial controversy of sufficient immediacy and reality

between the parties…"  *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000)

(quotes and citation omitted).  A claim is not ripe for purposes of Article III if the proposed harm

depends on the occurrence of "contingent future events that may not occur as anticipated, or

indeed may not occur at all." *See Texas v. United States*, 523 U.S. 296, 300 (1998) (finding claim not ripe for adjudication because it rested on myriad of contingent future events, and it was not clear whether the sanction at issue would ever be ordered).[3]

 C. **Plaintiffs Lack Standing.**

To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, __U.S.__, 136 S.Ct. 1540, 1547 (2016). Plaintiff bears the burden of establishing each element of standing, and must do so for each separate claim alleged. *Davis v. Fed. Elec. Comm'n*, 554 U.S. 724, 734 (2008). Plaintiffs' entire action is based upon the assertion that the City Attorney will interfere with the publication of the CAD files in Los Angeles by invoking some unnamed state or local law when Defense Distributed attempts such publication. Compl. ¶¶ 17-22 and 30. However, any publication of the CAD files is currently barred by the injunction issued by a federal court in Washington, not by some hypothetical proceeding initiated by the City Attorney of Los Angeles.

Moreover, Defense Distributed remains barred from publishing the subject CAD files under the ITAR regulations for the foreseeable future, independent of the Complaint's untethered speculation regarding an unspecified future enforcement action by the City Attorney in response to future events. The temporary restraining order and preliminary injunction issued in the Washington Action enjoin the State Department from modifying the ITAR regulations, and thus

---

[3] For the same reasons that Plaintiffs' claims are not ripe, they also have failed to state any plausible claim for relief. *See* Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *cf. Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions" in ruling on a Rule 12(b)(6) motion to dismiss).

maintain the restriction on publishing Defense Distributed's CAD files.  RJN Ex. 1, at 1:16-24 and 25:14-21.

The City Attorney has nothing to do with the current and indefinite restriction barring Defense Distributed from publishing its CAD files.  Any harm suffered by Plaintiffs because of this restriction results from the unmodified federal regulations, as preserved by the Washington District Court's preliminary injunction.  Plaintiffs do not allege any legal action by the City Attorney against Defense Distributed, nor *any* communications by the City Attorney to Defense Distributed that would suggest *any* pending or future actions, or even a request by the City Attorney that Defense Distributed cease and desist from publishing the CAD files.  Moreover, any threatened enforcement action by the City Attorney would be meaningless, because Defense Distributed is already barred from publishing its CAD files at all, anywhere.  Similarly, any alleged loss of business by Defense Distributed from not publishing the CAD files would necessarily result from the broad injunction, and has nothing to do with the City Attorney.  Similarly, no judgment against the City Attorney in this action will alter the existing federal injunction or change Defense Distributed's circumstances.

For these same reasons, Plaintiffs fail to demonstrate an "injury in fact" resulting from any actions by the City Attorney.  An injury sufficient to confer standing must be "concrete" (i.e., real and not abstract), "actual or imminent" (i.e., already existing or "certainly impending."), and "not conjectural or hypothetical."  *Spokeo, Inc*., *supra*, 136 S.Ct. at 1547-48; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("allegations of *possible* future injury are not sufficient").  But Defense Distributed's claimed injury from the City Attorney's letter, the telephonic hearing, or the tweet is precisely the type of abstract, hypothetical – in fact, speculative – type of "injury" that cannot confer standing.

Plaintiffs offer a misguided argument that they suffered a loss based on their voluntary decision not to publish the CAD files in Los Angeles to avoid future prosecution by the City Attorney. This argument necessarily fails.  First, Defense Distributed's assertion that it suffered injury by avoiding publication to devices in Los Angeles is nonsensical, since a federal injunction prevents it from publishing the CAD files at all.  RJN Ex. 1. Second, any such claim is "based on their fears of hypothetical future harm that is not certainly impending."  *Clapper*, *supra*, 568 U.S. at 416.  Plaintiffs do not allege that the City Attorney communicated with Defense Distributed, or has issued any cease and desist letter.  Instead, Plaintiffs are reduced to arguing that *if* the existing injunction is lifted, *if* no permanent injunction is imposed, and *if* Defense Distributed violates the law in California or Los Angeles at some indefinite time in the future, then the City Attorney *might* file a legal action of unknown scope to enforce whatever unidentified law Defense Distributed may violate in the future.  This claim rests entirely, then, on conjectural and hypothetical future events: such an allegation cannot furnish a basis for standing so the Complaint must be dismissed.

### D.      Plaintiffs' Claims Are Moot.

All of Plaintiffs' claims are predicated on the assertion that the City Attorney will take some unspecified legal action in the future to stop or hinder the publication of Defense Distributed's CAD files, but because the federal court injunction already bars such publication indefinitely, these claims are moot.  For the Court to assert jurisdiction, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."  *Arizonans for Official English v. Arizona*, 520 US 43, 67 (1997).  For example, a suit to enjoin an action is moot after the act sought to be enjoined has already occurred.  *Johnson-Kennedy Radio Corp. v. Chicago Bears Football Club*, 97 F2d 223, 225 (7th Cir. 1938).  Similarly, a lawsuit to stop an

activity from occurring is rendered moot if that action has already been enjoined in a separate proceeding. *Dunlap v. Friedman's, Inc. (In re Friedman's, Inc.)*, 363 B.R. 629, 638-639 (S.D. Ga. 2007) (suit for injunctive relief moot because actions already enjoined in separate lawsuit); *see Eggers v. City of Key West*, 2008 U.S. Dist. LEXIS 96246, *20-22 (S.D. Fl. 2008) (request moot because state court already enjoined subject activity). If there is no effective relief that the court could grant, then any decision on the challenged activity would result in an improper advisory opinion. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000).

The temporary modifications to the ITAR regulations were published on July 27, 2018, pursuant to Plaintiffs' settlement with the State Department. RJN, Ex. 1 at 7:2-3; Compl. Exs. A and B. This Complaint was filed on July 29, 2018, based on Plaintiffs' assertion that the City Attorney would eventually take some sort of action to bar or hinder the publication of the CAD files in Los Angeles. *See* Compl. ¶ 30. However, two days later – on July 31, 2018 – the Western District of Washington restored the ban on publication when it issued a temporary restraining order barring enforcement of the ITAR regulatory modifications, which was extended by a preliminary injunction on August 27, 2018. RJN Ex. 1 at 1:14-24 and 25:14-21. As a result, any hypothetical concern that the City Attorney might take some unspecified action to stop the publication of the CAD files is moot, as their publication has already been enjoined indefinitely. See, RJN Ex. 1, at 13:4-8 (finding a likelihood that the states will succeed on the merits in stopping the modification of the ITAR regulations). Thus, the only alleged harm claimed by Plaintiffs – interference with the complete publication of the CAD files – has already occurred independent of any action by the City Attorney. That rendered Plaintiffs' claim moot, so the Complaint should be dismissed.

**II.      The Complaint Fails to Describe Sufficient Grounds for Personal Jurisdiction.**

In addition to the lack of subject matter jurisdiction, Plaintiffs have not provided any

basis for personal jurisdiction over the City Attorney.  Plaintiffs concede that the City Attorney is

not a Texas resident, and there are no allegations in the Complaint which suggest any basis for

general jurisdiction over a California elected official.  *See* Docket No. 1-1, p. 1.  Alternatively,

establishing specific jurisdiction requires a showing that: (1) the City Attorney purposefully

directed his activities toward residents of the forum state or otherwise established contacts with

the forum state; (2) Plaintiffs' causes of action arise out of or result from the City Attorney's

forum-related contacts; and (3) the forum's exercise of personal jurisdiction in the particular case

must be reasonable—i.e., it must comport with "fair play and substantial justice."  *See Burger*

*King Corp. v. Rudzewicz*, 471 US 462, 477-478 (1985).  The plaintiff bears the burden of proof

on the first two elements, and the third is only reached if the plaintiff is successful in establishing

those prerequisites.  *Id*. at 477.

Here, the only basis for personal jurisdiction described in the Complaint is the City

Attorney's "contact" with the District Court in Texas.  The only alleged connections between the

forum state, Texas, and the City Attorney are: (1) the City Attorney's letter to the court in Texas;

(2) listening by telephone to a hearing before the District Court in Texas; and (3) a tweet and

press release, the last of which certainly cannot be the premise for any personal jurisdiction in

Texas as neither of them were directed at Texas or even mention Texas.  *See Pathfinder*

*Software, LLC v. Core Cashless, LLC*, 127 F. Supp. 3d 531 543 (M.D.N.C. 2015).

As to the contacts with this Court, "[r]ooted in the constitutional right to petition the

government . . . the 'government contacts' principle prevents a court from exercising jurisdiction

based solely on a defendant's contact with a federal instrumentality.  *Lamb v. Turbine Designs,*

*Inc.*, 41 F. Supp. 2d 1362, 1365 (N.D. Ga 1999) (listing multiple cases applying the "government contacts" rule to deny personal jurisdiction).  Accordingly, none of the three events raised in the Complaint can provide a basis for personal jurisdiction over the City Attorney in Texas.

The Fifth Circuit addressed a similar issue in *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008).  In *Stroman Realty*, the plaintiff time-share company sued Arizona's Real Estate Commissioner in Texas in her official capacity for injunctive and declaratory relief under 42 U.S.C. section 1983, arguing that the Commissioner's regulatory action violated the Commerce Clause.  The Fifth Circuit held that there was no personal jurisdiction over the Commissioner.  It held that the commissioner's contacts – sending a cease and desist order and correspondence to the plaintiff located in Texas – were not the type of contacts that constitute "directing activity towards the forum state" or "purposeful availment" of the benefits of the state's laws.  513 F.3d at 484-85.  These activities intended to "uphold and enforce the laws of Arizona" were not the type of commercial transactions intended to create the "commercial benefit" that is necessary for specific jurisdiction.  *Id*.  Furthermore, the court held that exercising personal jurisdiction under the circumstances would be unreasonable, in light of the relative interests of the states, the risks of inconsistent decisions, and federalism concerns.  *Id*. at 487-88.

There are no allegations that the City Attorney purposefully directed his activities to Texas, other than the privileged government contacts related to the Underlying Action.  Moreover, each of Plaintiffs' claims are based on hypothetical future activity that, were it to occur at all, would take place in California.  As in *Stroman Realty*, this is not activity that is "directed toward" Texas, and Texas has no interest in enforcing, applying, or interpreting California or Los Angeles laws, particularly regarding activity taking place within those

jurisdictions.  Accordingly, all claims against the City Attorney should be dismissed for lack of personal jurisdiction.

### III.   Plaintiffs' Case Should be Dismissed Under Rule 12(b)(6) as Barred by the *Noerr-Pennington* Doctrine.

The theory on which Plaintiffs entire lawsuit is based – that a city attorney can be haled into court and held liable simply for engaging in advocacy on a matter of public concern – if honored, would violate the City Attorney's fundamental First Amendment rights, and imperil his ability to faithfully serve and protect the interests of his constituents.

As discussed below, the *Noerr-Pennington* doctrine bars suits such as this one, which seek to impose liability for petitioning conduct that is manifestly protected by the First Amendment.[4]  Under *Noerr-Pennington*, "those who petition government for redress are generally immune from … liability."  *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 56 (1993); *see Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1082 (5th Cir. 1988).  Accordingly, even if, notwithstanding the lack of jurisdiction, the Court were to consider the merits of Plaintiffs' claims as pled, dismissal would still be required under Rule 12(b)(6).

### A.   Standard for Dismissal Under Rule 12(b)(6)

Dismissal under Rule 12(b)(6) is appropriate "if a successful affirmative defense appears clearly on the face of the pleadings."  *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).  *Noerr-Pennington* immunity is an affirmative defense.  *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 860 (5th Cir. 2000).  Dismissal under Rule 12(b)(6) is therefore appropriate where

---

[4] The *Noerr-Pennington* doctrine is based on two Supreme Court cases: *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965).

it is clear on the face of the complaint that the complained-of conduct is entitled to *Noerr-Pennington* immunity.  *See, e.g.*, *Love Terminal Partners, L.P. v. City of Dallas*, 527 F.Supp.2d 538, 549-57 (N.D. Tex. 2007) (granting Rule 12(b)(6) motion based on *Noerr-Pennington*).

### B.   No Liability Can Arise from the City Attorney's First Amendment-Protected Conduct.

Plaintiffs' complaint should be dismissed in its entirety because the only alleged acts by the City Attorney are petitions to the federal judiciary and to the U.S. State Department, which are fully protected by the First Amendment and thus immune from liability under the *Noerr-Pennington* doctrine.

The *Noerr-Pennington* doctrine provides that "those who petition government for redress" are immune from liability related to their petitioning conduct.  *Prof'l Real Estate Investors*, 508 U.S. at 56.  "Although the *Noerr-Pennington* doctrine initially arose in the antitrust field," courts, including the Fifth Circuit, have since "expanded it to protect first amendment petitioning of the government from claims brought under federal and state laws, including [42 U.S.C.] section 1983 and common-law tortious interference with contractual relations."  *Video Int'l Prod.*, 858 F.2d at 1084 ("[A]ny behavior by a private party that is protected from antitrust liability by the *Noerr-Pennington* doctrine is also outside the scope of section 1983 liability.").  The *Noerr-Pennington* doctrine is "today understood as an application of the first amendment's speech and petitioning clauses."  *New West, L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007).

The Supreme Court has described the right to petition as "among the most precious of the liberties safeguarded by the Bill of Rights" and "intimately connected, both in origin and in purpose, with the other First Amendment rights of free speech and free press."  *United Mine Workers of Am. v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967); *accord BE&K Constr. Co. v.*

*Nat'l Labor Rels. Bd.*, 536 U.S. 516, 524-25 (2002).  The *Noerr-Pennington* doctrine is also rooted in the concept that, "[i]n a representative democracy such as this, [the legislative and executive] branches of government act on behalf of the people and, to a very large extent, the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives."  *Noerr*, 365 U.S. at 137.

The constitutional right to petition protected by *Noerr-Pennington* encompasses the right to petition *all* branches of government, including the executive, legislative, and judicial branches, as well as administrative agencies.  *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("The right of access to the courts is indeed but one aspect of the right to petition."); *see Video Int'l Prod.*, 858 F.2d at 1082.  A publicity campaign directed at the general public but seeking to influence government action is likewise protected conduct entitled to immunity. *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499-500, 505-06 (1988); *see, e.g.*, *Noerr*, 365 U.S. at 136-44.

Here, it is clear on the face of the pleadings that the City Attorney's conduct is wholly immunized from liability under *Noerr-Pennington*.  The only alleged conduct by the City Attorney is: (1) his letter to this Court in the Underlying Action, Compl. ¶¶ 17-22 & Ex. E; (2) the related telephonic attendance by members of the City Attorney's office, at a hearing in this Court*, id.* ¶ 23; and (3) a tweet from the @CityAttorneyLA account directed at the @StateDept account, linking to a press release "urging the U.S. State Department to block the online release of blueprints for do-it-yourself, 3D-printed guns," *id.* Exs. F & G (exhorting that "[t]he State Department must not allow this company to have a special exemption to [] rules" that prohibit the online posting of 3D gun blueprints); *see id.* ¶¶ 24-25.  The first two acts are indisputably

petitions to the federal judiciary, and the third is a petition to the U.S. State Department. As such, they cannot be the basis for any liability.

The sole exception to *Noerr-Pennington* immunity – the "sham" exception for "objectively baseless" petitioning activity – is plainly inapplicable here. *See Bryant v. Military Dep't*, 597 F.3d 678, 690-94 (5th Cir. 2010) (citing *Prof'l Real Estate*, 508 U.S. at 60-61 & n.5). The City Attorney's letter advised the Court of the City of Los Angeles' intent to move to intervene for the purpose of "seek[ing] to enjoin Defense Distributed from publishing its blueprints of firearms and firearm components on the internet." Compl. Ex. E. The City Attorney advocated the same position in his tweet and public statement "urging the U.S. State Department to block the online release of blueprints for do-it-yourself, 3D-printed guns." Compl. Ex. G. Although an injunction did not issue in the Underlying Action, the federal district court judge in the Washington Action subsequently *did* issue precisely such a nationwide injunction. *See* RJN Ex. 1; *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (court may rely on judicially noticeable materials in ruling on Rule 12(b)(6) motion).

That a federal court ultimately granted the relief the City Attorney advocated in his petitions to the judiciary and to the U.S. State Department demonstrates that his petitioning activities were not objectively baseless, and defeats any suggestion they were a mere sham. *See Prof'l Real Estate Investors*, 508 U.S. at 60 n.5 ("A winning lawsuit by definition [is] a reasonable effort at petitioning for redress and therefore not a sham."); *Allied Tube*, 486 U.S. at 502 (reasoning that a successful "effort to influence governmental action … certainly cannot be characterized as a sham"); *Bryant*, 597 F.3d at 693.

The *Noerr-Pennington* doctrine immunizes the City Attorney's petitioning activity regardless of whether his actions are construed as undertaken in his individual or official

capacity.  *See Gaines v. Strayhorn*, No. A-06-CA-673 LY, 2007 U.S. Dist. LEXIS 11856, *22-28 (W.D. Tex. 2007) (Magistrate Judge's report and recommendation; adopted by District Judge) ("[W]hether Defendants are viewed as government officials lobbying another branch of government or private citizens (who are employed by the government) their lobbying for action on a *cause celebre*[] is a petitioning activity protected by *Noerr-Pennington*'s grant of immunity.").  As an individual, the City Attorney clearly has First Amendment rights protected by the doctrine.  Moreover, in his official capacity as the City Attorney representing the City of Los Angeles, he enjoys First Amendment rights when petitioning a different governmental entity, and those rights are equally protected under *Noerr-Pennington*.  *See, e.g.*, *Mariana v. Fisher*, 338 F.3d 189, 197-200 (3d Cir. 2003) (*Noerr-Pennington* immunized state attorney general from liability for antitrust effects of settlement resolving suit against the tobacco companies because petitioning the judiciary was constitutionally protected); *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1091-95 (9th Cir. 2000) (city and city officials' lobbying of county not to lease space from plaintiff entitled to *Noerr-Pennington* immunity from plaintiffs' §1983 claims); *New West*, 491 F.3d at 721-22 (explaining that "[a]s far as the national government is concerned, a municipality has a right to speak and petition for redress of grievances, so the *Noerr-Pennington* doctrine applies fully to municipal activities," including a city's "litigation, lobbying, and public statements").[5]

---

[5] *Video International Products*, 858 F.2d 1075, is inapplicable.  There, the plaintiff did not seek to impose liability on the defendant city based on petitioning activity but rather based on the city's own zoning enforcement decisions.  Only in that specific factual context did the Court reason that "it is impossible for the government to petition itself."  858 F.2d at 1086; *see Mariana*, 338 F.3d at 199 (explaining why *Video International Products* does not stand for the proposition that *Noerr-Pennington* is unavailable to public-entity defendants).

Because the City Attorney's alleged conduct involved petitioning the federal judiciary and an Executive Branch agency, his petitioning conduct is entitled to no less protection than that of a private entity.  As an elected City Attorney representing a municipality with nearly four million residents, the City Attorney must represent the views of his constituents, and must "intercede, lobby, and generate publicity to advance [his] constituents' goals, both expressed and perceived."  *See Manistee Town Ctr.*, 227 F.3d at 1093.  Indeed, the City Attorney engages in petitioning as City Attorney on behalf of the people of the City of Los Angeles that is "vital to the functioning of a modern representative democracy."  *Id.*; *see Noerr*, 365 U.S. at 137. Exposing public officials to potential liability merely for engaging in petitioning activities on behalf of their constituents would paralyze their ability to faithfully execute their duties, and would deprive our representative democracy of a critical source of information and discourse.

Because *Noerr-Pennington* precludes any finding of liability based on the City Attorney's protected petitioning activities, the complaint should be dismissed in its entirety.

## IV.   The City Attorney Is Entitled to Dismissal of Plaintiffs' State Law Claims and Attorneys' Fees Under the TCPA.

Plaintiffs' state-law claims for tortious interference with contracts and tortious interference with prospective contracts (Counts Eight and Nine) also should be dismissed under the Texas Citizens Participation Act, Tex. Civ. Prac. & Rem. Code § 27.001 *et seq.* ("TCPA"), which, similar to *Noerr-Pennington*, provides for dismissal of a lawsuit based on, related to, or brought in response to a party's exercise of First Amendment rights (commonly known as a strategic lawsuit against public participation, or "SLAPP").  *See* Tex. Civ. Prac. & Rem. Code §§  27.005(b), 27.003(a)(1).  The TCPA was enacted "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law," Tex. Civ. Prac. & Rem.

Code § 27.002, and "to identify and summarily dispose of lawsuits designed only to chill First Amendment rights," *In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015).

This is precisely such a lawsuit. As discussed above (*see* pages 3-5, 16-17, *supra*), it is manifest from the face of the complaint that this action is based entirely on, relates to, and is in response to the City Attorney's exercise of his First Amendment rights, specifically his petitions to the federal government to block the online distribution of 3D-printed gun blueprints. By bringing this patently meritless action against the City Attorney, Plaintiffs' transparent agenda is to silence state and local governments and their officers from speaking out in favor of gun safety, for fear of being targeted with a lawsuit, albeit a frivolous one.

Defending against a SLAPP suit, even a patently frivolous one, is costly and burdensome. Where, as here, such suits are brought against a local governmental entity, those costs and burdens are necessarily borne by the taxpayers, as they are paid out of public funds, and require the diversion of limited public resources. The costs and burdens attendant to the sheer act of defending against a SLAPP suit have precisely the effect the Plaintiffs seek; chilling First Amendment speech with which they disagree. To counteract this chilling effect, the TCPA (like many other states' anti-SLAPP statutes) provides not only for early dismissal of SLAPP suits, but also for the mandatory award of attorneys' fees and costs to a successful movant. Tex. Civ. Prac. & Rem. Code § 27.009(a)(1). The TCPA also authorizes the imposition of "sanctions against the party who brought the legal action as the court determines sufficient to deter the party" from bringing other SLAPP suits based on protected conduct. *Id.* § 27.009(a)(2). Accordingly, not only is the City Attorney entitled to dismissal of Counts Eight and Nine under the TCPA, but the Court should award attorneys' fees and impose appropriate sanctions on Plaintiffs sufficient to deter them from harassing any other state or local governmental entities or

officials with similarly frivolous lawsuits based on the exercise of their constitutionally protected speech and petition rights.

## CONCLUSION AND PRAYER

For the reasons set forth herein, Plaintiffs' case should be dismissed.

Dated this 17th day of September, 2018                    Respectfully Submitted,

*James P. Clark*                                        *Michael M. Walsh*
California Bar No. 64780                                California Bar No. 150865
Chief Deputy City Attorney                             Deputy City Attorney
City of Los Angeles                                    City of Los Angeles
200 North Main Street, 8th Floor                       200 North Main Street, 8th Floor
Los Angeles, CA  90012                                 Los Angeles, CA  90012
Tel: (213) 978-8100                                    Tel: (213) 978-2209 / Fax: (213) 978-0763
james.p.clark@lacity.org                               michael.walsh@lacity.org
*Admission pro hac vice pending                        *Admission pro hac vice pending

*Connie K. Chan*                                        *Jason P. Steed*
California Bar No. 284230                               Texas State Bar No. 24070671
Deputy City Attorney                                   KILPATRICK TOWNSEND &
City of Los Angeles                                    STOCKTON LLP
200 North Spring Street, 14th Floor                    2001 Ross Avenue, Suite 4400
Los Angeles, CA  90012                                 Dallas, TX 75201
Tel: (213) 978-1864                                    Tel: (214) 922-7112; Fax: (214) 853-5731
connie.chan@lacity.org                                 jsteed@kilpatricktownsend.com
*Admission pro hac vice pending

***COUNSEL OF RECORD***

## CERTIFICATE OF SERVICE

I hereby certify that on this the 17th day of September, 2018, a true and correct copy of the foregoing **DEFENDANT MICHAEL FEUER'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), 12(b)(2) AND 12(b)(6), AND TEXAS CIVIL PRACTICE & REMEDIES CODE SEC. 27.003** was filed electronically with the Court and delivered via the CM/ECF system to:

Charles R. Flores
Mary Kathryn Raffetto
Daniel N. Hammond
BECK REDDEN LLP
1221 McKinney Street, Suite 5400
Houston, TX 77010
Tel: (713) 951-6268; Fax: (713) 951-3720
cflores@beckredden.com
mkraffetto@beckredden.com
dhammond@beckredden.com

Jonathan F. Mitchell
MITCHELL LAW PLLC
106 East Sixth Street, Suite 900
Austin, TX 78701
Tel: (512) 686-3940; Fax: (512) 686-3941
jonathan@mitchell.law

Matthew A. Goldstein
FARHANG & MEDCOFF
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
Tel: (520) 790-5433; Fax: (502) 790-5736
mgoldstein@fmlaw.law

Joshua Michael Blackman
JOSH BLACKMAN LLC
1303 San Jacinto Street
Houston, TX 77002
Tel: (202) 294-9003; Fax: (713) 646-1766
joshblackman@gmail.com

*Attorneys for Plaintiffs*
*DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, INC.*