IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, | § § § | Case No. 1:18-CV-637 |
| *Plaintiffs,* | § § | |
| v. | § § | |
| GURBIR S. GREWAL, in his official capacity as the State of New Jersey's Attorney General ; MICHAEL FEUER, in his official capacity as the City of Los Angeles, California's City Attorney; ANDREW CUOMO, in his official capacity as the State of New York's Governor; MATTHEW DENN, in his official capacity as the State of Delaware's Attorney General; JOSH SHAPIRO, in his official capacity as the Commonwealth of Pennsylvania's Attorney General; and THOMAS WOLF, in his official capacity as the Commonwealth of Pennsylvania's Governor, | § § § § § § § § § § § § § § § § § | |
| *Defendants.* | § § | |

**DEFENDANT MICHAEL FEUER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), 12(b)(2), 12(b)(3) AND 12(b)(6), AND TO DISMISS COUNT SEVEN PURSUANT TO TEXAS CIVIL PRACTICE & REMEDIES CODE SEC. 27.003**

## INTRODUCTION

There is an unmistakable Alice-in-Wonderland cast to the First Amended Complaint ("FAC") in this action, although it's unlikely even Lewis Carroll could have come up with something as untethered to reality as the Plaintiffs' claims against the City Attorney of Los Angeles, Michael Feuer ("Mr. Feuer").  The Plaintiffs allege no actionable conduct, and their

claims have no basis in law or fact.  Moreover, despite their professed fondness for the Second

Amendment, Plaintiffs and their counsel appear to have skipped over the First.  Even if Mr.

Feuer's alleged conduct conceivably could support a viable claim, it would be absolutely

protected under the First Amendment.  However, the Court not need address the First

Amendment issues, since Plaintiffs lack Article III standing because they have not suffered any

actual injury, they cannot credibly allege they will suffer injury in the future, and any claim they

might have had is moot now that another Federal Court has enjoined the conduct they contend

was "chilled" by Mr. Feuer.

In addition, this Court lacks personal jurisdiction over Mr. Feuer and, as to Mr. Feuer at

least, venue does not lie in this District.  The FAC doesn't allege anything that Mr. Feuer did in

this District or in Texas at all; it doesn't even contend that the letter and press release about

which they complain were drafted or prepared in Texas.  They do not – and cannot – allege any

actual contacts Mr. Feuer has with this District, or anywhere else in the State of Texas.

Before turning to the facts – such as they are – it is important for us to stress to the Court

just how astonishingly frivolous this case is.  It is based entirely upon: (1) a letter written to this

Court about a pending matter; (2) lawyers from the Los Angeles City Attorney's Office listening

by phone to an oral argument, a public hearing, taking place in this Court; and (3) a three-

paragraph press release by Prosecutors Against Gun Violence, of which Mr. Feuer is national

Co-Chair, urging the U. S. Department of State to take action to prevent the distribution of plans

that would allow anyone to manufacture untraceable, unregistered firearms from a 3D computer

printer.  It is impossible to conceive how any lawyer – or client – acting in good faith could

frame a complaint around such allegations, or fail to recognize that the alleged activities – on

their face – are protected by the First Amendment. All claims against Mr. Feuer should be dismissed.

Rule 11(b)(2) of the Federal Rules of Civil Procedure requires a pleading presented to the Court be warranted by existing law, or a non-frivolous argument for modifying the law. Here, that is clearly not the case. Rather, as prohibited by Rule 11(b)(1), the case was filed, and the FAC submitted, for a clearly improper purpose. Mr. Feuer will be submitting a Motion for Sanctions under Rule 11, but respectfully suggests this case constitutes such an egregious violation of both the letter and spirit of the Rule, that the Court should impose sanctions on its own initiative, pursuant to Rule 11(c)(3).

## FACTUAL ALLEGATIONS

**I.**      ***Defense Distributed v. United States Department of State* ("*Defense Distributed I*")**

Defense Distributed publishes computer-aided design (CAD) data files that can be used to manufacture a virtually undetectable, untraceable gun with a 3D printer ("CAD files"). *See* Request for Judicial Notice, Dkt. 28 ("RJN") Ex. 1, 10:7-1, 23:23-5. Plaintiffs Defense Distributed and the Second Amendment Foundation (collectively "Plaintiffs") sued the U.S. State Department in 2015 to challenge provisions of the International Traffic in Arms Regulations (ITAR) that barred publication of the CAD files, in the matter of *Defense Distributed, et al., v. U. S. Department of State, et al*. (Case No. 15-CV-00372-RP) ("*Defense Distributed I*"). RJN Ex. 1 at 3-5; *see* FAC ¶¶ 27-37. Plaintiffs sought a preliminary injunction to lift the ban, which this Court denied, and the Fifth Circuit affirmed. FAC ¶¶ 38-39.

Despite its victories in court, in 2018 the U.S. State Department reversed its position and settled with Plaintiffs, agreeing to seek permanent modification of the judicially-approved ITAR regulations – the ones this Court and the Fifth Circuit had approved – thus allowing publication

of the CAD files, and to promptly implement temporary modifications to allow immediate publication.  RJN Ex. 1 at 6:21-25; FAC ¶¶ 38-42 & Ex. A.  The temporary modifications were published on July 27, 2018.  RJN Ex. 1 at 7:2-3; *see* FAC ¶¶ 49-51 & Exs. B & C.

## II.      Mr. Feuer's Opposition to Publication of the CAD Files

Given the important public safety issues raised, and the U.S. State Department's sudden position reversal, interested gun safety organizations moved to intervene in *Defense Distributed I* and block the settlement.  Those motions were heard on July 27, 2018.  RJN Ex. 2; FAC ¶ 43.

On that same day, a letter from Mr. Feuer to this Court was delivered as an attachment to papers filed by the organizations who had moved to intervene ("Letter to the Court").  Therein, Mr. Feuer described for this Court the multiple threats to public safety from allowing publication, urged the Court to grant the pending motions to intervene, and expressed the intention of the City of Los Angeles to also intervene.[1]  FAC ¶¶ 110-13 & Ex. J.  Then, representatives from the City Attorney's office, not Mr. Feuer, listened from California to the hearing of the unsuccessful intervention motions – a public hearing – but did not appear, comment, or otherwise participate.  *See* FAC ¶¶ 44, 113.  Finally, the day after the hearing, Prosecutors Against Gun Violence ("PAGV"), of which Mr. Feuer is co-chair, issued a Press Release "urging the U.S. State Department to block the online release of blueprints for do-it-yourself, 3D-printed guns" ("Press Release").  FAC ¶¶ 114 & Ex. K.  Plaintiffs have fabricated all of their baseless claims against Mr. Feuer based on just these three events.

## III.     Defense Distributed's Subsequent Publication of 3D Gun Blueprints

The Court denied the motions to intervene on July 27, 2018, the day of the hearing.  RJN Ex. 1; FAC ¶ 45.  Immediately thereafter – on the evening of July 27 – Defense Distributed

---

[1] Since *Defense Distributed I* was dismissed three days later, that motion was never filed.

began publishing the CAD files to the internet's public domain.  FAC ¶ 53.  Three days later

(July 30), the Court, pursuant to stipulation, dismissed *Defense Distributed I* with prejudice.  *See*

RJN Ex. 3; FAC ¶ 46.

### IV.  The Washington Court's TRO and Preliminary Injunction

On the same day that *Defense Distributed I* was dismissed, eight states and the District of

Columbia filed a federal lawsuit in the Western District Court for the State of Washington to stop

the proposed regulatory change and to maintain the bar prohibiting publication of the CAD files

("Washington Action").  FAC ¶¶ 59-60.  That court issued a temporary restraining order on July

31, 2018, enjoining the proposed modification of the ITAR regulations.  FAC ¶ 61.  Defense

Distributed immediately ceased publishing the CAD files on the internet.  FAC ¶¶ 53, 62.  On

August 27, 2018, that court issued a preliminary injunction extending the existing regulations

indefinitely and barring implementation of the proposed modifications that would have allowed

publication of the CAD files.  FAC ¶ 63; RJN Ex. 2 at 7:4-16, 25:14-21.  The Washington

Action is currently pending.

<u>**ARGUMENT AND AUTHORITIES**</u>

### I.  The Court Should Dismiss This Lawsuit for Lack of Case or Controversy.

#### A.  Standard for Dismissal Under Rule 12(b)(1).

Federal courts may only determine matters that arise in the context of a genuine "case" or

"controversy" under Article III of the U.S. Constitution.  *SEC v. Med. Cmte. for Human Rights*,

404 U.S. 403, 407 (1972); U.S. Const., art. III, § 2.  By invoking federal jurisdiction, Plaintiffs

assumed the burden to establish an existing case or controversy.  *Gladstone, Realtors v.

Bellwood*, 441 U.S. 91, 99 (1979).  Here, Plaintiffs fail to satisfy at least three requisites for

"case or controversy," each of which on its own supports dismissal of this action: (1) Plaintiffs

lack standing; (2) the claims are not ripe; and (3) the claims are moot.

### B. Plaintiffs Lack Standing.

To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is

fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed

by a favorable judicial decision." *Spokeo, Inc. v. Robins*, __U.S.__, 136 S.Ct. 1540, 1547

(2016). Plaintiffs bear the burden of establishing each element of standing, and they must do so

for each separate claim alleged. *Davis v. Fed. Elec. Comm'n*, 554 U.S. 724, 734 (2008).

This action makes a mockery of this standard. For one thing, Plaintiffs fail to even allege

an injury that could be traceable to Mr. Feuer. They allege that they have refrained (and

continue to refrain) from publishing the CAD files "[b]ecause of the Defendants' conduct." FAC

¶ 116. And yet, according to Plaintiffs' own allegations, they did publish the CAD files after Mr.

Feuer's "conduct." Defense Distributed published the CAD files "[f]rom the evening of July 27,

2018 until the afternoon of July 31, 2018" – which was *after* Mr. Feuer's July 27 Letter to this

Court, *after* his deputies listened to the July 27 hearing, and *after* the July 28 Press Release.

FAC ¶¶ 53, 110, 114, 115. Mr. Feuer's alleged conduct had nothing to do with Plaintiffs ceasing

the CAD downloads: only after the United States District Court for the Western District of

Washington issued its temporary restraining order "[o]n July 31, 2018" did "Defense Distributed

cease[] publishing the *Defense Distributed I* Files on the internet." FAC ¶ 62.

Far from "censoring" itself in response to Mr. Feuer's actions, Defense Distributed

actively published the CAD files on the internet *after* Mr. Feuer advocated against such

publication, and only stopped when the Washington federal court enjoined it. Any injury

sustained by its compliance with the orders in the Washington Action cannot and will not be

remedied by any judgment in *this* action.  RJN Ex. 1.  Plaintiffs therefore have failed to establish

any injury fairly traceable to Mr. Feuer or redressable by this Court.

### C.  Plaintiffs' Pre-Enforcement Claims Are Not Ripe.

The Court must dismiss a case as unripe when the purported dispute presented is merely

"abstract or hypothetical."  *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003) (quoting *New*

*Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987)).  Here,

Plaintiffs only seek to enjoin possible *future* enforcement of unidentified California and

municipal laws.  These claims are not ripe.

**First**, none of Mr. Feuer 's alleged conduct amounted to a threat of prosecution to

anyone, including Defense Distributed.  In his Letter to the Court Mr. Feuer "threatens" nothing

and no one.  FAC, Ex. J.  Having representatives from his office listen to a hearing – not even

participating – is patently not a threat (and not even an action).  And the Press Release issued by

PAGV, and not the City Attorney's office, is expressly directed to – and requested action by –

the U.S. State Department, not Plaintiffs.  FAC, Ex. K.

Plaintiffs assert that the Letter to the Court and Press Release were somehow "coercive,"

and "threatened" Defense Distributed with likely prosecution, *see* FAC ¶¶ 67-70, 109-13.  But

these documents – on their face – amount, at most, to a passionate expression of a view that

Defense Distributed does not like, not a threat directed at Plaintiffs.  *See* FAC Exs. J & K.  Such

statements are constitutionally insufficient to generate a "case or controversy" based on a fear of

imminent enforcement.

Under plaintiffs' theory, public officials could be haled into court each time they uttered

a public statement adverse to the interests of a private party – whether those statements are

directed at a court, another governmental entity, or the public – and federal courts could be made

to issue advisory opinions on all manner of hypothetical disputes.  If such a theory of "case or controversy" were adopted, the carefully circumscribed limits of Article III jurisdiction would be eviscerated and the floodgates to federal courts opened.  Such a result would trample the First Amendment rights of public officials and hamstring their ability to fully engage in our participatory and representative democracy on behalf of their constituents on important matters of public concern.

**Second**, even if Mr. Feuer's statements *could* be construed as somehow foreshadowing an intent to prosecute, the likelihood of any such future enforcement is, at present, wholly speculative considering the Washington federal court's nationwide injunction.  Plaintiffs' alleged threatened injury is not "impending" and may never even materialize.

Ripeness requires "that the injury be imminent rather than conjectural or hypothetical." *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008) (citation omitted). A claim is not ripe if the purported injury depends on the occurrence of "contingent future events that may not occur as anticipated, or indeed may not occur at all."  *See Texas v. United States*, 523 U.S. 296, 300 (1998) (finding claim unripe because it rested on myriad of contingent future events, and it was unclear whether the sanction at issue would ever be ordered).

Plaintiffs are currently enjoined by the Washington federal court's preliminary injunction from publishing the CAD files, and Plaintiffs have not alleged that they have violated or intend to violate that order.  Plaintiffs instead argue that *if* the existing injunction is lifted, *if* no permanent injunction is imposed, and *if* Defense Distributed resumes publication of the CAD files in California or Los Angeles, then the City Attorney *might* file a legal action of unknown scope to enforce whatever unidentified law Defense Distributed may violate at that time.  *See Caprock Plains Fed. Bank Ass'n v. Farm Credit Admin.*, 843 F.2d 840, 845 (5th Cir. 1988) ("too

many 'ifs' in the asserted casual chain" render injury a "mere potential[ity]" and thus render a

case unripe) (quotation marks and citations omitted).  Whether Plaintiffs will ever be subject to

an enforcement action by the City Attorney rests on a series of contingent future events that may

not ever occur, particularly given the Washington federal court's indication that a permanent

injunction will likely issue.  *See* RJN Ex. 1, at 13:4-8 (finding a likelihood that the states will

succeed on the merits in stopping the modification of the ITAR regulations).  Thus, the

possibility of a case or controversy ever arising is purely conjectural.

**Finally**, the Amended Complaint fails to identify any state or local law that they claim is

unlawful as applied to them.  Pre-enforcement complaints are permitted only when they identify

and challenge the constitutionality of a particular law.  *See, e.g.*, *Babbitt v. UFW Nat'l Union*,

442 U.S. 289, 298-9 (1979) (allowing pre-enforcement constitutional challenge because plaintiff

was committed to a course of conduct that violated the challenged statute).  Plaintiffs have

identified no such law here.

### D.  Plaintiffs' Claims Are Moot.

Even assuming, *arguendo*, Plaintiffs at one time had standing to assert claims against Mr.

Feuer based on a reasonable fear of imminent enforcement, the Washington federal court's

injunction has since rendered those claims moot.

"Mootness is the doctrine of standing in a time frame.  The requisite personal interest that

must exist at the commencement of the litigation (standing) must continue throughout its

existence (mootness)."  *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980).  In other

words, a party needs standing throughout the litigation to continue litigating the case.  *See*

*Arizonans for Official English v. Arizona*, 520 US 43, 67 (1997) (actual controversy must exist at

all stages of review, not just when complaint is filed).  For example, a lawsuit to stop an activity

from occurring becomes moot if that action has already been enjoined in a separate proceeding. *Dunlap v. Friedman's, Inc. (In re Friedman's, Inc.)*, 363 B.R. 629, 638-639 (S.D. Ga. 2007).

All claims against Mr. Feuer are predicated on Plaintiffs' assertion that Mr. Feuer might eventually somehow bar or hinder the publication of Defense Distributed's CAD files in Los Angeles. *See* FAC ¶¶ 109-115. But two days after Plaintiffs' Complaint was filed on July 29, 2018 (Dkt. 1), the Washington District Court issued a temporary restraining order (and later a preliminary injunction) effectively barring publication of precisely those files by enjoining the ITAR regulatory modifications that would have allowed the publication. RJN Ex. 1 at 1:14-24 and 25:14-21; FAC ¶¶ 61-62. Plaintiffs' only alleged injury – interference with publication of the CAD files – is therefore attributable entirely to the injunction in the Washington Action, not to any "threatened" action by Mr. Feuer. Thus, even if Mr. Feuer 's actions had been sufficient to support standing when this case was initiated (they were not), any such threat would have been wholly eclipsed two days later and is likely to be forever eclipsed by a permanent injunction. FAC ¶¶ 110, 114; RJN Ex. 1, at 13:4-8. Because Plaintiffs seek only prospective injunctive and declaratory relief, there is no extant case or controversy for the Court to adjudicate, and no relief for the Court to grant. FAC Prayer for Relief, ¶ 186; *see City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (if the court can no longer grant any effective relief, any decision on the challenged activity would result in an improper advisory opinion).

## II.   The Complaint Fails to Establish Personal Jurisdiction.

Dismissal is also required because Plaintiffs have utterly failed to establish any basis for this Court's exercise of personal jurisdiction over Mr. Feuer.

To establish personal jurisdiction, Plaintiffs must demonstrate that Mr. Feuer both (1) is susceptible to service of process under Texas's long-arm jurisdiction statute and (2) has had

sufficiently meaningful minimum contacts with Texas that due process allows jurisdiction over him. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945); *Submersible Sys. v. Perforadora Central*, 249 F.3d 413, 418 (5th Cir. 2001); *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482 (5th Cir. 2008). Plaintiffs have not met their burden here.

**First**, there is clearly no basis for general jurisdiction over Mr. Feuer, a California elected official. Mr. Feuer is not a Texas resident, and nothing suggests he has "continuous and systematic general business contacts" with Texas. *See Stroman Realty*, 513 F.3d at 484 (quotation marks and citations omitted); FAC ¶¶ 15, 24-26.

**Second**, there is no basis for the exercise of specific jurisdiction, which requires a showing that: (1) Mr. Feuer purposefully directed his activities toward residents of the forum state or otherwise established contacts with the forum state; (2) Plaintiffs' causes of action arise out of or result from Mr. Feuer's forum-related contacts; and (3) the forum's exercise of personal jurisdiction in this case would be reasonable—i.e., it must comport with "fair play and substantial justice." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-478 (1985). The plaintiff bears the burden of proof on the first two elements, and the third is only reached if the plaintiff is successful in establishing those prerequisites. *Id*. at 477.

Here, Mr. Feuer's *only* alleged "contact" with the state of Texas is the "issu[ance]" of a letter directed to this Court in *Defense Distributed I*, and having someone from his office listen by telephone to a related hearing in which he did not participate. *See* FAC ¶¶ 110, 113. These actions are protected by the government contacts doctrine, which is "[r]ooted in the constitutional right to petition the government … [and] prevents a court from exercising jurisdiction based solely on a defendant's contact with a federal instrumentality." *Lamb v.*

11

*Turbine Designs, Inc.*, 41 F. Supp. 2d 1362, 1365 (N.D. Ga. 1999) (listing multiple cases applying the "government contacts" rule to deny personal jurisdiction).

The only other alleged action is a PAGV press release urging the U.S. State Department to block the online publication of blueprints for 3D-printed guns.  Mr. Feuer is a co-chair of the organization, but the organization does not act as part of his office or on behalf of the City of Los Angeles.  FAC ¶ 114 & Ex. K.  In any case, this press release certainly cannot be the premise for any personal jurisdiction in Texas as it was not directed at Texas, issued in Texas, nor was Texas even mentioned.  *See Pathfinder Software, LLC v. Core Cashless, LLC*, 127 F. Supp. 3d 531, 543 (M.D.N.C. 2015).

Nor can Plaintiffs establish personal jurisdiction over the nonresident Mr. Feuer by asserting that some alleged "effects" of his out-of-state conduct were felt in Texas.  "'Effects' jurisdiction … is rare," and Plaintiffs' argument is squarely foreclosed by *Stroman Realty*, a strikingly similar case in which the Fifth Circuit found no personal jurisdiction over an out-of-state public official seeking to enforce her own state's laws, even though the resulting effects were felt by plaintiff in the forum state.  *Stroman Realty*, 513 F.3d at 486.

In *Stroman Realty*, the plaintiff time-share company sued Arizona's Real Estate Commissioner in Texas in her official capacity for injunctive and declaratory relief under 42 U.S.C. § 1983, arguing that the Commissioner's regulatory action violated the Commerce Clause.  The Fifth Circuit held that there was no personal jurisdiction over the Commissioner.  It held that the commissioner's contacts – sending a cease and desist order and correspondence to the plaintiff located in Texas – were not the type of contacts that constitute "directing activity towards the forum state" or "purposeful availment" of the benefits of the state's laws.  513 F.3d at 484-85.  These activities intended to "uphold and enforce the laws of Arizona" were not the

type of commercial transactions intended to create the "commercial benefit" that is necessary for specific jurisdiction. *Id*. Furthermore, the court held that exercising personal jurisdiction under the circumstances would be unreasonable, in light of the relative interests of the states, the risk of inconsistent decisions, and federalism concerns. *Id*. at 487-88.

*Stroman Realty* is controlling and requires dismissal here. There are no allegations that Mr. Feuer purposefully directed activities to Texas other than the privileged government contacts related to *Defense Distributed I*. Moreover, Plaintiffs' claims rely on hypothetical future activity taking place in California, if at all. As in *Stroman Realty*, this activity is not "directed toward" Texas, and Texas has no interest in enforcing, applying, or interpreting California or Los Angeles laws, particularly regarding activity taking place in those jurisdictions. Accordingly, all claims against Mr. Feuer should be dismissed for lack of personal jurisdiction.

### III.     Venue Is Improper.

Venue is improper for many of the same reasons that personal jurisdiction is lacking. Plaintiffs assert venue under 28 U.S.C. § 1391(b)(2) (the location of a substantial part of the property, events, or omissions that are the subject of the action) and § 1391(b)(3) (where there is otherwise no district with proper venue and the court has personal jurisdiction over at least one defendant). *See* FAC ¶¶ 24-26. Plaintiffs' allegations do not support either basis for venue.

Evaluation of venue under 28 U.S.C. § 1391(b)(2) requires a two-step analysis: (1) "examine the nature of the plaintiff's claims and the acts or omissions underlying those claims" and (2) "determine whether substantial 'events material to those claims occurred' in the forum district." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc*., 618 F.3d 1153, 1166 (10th Cir. 2010); *see, e.g.*, *Trois v. Apple Tree Auction Ctr., Inc*., 882 F.3d 485, 493 (5th Cir. 2018). The only alleged Texas-related actions by Mr. Feuer, the Letter to the Court and listening to a hearing

from California, are insufficient to support personal jurisdiction and are protected by the government contacts doctrine, and therefore cannot support venue.  Similarly, Plaintiffs' speculation about future enforcement actions cannot support venue.  Plaintiffs' claims seek to prevent Plaintiffs' future prosecution by Mr. Feuer for unspecified violations of unidentified Los Angeles or California laws for activities in Los Angeles.  FAC ¶¶ 109-115 & Ex. J.  Thus, the only pertinent actions (however speculative) will be those taken in Los Angeles, and they cannot support venue in Texas.

Venue is also not proper under 28 U.S.C. § 1391(b)(3).  Plaintiffs have failed to establish personal jurisdiction over Mr. Feuer or over any of the other Defendants.  Each of the Defendants is only alleged to have taken actions to enforce their own local laws in their own jurisdiction, or to have participated in a federal lawsuit seeking to uphold existing federal regulations.  Neither supports jurisdiction or venue.

## IV.     The First Amendment Protects Mr. Feuer.

Even if the Court had jurisdiction over these claims, the theory on which Plaintiffs' entire lawsuit is based – that a city attorney can be haled into court and held liable simply for advocating on a matter of public concern – if honored, would violate Mr. Feuer's fundamental First Amendment rights, and imperil his ability to faithfully serve and protect the interests of his constituents.

Although no published opinion has dealt with a case as frivolous as this, an established line of cases confirms that no liability can arise from petitioning conduct that is manifestly protected by the First Amendment.  Under the *Noerr-Pennington* doctrine[2], "those who petition

---

[2] The *Noerr-Pennington* doctrine is based on two Supreme Court cases: *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965).

government for redress are generally immune from … liability." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 56 (1993).  Thus, even if the Court considered the merits of Plaintiffs' claims as pled, dismissal would still be required under Rule 12(b)(6).

### A.   Standard for Dismissal Under Rule 12(b)(6)

Dismissal under Rule 12(b)(6) is appropriate "if a successful affirmative defense appears clearly on the face of the pleadings."  *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).  *Noerr-Pennington* immunity is an affirmative defense.  *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 860 (5th Cir. 2000); *e.g.*, *Love Terminal Partners, L.P. v. City of Dallas*, 527 F.Supp.2d 538, 549-57 (N.D. Tex. 2007) (dismissing claim based on *Noerr-Pennington*).

### B.   Plaintiffs' Case Is Barred by the *Noerr-Pennington* Doctrine.

The only alleged acts by Mr. Feuer are petitions to the federal judiciary and to the U.S. State Department, which are patently First Amendment petitions immune from liability under the *Noerr-Pennington* doctrine.

"Although the *Noerr-Pennington* doctrine initially arose in the antitrust field," courts, including the Fifth Circuit, have since "expanded it to protect first amendment petitioning of the government from claims brought under federal and state laws, including [42 U.S.C.] section 1983 and common-law tortious interference with contractual relations."  *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988).  The *Noerr-Pennington* doctrine is "today understood as an application of the first amendment's speech and petitioning clauses."  *New West, L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007).

The Supreme Court has described the right to petition as "among the most precious of the liberties safeguarded by the Bill of Rights" and "intimately connected . . . with the other First Amendment rights of free speech and free press."  *United Mine Workers of Am. v. Ill. State Bar*

*Ass'n*, 389 U.S. 217, 222 (1967); *accord BE&K Constr. Co. v. Nat'l Labor Rels. Bd.*, 536 U.S. 516, 524-25 (2002). "In a representative democracy such as this, [the legislative and executive] branches of government act on behalf of the people and, to a very large extent, the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives." *Noerr*, 365 U.S. at 137.

The constitutionally protected right to petition encompasses the right to petition *all* branches of government: executive, legislative, and judicial. *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *see Video Int'l Prod.*, 858 F.2d at 1082. This includes petitions by local government officials to other governmental agencies. *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1091-95 (9th Cir. 2000) (city and city officials' lobbying of county entitled to *Noerr-Pennington* immunity from §1983 claims); *New West*, 491 F.3d at 721-22 ("*Noerr-Pennington* doctrine applies fully to municipal activities" in petitioning the national government).[3] The doctrine also protects a publicity campaign directed at the public but seeking to influence government action. *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499-500, 505-06 (1988); *see, e.g.*, *Noerr*, 365 U.S. at 136-44.

Here, it is clear on the face of the pleadings that Mr. Feuer's conduct is fully protected by the First Amendment and therefore wholly immunized from liability under *Noerr-Pennington*. The Letter to Court is indisputably and expressly a petition to the federal judiciary. FAC, Ex. J. Listening to a public hearing – insofar as it can be described as an act at all – is clearly a

---

[3] *Video International Products*, 858 F.2d 1075, is inapplicable to this point. That claim involved the city's own zoning enforcement decisions, not an attempt to petition another public entity. In that factual context, the Court noted that "it is impossible for the government to petition itself." *Id*. at 1086; *see Mariana*, 338 F.3d at 199 (explaining *Video Int'l Prod.* does not stand for the proposition that *Noerr-Pennington* is unavailable to public-entity defendants). *Video International Products* might apply if the City Attorney was attempting to alter a decision by the City of Los Angeles.

protected act.  FAC ¶ 113.  And finally, the PAGV Press Release is unmistakably a petition to the U.S. State Department.  *See* FAC ¶¶ 114 & Ex. K, emphasis added.  None of these acts can be the basis for any liability, and Plaintiffs' attempts to use these events as the sole basis for a federal action is patently sanctionable.

Because *Noerr-Pennington* precludes any finding of liability based on Mr. Feuer's protected petitioning activities, the complaint should be dismissed in its entirety even if the Court had jurisdiction to consider these claims.

### V.   Mr. Feuer Is Entitled to Dismissal of Plaintiffs' State Law Claims and Attorneys' Fees Under the TCPA.

Plaintiffs' state-law claim for Tortious Interference with the Settlement Agreement (Count Seven) also should be dismissed under the Texas Citizens Participation Act, Tex. Civ. Prac. & Rem. Code § 27.001 *et seq.* ("TCPA"), which, similar to *Noerr-Pennington*, provides for dismissal of a lawsuit based on, related to, or brought in response to a party's exercise of First Amendment rights (commonly known as a strategic lawsuit against public participation, or "SLAPP").  *See* Tex. Civ. Prac. & Rem. Code §§ 27.005(b), 27.003(a)(1).  The TCPA was enacted "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law," Tex. Civ. Prac. & Rem. Code § 27.002, and "to identify and summarily dispose of lawsuits designed only to chill First Amendment rights," *In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015).

This is precisely such a lawsuit.  This action is based entirely on Mr. Feuer's exercise of First Amendment rights, specifically his petitions to the federal government to block the online distribution of 3D-printed gun blueprints.  Plaintiffs' transparent agenda in this patently meritless action is to silence state and local governments and their officers from speaking out in favor of gun safety, for fear of being targeted with a lawsuit, albeit a frivolous one.

17

Defending against a SLAPP suit, even a patently frivolous one, is costly and burdensome. Where, as here, such suits are brought against a local governmental entity, those costs and burdens are necessarily borne by the taxpayers, as they are paid out of public funds and require the diversion of limited resources. These inevitable costs and burdens have precisely the effect Plaintiffs seek: chilling First Amendment speech with which they disagree. To counteract this chilling effect, the TCPA provides not only for early dismissal of SLAPP suits, but also for the mandatory award of attorneys' fees and costs to a successful movant. Tex. Civ. Prac. & Rem. Code § 27.009(a)(1). The TCPA also authorizes the imposition of "sanctions against the party who brought the legal action as the court determines sufficient to deter the party" from bringing other SLAPP suits based on protected conduct. *Id.* § 27.009(a)(2). Accordingly, not only is Mr. Feuer entitled to dismissal of Count Seven under the TCPA, but the Court should award attorneys' fees and impose appropriate sanctions on Plaintiffs sufficient to deter them from harassing any other state or local governmental entities or officials with similarly frivolous lawsuits based on the exercise of their constitutionally protected speech and petition rights.

## CONCLUSION AND PRAYER

This retaliatory and frivolous action should be dismissed as against Mr. Feuer for the

reasons set forth herein, and the Court should impose appropriate sanctions under FRCP Rule

11(c)(3) and attorney fees under the TCPA.

Dated this 26th day of October 2018                Respectfully Submitted,

_James P. Clark_                                    _Michael M. Walsh_
California Bar No. 64780                            California Bar No. 150865
Chief Deputy City Attorney                          Deputy City Attorney
City of Los Angeles                                 City of Los Angeles
200 North Main Street, 8th Floor                    200 North Main Street, 8th Floor
Los Angeles, CA  90012                              Los Angeles, CA  90012
Tel: (213) 978-8100                                 Tel: (213) 978-2209 / Fax: (213) 978-0763
james.p.clark@lacity.org                            michael.walsh@lacity.org

_Connie K. Chan_                                    _Jason P. Steed_
California Bar No. 284230                            Texas State Bar No. 24070671
Deputy City Attorney                                KILPATRICK TOWNSEND &
City of Los Angeles                                 STOCKTON LLP
200 North Spring Street, 14th Floor                 2001 Ross Avenue, Suite 4400
Los Angeles, CA  90012                              Dallas, TX 75201
Tel: (213) 978-1864                                 Tel: (214) 922-7112; Fax: (214) 853-5731
connie.chan@lacity.org                              jsteed@kilpatricktownsend.com

*COUNSEL OF RECORD*

19

## CERTIFICATE OF SERVICE

I hereby certify that on this the 26th day of October, 2018, a true and correct copy of the foregoing **DEFENDANT MICHAEL FEUER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), 12(b)(2), 12(b)(3) AND 12(b)(6), AND TO DISMISS COUNT SEVEN PURSUANT TO TEXAS CIVIL PRACTICE & REMEDIES CODE SEC. 27.003** was filed electronically with the Court and delivered via the CM/ECF system to:

Charles R. Flores
Mary Kathryn Raffetto
Daniel N. Hammond
BECK REDDEN LLP
1221 McKinney Street, Suite 5400
Houston, TX 77010
Tel: (713) 951-6268; Fax: (713) 951-3720
cflores@beckredden.com
mkraffetto@beckredden.com
dhammond@beckredden.com

Jonathan F. Mitchell
MITCHELL LAW PLLC
106 East Sixth Street, Suite 900
Austin, TX 78701
Tel: (512) 686-3940; Fax: (512) 686-3941
jonathan@mitchell.law

Matthew A. Goldstein
FARHANG & MEDCOFF
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
Tel: (520) 790-5433; Fax: (502) 790-5736
mgoldstein@fmlaw.law

Joshua Michael Blackman
JOSH BLACKMAN LLC
1303 San Jacinto Street
Houston, TX 77002
Tel: (202) 294-9003; Fax: (713) 646-1766
joshblackman@gmail.com

Casey Low
401 Congress Ave., Suite 1700
Austin, Texas 78701-4061
Phone: (512) 580-9600
Fax: (512) 580-9601
casey.low@pillsburylaw.com

*Attorneys for Plaintiffs*
*DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, INC.*