IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, INC., | § § § | Case No. 1:18-CV-637-RP |
| Plaintiffs, | § § § | |
| v. | § § | **Plaintiffs' Response to the Motions to Dismiss of Defendants Andrew M. Cuomo, Gurbir S. Grewal and Matthew Denn** |
| GURBIR GREWAL, in his official capacity as New Jersey Attorney General; MICHAEL FEUER, in his official capacity as Los Angeles City Attorney; ANDREW CUOMO, in his official capacity as New York Governor; MATTHEW DENN, in his official capacity as Attorney General of the State of Delaware; JOSH SHAPIRO, in his official capacity as Attorney General of Pennsylvania; and THOMAS WOLF, in his official capacity as Pennsylvania Governor, | § § § § § § § § § § § § | |
| Defendants. | § § | |

Plaintiffs Defense Distributed and Second Amendment Foundation, Inc. file this combined response to the motion to dismiss filed by Andrew Cuomo, Dkt. 55, and the motion to dismiss filed by Gurbir S. Grewal and Matthew Denn, Dkt. 57.

## Summary of the Argument

The motion to dismiss filed by New York Governor Andrew Cuomo, Dkt. 55, and the motion to dismiss filed by New Jersey Attorney General Gurbir Grewal and Delaware Attorney General Matthew Denn, Dkt. 57, use the same two main arguments.  Both are meritless.

First, the defendants argue that personal jurisdiction is lacking.  The Court should reject this argument because the defendants are estopped from disputing personal jurisdiction.  Alternatively, the Court should reject the argument in substance by concluding that the requisite minimum contacts exist, or that at a minimum, jurisdictional discovery should occur.

Second, the motions argue that justiciability is lacking because no ripe controversy exists.  The Court should reject this because a ripe controversy arises from, among other things, each defendants' issuance of an unequivocal cease-and-desist letter that both credibly threatens enforcement actions against the Plaintiffs in the immediate future *and* chills the exercise of constitutional rights presently.  This is true notwithstanding the preliminary injunction entered in *State of Washington et al., v. United States Department of State et al.*, No. 2:18-cv-1115-RSL (W.D. Wash.), which acts upon the State Department alone—not the Plaintiffs here—and which does not determine the Plaintiffs' constitutional right to engage in the speech at issue here.

The Court should also reject the merits arguments made by New Jersey Attorney General Gurbir Grewal and Delaware Attorney General Matthew Denn.  The digital firearms information at issue in this case does not constitute criminal conduct.  It constitutes legal speech that the Plaintiffs have a constitutional right to engage in freely.

## Argument

Plaintiff's First Amended Complaint asserts eight claims for declaratory and injunctive relief under 42 U.S.C. § 1983.  *See* Dkt. 23 (hereinafter "FAC").  New York Governor Andrew Cuomo moves to dismiss all of those claims, Dkt. 55, and so do New Jersey Attorney General Gurbir Grewal and Delaware Attorney General Matthew Denn, Dkt. 57.  Plaintiffs hereby respond to both motions simultaneously because the key arguments are virtually identical.[1]

## I.    Subject-matter jurisdiction exists.

Both motions present two arguments concerning subject-matter jurisdiction, albeit under slightly different labels.  First, the New York Governor's motion says that subject-matter jurisdiction does not exist because his cease-and-desist commands did not create a "ripe" controversy.  Dkt. 55 at 15-17.  The New Jersey and Delaware officials argue essentially the same thing by denying that an "injury in fact" has occurred.  Dkt. 57 at 7-13.  Second, both motions argue that mootness results from the issuance of a TRO and preliminary injunction in *Washington v. United States Department of State*, No. 2:18 cv 1115-RSL (W.D. Wash.).  Dkt. 55 at 15-17; Dkt. 57 at 7-3.  The Court should reject both of these arguments.

### A.    Plaintiffs have established standing.

This action has been ripe for adjudication from the outset because the Plaintiffs have already suffered—and are likely to imminently suffer—a concrete and particularized injury in fact that is legally cognizable.  *See* FAC ¶¶ 64-74; *see also* Dkt. 1.  Thus, standing exists.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

---

[1] Both motions cite materials other than the pleadings.  *See* Dkt. 55 at 2; Dkt. 57 at 3 & n.1.  This violates Rule 12, and the Plaintiffs object to the use of such materials (and the conversion of either motion into one for summary judgment) unless and until an adequate opportunity to conduct discovery has occurred.  *See, e.g.*, *Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011); *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003).

In July of 2018, each of the three defendants at issue sent Defense Distributed a cease-and-desist letter.   Dkt. 23-5; Dkt. 23-8; Dkt. 23-9.   Each letter commanded Defense Distributed to stop publishing digital firearms information immediately and threatened to punish noncompliance with immediate legal retaliation.   *Id.*

Standing alone, the threat of punishment delivered by these cease-and-desist letters confers standing.   *Dana's R.R. Supply v. Attorney Gen., Florida*, 807 F.3d 1235 (11th Cir. 2015), reaches this conclusion on indistinguishable facts and should be followed here:

> The businesses have properly alleged standing on their free-speech claim. Each business has been injured by the receipt of a cease-and-desist letter from the Attorney General threatening enforcement action, which could result in fine or imprisonment; that action is, and any future enforcement action would be, directly traceable to the State of Florida; and a declaration by this court that the no-surcharge law is unconstitutional will remedy the businesses' harm. The businesses' harm is sufficiently particularized and imminent, and the likelihood of their speech being chilled is sufficiently great, for review by this court.

*Id.* at 1215; *accord Bishop Paiute Tribe v. Inyo County*, 863 F.3d 1144, 1154 (9th Cir. 2017).

Additionally, where, as here, actions like a cease-and-desist letter cause plaintiffs to be "chilled from engaging in constitutional activity," the chilling effect itself constitutes a "discrete harm independent of enforcement, and that harm creates the basis for . . . jurisdiction." *Dana*'s *R.R. Supply*, 807 F.3d at 1215; *accord Bishop Paiute Tribe*, 863 F.3d at 1153-54.[2]   The complaint alleges this kind of chilling effect expressly.   *See* FAC ¶¶ 116-119.   Hence, the cease-and-desist letters establish standing without more.

But of course, the cease-and-desist letters are not all that the complaint alleges.   The defendants at issue here followed through on their letters' threat by actually initiating retaliatory legal actions against the Plaintiffs.   *See* FAC ¶¶ 59-63.   New York's Governor doubled down on

---

[2] *Google, Inc. v. Hood*, 822 F.3d 212, 227 (5th Cir. 2016) (cited by the New York Governor's motion) is not to the contrary.  It acknowledges that standing exists with respect to a "threatened prosecution" whenever the threat is "imminent" and "non-speculative," *Id.* at 227-28, which these threats are.

his letter's threat by delivering it in a direct phone call.  FAC ¶¶ 108.  And New Jersey's Attorney General backed up his letter's threat both by initiating yet another retaliatory lawsuit, FAC ¶ 81, by sending coercive legal letters to Defense Distributed's interactive computer service providers, FAC ¶¶ 82-87, and by touting his intention to prosecute Defense Distributed under a new speech crime, *see* Dkt. 67 at 9-13; *see also id.* at 4 n.1.  Along with the cease-and-desist letters themselves, these additional actions make standing unquestionable.  *See Dana's R.R. Supply*, 807 F.3d at 1215.[3]

> **B.**     **The Defendants have not established mootness**.

This case has not been mooted (or otherwise deprived of standing) by the temporary restraining order and preliminary injunction entered in *State of Washington v. United States Department of State*, No. 2:18 cv 1115-RSL (W.D. Wash.).  To argue otherwise, both of the motions mistake what that action entails in multiple critical respects.

First, the state officials are wrong about who the Washington action's preliminary injunction applies to.  The Washington action's preliminary injunction issues commands only to the State Department officials at issue there—the so-called "federal defendants."  Dkt. 65-20 at 25.  It does not tell Defense Distributed or SAF to do or not to anything.

Second, the state officials are wrong about what the Washington action's preliminary injunction applies to.  It enjoins the State Department from enforcing (1) the "Temporary Modification of Category I of the United States Munitions List" that was issued on July 27, 2018, and (2) the "letter to Cody R. Wilson, Defense Distributed, and the Second Amendment

---

[3] The argument about SAF's standing allegations being "vague" is incorrect.  Dkt. 57 at 10.  The complaint provides all of the detail that is required in alleging that SAF's members have received Defense Distributed's digital firearms information in the past, that they seek to continue receiving that information for a variety of specific purposes, that they seek to share their own computer files by utilizing Defense Distributed's facilities, and that the chilling effect of the defendant officials' conduct reaches the SAF members directly.  FAC ¶¶ 12-13, 52, 118.

Foundation issued by the U.S. Department of State on July 27, 2018." *Id.* The preliminary injunction does *not* act upon the Settlement Agreement itself.[4]

Third, the state officials are wrong about the Washington action's overall role in this controversy. "Even if the states in that case ultimately prevail, the State Department will *not* be barred from complying with the Settlement Agreement." Dkt. 67 at 5. "Success for the states in the Washington action means only that the State Department can simply re-perform the regulatory modification and license issuance in accordance with the APA." *Id.*

Finally, contrary to what the state officials say, the Plaintiffs do not need the State Department's permission to publish the digital firearms information at issue in this litigation. The complaint pleads this, FAC ¶ 64, and Plaintiffs' motion for a preliminary injunction explained it as well, Dkt. 67 at 5 ("The regulatory changes and license that resulted from *Defense Distributed I* may be *sufficient* to establish the Plaintiffs' right to share the digital firearms information at issue here. But as a matter of law, they are *not necessary*.").

Because of these realities, the motions' mootness arguments are all fundamentally wrong. The New York Governor's motion says that the Washington TRO and preliminary injunction are what is "preventing the Plaintiffs from publishing the CAD files," Dkt. 55 at 16, and the other motion likewise says that the Washington injunction has "effectively blocked Plaintiffs' ability to disseminate gun printing files." Dkt. 57 at 1. But the text of the actual orders at issue proves these to be completely false assertions. More importantly, so do the Plaintiffs' pleadings—both the original complaint and the live complaint.

This case began *before* the Washington action. Hence, *before* any TRO or preliminary injunction had issued, the Plaintiffs pleaded that their injuries—most importantly, their inability to exercise First Amendment freedoms and publish digital firearms information to the internet's

---

[4] Because of this, the motion to dismiss the claim for tortious interference with the Settlement Agreement is wrong. *See* Dkt. 57 at 20.

public domain—stemmed from the state officials' issuance of cease-and-desist orders.  *See, e.g.*, Dkt. 1 at 7 ("But for Defendant Grewal's letter, Defense Distributed would freely distribute the files in New Jersey.").  As a matter of both law and fact, that reality has not changed.

The live complaint was filed *after* the Washington action's preliminary injunction arrived, and it did *not* change course.  Just like the original complaint, the Plaintiff's current pleading alleges that their inability to exercise First Amendment freedoms (and other injuries) is caused by the defendant officials' issuance of cease-and-desist orders and the accompanying threats of legal action.  *See, e.g.*, FAC ¶¶ 3 ("Defense Distributed desires and intends to resume its publication of these files on the internet, and its audience desires and intends to receive them there. But the Defendants forced Defense Distributed to stop publishing the files on the internet."); *see also Bishop Paiute Tribe v. Inyo County*, 863 F.3d 1144, 1155 (9th Cir. 2017) (compliance with a cease-and-desist order *under protest* does not moot a controversy).

Finally, the defendants are judicially estopped from presenting the sweeping assertion that, "at present, Defense Distributed cannot lawfully disseminate its files" in any way.  Dkt. 57 at 9.  *See New Hampshire v. Maine*, 532 U.S. 742, 742–43 (2001).  To obtain the very preliminary injunction being referred to, the lawyer in Washington that represented all of the states at issue here took the position that, apart from the internet publication at issue in the injunction, Defense Distributed would continue to have a right to distribute digital firearms information via the mail or otherwise "hand them around domestically" without violating any law.  Dkt. 65-19 at 23:5-9.[5]  Those same states cannot avoid litigating this action with mootness arguments that directly contradict a critical representation that they made—successfully—to the court in Washington.

---

[5] *See also Def. Distributed v. U.S. Dept. of State*, 121 F. Supp. 3d 680, 695 (W.D. Tex. 2015) ("As [the State Department] point[s] out, Plaintiffs are free to disseminate the computer files at issue domestically in public or private forums, including via the mail or any other medium that does not provide the ability to disseminate the information internationally.").

At bottom, a defendant asserting mootness bears the "formidable burden" of making it "absolutely clear" that the controversy has both ended and cannot "reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 92 (2013).  The burden has not been met.

## II.     Personal jurisdiction exists.

Both the New York Governor, Dkt. 55 at 14-20, and the New Jersey Attorney General and Delaware Attorney General, Dkt. 57 at 11-13, seek a Rule 12(b)(2) dismissal for want of personal jurisdiction with the same argument: the minimum contacts required by due process are lacking.  The Court should reject this argument for both procedural and substantive reasons.

### A.     The defendants are estopped from challenging personal jurisdiction.

"Under the judicial estoppel doctrine, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."  *New Hampshire v. Maine*, 532 U.S. 742, 742–43 (2001).  In other words, "[t]he doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding."  *Id.* (quoting Moore's Federal Practice).  The rule is that, "absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory."  *Id.* (quoting Wright & Miller's Federal Practice & Procedure).  It is "firmly established both in this circuit and elsewhere."  *U.S. ex. rel. Bernard Lumber Co., Inc. v. Lanier-Gervais Corp.*, 896 F.2d 162, 168 (5th Cir. 1990).

Here, the estoppel doctrine bars the moving defendants from challenging personal jurisdiction in Texas because of the position they took in *State of Washington v. United States Department of State*, No. 2:18-cv-1115-RSL (W.D. Wash.).  The Washington action's plaintiffs

include New York, New Jersey, and Delaware; its defendants include Defense Distributed and SAF; and as far as Defense Distributed and SAF are concerned, the Washington action concerns a parallel iteration of this case's same fundamental controversy.  *See id.* Dkt. 29 (live complaint). But instead of being consistent about personal jurisdiction, New York, New Jersey, and Delaware took a position in Washington that is completely at odds with the position their officials are attempting to take in Texas.

In this case, New York, New Jersey, and Delaware's officials take the position that personal jurisdiction's "minimum contacts" for this controversy exist only in New York, New Jersey, and Delaware.  Dkt. 55 at 14-20; Dkt. 57 at 11-13.  But in the Washington case, those very same states (1) took the position that there is nothing wrong with litigating this kind of controversy away from New York, New Jersey, and Delaware, and (2) took the position that personal jurisdiction's "minimum contacts" exist as to Defense Distributed in Washington.  *See State of Washington v. United States Department of State*, No. 2:18-cv-1115-RSL, Dkt. 29 (W.D. Wash.) ("This Court has jurisdiction over . . . the parties hereto . . . ."); *see also id.* Dkt. 119 (arguing that Defense Distributed and SAF are Rule 19 "necessary parties").  These two positions are not coherent.  They are contrary, and the defendants are trying to maintain them both in an effort to gain undue advantages.

Even though the Washington action has yet to issue a final judgment, New York, New Jersey, and Delaware have already achieved a very real advantage with their original position about personal jurisdiction.  Most obviously, the states used their liberal view of personal jurisdiction to sue Defense Distributed in the forum that the states' deemed most favorable.  In their forum of choice—a state that has far less to do with this controversy than Texas—the states have successfully obtained (over Defense Distributed and SAF's objections) a nationwide temporary restraining order against the State Department, *id.* Dkt. 23, a nationwide preliminary

injunction against the State Department, *id.* Dkt. 95, and—critically—an order holding that the Washington action's "findings will bind" Defense Distributed and SAF as Rule 19 necessary parties, *id.* Dkt. 130.

Now the states are changing positions without justification.  To be consistent, the states ought to acknowledge that whatever logic lets Washington exercise personal jurisdiction over Defense Distributed also lets Texas exercise personal jurisdiction over New York, New Jersey, and Delaware.  Indeed, Defense Distributed's connection to Washington is orders of magnitude weaker than New York, New Jersey, and Delaware's connection to Texas; and if litigating in Washington is not unfair to New York, New Jersey, and Delaware, neither is litigating in Texas.  The very same theory of personal jurisdiction that advantaged the states in Washington is now being put to use against them by Defense Distributed and SAF in Texas.  But instead of maintaining consistent positions, they are changing course for no reason but gamesmanship.

"Restated, the doctrine of estoppel prevents a party from 'having it both ways,'" *Washington Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 268 (5th Cir. 2004), and "courts may apply it flexibly to achieve substantial justice," *Reed v. City of Arlington*, 650 F.3d 571, 576 (5th Cir. 2011)  (en banc).  The Court should apply the doctrine here and hold that the New York, New Jersey, and Delaware officials are barred from denying personal jurisdiction.

## B.    Minimum contacts exist.

Alternatively, the Court should reject the request for a Rule 12(b)(2) dismissal because the complaint's allegations of personal jurisdiction 's "minimum contacts" suffice.  Supreme Court precedent has long held that specific jurisdiction may be exercised over a nonresident "if the defendant has 'purposefully directed' his activities at residents of the forum" to a sufficient

degree, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), and that test has been met with detailed allegations as to each of the defendants at issue here.[6]

Cease-and-desist letters deployed to Defense Distributed in Texas are the keystone conduct that subjects each defendant to specific jurisdiction in Texas. "On July 26, 2018, New Jersey Attorney General Gurbir Grewal issued Defense Distributed a formal cease-and-desist letter" that "commanded Defense Distributed to cease publishing the *Defense Distributed I* Files" and "threatened to punish Defense Distributed for publishing the *Defense Distributed I Files* online." FAC ¶¶ 76-80. Delaware's Attorney General deployed a similar letter to Defense Distributed in Texas on July 30, 2018, FAC ¶¶ 96-101, and New York's Governor did so on July 31, 2018, FAC ¶¶ 103-07.

Each of these cease-and-desist letters constitutes purposeful availment of the highest order because they do not merely try to enjoy the benefit of Texas law—they purport to *change Texas law*. With these letters, the defendants literally exercised a supposed right to have their home state's law govern what a Texas business does in Texas. In the same way that a "defendant might well fall within the State's authority by reason of his attempt to *obstruct* its laws," *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011) (plurality op.), these

---

[6] As a threshold matter, neither of the motions successfully establishes why their "minimum contacts" have to be with Texas as opposed to the Nation as a whole. The Supreme Court has never held that that is the appropriate rule to apply when determining the due process limitations that apply to a federal court exercising federal question jurisdiction. *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1783–84 (2017) ("since our decision concerns the due process limits on the exercise of specific jurisdiction by a State, we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court"). Plaintiffs submit that, for a case in this posture, the applicable due process limitations are those of the Fifth Amendment—not the Fourteenth Amendment—and they are satisfied if a defendant has established minimum contacts with the Nation as a whole—not just Texas. *See United Rope Distributors, Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532, 535 (7th Cir. 1991). Most or all of the defendants' motions seem to implicate this issue by directly invoking federal due process guarantees. To the extent that this is the case, they should fail because the "minimum contacts" with the Nation as a whole suffice to meet the Fifth Amendment's Due Process Clause concerns.

defendants subjected themselves to personal jurisdiction in Texas by literally becoming governing officials *of Texas* and declaring which Texas activities are legal and illegal.  None of that is "random, fortuitous, or attenuated."  *Walden v. Fiore*, 571 U.S. 277, 286 (2014).  It is "intentional conduct by the defendant that creates the necessary contacts with the forum."  *Id.*

*Stroman Realty Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008), does not warrant dismissal for several reasons.  If necessary, the Fifth Circuit (or Supreme Court) would need to revisit *Stroman Realty*'s holding in light of *Walden v. Fiore*, 571 U.S. 277 (2014), which reembraced as good law a line of decisions that *Stroman Realty* treated as inapplicable. *Compare Stroman Realty*, 512 F.3d at 488-489 (disregarding *Calder v. Jones*, 465 U.S. 783 (1984), and *Great Western United Corp. v. Kidwell*, 577 F.2d 1256, 1267 (5th Cir. 1978), *rev'd on other grounds sub nom Leroy v. Great W. United Corp.*, 443 U.S. 173 (1979)), *with Walden v. Fiore*, 571 U.S. 277, 286 (2014) (reaffirming *Calder*).  Fortunately, such a confrontation is unnecessary because *Stroman Realty* is distinguishable.  Even it were true that a mere cease-and-desist letter standing alone does not suffice, each of the defendants at issue here engaged in substantial additional conduct that crosses the "purposeful availment" threshold.

In this respect, the *nationwide* injunction that New York, New Jersey, and Delaware obtained in *State of Washington v. United States Department of State*, No. 2:18-cv-1115-RSL, Dkt. 29 (W.D. Wash.), bears special emphasis.  Nothing of the sort was at issue in *Strohman Realty*, which is why that case could dismiss as "hypothetical" the idea of a state's "nationwide" regulatory efforts (letters) creating any real jurisdictional traction.  *Id.* at 484.  But by taking the extraordinary step of obtaining a *nationwide* injunction against the State Department—thereby changing the federal speech permissions[7] that apply to citizens in all fifty states, including

---

[7] To be clear again, the injunction has *not* deprived anyone of the Constitutional right to publish digital firearms information on the internet; but it has deprived them of the federal regulatory

Texas—the defendants have engaged in an act of greater legal magnitude that the law should recognize as constituting purposeful availment.  *See Miss. Interstate Exp., Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982) ("whether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state").

Both motions also overlook the fact that, in addition to its website publications and mailings, *see* Dkt. 67 at 7-8, "Defense Distributed also publishes information about firearms at a brick-and-mortar public library in digital formats that patrons can access via computer workstations at the library."  FAC ¶ 11.  "The public library that displays Defense Distributed's publications is in Austin, Texas."  FAC ¶ 25.  *Strohman Realty* did not involve the kind of acute, physical manifestation of censorship that theses state officials are causing to occur in Texas.

Furthermore, New Jersey's Attorney General decided to make contact with Texas in several additional ways that constitute purposeful availment.  In addition the cease-and-desist letter that tried to make Defense Distributed change what its website servers (in Texas) displayed on the internet, FAC ¶¶ 76-80, New Jersey's Attorney General also sought to achieve that same end—to take down Defense Distributed's website—by threatening companies that contracted to provide internet security services for Defense Distributed, FAC ¶¶ 82-86.  And last but not least, New Jersey's Attorney General stood at a live broadcast's podium to call out Defense Distributed's founder by name and promise that he would "come after" "anyone who is contemplating making a printable gun" and "the next ghost gun company."  Dkt. 67 at 11-12.

---

change and license that the states concede served as a sufficient basis for engaging in that same activity.

### C.      Jurisdictional discovery is warranted

To the extent that the Court deems the current prima facia case insufficient, Plaintiffs request the opportunity to conduct jurisdictional discovery because there is good cause for it. *See Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982); *Skidmore v. Syntex Labs., Inc.*, 529 F.2d 1244, 1249 (5th Cir. 1976).   Specifically, there is good cause to let the Plaintiffs conduct jurisdictional discovery about the relationship between the moving defendants and the three gun control groups (the Brady Campaign to Prevent Gun Violence, Everytown for Gun Safety Action Fund, Inc. and Giffords) that "tried to intervene in *Defense Distributed I* and tried to obtain an order temporarily restraining the Settlement Agreement's effectuation."  FAC ¶ 43.  There are very colorable reasons to believe that these groups litigated in Texas at the direction of one or more of the defendants,[8] which would make the gun control groups' Texas contacts attributable to the defendants for jurisdictional purposes.  *See Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 490 (5th Cir. 2018).   Before a dismissal for want of personal jurisdiction occurs, the Plaintiffs should have an opportunity to conduct discovery about this matter.[9]

---

[8] *See* FAC ¶¶ 43-45.  At a recent event, New Jersey's Governor expressly acknowledged that some kind of cooperation with the gun control groups at issue has been occurring, *see* Dkt. 65-2 at 10 (New Jersey's Governor announcing that state's new speech crime on November 8, 2018: "I particularly want to acknowledge the efforts of the Giffords Law Center, which brought this issue to our attention and Every Town For Gun Safety and the Brady Campaign to Prevent Gun Violence, which helped us along the way."), and representatives from each gun control group have already supplied affidavits that tout their relationship with lawmakers, *Defense Distributed I* Dkt. 103-1 at ¶¶ 3, 7; *Defense Distributed I* Dkt. 103-2 ¶¶ 4-9; *Defense Distributed I* Dkt. 103-3 ¶¶ 5-7.   Discovery about the exact nature of that relationship is material to the specific jurisdiction inquiry here.

[9] If the Court decides that it lacks personal jurisdiction over the New Jersey Attorney General or Delaware Attorney General, then in accordance with the relief that footnote 3 of that motion requests, the Court should transfer this case to an appropriate district ("New Jersey in the case of the NJAG or Delaware in the case of the DAG").  Dkt. 57 at 7 n.3.  In no event is dismissal warranted.

### III.    Venue is proper.

The complaint pleads that venue is proper in this Court's district because "a substantial part of the events or omissions giving rise to the claim occurred here."  FAC ¶¶ 24-24.  The New York Governor argues that this provision does not apply by saying that his cease-and-desist letter occurred outside of Texas.[10]  But of course, the other side of that same conduct occurred in Texas because that is where the cease-and-desist letter arrived (as he had intended).  The complaint also satisfies this provision by leading that the "vast majority of Defense Distributed's activities, including research, design, development, manufacturing, and publishing, have always occurred in and around Austin."  FAC ¶¶ 25.  *See Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000) (cited by the New York Governor) ("The court should accept uncontroverted facts contained in plaintiff's pleadings as true and resolve conflicts in the parties' affidavits in the plaintiff's favor.")

Importantly, the complaint pleads a separate basis for venue that the New York Governor's motion says nothing about.  In addition to the provision regarding the location of "events or omissions," the complaint pleads that venue is proper in this Court's district because "a substantial part of the property that is subject of the action is situated here."  FAC ¶¶ 24-24.  It specifies that Texas is the location of property such as Defense Distributed's computer servers, FAC ¶ 25, which will physically change if the defendants' censorship efforts succeed.  The complaint also pleads that Austin, Texas is where "Defense Distributed also publishes information about firearms at a brick-and-mortar public library in digital formats that patrons can access via computer workstations at the library."  FAC ¶ 11, 25.  These pleadings make venue proper independently of the provision about where "events or omissions" occurred, and are unchallenged.

---

[10] The New York Governor also argues that his phone call originated from New York.  Dkt. 55 at 14.  But this idea is baseless because the complaint does not say where the call originated from.

**IV.    The complaint states claims upon which relief can be granted.**

The New Jersey Attorney General and Delaware Attorney General move for a Rule 12(b)(6) dismissal of all of the complaint's claims.  Dkt. 57 at 13-20.  That would be warranted only if the complaint "has not alleged enough facts to state a claim to relief that is plausible on its face or has failed to raise its right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Raj v. Louisiana State Univ.*, 714 F.3d 322, 330 (5th Cir. 2013).  No Rule 12(b)(6) dismissal is warranted here.

**A.    Relief can be granted on the First Amendment claims.**

**1.    The digital firearms information at issue is speech.**

Initially, the motion argues that the digital firearms information at issue "do[es] not qualify as speech so as to even trigger First Amendment Protections."  Dkt. at 13.  Not so.  The Court should reject this because it contradicts both the complaint and the controlling precedents.

Factually, the Court should reject this argument because the complaint undoubtedly pleads that the digital firearms information at issue constitutes speech.  *See* FAC ¶¶ 1, 3, 10, 11, 30-34.  Indeed, starting in paragraph one, the complaint says that this case is about the Plaintiffs' efforts to "promote[] the Second Amendment's individual right to keep and bear Arms by *publishing important information* about firearms to the general public."  FAC ¶ 1 (emphasis added).  In particular, it pleads that the digital firearms information files at issue "constitute important expressions of technical, scientific, artistic, and political information."  *Id.* ¶ 3; *accord id.* ¶ 10.  It also pleads that the files at issue include both CAD-specific file formats and more fundamental items like "diagrams," "renderings," and "plain text files."  *Id.* ¶¶ 30-34.

In this respect, the motion violates Rule 12 by making up false facts as though the complaint pleaded them.  *See, e.g.*, *Raj*, 714 F.3d at 330.  For example, the motion says that the files at issue "do not convey instructions to a human, who would then have to take some action."

16

Dkt. 57 at 14.  But the complaint never pleads this or anything like it.  So even if those assertions were true (they are not), their absence from the complaint makes this an invalid Rule 12 argument.  If the defendants want to make technical points about how the 3D printing fabrication process works, they must to do so with evidence and the summary judgment process—not a motion to dismiss.

Legally, the Court should reject this argument because the digital firearms information that the complaint puts at issue constitutes First Amendment speech under all of the applicable precedents.  The controlling Supreme Court precedents are *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) ("[T]he creation and dissemination of information are speech within the meaning of the First Amendment."), and *Bartnicki v. Vopper*, 532 U.S. 514, 526-27 (2001) (similar), and the controlling lower court precedents are *Junger v. Daley*, 209 F.3d 481, 482 (6th Cir. 2000) ("Because computer source code is an expressive means for the exchange of information and ideas about computer programming, we hold that it is protected by the First Amendment."), *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 449 (2d Cir. 2001) ("[C]omputer code, and computer programs constructed from code can merit First Amendment protection."), and *Bernstein v. U.S. Dep't of State*, 922 F. Supp. 1426, 1436 (N.D. Cal. 1996) ("For the purposes of First Amendment analysis, this court finds that source code is speech."). The Plaintiffs need only establish that a substantial amount of what they publish constitutes speech (because the ban is a total one) and these authorities establish that virtually all of it does.

The motion's favored case, *CFTC v. Vartuli*, 228 F.3d 94 (2d Cir. 2000) (cited at Dkt. 57 at 13-14), does not compel a contrary conclusion.  *Vartuli* was invoked in *Defense Distributed I* and rightly rejected by both this Court, *Defense Distributed I. See Def. Distrib. v. U.S. Department. of State*, 121 F. Supp. 3d 680, 692 (W.D. Tex. 2015), and Judge Jones' dissenting

Fifth Circuit opinion, *Def. Distributed v. United States Dep't of State*, 838 F.3d 451, 470 (5th Cir. 2016) (Jones, J., dissenting).  For those same reasons, *Vartuli* does not control here.

### 2.      The supposed crime connection does not suffice.

The motion also argues that the First Amendment claims fail because "Plaintiffs do not, and cannot, actually challenge the Constitutionality of the state firearms laws that the NJAG and DAG are seeking to enforce, nor their method of enforcement."  Dkt. at 57 at 13.  But the laws that the motion is referring to here are *not* laws making speech illegal.  They are laws making conduct illegal.

In this respect, the motion's logic is backwards.  The motion tries to fault the Plaintiffs for "attempting to invoke the protection of the Constitution to further criminal conduct."  Dkt. 57 at 13.  But because of *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), sets forth, it is the defendants that err by trying to justify speech bans with reference to laws about conduct.  The "mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it." *Id.*  In other words, the government "may not prohibit speech" if the speech merely "increases the chance an unlawful act will be committed 'at some indefinite future time.'" *Id.*  A mere "remote connection" between speech and a third party's criminal conduct is not enough.  *Id.*

The state actions at issue here—be it the cease-and-desist letters sent by both officials or New Jersey's new speech crime—trigger strict scrutiny because they constitute content-based speech restrictions.  *See, e.g.*, *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227 (2015).  As such, the Constitution invalidates them unless New Jersey and Delaware can "prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest."  *Reed*, 135 S. Ct. at 2231.

The defendants' motion to dismiss not even try to satisfy strict scrutiny, let alone succeed.  For as the Plaintiffs' motion for a preliminary injunction explained at length, the speech restrictions at issue do not advance a compelling state interest, *see Ashcroft*, 535 U.S. at 253; do not meet the narrow-tailoring requirement because of plausible, less-restrictive alternatives, *see Bartnicki v. Vopper*, 532 U.S. 514, 529 (2001); are substantially underinclusive, *Reed*, 135 S. Ct. at 2231-32; and ineffective.  Indeed, by definition, defeating the complaint's First Amendment claim at this point is almost impossible for the motion to do because the efficacy requirement can be met with nothing short of "empirical support."  *Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596, 609 (1982).   A lawyer's ipse dixit in a motion will not suffice.

### B.    Relief can be granted on the other claims.

Apart from the First Amendment action, the motion makes a series of discrete arguments about the complaint's other claims.  The Court should reject these in turn.

The motion argues that the Second Amendment claim should be dismissed because of the dicta in *District of Columbia v. Heller*, 554 U.S. 570 (2008), about "longstanding prohibitions on the possession of firearms by felons" and the like.  Dkt. 57 at 15.  But of course, that is just another version of the speech-crime fallacy that *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), defeats.  Given that the Second Amendment undoubtedly protects a citizen's right to produce their own firearms in a myriad of perfectly legal circumstances, disputes about particular limits in particular circumstances cannot justify the defendants' effort to totally censor the publication of digital firearms information about *any* firearm or component to *any person*.

Next, the motion argues that the Equal Protection Clause should be dismissed because "personal vindictiveness" does not give rise to such a claim.  Dkt. 57 at 17.  But the motion concedes that the "desire to prevent the exercise of a constitutional right" would suffice, Dkt. 57

at 17, and the complaint pleads that Defense Distributed was selectively prosecuted "because the Defendants disagree with the content of Defense Distributed's constitutionally-protected speech."  FAC ¶ 143.  The fact that the defendants *also* harbor personal vindictiveness does not deprive the Equal Protection action of merit.

Next, the motion argues that the Due Process Clause's vagueness argument should be dismissed because "the New Jersey and Delaware statutory regimes regulating the manufacture and sale of firearms" are "abundantly clear."  Dkt. at 57.  But those are not the state actions that at issue.  The conduct that actually inflicts the unconstitutional censorship at issue takes the form of cease-and-desist letters censoring any and all "printable-gun computer files" without further specification, Dkt. 23-5; 23-8, as well as New Jersey's new speech crime, Dkt. 67 at 20-21.

For the Commerce Clause action, the motion makes no particular argument at all except to demand more detail.  Dkt. 57 at 18.  But rule 8 does not require the Plaintiffs to "demonstrate," *id.* any more than paragraphs 157-166 already do.

Finally, the motion tries to defeat the Supremacy Clause action by saying that the arms control regulations are "not domestic gun regulations at all."  Dkt. 57 at 19.  But that is precisely the point.  The State Department actions at issue are a matter of foreign policy, and states have no right to regulate that.  *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 375 (2000).

### Conclusion

The motions to dismiss should be denied.  In the event that the Court grants the any of motions to dismiss in whole or in part, Plaintiffs request leave to amend their complaint to cure any defects. *See Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003).

Date: December 12, 2018

Respectfully submitted,

BECK REDDEN LLP
By /s/ Chad Flores
Chad Flores*
cflores@beckredden.com
State Bar No. 24059759
Daniel N. Hammond*
Texas State Bar No. 24098886
dhammond@beckredden.com
1221 McKinney St., Suite 4500
Houston, TX 77010
(713) 951-3700 | (713) 952-3720 (fax)

FARHANG & MEDCOFF
Matthew Goldstein*
mgoldstein@fmlaw.law
D.C. Bar No. 975000
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040 | (520) 790-5433 (fax)

Josh Blackman
joshblackman@gmail.com
Virginia Bar No. 78292
1303 San Jacinto Street
Houston, TX 77002
(202) 294-9003 | (713) 646-1766 (fax)

*Admitted *pro hac vice*

Attorneys for Plaintiffs Defense Distributed
and Second Amendment Foundation, Inc.

**CERTIFICATE OF SERVICE**

On December 12, 2018, I served this filing on the following persons via CM/ECF:

      Counsel for Defendants Gurbir S. Grewal and Matthew Denn
      Kenneth W. Taber
      Ronald Casey Low

      Counsel for Defendant Michael Feuer
      Connie K. Chan
      James P. Clark
      Michael M. Walsh
      Jason P. Steed

      Counsel for Defendants Josh Shapiro and Thomas Wolf
      J. David Cabello
      John D. Kimball

      Counsel for Defendant Andrew Cuomo
      Pete Marketos
      Tyler Bexley

      Counsel for Plaintiffs
      Chad Flores
      Daniel N. Hammond
      Matthew A. Goldstein
      Joshua Michael Blackman

                             /s/ *Chad Flores*
                             Chad Flores