IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, INC., | ) ) ) | |
| *Plaintiffs*, | ) ) | |
| vs. | ) ) | Case No. 1:18-CV-637-RP |
| GURBIR GREWAL, in his official capacity as the State of New Jersey's Attorney General, et al. | ) ) ) ) | |
| *Defendant*. | ) ) | |

**DEFENDANT GURBIR S. GREWAL'S OPPOSITION TO PLAINTIFFS' MOTION FOR
<u>A PRELIMINARY INJUNCTION</u>**

# **TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 2

ARGUMENT ....................................................................................................................... 4

I.      The Court's Prior TRO Orders Require Denial of the PI Motion ............................... 4

        A.      Plaintiffs Fail to Demonstrate Imminent Irreparable Harm ........................... 4
        B.      The Pullman Abstention Doctrine Applies ..................................................... 5

II.     This Court Lacks Jurisdiction to Grant the Relief Requested ..................................... 5

        A.      The Court Lacks Personal Jurisdiction Over the NJAG ................................. 5
        B.      This Court Also Lacks Subject Matter Jurisdiction ....................................... 7

III.    Plaintiffs Cannot Establish the Remaining Preliminary Injunction Requirements ..... 8

        A.      Plaintiffs Cannot Show a Substantial Likelihood of Success on the Merits ..... 8
        B.      A Balancing of the Equities Clearly Tips in Defendants' Favor ..................... 9
        C.      A Preliminary Injunction Would Disserve the Public Interest ....................... 10

CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ashcroft v. Free Speech Coalition*,
    535 U.S. 234 (2002)..................................................................................................8

*In re Atrium Med. Corp. C-Qur Mesh Prods. Liab. Litig. (MDL No. 2753)*,
    299 F. Supp. 3d 324 (D.N.H. 2017)..........................................................................6

*Davis v. Angelina Coll. Bd. Of Tr.*,
    Case No. 9:17-CV-179, 2018 WL 1755392 (E.D. Tex. Apr. 11, 2018)...................10

*Enterprise Int'l, Inc. v. Coporacion Estatal Petrolera Ecuatoriana*,
    762 F.2d 464 (5th Cir. 1985) .................................................................................4, 5

*Giboney v. Empire Storage & Ice Co.*,
    336 U.S. 490 (1949)..................................................................................................8

*Holland Am. Ins. Co. v. Succession of Roy*,
    777 F.2d 992 (5th Cir. 1985) ....................................................................................4

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945)..................................................................................................6

*Jackson Women's Health Org. v. Currier*,
    760 F.3d 448 (5th Cir. 2014) .............................................................................2, 4, 9

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..................................................................................................2

*McGee v. United States*,
    849 F. Supp. 1147 (S.D. Miss. 1994).......................................................................9

*Railroad Comm'n of Texas v. Pullman*,
    312 U.S. 496 (1941)...............................................................................................1, 5

*Republic of Pan. v. BCCI Holdings (Luxembourg) S.A.*,
    119 F.3d 935 (11th Cir. 1997) ..................................................................................7

*Stroman Realty, Inc. v. Wercinski*,
    513 F.3d 476 (5th Cir. 2008) .................................................................................2, 6

*Washington v. U.S. Dep't of State, et al.*,
    318 F. Supp. 3d 1247 (W.D. Wash. 2018)......................................................1, 6, 7, 9

*United Rope Distribs. v. Seatriumph Marine Corp.*,
   930 F.2d 532 (7th Cir. 1991) ......................................................................................7

*Wendt v. 24 Hour Fitness USA, Inc.*,
   821 F.3d 547 (5th Cir. 2016) ......................................................................................7

<u>Statutes and Codes</u>

United States Code
   Title 47, Section 230(c)(1) ........................................................................................9
   Title 47, Section 230(f)(3) .........................................................................................9

Defendant Gurbir S. Grewal, the Attorney General of the State of New Jersey (the "NJAG"), respectfully submits this memorandum of law in opposition to Plaintiffs' Motion for a Preliminary Injunction, Dkt. 67 (the "PI Motion").

<u>INTRODUCTION</u>

The PI Motion seeks to enjoin the State of New Jersey's enforcement of a duly enacted public safety regulation addressing three-dimensional gun printing ("SB 2465 § 3(*l*)(2)" or "Section 3(*l*)(2)"). It is a transparent attempt to both improperly invoke the jurisdiction of this Court and simultaneously obtain judicial blessing for an end run around the preliminary injunction already issued by the United States District Court for the Western District of Washington. *See Washington v. U.S. Dep't of State, et al.*, 318 F. Supp. 3d 1247 (W.D. Wash. 2018) (the "Washington Action"). It is a ploy that must fail.

As an initial matter, this Court has already twice effectively denied the relief Plaintiffs again seek in their PI Motion. In its Orders denying Plaintiffs' two Motions for a Temporary Restraining Order (the "TRO Motions"), the Court held that (1) Plaintiffs failed to demonstrate a likelihood of irreparable harm, and (2) under the *Pullman* abstention doctrine, the Court should not review Plaintiffs' claims until the New Jersey courts have been "afforded a reasonable opportunity to pass upon" the constitutionality of Section 3(*l*)(2). *See* Dkt. 53 at 3-8; Dkt. 69 at 5-11. The Court's reasoning in its two prior Orders applies with equal force to the PI Motion. In fact, the PI Motion's arguments are not appreciably different from Plaintiffs' TRO Motions— and, in ruling on, and ultimately denying, Plaintiffs' second TRO Motion, the Court *specifically looked to the PI Motion* to determine whether Plaintiffs' concerns necessitated a TRO. *See* Dkt. 69 at 4 n.1. The Fifth Circuit likewise requires application of the same legal standard in determining whether to grant a preliminary injunction as it does with respect to a TRO, *see, e.g.*,

1

*Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 452 (5th Cir. 2014).  There is no reason for this Court to treat the PI Motion differently.

Second, this Court lacks jurisdiction to grant the relief requested in the PI Motion. Plaintiffs cannot demonstrate the requisite "minimum contacts" between the NJAG and Texas to establish personal jurisdiction.  *See Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 480-84 (5th Cir. 2008) (out-of-state official did not "purposefully avail[] herself of the benefits of Texas law" where her alleged misconduct merely involved enforcing her own state's law and, as here, her sole contact with Texas was the issuance of a cease-and-desist letter to a Texas resident).  And, with respect to subject matter jurisdiction, Plaintiffs have no standing to seek a preliminary injunction, because they've not suffered any injury-in-fact to a legally protected interest fairly traceable to the conduct of the NJAG.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Finally, Plaintiffs cannot make any of the required showings for a preliminary injunction, namely (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury absent immediate relief, (3) a favorable balancing of equities, and (4) that the injunction will not disserve the public interest.  *See, e.g.*, *Jackson Women's Health Org.*, 760 F.3d at 452.  Accordingly, the Court should deny the PI Motion.

## FACTUAL BACKGROUND

Most of the facts of this case are set forth in Defendants Gurbir S. Grewal and Matthew Denn's November 21, 2018 Motion to Dismiss (hereinafter, "Motion to Dismiss"), Dkt. 57 at 2-5, and so will not be repeated here.  Of additional relevance to the PI Motion, New Jersey amended its firearms regulations, effective November 8, 2018, to criminalize the manufacturing,

or facilitation of manufacturing, of firearms using a three-dimensional printer, making it

unlawful for:

> [A] person to distribute by any means, including the Internet, to a person in New Jersey who is not registered or licensed as a manufacturer as provided in chapter 58 of Title 2C of the New Jersey Statutes, digital instructions in the form of computer-aided design files or other code or instructions stored and displayed in electronic format as a digital model that may be used to program a three-dimensional printer to manufacture or produce a firearm, firearm receiver, magazine, or firearm component.

Section 3(*l*)(2); Dkt. 67 at 14.

> For the purposes of the statute, "distribute" means:

> [T]o sell, or to manufacture, give, provide, lend, trade, mail, deliver, publish, circulate, disseminate, present, exhibit, display, share, advertise, offer, or make available via the Internet or by any other means, whether for pecuniary gain or not, and includes an agreement or attempt to distribute.

Dkt. 67 at 14; Section 3(*l*)(2).

On or about November 9, 2018, Plaintiffs first moved the Court for an emergency TRO

to prevent the NJAG's enforcement of Section 3(*l*)(2).  The Court denied that first TRO Motion

on November 13, 2018.  Eight days later, on November 21, 2018, the NJAG moved to dismiss

Plaintiffs' entire complaint, among other things contesting the Court's personal jurisdiction over

the NJAG.  Despite that pending Motion to Dismiss, and despite the Court's ruling on the first

TRO Motion, Plaintiffs filed a second TRO Motion on December 4, 2018.  The Court denied that

motion as well, noting that "Plaintiffs' new and renewed arguments . . . suffer from the same

central defect in their first attempt to obtain a TRO: they fail to demonstrate a likelihood of

irreparable harm from the enforcement of Section 3(*l*)(2)."  Dkt. 69 at 5.

Plaintiffs now move the Court, effectively a third time, demanding a Preliminary

Injunction based upon the same factual and legal bases.  *See* Dkt. 52, 66, 67.  Indeed, the legal

arguments in the PI Motion are substantially identical to those in the two TRO Motions —

arguments the Court has already rejected, twice.  Dkt. 52 at 8-20; Dkt. 67 at 13-27.

## ARGUMENT

On an application for a preliminary injunction, the movant is required to show (1) a

substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury absent

immediate relief, (3) a favorable balancing of equities, and (4) that the TRO or injunction will

not disserve the public interest.  *E.g.*, *Jackson Women's Health Org.*, 760 F.3d at 452.  A

preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but

only when the movant, by a clear showing, carries the burden of persuasion."  *See Holland Am.

Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985).  Plaintiffs cannot meet that

burden here.

## I.     The Court's Prior TRO Orders Require Denial of the PI Motion

### A.     Plaintiffs Fail to Demonstrate Imminent Irreparable Harm

The Court has already twice held that "the irreparable harm Plaintiffs allege they will

suffer is unlikely and speculative."  Dkt. 53 at 6; *see also* Dkt. 69 at 5-9.  Indeed, the Court

specifically considered the *PI Motion's* "list of activities Plaintiffs alleged would be halted by

enforcement of Section 3(*l*)(2)," and unambiguously concluded that Plaintiffs "do not satisfy

their 'heavy burden' to 'clearly demonstrate irreparable injury.'"  Dkt. 69 at 4 n.1, 8-9 (citing

*Enterprise Int'l, Inc. v. Coporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir.

1985) (vacating preliminary injunction)).  The Court's reasoning in the two TRO Orders, Dkt. 53

at 3-8 and Dkt. 69 at 5-9, dictates the same result on the PI Motion.

### B.        The Pullman Abstention Doctrine Applies

The Court has also twice already held that abstention is warranted under *Railroad Comm'n of Texas v. Pullman*, 312 U.S. 496 (1941), because Section 3(*l*)(2) has plainly not yet been construed by the State of New Jersey in such a way as to require this Court to decide the asserted constitutional questions.  Dkt. 53 at 3-8; Dkt. 69 at 9-10.  In its second TRO Order, the Court stated that, because it "again finds that Plaintiffs have failed to demonstrate a likelihood of imminent irreparable harm – that is, failed to demonstrate a likelihood that their speech will be chilled in the absence of a TRO — the Court again concludes that abstention is not unwarranted merely because a First Amendment challenge is at stake." *Id.* at 10.  As these findings were expressly based upon Plaintiffs' enumerated activities *supporting its request for a preliminary injunction*, Dkt. 69 at 4 n.1, the Court's reasoning should apply with equal force to the PI Motion as well.  The NJAG therefore incorporates the Court's reasoning in both TRO Orders, Dkt. 53 at 3-8 and Dkt. 69 at 9-10.

## II.    This Court Lacks Jurisdiction to Grant the Relief Requested

The question of jurisdiction is "always vital" to the injunctive power of a district court. *See Enterprise Int'l, Inc.*, 762 F.2d at 471.  "Where a challenge to jurisdiction is interposed on an application for a preliminary injunction, 'the plaintiff is required to adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits.'"  *Id.* (quoting *Visual Sciences Inc. v. Integrated Commc'ns Inc.*, 660 F.2d 56, 58 (2d Cir. 1981)).  Plaintiffs cannot meet that burden here.

### A.        The Court Lacks Personal Jurisdiction Over the NJAG

For the reasons set forth in the NJAG's Motion to Dismiss, Dkt. 57 at 5-7, and incorporated by reference herein, Plaintiffs cannot establish either specific or general jurisdiction

5

over the NJAG in this Court.  The only contact with Texas alleged in Plaintiffs' complaint—the transmission of cease-and-desist letters to Defense Distributed—was entirely concerned with enforcing New Jersey law, and thus cannot form the basis of jurisdiction over the NJAG here. *See, e.g., Stroman Realty, Inc.*, 513 F.3d at 480-84.

Plaintiffs' anticipated response that the NJAG is somehow judicially estopped from challenging personal jurisdiction here, based on the NJAG's own jurisdictional allegations against Plaintiff Defense Distributed in the complaint in the Washington Action, is frivolous. *See* Plaintiffs' Opp. to Motion to Dismiss, Dkt. 73 at 8-10.  A jurisdictional due process analysis obviously focuses on whether *the defendant* has minimum contacts with the forum state.  *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The NJAG's position in the Washington Action — that *Defense Distributed* has sufficient contacts with the state of Washington, *see* Washington Action Dkt. 29 at ¶ 13 — is by no means "contrary" to the wholly unrelated proposition that the *NJAG* lacks minimum contacts with Texas.  The two issues are entirely unrelated.  *See In re Atrium Med. Corp. C-Qur Mesh Prods. Liab. Litig. (MDL No. 2753)*, 299 F. Supp. 3d 324, 330 (D.N.H. 2017) (judicial estoppel did not bar defendant's personal jurisdiction defense where defendant had not persuaded courts in related actions to exercise personal jurisdiction over it).

The NJAG also anticipates Plaintiffs will argue that the due process requirements for personal jurisdiction applicable here should be those of the Fifth Amendment, as opposed to the Fourteenth Amendment, and therefore Plaintiffs need only show that the NJAG has minimum contacts with the nation as a whole (not Texas).  *See* Plaintiffs' Opp. to Motion to Dismiss, Dkt. 73 at 11 n.6.  But, it is well-established that this alternate standard applies only when a federal statute provides the basis for personal jurisdiction, and that's plainly not the case here.  *See*

*Republic of Pan. v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997);

*United Rope Distribs. v. Seatriumph Marine Corp.*, 930 F.2d 532, 534-35 (7th Cir. 1991)

(finding no personal jurisdiction over defendant, despite "these national contacts," where the

federal statute at issue did "not authorize service of process").  With no federal statute providing

a basis for personal jurisdiction here, only the NJAG's contacts *with Texas* are relevant to the

Court's personal jurisdiction inquiry.  And, as discussed at length in NJAG's Motion to Dismiss,

the requisite Texas contacts required to establish such jurisdiction cannot be established here.

## B.    This Court Also Lacks Subject Matter Jurisdiction

To the extent that Plaintiffs' activities have already been enjoined, or effectively

enjoined, by the Court in the Washington Action, Plaintiffs lack Article III standing for the

reasons set forth in the NJAG's Motion to Dismiss, incorporated herein by reference.  Dkt. 57 at

7-13  Indeed, many of the same activities enumerated in the PI Motion — such as posting files to

the DEFCAD website for download — are undeniably within the ambit of the Washington

Court's injunction.  *See* Dkt. 65-26 at 8-9; Washington Action, 318 F. Supp. 3d at 1263-64.

More broadly, the same reasons this Court has already held that Plaintiffs will not suffer

irreparable harm in the absence of a TRO, *see* I.A and B. *supra*, mean that Plaintiffs likewise

cannot sufficiently establish the requisite "injury in fact" that is "concrete and particularized"

and "actual or imminent, not conjectural or hypothetical."  *See Wendt v. 24 Hour Fitness USA,*

*Inc.*, 821 F.3d 547, 550 (5th Cir. 2016) (quoting *Lujan*, 504 U.S. at 560).

Simply put, Plaintiffs can only hypothesize that the NJAG's enforcement of Section

3(*l*)(2) would cause injury to a legally protected interest.  In reality, however, the New Jersey

statute has not been construed as inconsistent with First Amendment rights, and Plaintiffs' true

objective — distributing its gun-related files via the internet, *see* FAC ¶¶ 30-44, — has already been blocked by the Washington court.

## III.   Plaintiffs Cannot Establish the Remaining Preliminary Injunction Requirements

### A.   Plaintiffs Cannot Show a Substantial Likelihood of Success on the Merits

For the reasons set forth in NJAG's Motion to Dismiss, and incorporated herein by reference, Plaintiffs' Constitutional claims are all without merit. *See* Dkt. 57 at 13-19. Plaintiffs nonetheless assert that the NJAG has unconstitutionally abridged Plaintiffs' First Amendment freedoms because Section 3(*l*)(2) is a "content-based" restriction that does not satisfy strict scrutiny because it does not advance a compelling state interest. *See* Dkt. 67 at 14-20. In support of this argument, Plaintiffs cite *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002). But, in *Ashcroft*, the Supreme Court found the ban on virtual child pornography unconstitutionally overbroad because it proscribed speech *otherwise protected under the First Amendment*. *See id.* Here, by contrast, Plaintiffs' actions (even *if* they qualified as speech) fall under the Supreme Court's long recognized exception to the First Amendment for "speech integral to criminal conduct." *See, e.g.*, *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949). There is simply no First Amendment right to violate New Jersey's presumptively valid firearm regulations by facilitating the manufacture and distribution of 3-D printed guns, without any regard whatsoever to long-established registration requirements and background check requirements. Motion to Dismiss, Dkt. 57 at 7-9.

Plaintiffs' Due Process and Dormant Commerce Clause claims also fail for the reasons set forth in the NJAG's Motion to Dismiss, incorporated by reference herein. Dkt. 57 at 17-19. With respect to Plaintiffs' Supremacy Clause claims, in addition to the fatal flaws discussed in the NJAG's Motion to Dismiss and incorporated by reference herein, Dkt. 57 at 25, Plaintiffs

cannot establish that the Communications Decency Act of 1996 (the "CDA"), or the State Department's authority, preempts Section 3(*l*)(2). The CDA exempts internet service providers (ISPs) from liability for internet content providers' illegal content. *See* 47 U.S.C. § 230(c)(1). But that hardly immunizes Plaintiffs, who admit that they are the "publishers" of 3-D printable firearms files, from anything. *See* FAC ¶¶ 10-13.[1] And, the State Department's authority, as it pertains to supposedly granting Plaintiffs a "federal right" or "license" to publish the firearms files, is itself already under review in the Washington Action. As such, federal authorization — and therefore preemption — cannot be credibly argued here.

**B.     A Balancing of the Equities Clearly Tips in Defendants' Favor**

Plaintiffs must demonstrate that "the threatened injury [to them] outweighs any damage that the injunction might cause the defendant." *See Jackson Women's Health Org.*, 760 F.3d at 452. Here, however, Plaintiffs cannot establish the existence of *any* injury to legally protected interests resulting from the NJAG's enforcement of Section 3(*l*)(2), while the NJAG has a powerful interest in enforcing and administering state criminal law and public safety measures. Impairment of the NJAG's right and independence to do so poses a serious threat of injury to New Jersey and its citizens, and the equities here therefore clearly favor the NJAG. *See McGee v. United States*, 849 F. Supp. 1147, 1149 (S.D. Miss. 1994) (denying sheriff's motion for a TRO where the damage to the Government's need to enforce the Brady Bill outweighed the burden on the sheriff to conduct background checks of those seeking to purchase firearms).

---

[1] The CDA defines the term "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). This clearly describes Defense Distributed, who is not an ISP.

C.      **A Preliminary Injunction Would Disserve the Public Interest**

Dissemination of information related to the manufacture of 3-D printable guns poses serious health and safety risks for New Jersey and its citizens.  The NJAG therefore has a strong interest in carrying out its duty to administer a state law that addresses those risks to the public. That public interest is served by permitting New Jersey to enforce its law prohibiting dissemination of 3-D printable guns to protect the health and safety of its own citizens.  *See Davis v. Angelina Coll. Bd. Of Tr.*, Case No. 9:17-CV-179, 2018 WL 1755392, at \*4 (E.D. Tex. Apr. 11, 2018) (denying plaintiff's request for a preliminary injunction based on First Amendment claims where the "public interest is served by the college providing a safe and harassment-free zone for employees and students.").[2]

### <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiffs' Motion for a Preliminary Injunction should in all respects be denied.

---

[2] For all of the reasons discussed herein, Plaintiffs' assertion that the Court should enjoin the NJAG's civil enforcement should also be rejected.  *See* PI Motion, Dkt. 67 at 27-28.

DATED: December 18, 2018

Respectfully submitted,

Pillsbury Winthrop Shaw Pittman LLP
BY: */s/ Casey Low*

    Casey Low
    Texas Bar No. 24041363
    401 Congress Ave., Suite 1700
    Austin, Texas 78701-4061
    Phone:  (512) 580-9600
    Fax:      (512) 580-9601
    casey.low@pillsburylaw.com

    Kenneth W. Taber (admitted *pro hac vice*)
    Benjamin D. Tievsky (admitted *pro hac vice*)
    Pillsbury Winthrop Shaw Pittman, LLP
    1540 Broadway
    New York, NY 10036
    212-858-1813
    Fax: 212-858-1500
    kenneth.taber@pillsburylaw.com
    benjamin.tievsky@pillsburylaw.com

    Attorneys for Defendant GURBIR S. GREWAL

OF COUNSEL:

Lorraine Karen Rak
Melissa Medoway
Jeremy Feigenbaum
New Jersey Attorney General's Office
124 Halsey Street
5th Floor
Newark, NJ 07102

**CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2018, I electronically filed the foregoing using the

CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Casey Low*
Casey Low