IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and<br>SECOND AMENDMENT FOUNDATION, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF STATE,<br>MICHAEL R. POMPEO, in his official capacity as<br>Secretary of State; DIRECTORIATE OF DEFENSE<br>TRADE CONTROLS; MIKE MILLER, in his official<br>capacity as Acting Deputy Assistant Secretary of<br>Defense Trade Controls; SARAH HEIDEMA, in her<br>official capacity as Director of Policy, Office of<br>Defense Trade Controls Policy,<br><br>and<br><br>GURBIR GREWAL, Attorney General of the<br>State of New Jersey<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 1:18-CV-637<br><br><br><br><br>PLAINTIFFS' SECOND<br>AMENDED COMPLAINT |

**Table of Contents**

I. Introduction ........................................................................................................ 4

II. Parties ................................................................................................................ 5

    A. Defense Distributed ................................................................................ 5

    B. Second Amendment Foundation, Inc. .................................................... 5

    C. The State Department ............................................................................. 6

    D. Gurbir Grewal ....................................................................................... 7

III. Subject Matter Jurisdiction .............................................................................. 7

IV. Venue ................................................................................................................ 8

V. Permissive Joinder ............................................................................................ 9

VI. Facts ................................................................................................................ 10

    A. Digital Firearms Information is Speech. .............................................. 10

    B. Defense Distributed's Digital Firearms Information Publications. ...... 12

        1. Defense Distributed's 2012–2013 Publications. ...................... 14

        2. Defense Distributed's July 2018 Publications. ........................ 15

        3. Defense Distributed's August–November 2018 Publications. ... 16

        4. Defense Distributed's 2020-Present Publications. .................... 17

        5. Published files will always remain online. ............................... 18

        6. Defense Distributed's Future Publications. ............................. 18

    C. The State Department's International Traffic in Arms Regulations. ..... 19

    D. *Defense Distributed I*: Litigation ....................................................... 21

    E. *Defense Distributed I*: Settlement Agreement .................................... 24

    F. Settlement Agreement Fulfillment Begins ........................................... 28

    G. The State Department Stopped Fulfilling the Settlement Agreement .... 30

        1. The State Department disavowed the license. .......................... 34

        2. After disavowal, the State Department refused to supply a license. ......... 35

        3. The State Department disavowed the Temporary Modification. .............. 36

        4. After disavowal, the State Department refused to supply a Temporary Modification. ........................................................ 36

        5. The State Department failed to supply the required regulatory changes. .. 37

    H. Grewal Censors Defense Distributed ................................................... 38

        1. Grewal Engages in Civil Censorship ....................................... 38

        2. Grewal Engages in Criminal Censorship ................................. 40

    I. Irreparable Harm ................................................................................... 45

|  | 1. | The State Department's illegal conduct causes irreparable harm. | 45 |
|  | 2. | Grewal's illegal conduct causes irreparable harm. | 47 |
| VII. | Causes of Action Against the State Department | | 49 |
|  | A. | Count One: APA § 706(2)(A). | 49 |
|  | B. | Count Two: APA § 706(2)(B). | 52 |
|  | C. | Count  Three: APA § 706(2)(C). | 53 |
|  | D. | Count  Four: APA § 706(2)(D). | 56 |
|  | E. | Count  Five: Breach of contract. | 58 |
|  | F. | Count Six: Freedom of Speech and of the Press | 60 |
|  | G. | Count Seven: Right to Keep and Bear Arms | 64 |
|  | H. | Count Eight: Due Process | 67 |
| VIII. | Causes of Action Against Grewal. | | 70 |
|  | A. | Count Nine: 42 U.S.C. § 1983—Freedom of Speech and of the Press. | 71 |
|  | B. | Count Ten: 42 U.S.C. § 1983—Right to Keep and Bear Arms | 73 |
|  | C. | Count Eleven: 42 U.S.C. § 1983—Equal Protection | 74 |
|  | D. | Count Twelve: 42 U.S.C. § 1983—Due Process | 75 |
|  | E. | Count Thirteen: 42 U.S.C. § 1983—Commerce Clause | 76 |
|  | F. | Count Fourteen: 42 U.S.C. § 1983—Arms Export Control Act | 78 |
|  | G. | Count Fifteen: 42 U.S.C. § 1983—Communications Decency Act | 79 |
|  | H. | Count Sixteen: Tortious Interference with the Settlement Agreement | 80 |
|  | I. | Count Seventeen: Tortious Interference with Existing Contracts | 81 |
| IX. | Requests for Relief | | 82 |
|  | A. | Defense Distributed and SAF should prevail against the State Department. | 82 |
|  | B. | Defense Distributed and SAF should prevail against Grewal. | 85 |

I.      **Introduction**

1.      This case concerns extraordinarily important questions of free speech regarding the First Amendment right to speak about the Second Amendment.  Defense Distributed and the Second Amendment Foundation are peaceful, law-abiding organizations committed to preserving, protecting, and promoting America's individual right to keep and bear Arms in both traditional and modern contexts.   At stake now is the modern right to speak about the Second Amendment by sharing computer files with digital firearms information.  Even though federal free speech laws protect this freedom with full force, both the United States Department of State and the New Jersey Attorney General are breaking the law multiple times over with unprecedented acts of censorship.

2.      The State Department can never abridge the freedom of speech—especially where, as here, the State Department made a legally-enforceable contract to protect Defense Distributed and the Second Amendment Foundation's right to engage in the speech at issue by performing a series of administrative obligations.  But instead of performing those critical protective obligations, the State Department violated administrative law in failing to comply.  Hence, Defense Distributed and the Second Amendment Foundation sue the State Department to halt this wrongdoing and obtain remedies due to them under the Administrative Procedure Act and other federal law.

3.      Meanwhile, New Jersey's Attorney General is abridging Defense Distributed and the Second Amendment Foundation's freedom of speech as well.  He denies the right to share digital firearms information because he cannot stand to let people speak out in favor of the Second Amendment.  Through a torrent of civil and criminal enforcement actions, Grewal has punished and threatens to continue punishing Defense Distributed and the Second Amendment Foundation's members for exercising their right to speak freely about firearms.  Hence, Defense Distributed and the Second Amendment Foundation sue Grewal to halt his censorship under 42 U.S.C. § 1983.

## II.    Parties

### A.    Defense Distributed

4.    Plaintiff Defense Distributed is a private business corporation that is headquartered and has its principal place of business in Austin, Texas.  It did so at all relevant times in the past.

5.    Currently and at all relevant times in the past, most of Defense Distributed's activities, including research, design, development, manufacturing, and publishing occurred in and around Austin.

6.    Currently and at all relevant times in the past, all of Defense Distributed's employees lived in or near Austin.

7.    Currently and at all relevant times in the past, a public library that displayed Defense Distributed's publications from time to time has been in Austin, Texas.

8.    Cody Wilson founded Defense Distributed.

9.    Cody Wilson serves as Defense Distributed's Director.

### B.    Second Amendment Foundation, Inc.

10.    Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of the State of Washington.  SAF's principal place of business is in Bellevue, Washington.

11.    SAF promotes the right to keep and bear arms by supporting education, research, publications, and legal efforts about the Constitution's right to privately own and possess firearms and the consequences of gun control.  Some SAF members seek to receive the computer files that Defense Distributed seeks to publish, and some SAF members seek to share their own computer files by utilizing Defense Distributed's facilities.  These SAF members seek to exchange this information because of its technical, scientific, artistic, and political value.

5

12.     SAF brings this action on behalf of itself.  SAF also brings this action on behalf of its members because at least one of its members would have standing to sue in his own right, the interests the suit seeks to vindicate are germane to the SAF's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

### C.     The State Department

13.     Defendant the United States Department of State is, and was at all relevant times, an executive department of the United States subject to the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 551(1).  The United States Department of State is located at 2201 C Street, Northwest, Washington, District of Columbia 20520.

14.     Defendant Michael R. Pompeo is United States Secretary of State.  He is sued in his official capacity.  In that capacity, he oversees the United States Department of State, its Bureau of Political Military Affairs, and its Directorate of Defense Trade Controls.  He is responsible for the federal conduct that is the subject of this action and for the related acts and omissions alleged herein.

15.     Defendant Directorate of Defense Trade Controls is, and was at all relevant times, a component of the United States Department of State's Bureau of Political Military Affairs subject to the APA. *See* 5 U.S.C. § 551(1).  The Directorate of Defense Trade Controls is located at SA-1 Columbia Plaza, 2401 E Street Northwest, Washington, District of Columbia 20037.

16.     Defendant Mike Miller is the United States Department of State's Deputy Assistant Secretary of State for Defense Trade in the Bureau of Political-Military Affairs (PM).  He is sued in his official capacity.  In that capacity, he is responsible for the federal conduct that is the subject of this action and for the related acts and omissions alleged herein.

17.     Defendant Sarah Heidema is the Director of the Office of Defense Trade Controls Policy within the Directorate of Defense Trade Controls.  She is sued in her official capacity.  In that capacity, she is responsible for the conduct that is the subject of this action and for the related acts and omissions alleged herein.

D.     **Gurbir Grewal**

18.     Defendant Gurbir Grewal is the New Jersey Attorney General.  In that capacity, he is responsible for all of the New Jersey civil and criminal enforcement efforts at issue.  He is sued for declaratory and injunctive relief in his official capacity.  Grewal's counsel expressly consented to the Plaintiffs' submission of a second amended complaint updating the claims against him.

III.    **Subject Matter Jurisdiction**

19.     28 U.S.C. § 1331 supplies the Court with original federal question jurisdiction over this action because it arises under the Constitution and laws of the United States.

20.     28 U.S.C. § 1332 supplies the Court with original diversity jurisdiction over this action because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

21.     28 U.S.C. § 1343 supplies the Court with original federal question jurisdiction over this action because it is an action to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and statutes providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

22.     28 U.S.C. § 1367 supplies the Court with supplemental subject-matter jurisdiction over the action's state-law claims because the state-law claims are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  The action's state-law claims do not raise novel or

complex issues of state law.  The action's state-law claims do not substantially predominate over the claim or claims over which the district court has original jurisdiction.

23.     This action seeks declaratory, injunctive, and other relief pursuant to the Constitution of the United States of America, 5 U.S.C. § 702, 5 U.S.C. § 705, 5 U.S.C. § 706, 28 U.S.C. § 1651(a), 28 U.S.C. § 2201, 28 U.S.C. § 2202, 42 U.S.C. § 1983, and 42 U.S.C. § 1988.

24.     There exists an active, justiciable controversy amongst the parties about whether the State Department complied with the Settlement Agreement attached to this complaint as Exhibit A.  Declaratory relief will resolve this controversy and eliminate the burden imposed on Plaintiffs' stemming therefrom.

25.     There exists an active, justiciable controversy amongst the parties about what the Settlement Agreement attached to this complaint as Exhibit A still requires of the State Department.  Declaratory relief will resolve this controversy and eliminate the burden imposed on Plaintiffs stemming therefrom.

26.     There exists an active, justiciable controversy amongst the parties about whether Grewal's civil and criminal censorship actions violate Defense Distributed and SAF's rights under the Constitution and other federal laws.  Declaratory relief will resolve this controversy and eliminate the burden imposed on Plaintiffs stemming therefrom.

## IV.     Venue

27.     This Court constitutes a proper venue for this action because a substantial part of the events or omissions giving rise to the claims occurred here.  *See*  28 U.S.C. § 1391(e)(1)(B).

28.     This Court constitutes a proper venue for this action because a substantial part of the property that is subject of the action is situated here.  *See* 28 U.S.C. § 1391(b)(2).

29.     This Court constitutes a proper venue for this action because this is an action against officers and agencies of the United States, a plaintiff resides in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred here.  *See* 28 U.S.C. § 1391(e)(1)(B).

30.     This Court constitutes a proper venue for this action because this is an action against officers and agencies of the United States, a plaintiff resides in this judicial district, and a substantial part of the property that is subject of the action is situated here.  *See* 28 U.S.C. § 1391(e)(1)(C).

31.     This Court constitutes a proper venue for this action because this is an action against officers and agencies of the United States, a plaintiff resides in this judicial district, and no real property is involved in the action.  *See* 28 U.S.C. § 1391(e)(1)(C).

32.     This action arises from actions that the State Department took and intends to take against Defense Distributed's activities in Austin, Texas and Defense Distributed's property in Austin, Texas.

33.     This action arises from actions that Grewal took and intends to take against Defense Distributed's activities in Austin, Texas and Defense Distributed's property in Austin, Texas.  *See Def. Distributed v. Grewal*, 971 F.3d 485 (5th Cir. 2020).

## V.     Permissive Joinder

34.     Grewal and the State Department can be permissively joined as defendants in this action because the claims against them are with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences.  *See* Fed. R. Civ. P. 20(a)(2)(A).  The common transactions and/or occurrences include but are not limited to the execution, temporary fulfillment, temporary enjoyment, and violation of the Settlement Agreement described *infra* Part V.E-H.

35.     Grewal and the State Department can be permissively joined as defendants in this action because questions of law and/or fact common to all defendants will arise in the action.  *See* Fed. R. Civ. P. 20(a)(2)(B).  The common questions include but are not limited to (1) whether the publications at issue qualify speech for purposes of federal free speech law, (2) if so, which species of constitutional scrutiny applies to government actions implicating that speech, and (3) whether anything about the nature of the speech warrants elevated or lowered scrutiny.

## VI.     Facts

### A.     Digital Firearms Information is Speech.

36.     This action concerns digital firearms information.  Digital firearms information is "digital" because it exists in the form of coded computer files, as opposed to analog media like printed books.  It is "information" because it conveys knowledge without advocating action.  It pertains to both entire firearms and individual firearm components, and addresses their physical properties, production methods, and uses.

37.     Digital firearms information exists in a wide variety of computer file formats.  Common formats include portable document format (.pdf) files, DWG (.dwg) files, Standard for the Exchange of Product Data ("STEP") (.stp) files, stereolithography (.stl) files, Initial Graphics Exchange Specification (.igs) files, SoLiDworks PaRT (.sldprt) files, and SketchUp (.skp) files, as well as plain text (.txt) files with notes, instructions, and comments.

38.     Digital firearms information includes, but is not limited to, what authorities refer to as "Computer Aided Design files" or "CAD files."  *See, e.g.*, Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List (USML), 85 Fed. Reg. 4136, 4140-42, 4172 (Jan. 23, 2020).  CAD files are used primarily for abstract design.  Users with the requisite computer hardware, software,

and expertise can employ CAD files to construct and manipulate complex two- and three-dimensional digital models of physical objects. These models serve a wide variety of important purposes apart from object fabrication. Examples include the computerized study of object properties, rendition of object images for product visualization, and parametric modeling of object families. According to authorities, CAD files are not ready for insertion into object-producing equipment such as computer numerically controlled machine tools and additive manufacturing equipment (e.g., 3D printers). *See, e.g.*, *id.*

39.     Digital firearms information also includes, but is not limited to, what authorities refer to as "Computer Aided Manufacturing files" or "CAM files." *See, e.g.*, Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List (USML), 85 Fed. Reg. 4136, 4140-42, 4172 (Jan. 23, 2020). Like CAD files, CAM files can be used to construct and manipulate the digital two- and three-dimensional models of physical objects that serve design purposes apart from production. According to authorities, unlike CAD files, CAM files are ready for insertion into object-producing equipment such as computer numerically controlled machine tools and additive manufacturing equipment (*e.g.*, 3D printers). *See, e.g.*, *id.*

40.     With respect to 3D-printing processes in particular, CAD files and CAM files do not produce anything automatically. They are not functional software. They do not self-execute. They are mere information stores. To fabricate an object as designed in a CAD or CAM file, a user must know how and choose to orchestrate a process involving substantial additional software (to interpret and implement the files into the motions of a 3D print head), substantial additional hardware (e.g., the computer running the software, the 3D printer), substantial physical labor, substantial amounts of time, and the requisite raw materials.

41.     The physical laws governing 3D-printer fabrication processes apply to all objects, including firearms.  Even with a perfectly accurate set of digital firearms information, the most powerful software, and a state-of-the-art 3D printer, the digital model of a firearm component does not fabricate the component on its own.  Firearm component fabrication is not an automatic process.  It occurs only if and when a person chooses to perform a complex series of actions entailing considered volition and judgment, such as adapting and tailoring the design, selecting suitable component materials, choosing an effective manufacturing process, and opting to personally complete an extensive set of fabrication steps with the requisite software, hardware, and raw materials.

**B.      Defense Distributed's Digital Firearms Information Publications.**

42.     Defense Distributed exists to promote the Second Amendment's individual right to keep and bear Arms.  To that end, Defense Distributed has published, is publishing, and intends to continue publishing digital firearms information to the American public.

43.     The digital firearms information that Defense Distributed has published, is publishing, and intends to continue publishing is an important expression of technical, scientific, artistic, and political matter.  Each and every computer file at issue has these values in the abstract, apart from any application that the information's recipient might choose to devote it to. Akin to blueprints, each computer file's sole purpose is to supply information in the abstract.  It is constitutionally protected speech in every respect.

44.     The digital firearms information that Defense Distributed has published, is publishing, and intends to continue publishing includes, but is not limited to, what authorities refer to as "Computer Aided Design files" or "CAD files."  *See, e.g.*, Control of Firearms, Guns,

Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List (USML), 85 Fed. Reg. 4136, 4140-42, 4172 (Jan. 23, 2020).

45.     The digital firearms information that Defense Distributed has published, is publishing, and intends to continue publishing includes, but is not limited to, what authorities refer to as "Computer Aided Manufacturing files" or "CAM files."  *See, e.g.*, *id.*

46.     The digital firearms information that Defense Distributed has published, is publishing, and intends to continue publishing includes, but is not limited to, non-CAD and non-CAM files such as plain text (.txt) files with notes, instructions, and comments.

47.     The digital firearms information that Defense Distributed has published, is publishing, and intends to continue publishing pertains to both entire firearms and to individual firearm components.  A representative example of the digital firearms information that Defense Distributed has published concerns the single-shot pistol known as the "Liberator."

48.     The digital firearms information that Defense Distributed has published, is publishing, and intends to continue publishing does not and is not intended to advocate action.  It especially does not advocate or intend to advocate any imminent action.

49.     The digital firearms information that Defense Distributed has published, is publishing, and intends to continue publishing does not and is not intended to incite action.  It especially does not incite or intend to incite any imminent action.

50.     The digital firearms information that Defense Distributed has published, is publishing, and intends to continue publishing does not and is not intended to produce action.  It especially does not produce or intend to produce any imminent action.

51.     None of the digital firearms information that Defense Distributed has published, is publishing, and intends to continue publishing involves "imminent" fabrication.  The 3D-printing

technologies at issue necessarily require a user to knowingly apply deliberate, focused will over the course of an extended period of time to fabricate an object.

52.     Defcad.com (hereinafter "DEFCAD") is a website for which Defense Distributed is and at all relevant times has been responsible.  Via DEFCAD, Defense Distributed has published, republished, and facilitated the distribution of a wide variety of digital firearms information.

### 1.     Defense Distributed's 2012–2013 Publications.

53.     From approximately December 2012 to May 2013, Defense Distributed published a substantial set of computer files with digital firearms information to DEFCAD by letting any site visitor download them directly for free.  The computer files with digital firearms information published via DEFCAD during this period included the following:

(a)     files concerning a single-shot firearm known as the "Liberator";

(b)     files concerning a firearm receiver for AR-15 rifles;

(c)     files concerning a magazine for AR-15 rifles;

(d)     stereolithography (.stl) files about firearm components;

(e)      Initial Graphics Exchange Specification (.igs) files about firearm components;

(f)     SoLiDworks PaRT (.sldprt) files about firearm components;

(g)     SketchUp (.skp) files about firearm components;

(h)     Standard for the Exchange of Product Data ("STEP") (.stp) files about firearm components;

(i)     diagrams of firearm components;

(j)     renderings;

(k)      "read me" plain text files about firearm assembly methods;

(l)     "read me" plain text files about the National Firearms Act and the Undetectable

Firearms Act; and

(m)    software licenses.

54.    The computer files that Defense Distributed published to DEFCAD during this

period were downloaded millions of times.

## 2.    Defense Distributed's July 2018 Publications.

55.    From the evening of July 27, 2018 until the afternoon of July 31, 2018, Defense

Distributed published a substantial set of computer files with digital firearms information to

DEFCAD by letting any site visitor download them directly for free.   The State Department

provided advance approval of these publications.   The computer files with digital firearms

information so published via DEFCAD during this period included the following:

(a)     files concerning a single-shot firearm known as the "Liberator";

(b)     files concerning an assembly of the AR-15 rifle and magazine;

(c)     files concerning an assembly of the AKM rifle and magazine;

(d)     stereolithography (.stl) files about firearm components;

(e)     Initial Graphics Exchange Specification (.igs) files about firearm components;

(f)     SoLiDworks PaRT (.sldprt) files about firearm components;

(g)     SketchUp (.skp) files about firearm components;

(h)     Standard for the Exchange of Product Data ("STEP") (.stp) files about firearm

components;

(i)     diagrams of firearm components;

(j)     renderings;

(k)     NC files concerning fire control pocket milling;

(l)     "read me" plain text files about firearm assembly methods;

(m)     "read me" plain text files about the National Firearms Act and the Undetectable Firearms Act; and

(n)     software licenses.

56.     The computer files that Defense Distributed published to DEFCAD during this period were downloaded hundreds of thousands of times.

57.     During this period, Defense Distributed also published the same computer files with digital firearms information at a brick-and-mortar public library in Austin, Texas by hosting the computer files in formats that patrons could access via computer workstations.

### 3.     Defense Distributed's August–November 2018 Publications.

58.     From approximately August 2018 to November 2018, Defense Distributed distributed a substantial set of computer files with digital firearms information via the mail by making its computer files available for shipment on physical storage devices.  Defense Distributed did so by using an ecommerce platform on DEFCAD to facilitate the transaction and using the U.S. Postal Service as its means of delivering the information.  After customers entered an order using DEFCAD's online ecommerce platform, Defense Distributed put the information on a USB drive or SD card and mailed the drive or card to customers via the U.S. Postal Service.

59.     During this period, Defense Distributed also offered and advertised its mailed distribution of digital firearms information to potential recipients.  These efforts included advertisements and offers on DEFCAD itself, participation in trade shows, and e-mail advertisements.

60.     For anyone dealing with digital firearms information, the postal mail alternative to internet publication is not an adequate substitute.  Internet communication of and about Defense

Distributed's digital firearms information is essential for many reasons. Moreover, internet communication is important because it is the *only* way to ensure open source development and commitment to the public domain/ placement outside the bounds of intellectual property strictures.

### 4. Defense Distributed's 2020-Present Publications.

61.     From March 27, 2020, to present, Defense Distributed published a substantial set of computer files with digital firearms information via DEFCAD. The computer files with digital firearms information published via DEFCAD during this period include original and legacy firearms models, CAD data, CAM data, blueprints and drawings.

62.     Unlike Defense Distributed's prior periods of publication on DEFCAD, Defense Distributed in this publication period did not let DEFCAD visitors download files freely. In this publication period, Defense Distributed used DEFCAD to facilitate secure file transfer via electronic transmissions that comply with current federal law by, *inter alia*, utilizing secure end-to-end encryption.

63.     Unlike Defense Distributed's prior periods of publication on DEFCAD, Defense Distributed in this publication period did not let DEFCAD visitors access the files at issue without any screening. In this publication period, Defense Distributed's screening procedures deemed certain DEFCAD visitors ineligible for file distribution.

64.     Unlike Defense Distributed's prior periods of publication on DEFCAD, Defense Distributed in this publication period did not let DEFCAD make files available to persons outside the United States.

65.     Unlike Defense Distributed's prior periods of publication on DEFCAD, Defense Distributed in this publication period did *not* make its files available to residents of and persons in the State of New Jersey who lack a federal firearms license.

66.     As compared to Defense Distributed's prior methods of publication on DEFCAD, Defense Distributed's latest method of publication on DEFCAD substantially burdens Defense Distributed's exercise of free speech and would not be utilized but for the wrongful actions of the State Department and Grewal.

67.     Currently, Defense Distributed continues to publish a substantial set of computer files with digital firearms information via DEFCAD in the manner that it has done so since March 27, 2020.  The number of files published in this manner to date is at least 16,354.

### 5.     Published files will always remain online.

68.     The computer files with digital firearms information that Defense Distributed published in the past will always be available on the internet, regardless of whether or not Defense Distributed itself continues to publish them.  Without any coordination, many recipients of Defense Distributed's digital firearms information have persistently republished those same files online via their own websites.  The independently-republished versions of Defense Distributed's files are not hidden in dark or remote recesses of the internet.  Simple Google searches yield the republished Defense Distributed files with ease.

### 6.     Defense Distributed's Future Publications.

69.     To the extent that and as soon as it is legal to do so, Defense Distributed currently intends to publish the following computer files with digital firearms information online at DEFCAD by letting any site visitor download them directly for free:

(a)     The computer files that Defense Distributed published online via DEFCAD from December 2012 to May 2013.  These include CAD files, CAM files, and non-CAD and non-CAM files.

18

(b)     The computer files that Defense Distributed published online via DEFCAD from July 27, 2018, to July 31, 2018.  These include CAD files, CAM files, and non-CAD and non-CAM files.

(c)     The computer files that Defense Distributed published via the mail from late August 2018 through early November 2018.  These include CAD files, CAM files, and non-CAD and non-CAM files.

(d)     The computer files that Defense Distributed published online via DEFCAD from March 27, 2020, to present.  These include CAD files, CAM files, and non-CAD and non-CAM files.

(e)     Computer files authored by Defense Distributed that Defense Distributed has not published before.  These include CAD files, CAM files, and computer files with other digital firearms information.

**C.     The State Department's International Traffic in Arms Regulations.**

70.     The Arms Export Control Act of 1976, 22 U.S.C. ch. 22 (the "AECA"), addresses the President's authority to control the import and export of defense articles and defense services.

71.     The International Traffic in Arms Regulations, 22 C.F.R. Parts 120-130 ("ITAR"), constitute AECA's primary implementing regulations.

72.     The State Department administers the AECA and the ITAR.  Within the State Department, primary responsibility for administering the AECA and the ITAR lies with the Directorate of Defense Trade Controls ("DDTC") in the Bureau of Political-Military Affairs.

73.     The AECA provides that "no defense articles or defense services . . . may be exported or imported without a license for such export or import."  22 U.S.C. § 2778(b)(2).  It provides for criminal penalties up to a $1,000,000 fine and 20 years in prison for "[a]ny person

who willfully violates any provision of this section ... or any rule or regulation issued under this section." *Id.* § 2778(c).

74.    The AECA authorizes the President "to designate those items which shall be considered as defense articles and defense services for the purposes of this section and to promulgate regulations for the import and export of such articles and services. The items so designated shall constitute the United States Munitions List." *Id.* § 2778(a)(1).  The President, by executive order, has delegated to the State Department the authority to regulate under the AECA and to designate defense "articles" and "services" for inclusion on the United States Munitions List ("USML"). *See* Exec. Order No. 13,637, § 1(n)(i), 78 Fed. Reg. 16,129 (Mar. 8, 2013).

75.    DDTC has from time to time promulgated regulations known as the International Traffic in Arms Regulations ("ITAR"). *See* 22 C.F.R. pts. 120-130 (2019). The ITAR make it unlawful to, *inter alia*, "export or attempt to export from the United States any defense article or technical data or to furnish or attempt to furnish any defense service for which a license or written approval is required" without such a license. *Id.* § 127.1(a)(1).

76.    The ITAR's definition of "export" includes the "actual shipment or transmission out of the United States, including the sending or taking of a defense article out of the United States in any manner." *Id.* § 120.17(a)(1).  The ITAR also provides that a "deemed export," defined as "[r]eleasing or otherwise transferring technical data to a foreign person in the United States," constitutes an "export." *Id.* § 120.17(a)(2).

77.    The ITAR also include, at 22 C.F.R. § 121.1, the USML, which enumerates the "articles, services, and related technical data [that] are designated as defense articles or defense services" for purposes of the AECA and ITAR. Id. § 121.1(a).  The USML organizes the designated items into twenty-one categories, encompassing various forms of weaponry,

ammunition, explosives, military-type equipment and vessels, toxicological agents, classified data, and more. Each of the twenty-one categories includes as a designated item "[t]echnical data" and "defense services" that are "directly related to the defense articles" listed in that category. *See, e.g.*, id. §§ 121.1(I)(i), (II)(k), (III)(e), (IV)(i), (V)(j), (VI)(g), (VII)(h). The ITAR define "technical data" to include "[i]nformation ... required for the design, development, production, manufacture, assembly, operation, repair, testing, maintenance or modification of defense articles." *Id.* § 120.10(a)(1).

### D. *Defense Distributed I*: Litigation

78. "*Defense Distributed I*" refers to a federal civil action docketed in the United States District Court for the Western District of Texas, Austin Division as *Defense Distributed, et al. v. United States Department of State, et al.*, No. 1:15-CV-372-RP (W.D. Tex.), and in the United States Court of Appeals for the Fifth Circuit first as *Defense Distributed, et al. v. United States Department of State, et al.*, No. 15-50759 (5th Cir.) and later as *Defense Distributed, et al. v. United States Department of State, et al.*, No. 18-50811 (W.D. Tex.). *Defense Distributed I* yielded the following reported opinions:

(a) *Def. Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680 (W.D. Tex. 2015)

(b) *Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451 (5th Cir. 2016) (panel opinion)

(c) *Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451, 461–76 (Jones, J., dissenting)

(d) *Def. Distributed v. U.S. Dep't of State*, 865 F.3d 211 (5th Cir. 2017) (Elrod, Jones, Smith and Clement, JJ., dissenting from the denial of rehearing en banc)

(e) *Def. Distributed v. United States Dep't of State*, 947 F.3d 870 (5th Cir. 2020).

79. The plaintiffs in *Defense Distributed I* were Defense Distributed, SAF, and an individual SAF member, Conn Williamson.

80.     The defendants in *Defense Distributed I* match the defendants in this case: the United States Department of State, the Secretary of State, the State Department's Directorate of Defense Trade Controls, the Acting Deputy Assistant Secretary of State for Defense Trade Controls in the Bureau of Political-Military Affairs, and the Acting Director of the Office of Defense Trade Controls Policy Division.   They are referred to collectively as "the State Department."

81.     *Defense Distributed I* concerned four categories of computer files defined by that action's pleadings: the "Published Files," the "Ghost Gunner Files," "CAD Files," and the "Other Files."   Together, these categories of files are referred to as the "*Defense Distributed I* Files."

    (a)     The "Published Files" category of *Defense Distributed I* Files consists of ten separate sets of files.   It includes stereolithography (.stl) files about firearm components, Initial Graphics Exchange Specification (.igs) files about firearm components, SoLiDworks PaRT (.sldprt) files about firearm components, SketchUp (.skp) files about firearm components, Standard for the Exchange of Product Data ("STEP") (.stp) files about firearm components, diagrams of firearm components, renderings, "read me" plain text files about firearm assembly methods, "read me" plain text files about the National Firearms Act and the Undetectable Firearms Act, and software licenses.   From approximately December 2012 to May 2013, Defense Distributed published these files to DEFCAD for free download by the public.

    (b)     The "Ghost Gunner Files" category of *Defense Distributed I* Files consists of software, data files, project files, coding, and models containing technical

information for a machine, named the "Ghost Gunner," that can be used to manufacture a variety of items, including gun parts.

(c)     The "CAD Files" category of *Defense Distributed I* Files consists of STEP (.stp) and stereolithography (.stl) files about a lower receiver to the AR-15 rifle.

(d)     The "Other Files" category of *Defense Distributed I* Files consists of files that contain technical information, to include design drawings, rendered images, written manufacturing instructions, and other technical information that Defense Distributed intends to post to public forums on the Internet; provided, however, that this category only extends insofar as those files regard items that, as of June 29, 2018, were exclusively: (i) in Category I(a) of the United States Munitions List, as well as barrels and receivers covered by Category I(g) of the United States Munitions List that are components of such items; or (ii) items covered by Category I(h) of the United States Munitions List solely by reference to Category I(a), excluding Military Equipment.

82.     *Defense Distributed I* began after the State Department used the AECA and ITAR regime to impose an illegal prior restraint on public speech concerning technical firearms data, including the *Defense Distributed I* Files.  Under this regime, the State Department required that Defense Distributed obtain prior United States government approval before publication of the *Defense Distributed I* Files could occur on the internet and at other public venues.

83.     The *Defense Distributed I* plaintiffs challenged the legality of the State Department's enforcement of the AECA/ITAR regime vis-à-vis the *Defense Distributed I* Files. In particular, they challenged the State Department's governance of the *Defense Distributed I* Files

as ultra vires action not authorized by the statutes and regulations at issue, and as violations of the First, Second, and Fifth Amendments of the Constitution.

84.     At a preliminary stage, the district court in *Defense Distributed I* denied the *Defense Distributed I* plaintiffs' motion for a preliminary injunction. *Def. Distributed v. Dep't of State*, 121 F. Supp.3d 680 (W.D. Tex. 2015).

85.     An interlocutory appeal of the *Defense Distributed I* preliminary injunction denial was taken to the Fifth Circuit.  A divided Fifth Circuit panel affirmed the district court's decision. *Def. Distributed v. United States Dep't of State*, 838 F.3d 451 (5th Cir. 2016).  But it declined to reach the merits, ruling solely based on "the balance of harm and the public interest." *Id.* at 461.

86.     The merits of *Defense Distributed I*'s preliminary injunction were, however, reached by two important opinions.  Judge Jones emphasized the protected nature of this speech in a panel dissent: "the State Department's application of its 'export' control regulations to this domestic Internet posting appears to violate the governing statute, represents an irrational interpretation of the regulations, and violates the First Amendment as a content-based regulation and a prior restraint." *Id.* at 463–64. (Jones, J. dissenting).  The judges dissenting from the denial of rehearing en banc also reached the merits.  *Def. Distributed v. U.S. Dep't of State*, 865 F.3d 211 (5th Cir. 2017).  Their opinion explained that the lower court's "flawed preliminary injunction analysis permits perhaps the most egregious deprivation of First Amendment rights possible: a content based prior restraint."  *Id.* at 212.

## E.    *Defense Distributed I*: Settlement Agreement

87.     After the *Defense Distributed I* interlocutory appeal concluded, the district court in *Defense Distributed I* ordered the parties to engage in settlement negotiations.  The parties did so successfully and settled their dispute by agreement.

88.     The *Defense Distributed I* settlement amounted to a victory for the plaintiffs.  Press reports correctly understood that the State Department's decision to settle "essentially surrenders" to the constitutional challenge Defense Distributed and SAF had been pressing all along; that the settlement "promises to change the export control rules surrounding any firearm below .50 caliber – with a few exceptions like fully automatic weapons and rare gun designs that use caseless ammunition – and move their regulation to the Commerce Department, which won't try to police technical data about the guns posted on the internet"; and that, in the meantime, the settlement "gives [Defense Distributed] a unique license to publish data about those weapons anywhere [it] chooses."  Andy Greenberg, *A Landmark Legal Shift Opens Pandora's Box for DIY Guns*, Wired Magazine (July 18, 2018), available at https://bit.ly/2QK3is6.

89.     The *Defense Distributed I* settlement agreement is memorialized by the "Settlement Agreement": a written contract that all sides executed validly on June 29, 2018.  A copy of that instrument is attached to this complaint as Exhibit A.  Among other things, the Settlement Agreement obligates the State Department to do the following:

(a)     Settlement Agreement Paragraph 1(a) - New Rule

Settlement Agreement Paragraph 1(a) requires the State Department to draft and fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed rulemaking and final rule, revising United States Munitions List ("USML") Category I to exclude the *Defense Distributed I* Files.  The pertinent text provides as follows: "Defendants agree to the following . . . : (a) Defendants' commitment to draft and to fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice

25

of proposed rulemaking and final rule, revising USML Category I to exclude the technical data that is the subject of the Action."

(b)    Settlement Agreement Paragraph 1(b) - Temporary Modification:

Settlement Agreement Paragraph 1(b) requires the State Department to announce, while the above-referenced final rule is in development, a temporary modification, consistent with International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the *Defense Distributed I* Files; and to publish the announcement on the Directorate of Defense Trade Controls website on or before July, 27, 2018.   The pertinent text provides as follows: "Defendants agree to the following . . . (b) Defendants' announcement, while the above-referenced final rule is in development, of a temporary modification, consistent with the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that is the subject of the Action.   The announcement will appear on the DDTC website, www.pmddtc.state.gov, on or before July 27, 2018."

(c)    Settlement Agreement Paragraph 1(c) - License

Settlement Agreement Paragraph 1(c) requires the State Department to issue a license to the *Defense Distributed I* plaintiffs on or before July 27, 2018, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that the Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13).   The pertinent text provides as follows: "Defendants agree to the

26

following . . . (c) Defendants' issuance of a letter to Plaintiffs on or before July 27, 2018, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that the Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution ) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13). For the purposes of 22 C.F.R. § 125.4(b)(13) the Department of State is the cognizant U.S. Government department or agency, and the Directorate of Defense Trade Controls has delegated authority to issue this approval."

(d)    Settlement Agreement Paragraph 1(d) - Acknowledgement

Settlement Agreement Paragraph 1(d) requires the State Department to acknowledge and agree that the temporary modification of USML Category I permits any United States person, to include Defense Distributed's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the *Defense Distributed I* Files, and that the license issued to the *Defense Distributed I* plaintiffs permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files.  The pertinent text provides as follows: "Defendants agree to the following . . . (d)  Defendants' acknowledgment and agreement that the temporary modification of USML Category I permits any United States person, to include DD's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the letter to Plaintiffs permits any

27

such person to access, discuss, use, reproduce or otherwise benefit from the
Published Files, Ghost Gunner Files, and CAD Files."

90.     The Settlement Agreement binds all of the parties to *Defense Distributed I* and all
of this action's parties.   Settlement Agreement paragraph 7 provides that the "Settlement
Agreement" shall be binding upon and inure to the benefit of Plaintiffs and Defendants, and the
respective heirs, executors, successors, assigns and personal representatives, including any
persons, entities, departments or agencies succeeding to the interest of obligations of the Parties."

### F.      Settlement Agreement Fulfillment Begins

91.     After the Settlement Agreement's execution on July 27, 2018, the State Department
began to fulfill—temporarily—certain of its Settlement Agreement obligations:

(a)     <u>Settlement Agreement Paragraph 1(a) - New Rule</u>

By July 27, 2018, the State Department had taken steps to comply with the
obligation imposed by Settlement Agreement Paragraph 1(a).  It published in the
Federal Register a notice of proposed rulemaking revising USML Category I to
exclude the *Defense Distributed I* Files.  *See* 83 Fed. Reg. 24,198 (May 24, 2018).

(b)     <u>Settlement Agreement Paragraph 1(b) - Temporary Modification</u>

By July 27, 2018, the State Department had taken steps to comply with the
obligation imposed by Settlement Agreement Paragraph 1(b).  It made a temporary
modification to USML Category I, pursuant to 22 C.F.R. § 126.2, to "exclude" the
*Defense Distributed I* Files from Category I.  A copy of that instrument is attached
to this complaint as Exhibit B.

(c)     <u>Settlement Agreement Paragraph 1(c) - License</u>

By July 27, 2018, the State Department had taken steps to comply with the

28

obligation imposed by Settlement Agreement Paragraph 1(c).  It issued Defense

Distributed a license—a letter issued by the State Department's Acting Deputy

Assistant Secretary for the Directorate of Defense Trade Controls—authorizing the

Defendants to publish the Published Files, Ghost Gunner Files, and CAD Files for

"unlimited distribution."  A copy of that instrument is attached to this complaint as

Exhibit C.

(d)     Settlement Agreement Paragraph 1(d) - Acknowledgement

By July 27, 2018, the State Department had taken steps to comply with the

obligation imposed by Settlement Agreement Paragraph 1(d).  It acknowledged and

agreed that the temporary modification permits any United States person to access,

discuss, use, reproduce, or otherwise benefit from the *Defense Distributed I* Files;

and that the license issued to the *Defense Distributed I* plaintiffs permits any such

person to access, discuss, use, reproduce or otherwise benefit from the Published

Files, Ghost Gunner Files, and CAD Files.  *See* Ex. A at 2.

92.     On June 29, 2018, the parties to *Defense Distributed I* filed a joint stipulation of

dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(ii).  The filing provided as follows:

"Pursuant to Federal Rule of Civil Procedure 41 (a)( I )(A)(ii) and 41(a)( I )(B), and a settlement

agreement among Plaintiffs (Defense Distributed, Second Amendment Foundation, Inc., and Conn

Williamson) and Defendants (the United States Department of State, the Secretary of State, the

Directorate of Defense Trade Controls, the Deputy Assistant Secretary, Defense Trade Controls.

and the Director, Office of Defense Trade Controls Policy), the Plaintiffs and the Defendants

hereby stipulate to the dismissal with prejudice of this action."

93.     On July 30, 2018, the *Defense Distributed I* district court entered an order providing that "the case is **DISMISSED WITH PREJUDICE**" and the "action is **CLOSED**."

94.     The State Department's temporary fulfillment of the Settlement Agreement obligations lasted from July 27, 2018 until the afternoon of July 31, 2018.  During that period, Defense Distributed engaged in the publication addressed *supra* at Part V.B.2 ("Defense Distributed's July 2018 Publications").

**G.     The State Department Stopped Fulfilling the Settlement Agreement**

95.     On July 30, 2018, Grewal and a group of state attorneys general (hereinafter "the States") initiated a civil action against the State Department, Defense Distributed, SAF, and Conn Williamson.  The States chose to sue in their forum of choice, the Western District of Washington's Seattle division, before Judge Robert Lasnik.  The suit was docketed in the district court as *State of Washington et al., v. United States Department of State et al.*, No. 2:18-cv-1115-RSL.

96.     Grewal explained the nature of the States' involvement in this litigation by saying the following on the record: "The federal government is no longer willing to stop Defense Distributed from publishing this dangerous code, and so New Jersey must step up."

97.     The States' *Washington* complaint alleged that, by issuing the Temporary Modification and license, the State Department had violated the Administrative Procedure Act (APA).  The suit sought a preliminary nationwide injunction and a final judgment vacating the Temporary Modification and license.  These claims went against the State Department alone.

98.     The Settlement Agreement was never the subject of any claim in the *Washington* case.  The States never claimed that the Settlement Agreement was illegal and never sought relief against the Settlement Agreement.  Their only claims targeted two of the actions the State Department took in an attempt to fulfill the Settlement Agreement.

99.     Nor were Defense Distributed and SAF the subject of any claim.  The States asserted no cause of action and sought no relief against Defense Distributed or SAF.  The APA claim about the license went against the State Department alone, did not allege that Defense Distributed or SAF did anything wrong, and did not seek relief against them.  Likewise for the APA claim about the Temporary Modification.  It too went against the State Department alone, did not allege that Defense Distributed or SAF did anything wrong, and did not seek relief against Defense Distributed or SAF.

100.     On July 31, 2018, the States obtained from the United States District Court for the Western District of Washington a temporary restraining order against the State Department: "The federal government defendants and all of their respective officers, agents, and employees are hereby enjoined from implementing or enforcing the 'Temporary Modification of Category I of the United States Munitions List' and the letter to Cody R. Wilson, Defense Distributed, and Second Amendment Foundation issued by the U.S. Department of State on July 27, 2018, and shall preserve the status quo ex ante as if the modification had not occurred and the letter had not been issued."

101.     A key concession occurred during the preliminary injunction proceedings: Both the State Department and the States conceded that there *is nothing inherently illegal about the computer files at issue*.  Aside from concerns about Defense Distributed's files being *on the internet*, the States and State Department took no issue with anyone's right to distribute the very same computer files via other channels.  At the preliminary injunction hearing, counsel for the States took the position that, apart from internet publication, Defense Distributed had a right to distribute digital firearms information via the mail or otherwise "hand them around domestically" without violating any law.  Counsel for the State Department agreed, stating that, "even if the

Court were to grant plaintiffs every ounce of relief that they seek in this case, Defense Distributed could still mail every American citizen in the country the files that are at issue here." In light of this concession, Defense Distributed engaged in the publication addressed *supra* at Part V.B.3 ("Defense Distributed's August-November 2018 Publications").

102.    On August 27, 2018, the States obtained from the United States District Court for the Western District of Washington a preliminary injunction against the State Department: "The federal defendants and all of their respective officers, agents, and employees are hereby enjoined from implementing or enforcing the 'Temporary Modification of Category I of the United States Munitions List' and the letter to Cody R. Wilson, Defense Distributed, and the Second Amendment Foundation issued by the U.S. Department of State on July 27, 2018, and shall preserve the status quo ex ante as if the modification had not occurred and the letter had not been issued until further order of the Court." *Washington v. U.S. Dep't of State*, 318 F. Supp. 3d 1247, 1264 (W.D. Wash. 2018).

103.    Even though the State Department had a right to appeal the *Washington* case's preliminary injunction decision, and even though it had preserved arguments that would have succeeded in having the district court's judgment vacated or reversed, the State Department refused to appeal. It let the deadline for that interlocutory appeal come and go without taking any appellate action. The State Department refused to appeal this preliminary injunction because of partisan politics and in spite of federal legal advisors that deemed an appeal legally necessary.

104.    The rest of the *Washington* case's key decisions occurred on summary judgment. On the merits, the *Washington* district court accepted both of the States' APA claims. First, the *Washington* district court held that the State Department's issuance of the Temporary Modification was "without observance of procedure required by law," 5 U.S.C. § 706, because a Congressional

notice requirement had not been met.  *Washington v. U.S. Dep't of State*, 420 F. Supp. 3d 1130, 1141-43 (W.D. Wash. 2019).  Second, the *Washington* district court held that the State Department's issuance of both the Temporary Modification and the license were "arbitrary and capricious," 5 U.S.C. § 706, because of insufficient explanation and evidentiary support in the administrative record.  *Id.* at 1144-47.  Neither of these claims are meritorious.

105.    The *Washington* action's final judgment orders as follows: "The July 27, 2018, 'Temporary Modification of Category I of the United States Munitions List' and letter to Cody R. Wilson, Defense Distributed, and the Second Amendment Foundation were unlawful and are hereby VACATED."  Part of the *Washington* district court's decision addressed the First Amendment implications of vacating the Temporary Modification and license.  It held the Constitution's First Amendment was "not relevant to the merits": "Whether or not the First Amendment precludes the federal government from regulating the publication of technical data under the authority granted by the AECA is not relevant to the merits of the APA claims plaintiffs assert in this litigation."  *Washington v. U.S. Dep't of State*, 420 F. Supp. 3d 1130, 1147 (W.D. Wash. 2019).  It also held that the First Amendment can be "abridged" so long as it is not "abrogated."  *Washington v. U.S. Dep't of State*, 318 F. Supp. 3d 1247, 1264 (W.D. Wash. 2018).

106.    Defense Distributed and SAF demanded that the State Department appeal.  The demand asserted that a failure to appeal constituted a breach of the Settlement Agreement.  The demand occurred in a January 15, 2020, letter from counsel for Defense Distributed and SAF to the State Department.  A copy of that instrument is attached to this complaint as Exhibit E.

107.    Even though the State Department had a right to appeal the final judgment, and even though it had preserved arguments that would have succeeded in having the district court's judgment vacated or reversed, the State Department refused to appeal.  It let the deadline for that

appeal come and go without taking any appellate action.  The State Department refused to appeal this final injunction because of partisan politics and in spite of federal legal advisors that deemed an appeal legally necessary.

108.    Defense Distributed and SAF appealed the *Washington* action's final judgment. Defense Distributed's appellant's brief showed that the district court both lacked subject-matter jurisdiction because of multiple Article III shortcomings and was wrong on the merits because the APA cannot require abridgement of the First Amendment.  So rather than be squarely defeated, the States moved to dismiss both appeals as moot.  Defense Distributed and SAF responded jointly, opposing the dismissal request with several categories of argument.  First, the response defeated the States' mootness suggestion on its own terms.  Second, it showed that mootness-based dismissals cannot occur unless and until disputes regarding the district court's subject-matter jurisdiction are resolved.  Third, the response showed that, if the case were moot, *Munsingwear* required vacatur of the district court's judgment.

109.    The *Washington* action's Ninth Circuit panel accepted the mootness suggestion and dismissed the appeal.  *Washington v. Def. Distributed*, No. 20-35030, 2020 WL 4332902 (9th Cir. July 21, 2020).  Its order gives no meaningful indication of the mootness reasoning.  It says nothing about the district court's jurisdiction.  And it says nothing about *Munsingwear*, silently leaving the district court's judgment intact.  A petition for rehearing en banc is now pending.

### 1.    The State Department disavowed the license.

110.    On or before August 2, 2018, the State Department disavowed the license it had originally issued to Defense Distributed and SAF in July 2018.

111.    The State Department's disavowal of the July 2018 license constitutes final agency action.

112.    The State Department's disavowal of the July 2018 license is reflected in an August 2, 2018, letter from counsel for the State Department.  A copy of that instrument is attached to this complaint as Exhibit D.

113.    The August 2, 2018, letter from counsel for the State Department established that, as of August 2, 2018, the State Department had decided to proceed as though the July 2018 license "had not been issued."  This indicates the State Department's disavowal of the July 2018 license.

114.    The August 2, 2018, letter from counsel for the State Department establishes that, as of August 2, 2018, the State Department had decided to proceed as though the license was a "nullity."  This letter indicates the State Department's disavowal of the July 2018 license.

### 2.    After disavowal, the State Department refused to supply a license.

115.    After the State Department disavowed the license it had originally issued to Defense Distributed and SAF in July 2018, the State Department refused to supply Defense Distributed and SAF with the license that Settlement Agreement Paragraph 1(c) requires the State Department to supply.

116.    The State Department's refusal to supply Defense Distributed and SAF with the license that Settlement Agreement Paragraph 1(c) requires the State Department to supply entitles them to constitutes final agency action.

117.    Defense Distributed and SAF demanded that the State Department issue a license in compliance with Settlement Agreement Paragraph 1(c) on January 15, 2020.  They did so by transmitting a letter from counsel for Defense Distributed and SAF to counsel for the State Department.  A copy of that instrument is attached to this complaint as Exhibit E.

118.    Defense Distributed and SAF demanded that the State Department issue a license in compliance with Settlement Agreement Paragraph 1(c) on February 11, 2020.  They did so by

transmitting a letter from counsel for Defense Distributed and SAF to counsel for the State Department.  A copy of that instrument is attached to this complaint as Exhibit F.

> **3.** **The State Department disavowed the Temporary Modification.**

119.    On or before August 2, 2018, the State Department disavowed the Temporary Modification that it had originally issued in July 2018.

120.    The State Department's August 2018 disavowal of the July 2018 Temporary Modification constitutes final agency action.

121.    The State Department's disavowal of the July 2018 Temporary Modification is reflected in the August 2, 2018, letter from counsel for the State Department. A copy of that instrument is attached to this complaint as Exhibit D.

122.    The August 2, 2018, letter from counsel for the State Department establishes that, as of August 2, 2018, the State Department had decided to cease "implementing or enforcing" the July 2018 Temporary Modification.  This letter indicates the State Department's disavowal of the July 2018 Temporary Modification.

123.    The August 2, 2018, letter from counsel for the State Department establishes that, as of August 2, 2018, the State Department had decided to proceed as though the July 2018 Temporary Modification "had not occurred."  This indicates the State Department's disavowal of the July 2018 Temporary Modification.

124.    The State Department removed the July 2018 Temporary Modification from its website on July 31, 2018.  This removal indicates the State Department's disavowal of the July 2018 Temporary Modification.

> **4.** **After disavowal, the State Department refused to supply a Temporary Modification.**

125.    After the State Department disavowed the July 2018 Temporary Modification, the State Department refused to supply Defense Distributed and SAF with the temporary modification that Settlement Agreement Paragraph 1(b) requires the State Department to supply.

126.    The State Department's refusal to supply Defense Distributed and SAF with the temporary modification that Settlement Agreement Paragraph 1(b) requires the State Department to supply constitutes final agency action.

**5.      The State Department failed to supply the required regulatory changes.**

127.    The State Department refused to supply Defense Distributed and SAF with the regulatory results that Settlement Agreement Paragraph 1(a) requires the State Department to supply.

128.    The State Department's refusal to supply Defense Distributed and SAF with the regulatory results that Settlement Agreement Paragraph 1(a) requires the State Department to supply constitutes final agency action.

129.    The State Department's refusal to supply Defense Distributed and SAF with the regulatory results that Settlement Agreement Paragraph 1(a) requires the State Department to supply constitutes a breach of the Settlement Agreement.

130.    The State Department issued a new final rule that pertains to the Settlement Agreement in January 2020.  *See* International Traffic in Arms Regulations: U.S. Munitions List Categories I, II, and III, 85 Fed. Reg. 3819 (Jan. 23, 2020).  It did so in conjunction with a new rule issued by the Commerce Department.  *See* Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List (USML), 85 Fed. Reg. 4136, 4140-42, 4172 (Jan. 23, 2020).  These new rules do not discharge the State Department's obligations under Settlement Agreement Paragraph 1(a)

because they do not exclude *all* of the technical data that was the subject of *Defense Distributed I* from United States Munitions List ("USML") Category I.   Separately, these new rules do not discharge the State Department's obligations under Settlement Agreement Paragraph 1(a) because they have been enjoined by the United States District Court for the Western District of Washington.

131.    On April 29, 2020, Defense Distributed and SAF demanded that the State Department supply Defense Distributed and SAF with the regulatory results that Settlement Agreement Paragraph 1(a) requires the State Department to supply.   They did so by transmitting a letter from counsel for Defense Distributed and SAF to counsel for the State Department.   A copy of that instrument is attached to this complaint as Exhibit G.

### H.    Grewal Censors Defense Distributed

#### 1.    Grewal Engages in Civil Censorship

132.    On July 26, 2018, Grewal issued Defense Distributed a formal cease-and-desist letter.   A copy is attached to this complaint as Exhibit H.

133.    Grewal's July 26, 2018, cease-and-desist letter commanded Defense Distributed to cease publishing its digital firearms information: "You are directed to cease and desist from publishing printable-gun computer files for use by New Jersey residents."   It repeatedly declared Defense Distributed's publication of digital firearms information to be a violation of New Jersey law.   It said that publication "violates New Jersey's public nuisance and negligence laws."   It said that publication "violates our public nuisance law."   It said that publication "constitute[s] a public nuisance."   It said that publication "is negligent."   It threatened to punish Defense Distributed for publishing any more digital firearms information: "If you do not halt your efforts to proceed with publication, I will bring legal action against your company before August 1, 2018."   It ended by delivering another command backed by a threat of punishment: "As the chief law enforcement

officer for New Jersey, I demand that you halt publication of the printable-gun computer files. Should you fail to comply with this letter, my Office will initiate legal action barring you from publishing these files before August 1, 2018."

134.    On July 26, 2018, after sending the cease-and-desist letter, Grewal issued a press release reiterating the threat: "Attorney General Grewal threatened Defense Distributed with 'legal action' if it fails to comply with his demand."   The press release also took the position that "[p]osting this material online is no different than driving to New Jersey and handing out hard-copy files on any street corner."

135.    On July 27, 2018, Defense Distributed responded to Grewal's July 26, 2018, cease-and-desist letter with a letter of its own.   The response letter explained that "all actions contemplated by Defense Distributed are fully protected by the First Amendment," and that the Attorney General's "attempts to prevent such action constitute an unconstitutional prior restraint and otherwise violate the United States Constitution."   It also explained that Defense Distributed would attempt to restrict files made available on the internet to prevent download within New Jersey.   Finally, it demanded that General withdraw his cease-and-desist command.   He did not.

136.    On July 30, 2018, Grewal took coercive action against Defense Distributed by targeting its internet service providers.

137.    DreamHost is a company that contracted to provide internet security services for Defense Distributed.   DreamHost's Acceptable Use Policy formed part of the contract between Defense Distributed and DreamHost.

138.    On July 30, 2018, Grewal sent a letter to DreamHost.   A copy is attached to this complaint as Exhibit I.

139.     Grewal's July 30, 2018, letter to DreamHost attempted to make DreamHost terminate its provision of services to Defense Distributed.  It declared that, by planning to publish digital firearms files on a website, "Defense Distributed is plainly planning to use the Defcad Website in a way that violates DreamHost's Acceptable Use Policy."  The letter declared that Defense Distributed's publication of digital firearms files violated New Jersey law.  It said that "posting them violates New Jersey's public nuisance and negligence laws."  It said that "posting them would . . . be illegal."

140.     On July 30, 2018, Grewal sent a copy of the July 26, 2018, cease-and desist letter to Cloudflare, Inc.'s legal department.  Cloudflare, Inc., provides internet security services for Defense Distributed.

## 2.     Grewal Engages in Criminal Censorship

141.     On November 8, 2018, New Jersey armed Attorney General Gurbir Grewal with Senate Bill 2465's Section 3(*l*)2.  S. 2465, 218th Leg., Reg. Sess. (N.J. Nov. 2018) (codified as N.J. Stat. 2C:39-9(l)2)).  The law is codified as Section (*l*)(2) of New Jersey Code of Criminal Justice 2C:39-9.  Section (*l*)(2) creates the following speech crime:

> *l.* Manufacturing or facilitating the manufacture of a firearm using a three dimensional printer. In addition to any other criminal penalties provided under law it is a third degree crime for:
>
> . . .
>
> (2) a person to distribute by any means, including the Internet, to a person in New Jersey who is not registered or licensed as a manufacturer as provided in chapter 58 of Title 2C of the New Jersey Statutes, digital instructions in the form of computer-aided design files or other code or instructions stored and displayed in electronic format as a digital model that may be used to program a three-dimensional printer to manufacture or produce a firearm, firearm receiver, magazine, or firearm component.
>
> As used in this subsection: "three-dimensional printer" means a computer or computer-driven machine or device capable of producing a three-dimensional

object from a digital model; and "distribute" means to sell, or to manufacture, give, provide, lend, trade, mail, deliver, publish, circulate, disseminate, present, exhibit, display, share, advertise, offer, or make available via the Internet or by any other means, whether for pecuniary gain or not, and includes an agreement or attempt to distribute.

N.J. Stat 2C:39-9(l)(2).

142.    Section (*l*)(2) is a speech crime.   It outlaws the sharing of digital firearms information.  With Grewal as its prime enforcer, New Jersey's Section (*l*)(2) speech crime outlaws constitutionally protected speech that Plaintiffs would engage in but for Grewal's enforcement threats.  Calling New Jersey's Section (*l*)(2) speech crime his favorite new "tool," Grewal aims to jail Defense Distributed, SAF, the CodeIsFreeSpeech.com publishers, and anyone else that dares to exercise their right to share digital firearms information.

143.    New Jersey's Section (*l*)(2) speech crime does not criminalize conduct.   It criminalizes speech as such: any "digital instructions" that "may be used" by a person to "produce a firearm" with a "three dimensional printer."  N.J. Stat 2C:39-9(*l*)(2).  It is now a "third degree crime" to "distribute" that speech "to a person in New Jersey" (except for licensed manufacturers). *Id.*  Convictions under Grewal's new speech crime entail a prison sentence of three to five years. N.J. Stat 2C:43-6.

144.    New Jersey's Section (*l*)(2) speech crime criminalizes every conceivable mode of communication.  No meaningful form of human interaction survives.  The keystone "distribute" term means "to sell, or to manufacture, give, provide, lend, trade, mail, deliver, publish, circulate, disseminate, present, exhibit, display, share, advertise, offer, or make available via the Internet or by any other means, whether for pecuniary gain or not, and includes an agreement or attempt to distribute."  N.J. Stat 2C:39-9(*l*)(2).  The law also specifies that it outlaws speech delivered "by any means," including "the Internet" and including standard postal "mail." *Id.*

145.    No type of digital firearms information survives New Jersey's Section (*l*)(2) speech crime either.   Section (*l*)(2) outlaws both "computer-aided design files" and "other code or instructions stored and displayed in electronic format as a digital model."  N.J. Stat 2C:39-9(*l*)(2).

146.    Information's actual use is irrelevant to New Jersey's Section (*l*)(2) speech crime. Section (*l*)(2) lets Grewal jail speakers regardless of whether or not any actual danger or harm exists.  The crime occurs if the information "***may*** be used" in a proscribed way.  *Id.* (emphasis added).  Critically, the new speech crime also lacks any meaningful intent requirement.

147.    New Jersey's Section (*l*)(2) speech crime was enacted for the purpose of discriminating against and censoring Defense Distributed and SAF's members, in particular.

148.    At the Section (*l*)(2) speech crime's signing ceremony, New Jersey Governor Phil Murphy linked the bill to the cease-and-desist letter that Grewal issued to Defense Distributed:

> The Attorney General has been a national leader in this fight.  Last June he issued ***a cease and desist letter to the companies that deal in ghost guns, saying explicitly that New Jersey is off limits to them***.  He joined likeminded attorneys general in successfully stopping in federal court the release of blueprints that would have allowed anyone with a computer and access to a 3D printer the ability to build their own, untraceable firearm.  This law that we're going to sign today further backs up his efforts, and I thank him for all that he has done.  Thank you, Gurbir.

149.    At the Section (*l*)(2) speech crime's signing ceremony, Grewal said that the bill was a "stronger tool[]" that he could use to "stop" Defense Distributed founder "Cody Wilson" and "his supporters" from "release[ing] these codes online":

> [T]oday, we're . . . closing dangerous loopholes in our existing laws - loopholes that some companies and individuals have tried to exploit.  This summer, for example, ***a Texan named Cody Wilson*** promised to publicly release computer files that would let anyone, even terrorists, felons, and domestic abusers, create firearms using a 3D printer. . . .   And so back in July, we successfully challenged Cody Wilson in court.  We obtained legal orders that temporarily halted the release of these codes.  ***But his supporters are not relenting, they're still trying to release these codes online***.  And so it's clear that we need stronger tools to stop them . . . tools like the legislation crafted by Senator Cryan and that Governor Murphy is signing today.

150.    At the Section (*l*)(2) speech crime's signing ceremony, Grewal said that Senate Bill

2465 was "right on point" to "address[] printable guns or ghost guns" and that it was enacted "to

stop the next Cody Wilson, to fight the ghost gun industry":

> [E]arlier this year, we went after some of the biggest players in this industry.  We told them that they were wrong on the law.  We told them that they were, in fact, breaking the law here in New Jersey by selling those weapons here.  And we told them to stop.  And some of them complied.  But others did not, and so those investigations are ongoing at this time.
>
> But in both of those cases, ***bad actors were trying to take advantage of loopholes because no law squarely addressed printable guns or ghost guns***.  So we had to rely on other laws, like our public nuisance law or our assault weapons law, to fight back. Now don't get me wrong:  Those laws are important and they're great tools, and they helped us stop the spread of these dangerous, untraceable weapons.  ***But a law right on point strengthens law enforcement's hand even more.***
>
> And so today, there is no question that printable guns and ghost guns are deadly, and selling them in New Jersey is illegal.  And that's why I'm so proud to support Governor Murphy's efforts and the legislature's efforts to close those loopholes, ***to stop the next Cody Wilson, to fight the ghost gun industry***, and to regulate the next dangerous gun models before they spread into our communities.

151.    At the Senate Bill 2465 signing ceremony, Grewal threatened to "come after"

"anyone who is contemplating making a printable gun" and "the next ghost gun company":

> And here's my message today ***to anyone who is contemplating making a printable gun or to the next ghost gun company*** trying to sell their dangerous weapons into New Jersey: Your products are unlawful and if your break our laws ***we will come after you***. And to anyone else who thinks of trying to find other loopholes in our laws, especially to sell dangerous firearms, we're just as committed to ***stopping each of you***.

152.    A press release further touted Grewal's enforcement threats.

153.    Defense Distributed knew of the Section (*l*)(2) speech crime passage on the day

that it became law and witnessed the signing ceremony.  At that time, Defense Distributed

reasonably feared that Grewal would commence enforcement of the new law against Defense

Distributed, its officers, its employees, and/or its agents at any moment.

154.    Hence, Grewal is illegally censoring three distinct categories of Defense Distributed and SAF's speech.  If not for Grewal's unconstitutional actions, Defense Distributed and SAF would be freely exercising their First Amendment rights.  These losses amount to irreparable harm in every instance.

155.    Category one is the free and open publication of digital firearms information on the internet to persons in New Jersey.  This right has been exercised in the past by Defense Distributed. If not for Grewal's ongoing censorship, this right would be exercised in the future by Defense Distributed and SAF and its members.

156.    Category two is the free and open publication of digital firearms information via the mail to persons in New Jersey.  This right has been exercised in the past by Defense Distributed. If not for Grewal's ongoing censorship, this right would be exercised in the future by Defense Distributed.

157.    Category three is the free and open offering and advertisement of digital firearms information to persons in New Jersey.  This right has been exercised in the past by Defense Distributed.  If not for Grewal's ongoing censorship, this right would be exercised in the future by Defense Distributed and SAF and its members.

158.    Grewal's criminal censorship covers all three categories of conduct.  Internet publications are covered because Section 3(l)(2) makes it a crime to distribute the banned "digital instructions" "by any means, including the Internet." N.J. Stat 2C:39-9(*l*)(2).  Mailed publications are covered because the speech crime also defines "distribute" to mean "mail."  And offers and advertisements are covered because Section 3(l)(2) defines "distribute" to mean "offer" and "advertise." *Id.*

159.     Grewal's civil censorship covers all three categories of conduct as well.   His cease-and-desist order said to "halt publication" of any and all so-called "printable gun computer files."   The civil lawsuits sought prior restraints against all manner of "distributing" "printable-gun computer files."   And the threats against internet service providers targeted all "computer files" with digital firearms information.

160.     Grewal's censorship of *non-internet speech* is completely unique.   Neither the federal government nor any other state government seeks to censor the non-internet speech of Defense Distributed and SAF that Grewal does. The resulting censorship of constitutionally protected speech is uniquely attributable to Grewal alone.

161.     Grewal's censorship of *internet speech* is unique as well—both in breadth and nature.  His civil and criminal censorship efforts against Defense Distributed and SAF's internet speech apply to more speech than federal officials' efforts do, impose different burdens than federal officials' efforts do, and threaten far greater penalties than federal officials' efforts do.  The resulting censorship of constitutionally protected speech is uniquely attributable to Grewal alone.

I.     **Irreparable Harm**

1.     **The State Department's illegal conduct causes irreparable harm.**

162.     In the past, the State Department's illegal conduct irreparably harmed Defense Distributed and SAF by abridging rights guaranteed by the First Amendment, Second Amendment, Fourteenth Amendment, and other federal speech protections.

163.     In the past, the State Department's illegal conduct irreparably harmed Defense Distributed and SAF by causing Defense Distributed and SAF to refrain from publishing digital firearms information that Defense Distributed and SAF had a right to publish, by causing Defense Distributed and SAF to refrain from receiving digital firearms information that Defense

Distributed and SAF had a right to receive, and by causing Defense Distributed and SAF to refrain from republishing digital firearms information that Defense Distributed had a right to republish.

164.    In the past, the State Department's illegal conduct irreparably harmed Defense Distributed and SAF by chilling Defense Distributed and SAF's exercise of First Amendment rights.

165.    In the past, the State Department's illegal conduct irreparably harmed Defense Distributed and SAF by chilling Defense Distributed and SAF's exercise of Second Amendment rights.

166.    At present, the State Department's illegal conduct irreparably harms Defense Distributed and SAF by abridging rights guaranteed by the First Amendment, Second Amendment, Fourteenth Amendment, and other federal speech protections.

167.    At present, the State Department's illegal conduct irreparably harms Defense Distributed and SAF by causing Defense Distributed and SAF to refrain from publishing digital firearms information that Defense Distributed and SAF have a right to publish, by causing Defense Distributed and SAF to refrain from receiving digital firearms information that Defense Distributed and SAF have a right to receive, and by causing Defense Distributed and SAF to refrain from republishing digital firearms information that Defense Distributed and SAF have a right to republish.

168.    At present, the State Department's illegal conduct irreparably harms Defense Distributed and SAF by chilling Defense Distributed and SAF's exercise of First Amendment rights.

169.    At present, the State Department's illegal conduct irreparably harms Defense Distributed and SAF by chilling Defense Distributed and SAF's exercise of Second Amendment rights.

170.    Absent relief from this Court, the State Department will continue to engage in the illegal conduct that has caused Defense Distributed and SAF irreparable harm in the past and is causing Defense Distributed and SAF irreparable harm at present.

### 2.    Grewal's illegal conduct causes irreparable harm.

171.    In the past, Grewal's illegal conduct irreparably harmed Defense Distributed and SAF by abridging rights guaranteed by the First Amendment, Second Amendment, Fourteenth Amendment, and other federal law.

172.    In the past, Grewal's illegal conduct irreparably harmed Defense Distributed and SAF by causing them to refrain from publishing digital firearms information they have a right to publish, by causing them to refrain from receiving digital firearms information they have a right to receive, by causing them to refrain from republish firearms information they have a right to republish, and by chilling their exercise of First Amendment rights.

173.    At present, Grewal's illegal conduct irreparably harms Defense Distributed and SAF by abridging rights guaranteed by the First Amendment, Second Amendment, Fourteenth Amendment, and other federal law.

174.    At present, Grewal's illegal conduct irreparably harms Defense Distributed and SAF by causing them to refrain from publishing digital firearms information they have a right to publish, by causing them to refrain from receiving digital firearms information they have a right to receive, by causing them to refrain from republishing firearms information they have a right to republish, and by chilling their exercise of First Amendment rights.

175.    Absent relief from this Court, Grewal will continue to engage in the illegal conduct that has caused Defense Distributed and SAF irreparable harm in the past and is causing Defense Distributed and SAF irreparable harm at present.

176.    Defense Distributed refrains from freely and openly publishing digital firearms information via the internet to persons in New Jersey for fear of being punished by Grewal.  Once that threat ceases, Defense Distributed will resume engaging in this speech with persons in New Jersey and SAF's members in New Jersey will resume receiving it, benefitting from it, and republishing it.

177.    Defense Distributed refrains from freely and openly distributing digital firearms information via the mail to persons in New Jersey for fear of being punished by Grewal. Once that threat ceases, Defense Distributed will resume engaging in this speech and SAF's members will resume receiving it, benefitting from it, and republishing it.

178.    Defense Distributed refrains from freely and openly offering and advertising its mailed digital firearms information to persons in New Jersey for fear of being punished by Grewal. Once that threat ceases, Defense Distributed will resume making offers and advertisements about its mailed publications to persons in New Jersey.

179.    SAF members have received and republished Defense Distributed's digital firearms information in the past.  But now they refrain from freely and openly receiving and republishing Defense Distributed's files for fear of being prosecuted by states like New Jersey.  Once those threats cease, SAF's members will continue to freely and openly receive and republish information from Defense Distributed.

180.     Because of Grewal's evident intention of enforcing Section (*l*)(2) against Defense Distributed and SAF, Defense Distributed and SAF have refrained from engaging in speech that Constitution and other federal law guarantees their right to engage in.

181.     If Defense Distributed publishes its digital firearms information via the internet by making its computer files freely and openly available for download on a website, Grewal will enforce New Jersey's Section (*l*)(2) speech crime against Defense Distributed.  If SAF members publish or republish Defense Distributed's computer files via the internet by making them available for download on a website, Grewal will enforce New Jersey's Section (*l*)(2) speech crime against them.

182.     If Defense Distributed publishes its digital firearms information via the mail by making its computer files available for shipment on physical storage devices to persons in New Jersey, Grewal will enforce New Jersey's Section (*l*)(2) speech crime against Defense Distributed. Likewise, if SAF members make Defense Distributed's computer files available for shipment on physical storage devices to persons in New Jersey, Grewal will enforce New Jersey's Section (*l*)(2) speech crime against them.

183.     If Defense Distributed engages in advertising and offering activities regarding its files to persons in New Jersey, Grewal will enforce New Jersey's Section (*l*)(2) speech crime against Defense Distributed.  Likewise, if SAF members engage in advertising and offering activities regarding Defense Distributed's files to persons in New Jersey, Grewal will enforce New Jersey's Section (*l*)(2) speech crime against them.

## VII.    Causes of Action Against the State Department

### A.    Count One: APA § 706(2)(A).

184.     Defense Distributed & SAF incorporate the preceding paragraphs.

185.    The Administrative Procedure Act requires the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

186.    The State Department committed a final agency action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), by disavowing the license it had originally issued to Defense Distributed and SAF in July 2018. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful and setting it aside.

187.    The State Department committed a final agency action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), by refusing to issue a letter to Defense Distributed & SAF, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that (1) *Defense Distributed I*'s Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution ) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13), and (2) for the purposes of 22 C.F.R. § 125.4(b)(13) the Department of State is the cognizant U.S. Government department or agency, and the Directorate of Defense Trade Controls has delegated authority to issue the approval. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

188.    The State Department committed a final agency action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), by refusing to draft and to fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed rulemaking and final rule revising USML Category I to exclude the technical data that was the

subject of *Defense Distributed I*. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

189.    The State Department committed a final agency action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), by disavowing the temporary modification it had originally issued to Defense Distributed and SAF in July 2018. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful and setting it aside.

190.    The State Department committed a final agency action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), by refusing to announce, while the above-referenced final rule is in development, a temporary modification, consistent with the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that was the subject of *Defense Distributed I*. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

191.    The State Department committed a final agency action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), by refusing to acknowledge and agree that the 2018 temporary modification of USML Category I permits any United States person, to include Defense Distributed's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the 2018 License permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files of *Defense Distributed I*. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

**B.** **Count Two: APA § 706(2)(B).**

192.    Defense Distributed & SAF incorporate the preceding paragraphs.

193.    The Administrative Procedure Act requires the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are found to be "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

194.    The State Department committed a final agency action that was "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(B), by disavowing the license it had originally issued to Defense Distributed and SAF in July 2018.. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful and setting it aside.

195.    The State Department committed a final agency action that was "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(B), by refusing to issue a letter to Defense Distributed & SAF, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that (1) *Defense Distributed I*'s Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution ) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13), and (2) for the purposes of 22 C.F.R. § 125.4(b)(13) the Department of State is the cognizant U.S. Government department or agency, and the Directorate of Defense Trade Controls has delegated authority to issue the approval. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

196.    The State Department committed a final agency action that was "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(B), by refusing to draft and to fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed rulemaking and final rule revising

USML Category I to exclude the technical data that was the subject of *Defense Distributed I*. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

197.    The State Department committed a final agency action that was "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(B), by disavowing the temporary modification it had originally issued to Defense Distributed and SAF in July 2018. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful and setting it aside.

198.    The State Department committed a final agency action that was "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(B), by refusing to announce, while the above-referenced final rule is in development, a temporary modification, consistent with the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that was the subject of *Defense Distributed I*.  Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

199.    The State Department committed a final agency action that was "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(B), by refusing to acknowledge and agree that the 2018 temporary modification of USML Category I permits any United States person, to include Defense Distributed's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the 2018 License permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files of *Defense Distributed I*. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

C.    **Count Three: APA § 706(2)(C).**

200.     Defense Distributed & SAF incorporate the preceding paragraphs.

201.     The Administrative Procedure Act requires the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are found to be "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(C).

202.     The State Department committed a final agency action that was "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C), by disavowing the license it had originally issued to Defense Distributed and SAF in July 2018. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful and setting it aside.

203.     The State Department committed a final agency action that was "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C), by refusing to issue a letter to Defense Distributed & SAF, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that (1) *Defense Distributed I*'s Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution ) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13), and (2) for the purposes of 22 C.F.R. § 125.4(b)(13) the Department of State is the cognizant U.S. Government department or agency, and the Directorate of Defense Trade Controls has delegated authority to issue the approval.  Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

204.     The State Department committed a final agency action that was "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C), by refusing to draft and to fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed

rulemaking and final rule revising USML Category I to exclude the technical data that was the subject of *Defense Distributed I*. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

205.   The State Department committed a final agency action that was "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C), by disavowing the temporary modification it had originally issued to Defense Distributed and SAF in July 2018. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful and setting it aside.

206.   The State Department committed a final agency action that was "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C), by refusing to announce, while the above-referenced final rule is in development, a temporary modification, consistent with the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that was the subject of *Defense Distributed I*. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

207.   The State Department committed a final agency action that was "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C), by refusing to acknowledge and agree that the 2018 temporary modification of USML Category I permits any United States person, to include Defense Distributed's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the 2018 License permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files of *Defense*

*Distributed I.*  Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

**D.      Count Four: APA § 706(2)(D).**

208.    Defense Distributed & SAF incorporate the preceding paragraphs.

209.    The Administrative Procedure Act requires the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are found to be "without observance of procedure required by law."  5 U.S.C. § 706(2)(D).

210.    The State Department committed a final agency action that was "without observance of procedure required by law," 5 U.S.C. § 706(2)(D), by disavowing the license it had originally issued to Defense Distributed and SAF in July 2018.  Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful and setting it aside.

211.    The State Department committed a final agency action that was "without observance of procedure required by law," 5 U.S.C. § 706(2)(D), by refusing to issue a letter to Defense Distributed & SAF, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that (1) *Defense Distributed I*'s Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution ) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13), and (2) for the purposes of 22 C.F.R. § 125.4(b)(13) the Department of State is the cognizant U.S. Government department or agency, and the Directorate of Defense Trade Controls has delegated authority to issue the approval.  Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

212.    The State Department committed a final agency action that was "without observance of procedure required by law," 5 U.S.C. § 706(2)(D), by refusing to draft and to fully

pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed rulemaking and final rule revising USML Category I to exclude the technical data that was the subject of *Defense Distributed I*. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

213.    The State Department committed a final agency action that was "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(B), by disavowing the temporary modification it had originally issued to Defense Distributed and SAF in July 2018. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful and setting it aside.

214.    The State Department committed a final agency action that was "without observance of procedure required by law," 5 U.S.C. § 706(2)(D), by refusing to announce, while the above-referenced final rule is in development, a temporary modification, consistent with the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that was the subject of *Defense Distributed I*.  Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

215.    The State Department committed a final agency action that was "without observance of procedure required by law," 5 U.S.C. § 706(2)(D), by refusing to acknowledge and agree that the 2018 temporary modification of USML Category I permits any United States person, to include Defense Distributed's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the 2018 License permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files of *Defense Distributed I*. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful.

### E.      Count Five: Breach of contract.

216.     Defense Distributed & SAF incorporate the preceding paragraphs.

217.     Defense Distributed, SAF, and Conn Williamson timely performed all of their obligations under the Settlement Agreement.  Defense Distributed, SAF, and Conn Williamson did not commit any material breach of the Settlement Agreement.

218.     The State Department committed an unexcused material breach of the Settlement Agreement by disavowing the license it had originally issued to Defense Distributed and SAF in July 2018.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins further breaches of this kind, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

219.     The State Department breached the Settlement Agreement by refusing to issue a letter to Defense Distributed & SAF, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that (1) *Defense Distributed I*'s Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution ) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13), and (2) for the purposes of 22 C.F.R. § 125.4(b)(13) the Department of State is the cognizant U.S. Government department or agency, and the Directorate of Defense Trade Controls has delegated authority to issue the approval.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins further breaches of this kind, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF

exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

220.    The State Department committed an unexcused material breach of the Settlement Agreement by refusing to draft and to fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed rulemaking and final rule revising USML Category I to exclude the technical data that was the subject of *Defense Distributed I*.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins further breaches of this kind, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

221.    The State Department committed an unexcused material breach of the Settlement Agreement by refusing to announce, while the above-referenced final rule is in development, a temporary modification, consistent with the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that was the subject of *Defense Distributed I*.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins further breaches of this kind, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

222.    The State Department committed an unexcused material breach of the Settlement Agreement by disavowing the temporary modification it had originally issued to Defense Distributed and SAF in July 2018.  Defense Distributed & SAF are therefore entitled to a judgment

that (1) declares this conduct unlawful, (2) enjoins further breaches of this kind, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

223.    The State Department committed an unexcused material breach of the Settlement Agreement by refusing to acknowledge and agree that the 2018 temporary modification of USML Category I permits any United States person, to include Defense Distributed's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the 2018 License permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files of *Defense Distributed I.*   Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins further breaches of this kind, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

224.    The State Department waived any and all grounds of opposition to court enforcement of the Settlement Agreement.   Settlement Agreement paragraph 4 entails the State Department's consent to "any civil, criminal, or administrative action . . .  permitted by law, if any, that may be necessary to consummate or enforce this Settlement Agreement."

### F.    Count Six: Freedom of Speech and of the Press

225.    Defense Distributed & SAF incorporate the preceding paragraphs.

226.    The First Amendment of the Constitution of the United States forbids government actions abridging the freedom of speech or of the press.   It applies to the State Department.

227.    The State Department's conduct violates the First Amendment doctrine regarding prior restraints. *See, e.g.*, *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963).  The State Department's conduct constitutes a prior restraint of expression; as such, it is an unconstitutional abridgement of First Amendment freedoms because the State Department cannot carry the heavy burden of justifying a prior restraint and because the prior restraint does not operate under sufficient judicial superintendence.

228.    The State Department's conduct violates the First Amendment doctrine regarding content-based speech restrictions. *See, e.g.*, *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015). The State Department's conduct imposes content-based speech restrictions; as such, the conduct is an unconstitutional abridgement of First Amendment's freedoms because the State Department cannot carry the heavy burden of justifying a content-based speech restriction and because it does not serve a compelling governmental interest and is not narrowly drawn to serve any such interest.

229.    The State Department's conduct violates the First Amendment doctrine regarding content-neutral speech restrictions.  *See, e.g., McCullen v. Coakley*, 134 S. Ct. 2518 (2014).  Even if the State Department's conduct is deemed to impose content-neutral speech restrictions, it is an unconstitutional abridgement of First Amendment's freedoms because it does not serve a significant governmental interest and is not narrowly drawn to serve any such interest.

230.    The State Department's conduct violates the First Amendment doctrine regarding overbreadth. *See, e.g.*, *City of Houston, Tex. v. Hill*, 482 U.S. 451 (1987).  The State Department's conduct forbids a substantial amount of constitutionally protected speech and is not narrowly tailored to prohibit only constitutionally unprotected speech; as such, it is an unconstitutional abridgement of First Amendment's freedoms.

231.    The State Department violated Defense Distributed and SAF's First Amendment rights by disavowing the license it had originally issued to Defense Distributed and SAF in July 2018.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

232.    The State Department violated Defense Distributed and SAF's First Amendment rights by refusing to issue a letter to Defense Distributed & SAF, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that (1) *Defense Distributed I*'s Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution ) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13), and (2) for the purposes of 22 C.F.R. § 125.4(b)(13) the Department of State is the cognizant U.S. Government department or agency, and the Directorate of Defense Trade Controls has delegated authority to issue the approval.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

233.    The State Department violated Defense Distributed and SAF's First Amendment rights by refusing to draft and to fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed

rulemaking and final rule revising USML Category I to exclude the technical data that was the subject of *Defense Distributed I*. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful. Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

234. The State Department violated Defense Distributed and SAF's First Amendment rights by disavowing the temporary modification it had originally issued to Defense Distributed and SAF in July 2018. Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

235. The State Department violated Defense Distributed and SAF's First Amendment rights by refusing to announce, while the above-referenced final rule is in development, a temporary modification, consistent with the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that was the subject of *Defense Distributed I*. Defense Distributed & SAF are therefore entitled to a judgment holding this conduct unlawful. Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards

Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

236.    The State Department violated Defense Distributed and SAF's First Amendment rights by refusing to acknowledge and agree that the 2018 temporary modification of USML Category I permits any United States person, to include Defense Distributed's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the 2018 License permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files of *Defense Distributed I*.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

### G.    Count Seven: Right to Keep and Bear Arms

237.    Defense Distributed & SAF incorporate the preceding paragraphs.

238.    The Second Amendment of the Constitution of the United States forbids laws abriding the individual right to keep and bear Arms.

239.    The State Department violated the Second Amendment by subjecting Defense Distributed & SAF to an unconstitutional abridgement of Second Amendment rights.  *See District of Columbia v. Heller*, 554 U.S. 570, 627 (2008).  The State Department's conduct infringes the individual right to make and acquire Arms, which is part and parcel of the right to keep and bear Arms; as such, it is an unconstitutional abridgement of Second Amendment rights.

240.    The State Department violated Defense Distributed and SAF's Second Amendment rights by disavowing the license it had originally issued to Defense Distributed and SAF in July 2018.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

241.    The State Department violated Defense Distributed and SAF's Second Amendment rights by refusing to issue a letter to Defense Distributed & SAF, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that (1) *Defense Distributed I*'s Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution ) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13), and (2) for the purposes of 22 C.F.R. § 125.4(b)(13) the Department of State is the cognizant U.S. Government department or agency, and the Directorate of Defense Trade Controls has delegated authority to issue the approval.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

242.    The State Department violated Defense Distributed and SAF's Second Amendment rights by refusing to draft and to fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed

rulemaking and final rule revising USML Category I to exclude the technical data that was the subject of *Defense Distributed I*. Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

243.    The State Department violated Defense Distributed and SAF's Second Amendment rights by disavowing the temporary modification it had originally issued to Defense Distributed and SAF in July 2018.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

244.    The State Department violated Defense Distributed and SAF's Second Amendment rights by refusing to announce, while the above-referenced final rule is in development, a temporary modification, consistent with the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that was the subject of *Defense Distributed I*. Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

245.     The State Department violated Defense Distributed and SAF's Second Amendment rights by refusing to acknowledge and agree that the 2018 temporary modification of USML Category I permits any United States person, to include Defense Distributed's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the 2018 License permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files of *Defense Distributed I*.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

### H.     Count Eight: Due Process

246.     Defense Distributed & SAF incorporate the preceding paragraphs.

247.     The Due Process Clause of the Fifth Amendment of the Constitution of the United States forbids the federal government from depriving any person of life, liberty, or property without due process of law.

248.     The State Department violated the Due Process Clause of the Fifth Amendment of the Constitution of the United States by depriving Defense Distributed & SAF of liberty and property without due process of law.  *See, e.g.*, *Matthews v. Eldridge*, 424 U.S. 319 (1976).  The State Department's conduct deprives Defense Distributed & SAF of a license issued by the Secretary of State pursuant to federal law, and does so without supplying adequate pre-deprivation notice and an opportunity to be heard; as such, it is an unconstitutional deprivation of property without due process of law.  Defense Distributed & SAF are therefore entitled to a judgment that

(1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages in an amount no less than five million dollars.

249.    The State Department violated Defense Distributed and SAF's Fifth Amendment rights by disavowing the 2018 License.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

250.    The State Department violated Defense Distributed and SAF's Fifth Amendment rights by refusing to issue a letter to Defense Distributed & SAF, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that (1) *Defense Distributed I*'s Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution ) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13), and (2) for the purposes of 22 C.F.R. § 125.4(b)(13) the Department of State is the cognizant U.S. Government department or agency, and the Directorate of Defense Trade Controls has delegated authority to issue the approval.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

251.    The State Department violated Defense Distributed and SAF's Fifth Amendment rights by refusing to draft and to fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed rulemaking and final rule revising USML Category I to exclude the technical data that was the subject of *Defense Distributed I.*  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

252.    The State Department violated Defense Distributed and SAF's Fifth Amendment rights by disavowing the temporary modification it had originally issued to Defense Distributed and SAF in July 2018.  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

253.    The State Department violated Defense Distributed and SAF's Fifth Amendment rights by refusing to announce, while the above-referenced final rule is in development, a temporary modification, consistent with the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that was the subject of *Defense Distributed I.*  Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5)

awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

254.    The State Department violated Defense Distributed and SAF's Fifth Amendment rights by refusing to acknowledge and agree that the 2018 temporary modification of USML Category I permits any United States person, to include Defense Distributed's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the 2018 License permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files of *Defense Distributed I*.   Defense Distributed & SAF are therefore entitled to a judgment that (1) declares this conduct unlawful, (2) enjoins such further wrongdoing, (3) awards Defense Distributed & SAF nominal damages, (4) awards Defense Distributed & SAF exemplary damages, and (5) awards Defense Distributed actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

## VIII.   Causes of Action Against Grewal.

255.    New Jersey Attorney General Gurbir Grewal denies Defense Distributed's right to publish digital firearms information in the form of computer files.  He denies Defense Distributed's right to do so via the internet; he denies Defense Distributed's right to do so via the mail; he denies Defense Distributed's right to do so via brick-and-mortar public libraries; and he denies Defense Distributed's right to do so via any other means of publication.   He also denies Defense Distributed's right to conduct secondary activities that accompany all of these publication methods, such as advertising.   In each of these respects, Grewal acts knowingly, intentionally, and selectively.  Many people engage in the activities for which Defense Distributed and SAF are being persecuted.  But Grewal does not target them as he targets Defense Distributed and SAF.

256.     Grewal's conduct subjects Defense Distributed and SAF to an unconstitutional abridgement of First Amendment freedoms; an unconstitutional infringement of Second Amendment rights; an unconstitutional violation of the right to equal protection of the laws; an unconstitutional deprivation of liberty and property without due process of law; an unconstitutional violation of the Commerce Clause, regulation by way of state laws that are preempted by federal law, and tortious interference with valid legal contracts.

A.     **Count Nine: 42 U.S.C. § 1983—Freedom of Speech and of the Press**

257.     Defense Distributed & SAF incorporate the preceding paragraphs.

258.     The First Amendment of the Constitution of the United States forbids government actions abridging the freedom of speech or of the press.  It applies to Attorney General Gurbir Grewal by virtue of the Fourteenth Amendment of the Constitution of the United States.

259.     Grewal violated 42 U.S.C. § 1983 by acting, under color of state law, to subject Defense Distributed and SAF to an unconstitutional abridgement of First Amendment freedoms.

260.     Grewal violated 42 U.S.C. § 1983 by threatening, under color of state law, to subject Defense Distributed and SAF to an unconstitutional abridgement of First Amendment freedoms.

261.     Grewal's conduct violates the First Amendment doctrine regarding prior restraints. *See, e.g.*, *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963).  Grewal's conduct constitutes a prior restraint of expression; as such, it is an unconstitutional abridgement of First Amendment's freedoms because Grewal cannot carry the heavy burden of justifying a prior restraint and because the prior restraint does not operate under sufficient judicial superintendence.

262.     Grewal's conduct violates the First Amendment doctrine regarding content based speech restrictions.  *See, e.g.*, *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015).  Grewal's

conduct imposes content-based speech restrictions; as such, the restrictions are an unconstitutional abridgement of First Amendment's freedoms because they do not serve a compelling governmental interest and are not narrowly drawn to serve any such interest.

263.   Grewal's conduct violates the First Amendment doctrine regarding content neutral speech restrictions.  *See, e.g.*, *McCullen v. Coakley*, 134 S. Ct. 2518 (2014).  Even if Grewal's conduct is deemed to impose content-neutral speech restrictions, it is an unconstitutional abridgement of First Amendment's freedoms because it does not serve a significant governmental interest and is not narrowly drawn to serve any such interest.

264.   Grewal's conduct violates the First Amendment doctrine regarding overbreadth. *See, e.g.*, *City of Houston, Tex. v. Hill*, 482 U.S. 451 (1987).  Grewal's conduct forbids a substantial amount of constitutionally protected speech and is not narrowly tailored to prohibit only constitutionally unprotected speech; as such, it is an unconstitutional abridgement of First Amendment's freedoms.

265.   In each of these respects, Grewal's conduct results in an unconstitutional abridgement of First Amendment freedoms both facially and as applied to these circumstances.

266.   Grewal's conduct proximately caused damages to Defense Distributed and SAF, to the persons with whom Defense Distributed and SAF have communicated, to the persons who desire to communicate with Defense Distributed and SAF, and to other persons wishing to engage in similar communications.  The damages include, but are not limited to, the loss of First Amendment rights, the chilling effect on conduct protected by the First Amendment, and the substantial time and resources expended in defense of these rights.

267.     Defense Distributed and SAF are therefore entitled to a judgment against Grewal awarding Defense Distributed and SAF declaratory relief, injunctive relief, and attorney fees and costs.

**B.     Count Ten: 42 U.S.C. § 1983—Right to Keep and Bear Arms**

268.     Defense Distributed & SAF incorporate the preceding paragraphs.

269.     The Second Amendment of the Constitution of the United States forbids laws abridging the individual right to keep and bear Arms.  It applies to Grewal in his official capacity by virtue of the Fourteenth Amendment of the Constitution of the United States.

270.     Grewal violated 42 U.S.C. § 1983 by acting, under color of state law, to subject Defense Distributed and SAF to an unconstitutional abridgement of Second Amendment rights.

271.     Grewal additionally violated 42 U.S.C. § 1983 by threatening, under color of state law, to subject Defense Distributed and SAF to an unconstitutional abridgement of Second Amendment rights.

272.     Grewal's conduct violates the individual Second Amendment right to keep and bear Arms.  *See District of Columbia v. Heller*, 554 U.S. 570, 627 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010).  Grewal's conduct infringes the individual right to make and acquire Arms, which is part and parcel of the right to keep and bear Arms; as such, it is an unconstitutional abridgement of Second Amendment rights.

273.     In each of these respects, Grewal's conduct constitutes an unconstitutional abridgement of Second Amendment rights both facially and as applied to these circumstances.

274.     Grewal's conduct proximately caused damages to Defense Distributed and SAF, the persons they communicate with, and others.  The damages include, but are not limited to, the

loss of Second Amendment rights, the chilling effect on conduct protected by the Second Amendment, and the substantial time and resources expended in defense of these rights.

275.    Defense Distributed and SAF are therefore entitled to a judgment against Grewal awarding Defense Distributed and SAF declaratory relief, injunctive relief, and attorney fees and costs.

**C.    Count Eleven: 42 U.S.C. § 1983—Equal Protection**

276.    Defense Distributed & SAF incorporate the preceding paragraphs.

277.    The Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States forbids the several States from denying to any person within their jurisdictions the equal protection of the laws.  It applies to Grewal in his official capacity.

278.    Grewal violated 42 U.S.C. § 1983 by acting, under color of state law, to subject Defense Distributed and SAF to an unconstitutional violation of the Equal Protection Clause.

279.    Grewal additionally violated 42 U.S.C. § 1983 by threatening, under color of state law, to subject Defense Distributed and SAF to an unconstitutional violation of the Equal Protection Clause.

280.    Grewal's conduct violates the Equal Protection Clause's doctrine regarding selective enforcement.  *See, e.g.*, *Whren v. United States*, 517 U.S. 806 (1996).  Grewal took action against Defense Distributed-but not similarly situated persons engaged in publication of the Defense Distributed I Files-because Grewal disagrees with the content of Defense Distributed's constitutionally protected speech and because Grewal dislikes the persons involved in the speech; as such, Grewal's conduct violates Defense Distributed and SAF's right to the equal protection of the laws.

281.    In each of these respects, Grewal's conduct constitutes an unconstitutional violation of the Equal Protection Clause both facially and as applied to these circumstances.

282.    Grewal's conduct proximately caused damages to Defense Distributed and SAF, the persons they communicate with, and others.  The damages include, but are not limited to, Defense Distributed and SAF's loss of Equal Protection Clause rights and the substantial time and resources expended in defense these rights.

283.    Defense Distributed and SAF are therefore entitled to a judgment against Grewal awarding Defense Distributed and SAF declaratory relief, injunctive relief, and attorney fees and costs.

**D.    Count Twelve: 42 U.S.C. § 1983—Due Process**

284.    Defense Distributed & SAF incorporate the preceding paragraphs.

285.    The Due Process Clause of the Fourteenth Amendment of the Constitution of the United States forbids the several States from depriving any person of life, liberty, or property without due process of law.  It applies to Grewal in his official capacity.

286.    Grewal violated 42 U.S.C. § 1983 by acting, under color of state law, to subject Defense Distributed and SAF to a deprivation of liberty and property without due process of law.

287.    Grewal additionally violated 42 U.S.C. § 1983 by threatening, under color of state law, to subject Defense Distributed and SAF to a deprivation of liberty and property without due process of law.

288.    Grewal's conduct violates the Due Process Clause doctrine regarding vagueness. *See, e.g.*, *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012).  Grewal's conduct forbids expression without giving fair notice of what is forbidden; as such, it is an unconstitutional deprivation of liberty and property without due process of law.

289.    Grewal's conduct violates the Due Process Clause doctrine regarding overbreadth. *See, e.g.*, *Coates v. City of Cincinnati*, 402 U.S. 611 (1971).  Grewal's conduct forbids a substantial amount of constitutionally protected speech; as such, it is an unconstitutional deprivation of liberty and property without due process of law.

290.    Grewal's conduct violates the Due Process Clause doctrine regarding deprivations of property.  *See, e.g.*, *Matthews v. Eldridge*, 424 U.S. 319 (1976).  Grewal's conduct deprives Defense Distributed and SAF of a license issued by the Secretary of State pursuant to federal law, and does so without supplying adequate pre-deprivation notice and an opportunity to be heard; as such, it is an unconstitutional deprivation of property without due process of law.

291.    In each of these respects, Grewal's conduct constitutes an unconstitutional abridgement of Due Process Clause rights both facially and as applied to these circumstances.

292.    Grewal's conduct proximately caused damages to Defense Distributed and SAF, the persons they communicate with, and others.  The damages include, but are not limited to, the loss of Defense Distributed and SAF's Due Process Clause rights and the substantial time and resources expended in defense these rights.

293.    Defense Distributed and SAF are therefore entitled to a judgment against Grewal awarding Defense Distributed and SAF declaratory relief, injunctive relief, and attorney fees and costs.

**E.    Count Thirteen: 42 U.S.C. § 1983—Commerce Clause**

294.    Defense Distributed & SAF incorporate the preceding paragraphs.

295.    The Commerce Clause of Article I, Section 8 of the Constitution of the United States imposes a negative command, known as the dormant Commerce Clause, that limits the

authority of the several States to enact laws burdening interstate commerce.  It applies to Grewal in his official capacity.

296.    Grewal violated 42 U.S.C. § 1983 by acting, under color of state law, to subject Defense Distributed and SAF to a deprivation of the right to be free of commercial restraints that violate the dormant Commerce Clause.

297.    Grewal additionally violated 42 U.S.C. § 1983 by threatening, under color of state law, to subject Defense Distributed and SAF to a deprivation of the right to be free of commercial restraints that violate the dormant Commerce Clause.

298.    Grewal's conduct violates the dormant Commerce Clause doctrine regarding laws that directly regulate interstate commerce. *See, e.g.*, *Granholm v. Heald*, 125 S. Ct. 1885 (2005). Grewal's conduct directly regulates interstate commerce by projecting New Jersey law into other states.  Grewal's conduct does not serve a compelling governmental interest.  And Grewal's conduct is not the least restrictive means of accomplishing any such interest. As such, it violates the Commerce Clause.

299.    Grewal's conduct violates the dormant Commerce Clause doctrine regarding laws that discriminate against interstate commerce. *See, e.g.*, *Granholm*, 125 S. Ct. 1885.  Grewal's conduct discriminates against interstate commerce on purpose, on its face, and in effect.  Grewal's conduct does not serve a compelling governmental interest.  And Grewal's conduct is not the least restrictive means of accomplishing any such interest.  As such, it violates the Commerce Clause.

300.    Grewal's conduct violates the dormant Commerce Clause doctrine regarding all laws that implicate interstate commerce.  *See, e.g.*, *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970).  Grewal's conduct imposes burdens on interstate commerce that are clearly excessive in relation to putative local benefits; as such, it violates the Commerce Clause.

301.    In each of these respects, Grewal's conduct constitutes an unconstitutional abridgement of Due Process Clause rights both facially and as applied to these circumstances.

302.    Grewal's conduct proximately caused damages to Defense Distributed and SAF, the persons they communicate with, and others.  The damages include, but are not limited to, the loss of Dormant Commerce Clause rights in the past and the substantial time and resources expended in defense these rights.

303.    Defense Distributed and SAF are therefore entitled to a judgment against Grewal awarding Defense Distributed and SAF declaratory relief, injunctive relief, and attorney fees and costs.

**F.      Count Fourteen: 42 U.S.C. § 1983—Arms Export Control Act**

304.    Defense Distributed & SAF incorporate the preceding paragraphs.

305.    The Supremacy Clause of the Constitution of the United States provides that the Constitution of the United States and the Laws of the United States which shall be made in Pursuance thereof shall be the supreme Law of the Land.  It applies to Grewal by virtue of Article VI of the Constitution of the United States.

306.    The federal government has exclusive authority to administer and enforce the provisions of the AECA and ITAR.  Pursuant to that authority, the federal government entered into the Settlement Agreement with Plaintiffs and granted Plaintiffs a license to publish the Defense Distributed I Files.

307.    Grewal violated the AECA and ITAR by acting, under color of state law, to regulate conduct that the federal government has expressly authorized pursuant to its authority under the AECA and ITAR.  Grewal therefore violated 42 U.S.C. § 1983 by acting, under color of state law, to regulate Defense Distributed and SAF pursuant to state laws that are preempted by federal law.

"[I]f an individual claims federal law immunizes [the plaintiff] from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015).

308.     In this respect, Grewal's conduct is preempted both facially and as applied to these circumstances.

309.     Grewal's conduct proximately caused damages to Defense Distributed and SAF, the persons they communicate with, and others.  The damages include, but are not limited to, the loss of immunity from preempted state regulation in the past and the substantial time and resources expended in defense these rights.

310.     Defense Distributed and SAF are therefore entitled to a judgment against the Defendants awarding Defense Distributed and SAF declaratory relief and injunctive relief, and attorney fees and costs.

**G.     Count Fifteen: 42 U.S.C. § 1983—Communications Decency Act**

311.     Defense Distributed & SAF incorporate the preceding paragraphs.

312.     The Communications Decency Act, 47 U.S.C. § 230, immunizes service providers for information originating with a third-party user of the service.  Defense Distributed is a provider and user of an "interactive computer service" within the meaning of 47 U.S.C. § 230 because it operates an interactive online service at DEFCAD.com.

313.     Senate Bill 2465 violates Defense Distributed's rights under 47 U.S.C. § 230(c)(1) because it treats them, providers of interactive computer services, as publishers or speakers of information provided by another information content provider. Specifically, Senate Bill 2465 treats Defense Distributed as a publishers or speaker because it makes it a crime to "distribute" the

"information" at issue regardless of whether the information was "provided by another information content provider."

314.    Senate Bill 2465 is a "State . . . law that is inconsistent with" § 230, in direct violation of 47 U.S.C. § 230(e)(3).

315.    In this respect, Defendant Grewal's conduct is preempted both facially and as applied to these circumstances.

316.    Grewal's conduct proximately caused damages to Defense Distributed and SAF, the persons they communicate with, and others.  The damages include, but are not limited to, the loss of immunity from preempted state regulation in the past and the substantial time and resources expended in defense these rights.

317.    Defense Distributed and SAF are therefore entitled to a judgment against the Defendants awarding Defense Distributed and SAF declaratory relief and injunctive relief, and attorney fees and costs.

**H.      Count Sixteen: Tortious Interference with the Settlement Agreement**

318.    Defense Distributed & SAF incorporate the preceding paragraphs.

319.    The Settlement Agreement is an existing, valid contract between the Defense Distributed I Plaintiffs and the State Department.

320.    The Defendants committed the tort of intentional interference with an existing contract by willfully and intentionally engaging in conduct that made the State Department's performance of the Settlement Agreement burdensome, more difficult, and of less or no value to the Defense Distributed I Plaintiffs.  See, e.g., Restatement (Second) of Torts § 766 (1979); Prudential Ins. Co. of Am. v. Fin. Review Services, Inc., 29 S.W.3d 74 (Tex. 2000).

321.    The Defendants' conduct proximately caused Defense Distributed to suffer substantial actual damages in excess of $75,000 per year.

322.    Plaintiff Defense Distributed is therefore entitled to a judgment against the Defendants awarding declaratory relief, injunctive relief, and attorney fees and costs.

I.    **Count Seventeen: Tortious Interference with Existing Contracts**

323.    Defense Distributed & SAF incorporate the preceding paragraphs.

324.    Defense Distributed and DreamHost had an existing, valid contract for the provision of internet security services regarding Defense Distributed's website.

325.    Defendant Gurbir Grewal committed the tort of intentional interference with an existing contract by willfully and intentionally engaging in conduct that made the performance of Defense Distributed's contract with DreamHost burdensome, more difficult, and of less or no value to Defense Distributed.  *See, e.g.*, Restatement (Second) of Torts § 766 (1979); *Prudential Ins. Co. of Am. v. Fin. Review Services, Inc.*, 29 S.W.3d 74 (Tex. 2000).  Defendant Gurbir Grewal's conduct proximately caused Defense Distributed to suffer substantial actual damages in excess of $75,000 per year.

326.    Defense Distributed and Cloudflare, Inc. have an existing, valid contract for the provision of internet security services regarding Defense Distributed's website.

327.    Defendant Gurbir Grewal committed the tort of intentional interference with an existing contract by willfully and intentionally engaging in conduct that made the performance of Defense Distributed's contract with Cloudflare, Inc. burdensome, more difficult, and of less or no value to Defense Distributed.  *See, e.g.*, Restatement (Second) of Torts § 766 (1979); *Prudential Ins. Co. of Am. v. Fin. Review Services, Inc.*, 29 S.W.3d 74 (Tex. 2000).  Defendant Gurbir

Grewal's conduct proximately caused Defense Distributed to suffer substantial actual damages substantial actual damages in excess of $75,000 per year.

328.    Defense Distributed is therefore entitled to a judgment against Defendant Gurbir Grewal awarding declaratory relief, injunctive relief, and attorney fees and costs.

## IX.    Requests for Relief

### A.    Defense Distributed and SAF should prevail against the State Department.

329.    Defense Distributed and SAF request a judgment in their favor as to all claims against the State Department awarding them all relief they are entitled to.

330.    Defense Distributed and SAF request a judgment against the State Department declaring unlawful and setting aside the State Department's disavowal of the license it had originally issued to Defense Distributed and SAF in July 2018.  Defense Distributed & SAF request an injunction protecting Defense Distributed & SAF from such unlawful conduct in the future—both on a preliminary basis while this action is pending and permanently.  With respect to this conduct, Defense Distributed & SAF request an award of nominal damages, punitive damages, and actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

331.    Defense Distributed and SAF request a judgment against the State Department declaring unlawful and setting aside the State Department's disavowal of the temporary modification it had originally issued to Defense Distributed and SAF in July 2018.  Defense Distributed & SAF request an injunction protecting Defense Distributed & SAF from such unlawful conduct in the future—both on a preliminary basis while this action is pending and permanently.  With respect to this conduct, Defense Distributed & SAF request an award of

nominal damages, punitive damages, and actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

332.    Defense Distributed and SAF request a judgment against the State Department declaring unlawful the State Department's refusal to issue a letter to Defense Distributed & SAF, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that (1) *Defense Distributed I*'s Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution ) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13), and (2) for the purposes of 22 C.F.R. § 125.4(b)(13) the Department of State is the cognizant U.S. Government department or agency, and the Directorate of Defense Trade Controls has delegated authority to issue the approval. Defense Distributed & SAF request an injunction protecting Defense Distributed & SAF from such unlawful conduct in the future—both on a preliminary basis while this action is pending and permanently.  With respect to this conduct, Defense Distributed & SAF request an award of nominal damages, punitive damages, and actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

333.    Defense Distributed and SAF request a judgment against the State Department declaring unlawful the State Department's refusal to draft and to fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed rulemaking and final rule revising USML Category I to exclude the technical data that was the subject of *Defense Distributed I*. Defense Distributed & SAF request an injunction protecting Defense Distributed & SAF from such unlawful conduct in the future— both on a preliminary basis while this action is pending and permanently.  With respect to this conduct, Defense Distributed & SAF request an award of nominal damages, punitive damages,

and actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

334.    Defense Distributed and SAF request a judgment against the State Department declaring unlawful the State Department's refusal to announce, while the above-referenced final rule is in development, a temporary modification, consistent with the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that was the subject of *Defense Distributed I*. Defense Distributed & SAF request an injunction protecting Defense Distributed & SAF from such unlawful conduct in the future—both on a preliminary basis while this action is pending and permanently.  With respect to this conduct, Defense Distributed & SAF request an award of nominal damages, punitive damages, and actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

335.    Defense Distributed and SAF request a judgment against the State Department declaring unlawful the State Department's refusal to acknowledge and agree that the 2018 temporary modification of USML Category I permits any United States person, to include Defense Distributed's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the 2018 License permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files of *Defense Distributed I*. Defense Distributed & SAF request an injunction protecting Defense Distributed & SAF from such unlawful conduct in the future— both on a preliminary basis while this action is pending and permanently.  With respect to this conduct, Defense Distributed & SAF request an award of nominal damages, punitive damages, and actual damages proximately caused by this wrongdoing in an amount no less than five million dollars.

336.     Defense Distributed & SAF request an award against the State Department of costs, including reasonable attorney fees, against the State Department.

337.     Defense Distributed and SAF request any other relief against the State Department to which they are entitled.

**B.     Defense Distributed and SAF should prevail against Grewal.**

338.     Defense Distributed and SAF request a judgment in their favor as to all claims against Grewal awarding them all relief they are entitled to.

339.     Defense Distributed and SAF request a judgment against Grewal declaring that Grewal unconstitutionally abridged Defense Distributed and SAF's First Amendment freedoms. Defense Distributed & SAF request an injunction protecting Defense Distributed & SAF from such unlawful conduct in the future—both on a preliminary basis while this action is pending and permanently.

340.     Defense Distributed and SAF request a judgment against Grewal declaring that Grewal unconstitutionally infringed Defense Distributed and SAF's Second Amendment rights. Defense Distributed & SAF request an injunction protecting Defense Distributed & SAF from such unlawful conduct in the future—both on a preliminary basis while this action is pending and permanently.

341.     Defense Distributed and SAF request a judgment against Grewal declaring that Grewal unconstitutionally denied Defense Distributed and SAF the equal protection of the laws. Defense Distributed & SAF request an injunction protecting Defense Distributed & SAF from such unlawful conduct in the future—both on a preliminary basis while this action is pending and permanently.

342.    Defense Distributed and SAF request a judgment against Grewal declaring that Grewal unconstitutionally subjected Defense Distributed and SAF to a deprivation of liberty and property without due process of law.  Defense Distributed & SAF request an injunction protecting Defense Distributed & SAF from such unlawful conduct in the future—both on a preliminary basis while this action is pending and permanently.

343.    Defense Distributed and SAF request a judgment against Grewal declaring that Grewal unconstitutionally violated Defense Distributed and SAF's dormant Commerce Clause rights.  Defense Distributed & SAF request an injunction protecting Defense Distributed & SAF from such unlawful conduct in the future—both on a preliminary basis while this action is pending and permanently.

344.    Defense Distributed and SAF request a judgment against Grewal declaring that federal law preempts and immunizes Defense Distributed and SAF from Grewal's civil and criminal censorship.  Defense Distributed & SAF request an injunction protecting Defense Distributed & SAF from such unlawful conduct in the future—both on a preliminary basis while this action is pending and permanently.

345.    Defense Distributed and SAF request a judgment against Grewal declaring that Grewal's conduct constitutes tortious interference with the Settlement Agreement.  Defense Distributed & SAF request an injunction protecting Defense Distributed & SAF from such unlawful conduct in the future—both on a preliminary basis while this action is pending and permanently.

346.    Defense Distributed and SAF request a judgment against Grewal declaring that Grewal's conduct constitutes tortious interference with the contracts between Defense Distributed and DreamHost and Cloudflare, Inc.   Defense Distributed & SAF request an injunction protecting

Defense Distributed & SAF from such unlawful conduct in the future—both on a preliminary basis while this action is pending and permanently.

347.    Defense Distributed and SAF request an award against Grewal of costs, including reasonable attorney fees and costs, pursuant to 42 U.S.C. § 1988.

348.    Defense Distributed and SAF request any other relief against Grewal to which they are entitled.

Respectfully submitted,

BECK REDDEN LLP
By /s/ Chad Flores
Chad Flores
cflores@beckredden.com
State Bar No. 24059759
Daniel Nightingale
dhammond@beckredden.com
State Bar No. 24098886
Hannah Roblyer
hroblyer@beckredden.com
State Bar No. 24106356
1221 McKinney St., Suite 4500
Houston, TX 77010
(713) 951-3700 | (713) 952-3720 (fax)

FARHANG & MEDCOFF
Matthew Goldstein
mgoldstein@farhangmedcoff.com
D.C. Bar No. 975000
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040 | (520) 790-5433 (fax)

Josh Blackman
joshblackman@gmail.com
Texas Bar No. 24118169
1303 San Jacinto Street
Houston, TX 77002
(202) 294-9003 | (713) 646-1766 (fax)

Attorneys for Plaintiffs Defense Distributed
and Second Amendment Foundation, Inc.

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the above and foregoing document was served on the following parties and/or counsel of record through a manner authorized by Federal Rule of Civil Procedure 5(b) on November 10, 2020.


/s/ Chad Flores
Chad Flores