April 30, 2021
**Declaration of Cody Wilson**

I, Cody R. Wilson, declare under penalty of perjury that the following statements are true

and correct:

1.   I co-founded Defense Distributed and have led its operations since 2012.

2.   Defense Distributed is a non-profit corporation organized under the laws of the
     State of Texas.  Defense Distributed is organized to publish and distribute to the
     Internet, at no cost and in the promotion of the public interest, information and
     knowledge regarding the fabrication of firearms.

3.   Defense Distributed maintains defcad.com, an online repository of digital files for
     the design and production of commercially available firearms.

4.   On April 27, 2021, the Ninth Circuit issued its decision in *State of Washington et
     al. v. United States Department of State et al.*, No 20-35391 (9th Cir. Apr. 27,
     2021).  A true and correct copy of that decision is attached hereto as Exhibit A, and
     a true and correct copy of that appeal's docket is attached hereto as Exhibit B.  At
     page one of that decision the Ninth Circuit does "vacate the injunction":

---

8      STATE OF WASHINGTON V. U.S. DEP'T OF STATE

---

## OPINION

R. NELSON, Circuit Judge:

The U.S. Department of State ("DOS") and Department
of Commerce appeal the district court's order granting the
motion of 22 states and the District of Columbia to enjoin
DOS's final rule removing 3D-printed guns and their
associated files from the U.S. Munitions List.  Because
Congress expressly precluded review of the relevant agency
actions here, we vacate the injunction and remand with
instructions to dismiss.

Ex. A at 1.

At page twenty five of that decision the Ninth Circuit decreed that the injunction at
issue is "**VACATED**":

## **VACATED and REMANDED with instructions to dismiss.**

Ex. A at 25.

Entry of this appeal's judgment is indicated by the "FILED AND ENTERED JUDGMENT" indication on docket entry 61:

> 04/27/2021  ☐  61      FILED OPINION (JAY S. BYBEE, RYAN D. NELSON and ROBERT H. WHALEY) VACATED and
> 40 pg, 376.14 KB      REMANDED with instructions to dismiss. Judge: RDN Authoring, Judge: RHW Dissenting. FILED AND
>                        ENTERED JUDGMENT. [12067805] (AKM) [Entered: 04/27/2021 08:56 AM]

Ex. B. at 13.

5.    In light of the Ninth Circuit's actions, counsel for Defense Distributed conducted a reasonable inquiry and advised Defense Distributed that there is colorable and persuasive legal support for the position that (1) the Ninth Circuit's vacatur of the injunction at issue takes effect immediately, and (2) Defense Distributed's right to freely publish the files at issue is protected by federal free speech law including but not limited to the First Amendment of the Constitution of the United States, the Second Amendment of the Constitution of the United States, the Due Process Clause of the Fifth Amendment of the Constitution of the United States, the Administrative Procedure Act, and the law of contracts.

6.    On April 28, 2021, and April 29, 2021, Defense Distributed published a large set of important computer files with digital firearms information regarding 3D-printed firearms to defcad.com for free download by the public ("the April 2021 Files").

   a)   The April 2021 Files amount to approximately 16,000 digital files.

   b)   Approximately 40,000 downloads of the April 2021 Files have occurred as of this date.

   c)   All of the April 2021 Files have been downloaded at least once.

   d)   All of the April 2021 Files have been irrevocably committed to the public domain.  Regardless of whether or not defcad.com continues to publish the April 2021 Files, independent re-publishers with no relationship whatsoever to Defense Distributed will freely re-publish the April 2021 Files on the internet for anyone to download forever.

   e)   None of the April 2021 Files constitute what the regulations refer to as "Computer Aided Manufacturing files" or "CAM files" in Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List (USML), 85 Fed. Reg. 4136, 4140-42, 4172 (Jan. 23, 2020).

 

f) The April 2021 Files include (but are not limited to) digital firearms information that Defense Distributed previously published on defcad.com and committed to the public domain in 2013 and again in 2018. The April 2021 Files include many files that were available elsewhere on the Internet at the time they were published by Defense Distributed.

g) Defense Distributed made the April 2021 Files unavailable to residents of and persons in the State of New Jersey who do not possess a federal firearms license.

7. On the afternoon of April 29, 2021, I was informed that attorneys representing the State Department had on that date credibly and imminently threated Defense Distributed with adverse legal action by deeming Defense Distributed's publication of the April 2021 Files a violation of the International Traffic in Arms Regulations, 22 C.F.R. Parts 120-130, and demanding that Defense Distributed immediately cease publication of the April 2021 Files.

8. Defense Distributed has in the past and will continue in the immediate future to create, obtain, edit, and possess digital firearms information like the April 2021 Files, which Defense Distributed intends to publish on defcad.com for free download by the public as soon as it is legal to do so and the State Department no longer threatens illegal censorship.

9. But for the State Department's imminent threat of adverse legal action, Defense Distributed would both maintain its ongoing publication of the April 2021 Files on defcad.com indefinitely *and* publish many more files that are like the April 2021 Files in the same manner as it is publishing April 2021 Files.

10. Because of the State Department's imminent threat of adverse legal action, Defense Distributed will no longer both maintain its ongoing publication of the April 2021 Files on defcad.com indefinitely *and* publish many more files that are like the April 2021 Files in the same manner as it is publishing April 2021 Files. As of April 30, 2021, the State Department's imminent threat of adverse legal action has caused Defense Distributed to cease publishing more files that are like the April 2021 Files in the same manner as it is publishing April 2021 Files.

11. I executed this declaration on April 30, 2020.

Cody R. Wilson

April 30, 2021
Declaration of Cody Wilson
Exhibit A

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STATE OF WASHINGTON; STATE OF
CALIFORNIA; STATE OF COLORADO;
STATE OF CONNECTICUT; STATE OF
DELAWARE; DISTRICT OF COLUMBIA;
STATE OF HAWAII; STATE OF
ILLINOIS; STATE OF MAINE; STATE OF
MARYLAND; COMMONWEALTH OF
MASSACHUSETTS; STATE OF
MICHIGAN; STATE OF MINNESOTA;
STATE OF NEW JERSEY; STATE OF
NEW YORK; STATE OF NORTH
CAROLINA; STATE OF OREGON;
COMMONWEALTH OF
PENNSYLVANIA; STATE OF RHODE
ISLAND; STATE OF VERMONT;
COMMONWEALTH OF VIRGINIA;
STATE OF NEW MEXICO; STATE OF
WISCONSIN,

                 *Plaintiffs-Appellees*,

         v.

UNITED STATES DEPARTMENT OF
STATE; ANTONY J. BLINKEN, in his
official capacity as Secretary of
State; DIRECTORATE OF DEFENSE
TRADE CONTROLS; MIKE MILLER, in
his official capacity as Deputy
Assistant Secretary of State for

No. 20-35391

D.C. No.
2:20-cv-00111-
RAJ

OPINION

Defense Trade; SARAH HEIDEMA, in
her official capacity as Director of
Policy, Office of Defense Trade
Controls Policy; UNITED STATES
DEPARTMENT OF COMMERCE; GINA
RAIMONDO, in her official capacity
as Secretary of Commerce; BUREAU
OF INDUSTRY AND SECURITY;
MATTHEW S. BORMAN, in his official
capacity as Acting Assistant
Secretary of Commerce for Export
Administration; CORDELL HULL,
                    *Defendants-Appellants*,

NATIONAL SHOOTING SPORTS
FOUNDATION, INC.; FREDRIC'S ARMS
& SMITHS, LLC,
    *Intervenor-Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Argued and Submitted January 11, 2021
San Francisco, California

Filed April 27, 2021

Before:  Jay S. Bybee and Ryan D. Nelson, Circuit Judges,
and Robert H. Whaley,[*] District Judge.

Opinion by Judge R. Nelson;
Dissent by Judge Whaley

---

# SUMMARY[**]

### Federal Rulemaking / Judicial Review

The panel vacated the district court's order that granted the motion of 22 states and the District of Columbia ("Plaintiffs") to enjoin the U.S. Department of State ("DOS")'s Final Rule removing 3D-printed guns and their associated files from the U.S. Munitions List.

Under the International Security Assistance and Arms Export Control Act of 1976 (the "Control Act") (codified at 22 U.S.C. § 2778(a)(1)), Congress authorized the President to designate "defense articles" and regulate their import and export.  When DOS designates an item as a defense article, it is placed on the U.S. Munitions List and regulated by the International Traffic in Arms Regulations ("ITAR").  Congress delegated to the President's discretion the decision concerning when an item becomes a "defense article."  The Department of Commerce ("Commerce") is empowered to regulate non-Munitions List items under the Export Control

---

[*] The Honorable Robert H. Whaley, United States District Judge for the Eastern District of Washington, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Reform Act, and these items are placed on the Commerce Control List ("CCL").  Congress gave Commerce broad discretion in deciding which items to place on the CCL.

On May 24, 2018, DOS proposed a rule removing 3D-printed-gun files from the Munitions List and regulation under ITAR, and placing them on the CCL, regulated by Commerce under the Export Administration Regulations instead.  The same day, Commerce proposed its own rule expressly assuming regulatory jurisdiction over these items. Following notice and comments, DOS and Commerce, respectively, promulgated Final Rules on January 23, 2020. Pursuant to plaintiffs' action challenging both Final Rules under the Administrative Procedure Act ("APA"), the district court preliminarily enjoined only the DOS Final Rule.

The panel held that Congress expressly precluded judicial review of the relevant agency actions here.

The panel first addressed the reviewability of the DOS Final Rule.  The panel held that clear and convincing evidence demonstrated that § 2778(h) of the Control Act could only be read one way: Congress precluded judicial review of both the designation and undesignation of items as defense articles.

The panel next addressed  the reviewability of the Commerce Final Rule.  The panel held that Congress not only barred APA challenges to Commerce's Reform Act functions, it rendered them, in effect, judicially unreviewable.  Because the APA's § 702 did not apply to functions exercised under the Reform Act, federal sovereign immunity had not been waived, precluding judicial review of the plaintiffs' challenge.  The panel held that the district court erred by enjoining the DOS Final Rule in part for

perceived procedural deficiencies in the Commerce Final Rule.

The panel held that because both the DOS and Commerce Final Rules were unreviewable, the plaintiffs had not demonstrated the requisite likelihood of success on the merits, and therefore, a preliminary injunction was not merited. The panel remanded with instructions to dismiss.

Dissenting, District Judge Whaley would affirm the district court's order granting plaintiffs' request for a preliminary injunction. Judge Whaley disagreed with the majority's holding which would allow the new regulatory system to escape appropriate oversight. He would affirm the district court's determination that the plaintiffs have demonstrated a likelihood of success on the merits as to their claims that DOS's Final Rule was arbitrary and capricious, and the district court's finding that DOS failed to comply with the notice requirement under the APA before implementing its rule.

## COUNSEL

Daniel Aguilar (argued) and Sharon Swingle, Appellate Staff, Civil Division, United States Department of Justice, Washington, D.C., for Defendants-Appellants.

Brendan Selby (argued) and Kristin Beneski, Assistant Attorneys General; Jeffrey Rupert, Division Chief; Robert W. Ferguson, Attorney General; Office of the Attorney General, Seattle, Washington; Xavier Becerra, Attorney General; John W. Killeen, Deputy Attorney General; Office of the Attorney General, Sacramento, California; Philip J. Weiser, Attorney General; Grant T. Sullivan, Assistant

Solicitor General; Office of the Attorney General, Denver, Colorado; William Tong, Attorney General; Maura Murphy Osborne, Assistant Attorney General; Kimberly Massicotte and Joseph Rubin; Office of the Attorney General, Hartford, Connecticut; Kathleen Jennings, Attorney General; Christian Douglas Wright, Director of Impact Litigation; Jillian A. Lazar, Deputy Attorney General; Office of the Attorney General, Wilmington, Delaware; Karl A. Racine, Attorney General; Jacqueline R. Bechara, Appellate Litigation Fellow; Office of the Solicitor General, Washington, D.C.; Clare E. Connors, Attorney General; Robert T. Nakatsuji, Deputy Attorney General; Office of the Attorney General, Honolulu, Hawaii; Kawme Raoul, Attorney General; Kathryn Hunt Muse, Deputy Chief, Public Interest Division; Darren Kinkead, Assistant Attorney General; Office of the Attorney General, Chicago, Illinois; Aaron M. Frey, Attorney General; Susan P. Herman, Chief Deputy Attorney General; Office of the Attorney General, Augusta, Maine; Brian E. Frosh, Attorney General; Jeffrey P. Dunlap and Steven M. Sullivan; Office of the Attorney General, Baltimore, Maryland; Maura Healey, Attorney General; Phoebe Fischer-Groban, Assistant Attorney General; Office of the Attorney General, Boston, Massachusetts; Dana Nessel, Attorney General; Joseph T. Froehlich, Assistant Attorney General; Office of the Attorney General, Lansing, Michigan; Keith Ellison, Attorney General; Jacob Campion, Assistant Attorney General; Office of the Attorney General, St. Paul, Minnesota; Gurbir S. Grewal, Attorney General; Jeremy M. Feigenbaum, State Solicitor; Office of the Attorney General, Trenton, New Jersey; Hector Balderas, Attorney General; Nicholas M. Sydow, Civil Appellate Chief; Office of the Attorney General, Albuquerque, New Mexico; Letitia James, Attorney General; Daniela Nogueira, Assistant Attorney General; Steven C. Wu, Deputy Solicitor General;

Office of the Attorney General, New York, New York;
Joshua H. Stein, Attorney General; Sripriya Narasimhan,
Deputy General Counsel; Department of Justice, Raleigh,
North Carolina; Ellen F. Rosenblum, Attorney General;
Carla Scott, Senior Assistant Attorney General; Office of the
Attorney General, Portland, Oregon; Michael Kron, Special
Counsel, Office of the Attorney General, Salem, Oregon;
Joshua Shapiro, Attorney General; Jacob B. Boyer, Deputy
Attorney General; Office of the Attorney General,
Philadelphia, Pennsylvania; Peter F. Neronha, Attorney
General; Justin J. Sullivan, Special Assistant Attorney
General; Office of the Attorney General, Providence, Rhode
Island; T.J. Donovan, Attorney General; Benjamin D.
Battles, Solicitor General; Office of the Attorney General,
Montpelier, Vermont; Mark R. Herring, Attorney General;
Samuel T. Towell, Deputy Attorney General, Civil
Litigation; Office of the Attorney General, Richmond,
Virginia; Joshua L. Kaul, Attorney General; Brian P.
Keenan, Assistant Attorney General; Department of Justice
Madison, Wisconsin; for Plaintiffs-Appellees.

Neal Kumar Katyal and Jo-Ann Tamila Sagar, Hogan
Lovells US LLP, Washington, D.C., for Amicus Curiae
Brady.

## OPINION

R. NELSON, Circuit Judge:

The U.S. Department of State ("DOS") and Department of Commerce appeal the district court's order granting the motion of 22 states and the District of Columbia to enjoin DOS's final rule removing 3D-printed guns and their associated files from the U.S. Munitions List. Because Congress expressly precluded review of the relevant agency actions here, we vacate the injunction and remand with instructions to dismiss.

I

A

In 1976, Congress authorized the President to "designate those items which shall be considered defense articles" and "to promulgate regulations for the import and export of such articles." International Security Assistance and Arms Export Control Act of 1976 ("Control Act"), Pub. L. No. 94-329, § 212(a)(1), 90 Stat. 729, 744 (codified at 22 U.S.C. § 2778(a)(1)). The President subsequently delegated his authority to the Secretary of State. Administration of Arms Export Controls, Exec. Order No. 11,958, 42 Fed. Reg. 4,311 (Jan. 18, 1977); *see also* 22 C.F.R. § 120.1(a). In turn, DOS promulgated and updated the International Traffic in Arms Regulations ("ITAR") to control the licensing, export, and import of defense articles. *See generally* 22 C.F.R. §§ 120–130. When DOS designates an item as a defense article, it is placed on the U.S. Munitions List ("Munitions List") and regulated by the ITAR. 22 U.S.C. § 2778(a)(1). The ITAR also regulates a defense article's associated technical data. 22 C.F.R. §§ 120.6, 120.10(a)(1), (4).

Congress did not define when an item qualifies as a "defense article." Instead, it delegated this decision to the President. *See* 22 U.S.C. § 2778(f)(5)(C) (explaining a "defense article" is "an item designated by the President" as such); 22 C.F.R. § 120.6 (defining "[d]efense article" as "any item . . . designated in" the Munitions List by the President). True, the President must exercise this designation authority "[i]n furtherance of world peace and the security and foreign policy of the United States." 22 U.S.C. § 2778(a)(1). But the point at which an item becomes a "defense article" is within the President's sole discretion. Not surprisingly, some courts have historically rejected suits challenging designation decisions as nonjusticiable political questions. *See, e.g.*, *United States v. Martinez*, 904 F.2d 601 (11th Cir. 1990).

In 1981, Congress added a provision to the Control Act requiring the President to give notice to several congressional committees 30 days "before any item is removed from the Munitions List." International Security and Development Cooperation Act of 1981, Pub. L. No. 97-113, § 107, 95 Stat. 1519, 1522 (codified as amended at 22 U.S.C. § 2778(f)(1)). So long as the President provides this notice, whether to remove an item from the Munitions List is still within his discretion. *See id.*

In 1989, Congress added an additional wrinkle at the heart of this appeal: "The designation . . . of items as defense articles . . . shall not be subject to judicial review." Anti-Terrorism and Arms Export Amendments Act of 1989, Pub. L. No. 101-222, § 6, 103 Stat. 1892, 1899 (codified at 22 U.S.C. § 2778(h)).

B

The Department of Commerce ("Commerce") is empowered to regulate non-Munitions List items under the Export Control Reform Act ("Reform Act"). *See* 50 U.S.C. § 4801 *et seq.* These items are placed on the Commerce Control List ("CCL"), *id.* § 4813(a), subject to regulation under the Export Administration Regulations ("EAR"),[1] *see generally* 15 C.F.R. § 730 *et seq.* Congress similarly gave Commerce broad discretion in deciding which items to place on the CCL. Commerce must only use its authority to "further significantly the foreign policy of the United States," "fulfill its declared international obligations," and limit exports making a "significant contribution to the military potential of any other country" or "prov[ing] detrimental to . . . national security." 50 U.S.C. § 4811(1). Congress also exempted Commerce's "functions exercised under [the Reform Act]" from review under the Administrative Procedure Act ("APA"). *Id.* § 4821(a).

C

On May 24, 2018, DOS proposed a rule removing all "non-automatic and semi-automatic firearms to caliber .50 . . . and all of the parts, components, accessories, and attachments specifically designed for those articles" from the Munitions List. International Traffic in Arms Regulations: U.S. Munitions List Categories I, II, and III, 83 Fed. Reg. 24,198, 24,198 (proposed May 24, 2018) ("DOS Proposed Rule"). The DOS Proposed Rule clarified that technical data would remain on the Munitions List only

---

[1] Several important differences between the ITAR and EAR have motivated this lawsuit but are substantively irrelevant to the legal issue before us.

if "directly related to the defense articles" remaining on the Munitions List. *Id.* at 24,201. Because 3D-printed guns and their associated electronic files fell within Category I small-caliber firearms, DOS, in effect, proposed to remove 3D-printed-gun files from the Munitions List and regulation under the ITAR.[2] These and other removed items were to be placed on the CCL and regulated by Commerce under the EAR instead. *Id.* at 24,198. DOS also provided a 45-day comment period.[3]

The same day, Commerce proposed its own rule expressly assuming regulatory jurisdiction over those items removed from the Munitions List. Control of Firearms,

---

[2] DOS proposed to remove the identified articles because they did not "provide the United States with a critical military or intelligence advantage." 83 Fed. Reg. at 24,198. This "includ[ed] many items which are widely available in retail outlets in the United States and abroad." *Id.* But DOS did not suggest that retail availability was the only justification for undesignating defense articles and associated technical data. *See* Dissent at 34–35.

[3] DOS stated it was not required to provide this comment period under the APA because of the foreign affairs exception. DOS Proposed Rule, 83 Fed. Reg. at 24,200. DOS has repeatedly maintained this position since 1954. *See* United States Munitions List; Enumeration of Arms, Ammunition and Implements of War Subject to Import and Export Controls, 19 Fed. Reg. 7,403, 7,405 (Nov. 17, 1954). In adopting the Control Act, Congress ratified DOS's position. *See* Control Act, § 212(b)(2), 90 Stat. at 745 (affirming "[a]ll . . . regulations . . . entered into under section 414 of the Mutual Security Act of 1954 shall continue in full force and effect until modified, revoked, or superseded by appropriate authority"); *NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 275 (1974) ("[C]ongressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress."). We do not reach whether the foreign affairs exception applies, however, because the DOS Final Rule is not subject to judicial review. *See infra* Part II.A.

Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List, 83 Fed. Reg. 24,166 (proposed May 24, 2018) ("Commerce Proposed Rule").  Commerce also provided a period of public comment.  *Id.* at 24,177.

During the Proposed Rules' concurrent comment periods, many commentors expressed concerns that shifting 3D-printed-gun files from the Munitions List to the CCL would impermissibly deregulate 3D-printed guns.  The record is unclear how many commentors expressed these concerns.  The district court in related litigation found "approximately 12% of the comments received in response" to the DOS Proposed Rule recognized the Rule's impact on 3D-printed-gun files and opposed removing them from the Munitions List.  *Washington v. U.S. Dep't of State* (*Washington II*), 420 F. Supp. 3d 1130, 1138 (W.D. Wash. 2019).  A search of the comment database suggests that this number may have been as high as 33 per cent.  According to the complaint, significantly more comments were received after the comment periods closed.  Regardless of the exact number of comments, interested members of the public were aware that the DOS and Commerce Proposed Rules would transfer regulatory jurisdiction over 3D-printed-gun files from the Munitions List to the CCL.  *See* 5 U.S.C. § 553(c); *Louis v. Dep't of Labor*, 419 F.3d 970, 975–76 (9th Cir. 2005).

DOS responded to these comments in its final rule, promulgated on January 23, 2020, explaining that the Commerce Final Rule would "sufficiently address the U.S. national security and foreign policy interests relevant to export controls." International Traffic in Arms Regulations: U.S. Munitions List Categories I, II, and III, 85 Fed. Reg. 3,819, 3,823 (Jan. 23, 2020) ("DOS Final Rule"); *see also*

*id.* (noting national security interests would be protected given EAR amendments made in the Commerce Final Rule). Notably, the DOS Final and Proposed Rules were identical in every respect relevant to this appeal. *Compare* DOS Proposed Rule, 83 Fed. Reg. at 24,201–02, *with* DOS Final Rule, 85 Fed. Reg. at 3,830.

That same day, Commerce promulgated its final rule. Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List, 85 Fed. Reg. 4,136, 4,140 (Jan. 23, 2020) ("Commerce Final Rule"). Whereas the DOS Proposed and Final Rules were identical in all relevant respects, the Commerce Proposed and Final Rules were not. Originally, Commerce proposed no changes to the EAR as it believed then-existing EAR regulations "struck the appropriate approach in providing for national security and foreign policy control of firearms that would transfer to the CCL." *Id.* at 4,141; *see also* Commerce Proposed Rule, 83 Fed. Reg. at 24,167 (explaining that "existing EAR concepts" would remain in place). But after considering commentors' concerns, Commerce decided to add 15 C.F.R. § 734.7(c) to ensure that 3D-printed-gun files would remain regulated, even if posted online. Commerce Final Rule, 85 Fed. Reg. at 4,141–42; *see also id.* at 4,172–73 (codified at 15 C.F.R. § 734.7(c)). Commerce's new substantive change, ultimately, is what undergirds the States' claims against both agencies.

The day the Final Rules were promulgated, 22 states and the District of Columbia ("States") sued DOS and Commerce, claiming both Final Rules violated the APA and seeking to preliminarily and permanently enjoin their enforcement. *Washington v. U.S. Dep't of State* (*Washington III*), 443 F. Supp. 3d 1245, 1253 (W.D. Wash.

2020).   The district court held the Final Rules were reviewable and the States had shown a likelihood of success on their APA claims.  *Id.* at 1255–60.  The district court primarily faulted the Commerce Final Rule for its procedural errors in adding § 734.7(c), *e.g.*, *id.* at 1257, but preliminarily enjoined only the DOS Final Rule as it related to the transfer of 3D-printed-gun files, *id.* at 1262–63.  DOS and Commerce appealed.[4]

## II

We review the grant of a preliminary injunction for an abuse of discretion, the underlying legal conclusions de novo, and factual findings for clear error.  *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).   Questions of statutory interpretation are reviewed de novo.  *Id.*  Accordingly, whether Congress statutorily precluded judicial review of final agency action under 5 U.S.C. § 701(a)(1) is also reviewed de novo.  *See Hyatt v. Off. of Mgmt. & Budget*, 908 F.3d 1165, 1170–72 (9th Cir. 2018).

## III

An individual "suffering legal wrong because of agency action" is entitled to judicial review under the APA.  5 U.S.C. § 702.  An agency's action is unreviewable, however, if a "statute[] preclude[s] judicial review."  *Id.* § 701(a)(1).  That said, the APA's "basic presumption of judicial review"

---

[4] There is additional procedural history relevant to other issues raised on appeal.  *See Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451 (5th Cir. 2016); *Washington II*, 420 F. Supp. 3d 1130, *dismissed as moot sub nom.*, *Washington v. Def. Distributed*, No. 20-35030, 2020 WL 4332902, *1 (9th Cir. Jul. 21, 2020).  Because we do not reach these issues, however, we do not detail these prior cases.

can only be overcome if there is "clear and convincing" evidence that Congress intended to preclude judicial review. *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 140–41 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).  The texts of both the Control Act and Reform Act demonstrate Congress's intent to preclude judicial review of both the DOS and Commerce Final Rules.

## A

We first turn to the reviewability of the DOS Final Rule. The Control Act states: "The designation . . . of items as defense articles or defense services for purposes of this section shall not be subject to judicial review."  22 U.S.C. § 2778(h).  A plaintiff cannot challenge the government's decision to *designate* items as defense articles.  *E.g.*, *Martinez*, 904 F.2d at 601–03; *United States v. Pulungan*, 569 F.3d 326, 326–28 (7th Cir. 2009); *United States v. Roth*, 628 F.3d 827, 832 (6th Cir. 2011).  That said, we are presented with a slightly different question: whether § 2778(h) bars judicial review of the decision to *undesignate* items as defense articles (i.e., remove them from the Munitions List).  The district court relied on *Washington v. U.S. Department of State* (*Washington I*), 318 F. Supp. 3d 1247, 1260 (W.D. Wash. 2018), which erroneously stated in passing that "Congress chose not to make unreviewable" "the removal of an item from the Munitions List." *Washington III*, 443 F. Supp. 3d at 1255 (alteration adopted). But the original public meaning of § 2778(h) makes clear that the undesignation of an item as a defense article is also judicially unreviewable.  *See Wisc. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018) ("[O]ur job is to interpret the words consistent with their ordinary meaning . . . at the time Congress enacted the statute." (citation omitted)).

The phrase "designation . . . as defense articles" in § 2778(h) is substantively identical to the phrase in § 2778(a)(1) under which the President is authorized to "designate [items] . . . as defense articles." Accordingly, we assume these same phrases "used in different parts of the same act are intended to have the same meaning," unless context demonstrates otherwise. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 571 (2012) (citations and internal quotation marks omitted); *Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 19 (1831) ("[T]he same words have not necessarily the same meaning attached to them when found in different parts of the same instrument: their meaning is controlled by context.").

The term "designate" in § 2778(a)(1) was originally understood to authorize both designations *and* undesignations. In 1976, Congress authorized the President to "designate" items as defense articles in § 2778(a)(1), but did not expressly authorize the President to undesignate, or remove, items from the Munitions List. *See* 22 U.S.C. § 2778(a)(1). Nonetheless, the President immediately thereafter delegated authority to the Secretary of State to make "[d]esignations, including *changes* in designations . . . of items or categories which shall be considered as defense articles." *See* Administration of Arms Export Controls, Exec. Order No. 11,958, 42 Fed. Reg. 4,311 (Jan. 18, 1977) (emphasis added). From 1976 on, items were routinely designated *and* undesignated as defense articles.[5]

---

[5] *See, e.g.*, 35 Fed. Reg. 19,994, 19,995 (Dec. 31, 1970) ("remov[ing] from the U.S. Munitions List" various items like "helium, JATO units, airfield matting, propellers used on reciprocating aircraft engines, [and] aircraft tires"); *compare also* 22 C.F.R. § 121.01, Category I(e) (1979) (designating "bayonets and specifically designed

Congress's later addition to the Control Act supports this reading as well. In 1980, Congress required the President to review the Munitions List and determine which items, "if any, should be removed from such List." International Security and Development Cooperation Act of 1980, Pub. L. No. 96-533, § 108(a), 94 Stat. 3131, 3137. A year later, Congress modified this language slightly, requiring the President to "periodically review the items on the United States Munitions List" and provide 30-days' notice to congressional committees "before any item is *removed* from the Munitions List." Pub. L. No. 97-113, § 107, 95 Stat. at 1522 (codified as amended at § 2778(f)(1)) (emphasis added).

Despite recognizing the President's power to remove items from the Munitions List, these amendments contain no language expressly granting the President that authority. Rather, Congress recognized what had always been implicit from § 2778(a)(1): the lesser power to undesignate is part and parcel of the greater power to designate. *See id.*; *see also United States v. Hudson*, 11 U.S. (7 Cranch) 32, 33 (1812) (finding Congress's power to create federal courts includes the lesser power to restrict jurisdiction); *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2211 (2020) (finding the President's executive power "generally includes the ability to supervise and remove the agents who wield executive power in his stead.").

The dissent finds it "plausible" to assume that "the President's power to remove articles from the Munitions List stems from § 2778(f) rather than § 2778(a)." Dissent at 28.

---

components therefor" as defense articles), *with* Revision of the ITAR, 45 Fed. Reg. 83,970, 83,971 (proposed Dec. 19, 1980) (proposing to remove bayonets from the Munitions List).

But neither the 1980 nor 1981 iterations of § 2778(f) contain language suggesting a delegation of power.   The 1980 amendment obligates the President to review the Munitions List "in order to determine which of such articles . . . , if any, should be removed"—no language authorizing the President to remove defense articles in the first place.  *See* Pub. L. No. 96-533, § 108(a), 94 Stat. at 3137.  In the 1981 amendment, Congress omitted the word "removed" from the same phrase entirely.  Instead, the President now must review Munitions List items "to determine what items, if any, no longer warrant export controls under this section."  *See* Pub. L. No. 97-113, § 107, 95 Stat. at 1522.   Only after discussing reporting requirements does § 2778(f) mention that the "report shall be submitted at least 30 days before any item is removed from the Munitions List."  *Id.*   We reject the dissent's assumption that Congress buried a delegation so foundational to the President's Control Act authority in § 2778(f), as Congress "does not . . . hide elephants in mouseholes."  *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

Rather, the Control Act's only plausible reading is that § 2778(a)(1) was originally understood to include both the authority to designate *and* undesignate.  It thus follows that § 2778(h)'s use of the same phrase in the same way plainly means the same thing: designations include undesignations. *See Taniguchi*, 566 U.S. at 571.

Nonetheless, the dissent finds Congress's single mention of "removed" in § 2778(f) to mean that designations and removals were intended to be treated differently in § 2778(h).  Dissent at 26–30.  Removals are singled out in the   congressional   review   context.    But relying on congressional reporting requirements to determine the scope of judicial review is at best questionable.  *See Guerrero v.*

*Clinton*, 157 F.3d 1190, 1196 (9th Cir. 1998) (clarifying "congressional reporting requirements are, and heretofore have been, a management tool employed by Congress for its own purposes" (citation omitted)); *see also Dep't of Com. v. New York*, 139 S. Ct. 2551, 2602 (2019) (Alito, J., concurring in part). Even if we relied on this distinction, it bolsters our conclusion: Congress distinguished removals in § 2778(f) for congressional review, but a few years later chose not to do so in § 2778(h) for judicial review. Instead, Congress used the same phrase in § 2778(a)(1) and § 2778(h) despite § 2778(f)'s intervening enactment.

The dissent also incorrectly applies the canon of *expressio unius est exclusio alterius*. We agree generally "that all omissions from a statute should be understood as intentional exclusions." Dissent at 28 (citing *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1054 (9th Cir. 2018)). This canon only applies, however, if "it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013) (internal quotation marks and citation omitted). But it is not "fair to suppose" that Congress intended to exclude removal decisions from § 2778(h)'s scope when using a phrase previously used to encompass such decisions. If anything, we "expect[] Congress to have been explicit" when using the same term to mean different things. *Gustafson v. Alloyd Co.*, 513 U.S. 561, 573 (1995). There is no explicit indication here, and thus the *expressio unius* canon does not apply.

Because § 2778(f) does not delegate to the President authority to remove defense articles, this interpretation would also invalidate some of the President's core and commonly understood functions under the Control Act. *See Decker v. Nw. Env't Def. Ctr.*, 568 U.S. 597, 623 (2013)

(Scalia, J., concurring in part) ("Applying the interpretive presumption of validity . . . we are to prefer the meaning that preserves to the meaning that destroys." (cleaned up)). If we assume § 2778(h) does not include undesignations, logically the same phrase in § 2778(a)(1) would not either. *See Taniguchi*, 566 U.S. at 571. Such an interpretation would suggest the President never had authority to do what has been done for decades without any whiff of congressional disapproval. *Cf. Bell Aerospace*, 416 U.S. at 275. We adopt the plainer reading: Congress authorized the President to designate and undesignate defense articles in § 2778(a), and it used the exact same meaning in § 2778(h).

The States also contend § 2778(h) only shields from review decisions to place items *on* the Munitions List since only the designation of items "as defense articles" is judicially unreviewable. *See* 22 U.S.C. § 2778(h). Under the Control Act and the ITAR, designating an item "as a defense article" is, in effect, synonymous with placing an item on the Munitions List. *See* 22 U.S.C. § 2778(a)(1) ("The items so designated shall constitute the United States Munitions List."); 22 C.F.R. § 121.1 ("In this part, articles . . . and related technical data are designated as defense articles . . . and constitute the U.S. Munitions List."). But the same phrase—"as defense articles"—does not limit the meaning of "designate" in § 2778(a)(1). The States provide no reason why we should treat the same phrase in § 2778(h) any differently.[6] *See Taniguchi*, 566 U.S. at 571; *Gustafson*, 513 U.S. at 573.

---

[6] The States also cite legislative history in support of their argument. "But legislative history is not the law." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1631 (2018). Nor do we "inquire what the legislature meant; we ask only what the statute means." *Id.* (alteration adopted) (citation

At a more fundamental level, the States' reliance on the phrase "as defense articles" misunderstands what actually happens when DOS removes an item from the Munitions List.  The States argue that removing an item is akin to designating an item as something other than a defense article.  But by removing an item from the Munitions List, DOS only undesignates the defense article and no longer regulates it—DOS does not re-designate an item as a non-defense article or place it on some alternative list.  Put differently, when removing items from the Munitions List, DOS merely removes those items' designations "as defense articles."  Thus, § 2778(h) textually remains in full force.

The dissent attempts to cabin our analysis as "[a]t best . . . a plausible account for how to interpret the statute." Dissent at 30.  But the dissent does not offer a plausible counter-reading of § 2778(h).    Adopting the dissent's position would "unreasonably" give the same phrase "two different meanings in the same section of the statute," *see Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980); find a foundational delegation implicitly buried in a congressional

---

and internal quotation marks omitted).  And as the States admit in their brief, "because the plain language of Section 2778(h) is clear and precise, it is unnecessary to consult legislative history."   Regardless, the legislative history relied upon is ambiguous at best.  *Compare* 135 Cong. Rec. 31,346 (1989) (explaining § 2778(h) was added to ensure the agencies themselves should settle "whether an item should be on the Munitions List *or* the Commodity Control List," suggesting both designations and undesignations were intended to be judicially unreviewable (emphasis added)), *with* 135 Cong. Rec. H-9,626 (daily ed. Nov. 21, 1989) (statement of Rep. Dante Fascell) (noting the addition of § 2778(h) "concerns the judicial review procedures for placing items *on* the Munitions List." (emphasis added)).  More importantly, this history contains no indication that the terms "designation" or "as defense articles" were intended to hold different meanings in § 2778(a)(1) and § 2778(h).

review provision, *see Am. Trucking Ass'ns*, 531 U.S. at 468; and invalidate a basic and commonly understood authority of the President under the Control Act, *see Decker*, 568 U.S. at 623 (Scalia, J., concurring in part).[7]    Absent other plausible readings, clear and convincing evidence demonstrates that § 2778(h) can only be read in one way: Congress precluded judicial review of both the designation and undesignation of items as defense articles.[8]

## B

We next turn to the reviewability of the Commerce Final Rule.  The Reform Act states: "[T]he functions exercised under [the Reform Act] shall not be subject to sections 551, 553 through 559, and 701 through 706 of Title 5."  50 U.S.C. § 4821(a).  As applied here, this provision is clear and

---

[7] The dissent also provides "additional reasons" for why Congress may have wanted to treat judicial review of removals and designations differently.  Dissent at 29.  Congress may decide to codify these policy considerations in the future.  But § 2778(h) as currently written does not reflect them.    Ambiguity cannot be created by non-textual considerations.  *See Carcieri v. Salazar*, 555 U.S. 379, 387 ("[W]e must apply the statute according to its terms." (citations omitted)).

[8] DOS and Commerce contend Congress has exclusive review of removal actions because of the congressional reporting provision in § 2778(f).    The D.C. Circuit has rejected the argument that such congressional reporting requirements inferably preclude judicial review.  *Armstrong v. Bush*, 924 F.2d 282, 291–92 (D.C. Cir. 1991).  We reject the agencies' argument for the same reasons.  Given the different nature of provisions creating congressional review and provisions barring judicial review, *see Guerrero*, 157 F.3d at 1196, the enactment of a congressional reporting requirement is insufficient to demonstrate "clear and convincing" evidence of an intent to bar judicial review.  *See Abbott Lab'ys*, 387 U.S. at 141 ("The right to review is too important to be excluded on such slender and indeterminate evidence of legislative intent.").

unambiguous: the Commerce Final Rule amended the EAR pursuant to the Reform Act; therefore the Rule is not reviewable under the APA. *See* Commerce Final Rule, 85 Fed. Reg. at 4,169 ("[The Reform Act] provides the legal basis for [Commerce]'s principal authorities and serves as the authority under which [Commerce] issues this rule.").

The district court recognized as much, noting the "Commerce Rule, when viewed in isolation, appears to fall within [§ 4821(a)'s] exemption." *Washington III*, 443 F. Supp. 3d at 1255. Nonetheless, the district court believed, without citation to authority, it could review the Commerce Final Rule because it was promulgated in conjunction with the DOS Final Rule. *Id.* at 1255–56. Even assuming the DOS Final Rule was reviewable (it is not), this theory of review goes beyond established principles of delegated authority and agency action. "[A]n agency literally has no power to act . . . unless and until Congress confers power upon it." *See La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). Accordingly, Commerce could have only acted pursuant to its delegated authority under the Reform Act in promulgating its Final Rule. And because Commerce engaged in "functions exercised under" the Reform Act, the Reform Act expressly bars APA challenges, regardless of joint agency efforts.

Congress not only barred APA challenges to Commerce's Reform Act functions; it rendered them, in effect, judicially unreviewable. The federal government cannot be sued unless it first waives sovereign immunity. *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 412 (1821) ("The universally received opinion is, that no suit can be commenced or prosecuted against the United States . . . ."); *see also* Federalist No. 81 (Alexander Hamilton) ("It is inherent in the nature of sovereignty not to be amendable to

the suit of an individual without its consent." (emphasis omitted)).  And the APA is, foremost, a waiver of sovereign immunity to allow private litigants to challenge agency action.  5 U.S.C. § 702; *Ramos v. Wolf*, 975 F.3d 872, 900 (9th Cir. 2020) (R. Nelson, J., concurring).  But because § 702 does not apply to "functions exercised under" the Reform Act, 50 U.S.C. § 4821(a), federal sovereign immunity has not been waived, precluding judicial review of the States' challenge.

The dissent would hold that the bar on APA review under the Reform Act is irrelevant to this appeal given that the district court only enjoined the DOS Final Rule.  Dissent at 30–31.  We agree that the district court could have taken judicial notice of Commerce's Proposed and Final Rules.  *See United States v. Woods*, 335 F.3d 993, 1001 (9th Cir. 2003).  This is especially true given DOS considered Commerce's Final Rule when making the decision to remove 3D-printed-gun files from the Munitions List.  *See* DOS Final Rule, 85 Fed. Reg. at 3,823.  But contrary to the dissent's assertion, Dissent at 30, the district court did more than take judicial notice.  Like the dissent, the district court never acknowledged that the DOS Proposed and Final Rules were identical in every substantive respect—DOS did what it said it would do.  Instead, the district court grounded its substantive APA review in part on perceived procedural defects of the Commerce Final Rule, especially Commerce's "out of left field" decision to include § 734.7(c) in its final rule.[9]

_____

[9] *See Washington III*, 443 F. Supp. 3d at 1257 (finding "neither agency gave any indication that a specific regulation would apply to the online dissemination of 3-D gun files"); *id.* at 1257 n.3 (noting "Commerce all but acknowledges [the fact that its Final Rule was

Accordingly, the district court also erred by enjoining the DOS Final Rule in part for perceived procedural deficiencies in the Commerce Final Rule.

## C

Because both the DOS and Commerce Final Rules are unreviewable, the States have not demonstrated the requisite likelihood of success on the merits. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Absent this showing, we need not address the other preliminary injunction factors. *Glob. Horizons, Inc. v. U.S. Dep't of Labor*, 510 F.3d 1054, 1058 (9th Cir. 2007).

## IV

Congress expressly barred judicial review of designations and undesignations of defense articles under the Control Act and of any functions exercised under the Reform Act. Accordingly, the district court erred in reviewing the DOS and Commerce Final Rules, and its injunction is therefore contrary to law.

**VACATED and REMANDED with instructions to dismiss.**

---

deficient] in the notice of final rulemaking"); *id.* at 1257 (criticizing the notice of proposed rulemaking processes as the Proposed Commerce Rule only referenced "*existing* EAR concepts of jurisdictions and controls"); *id.* (criticizing the Commerce Rule's change in jurisdiction as "com[ing] out of left field"); *id.* at 1258 (finding the States likely to succeed on the merits as they "had no opportunity to comment on a scheme that applies specifically to 3-D files, including the potential public safety implications that would occur from implementing the Final Rules in their current form").

WHALEY, District Judge, dissenting:

This case concerns the regulatory authority over 3D-printed gun files (hereinafter "3D gun files"), which can be used to produce undetectable, untraceable, and deadly weapons. During prior litigation, the U.S. Department of State ("DOS") argued that the proliferation of this technology could provide terrorist and criminal organizations with access to dangerous firearms, contribute to armed conflict and terrorist or criminal acts, and undermine global export control and non-proliferation regimes. However, DOS abruptly changed course in 2018, transferring its regulatory authority over 3D gun files to the Department of Commerce ("Commerce"). The States and amicus argue that this new regime contains substantial loopholes that would allow for the widespread proliferation of this dangerous technology.

I disagree with the majority's holding which allows this new regulatory system to escape appropriate oversight. Therefore, I respectfully dissent.

I.

The majority's conclusion that DOS's final rule is unreviewable flows from DOS's argument that "designation" in 22 U.S.C. §§ 2778(a)(1) & 2778(h) must hold the same meaning, and the majority speculates that the phrase "designate . . . as defense articles" in § 2778(a)(1) was originally understood to authorize designations and removals. Majority Op. at 16. In support of this position, the majority points to 22 U.S.C. § 2778(f), which reads, "The President may not remove any item from the Munitions List until 30 days after the date on which the President has provided notice of the proposed removal to [Congress] . . . ." The majority interprets this to mean that when Congress created the 30-day notice period for removal actions from

the Munitions List, it must have assumed that the President already had this removal power.

"[O]nly upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review." *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967) (citation and internal quotation marks omitted)), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Although the majority contends that its interpretation of the statute meets this "clear and convincing" standard, a more plausible interpretation of § 2778(f) is that through the addition of this provision, Congress intended to treat designations and removals separately. Under the plain language of the amendment, § 2778(f) could likely be read as singling out "removal" as a distinct power, and then subjecting it to congressional oversight. Following this reasoning, the addition of § 2778(f) in 1981 evinces Congress's intent to separate designation from removal, and then to distinguish between these processes. Accordingly, Congress's later amendment in 1989 barring judicial review was therefore intended to render only "designation" actions unreviewable, while leaving removal decisions subject to judicial review. This interpretation follows the well-established canon of statutory interpretation that Congress's use of different terms demonstrates a difference in meaning. *See Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1723 (2017) ("[W]hen we're engaged in the business of interpreting statutes we presume differences in language . . . convey differences in meaning."); *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 689 (9th Cir. 2003) ("[W]e must assume that this difference in language is legally significant.").

Because it is plausible to interpret § 2778(f) as separating removals from designations, the majority's subsequent reasons for precluding judicial review over DOS's final rule are unavailing. For instance, the majority contends that the States' interpretation would invalidate core and commonly understood presidential functions by implying that the President never had the authority to remove defense articles from the Munitions List. However, to the extent the President had the implicit authority to remove items from the Munitions List when § 2778(a) was enacted in 1976, the addition of § 2778(f) shortly thereafter clarified that the President's removal power was separate from its designation power and was subject to congressional oversight. Under this interpretation, the President's power to remove articles from the Munitions List stems from § 2778(f) rather than § 2778(a).

Likewise, the majority disregards the States' argument under the canon of *expressio unius est exclusio alterius*, which presumes that all omissions from a statute should be understood as intentional exclusions, *see Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1054 (9th Cir. 2018), because the majority finds no basis to infer an intention by Congress to separate designations from removals. However, if Congress intended to separate removals from designations following the addition of § 2778(f) in 1981, then this would support the States' contention that when Congress enacted § 2778(h), it could have expressly barred judicial review over removal decisions but declined to do so. *See* Anti-Terrorism and Arms Export Amendments Act of 1989, Pub. L. No. 101-222, § 6, 103 Stat. 1892, 1899; *NLRB v. SW General, Inc.*, 137 S. Ct. 929, 940 (2017) (application of the *expressio unius* canon depends on context and will apply only when "circumstances support[] a sensible inference that

the term left out must have been meant to be excluded." (citation and internal quotation marks omitted)).

There are additional reasons to infer that Congress intended to distinguish between designation and removal actions. The lack of judicial oversight over designations means that the President's decision over which weapons to regulate is wholly discretionary, 22 U.S.C. § 2778(h), and thus individual complainants cannot avoid regulation through litigation. In contrast, judicial review over the removal of items from the Munitions Lists would prevent deregulation that is arbitrary or otherwise unlawful. Precluding judicial review over designations but not removals would therefore align with Congress's decision to provide a congressional check over removals from the Munitions List but not designations. In other words, § 2778(f) and § 2778(h) when read together indicate Congress's intent to err on the side of regulation, making designations discretionary and subjecting removals to procedural safeguards. This interpretation could be viewed as advancing the statute's objective to further "world peace and the security and foreign policy of the United States . . . ." 22 U.S.C. § 2778(a)(1). Thus, the full context of the statute and its purpose support precluding judicial review over designation decisions but not removals. *See Rojas v. Fed. Aviation Admin.*, 989 F.3d 666, 672–73 (9th Cir. 2021) (en banc) ("[A]s is always true when interpreting statutes, statutory context and purpose matter . . .").

Given these considerations, contrary to the majority's position, Congress's intention to preclude judicial review over the President's decision to remove items from the Munitions List is not clear and convincing. *See Abbott Labs.*, 387 U.S. at 140–41 (restricting access to judicial review over agency action requires clear and convincing

evidence of a contrary legislative intent).  At best, the majority has presented a plausible account for how to the interpret the statute, but that is not enough.  The counter interpretation is just as plausible, and this ambiguity allowed the district court to exercise judicial review in this case.  *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020) (Administrative Procedures Act establishes a basic presumption of judicial review over agency action); *ANA Int'l, Inc. v. Way*, 393 F.3d 886, 891 (9th Cir. 2004) (explaining that "as a matter of the interpretive enterprise itself, the narrower construction of a jurisdiction-stripping provision is favored over the broader one.").

II.

As to Commerce's final rule, I agree with the majority that this rule is unreviewable pursuant to 50 U.S.C. § 4821(a).  However, the district court did not "review" Commerce's final rule.  Instead, it concluded that DOS's final rule was unlawful, and then enjoined DOS's final rule from implementation or enforcement.  Commerce's final rule, in comparison, was left untouched.

Although the district court considered the contents of Commerce's final rule in its review of DOS's final rule, this was appropriate given the statutory framework at issue in this case.  In DOS's final rule, DOS stated that it was transferring its regulatory authority to Commerce and expressly invoked Commerce's final rule.  *See* International Traffic in Arms Regulations: U.S. Munitions List Categories I, II, and III [hereinafter "ITAR"], 85 Fed. Reg. 3,819, 3,823 (Dep't of State Jan. 23, 2020).  DOS even explained that transferring jurisdiction to regulate certain 3D gun files to Commerce was justified because Commerce's

> controls on technology and software for firearms previously controlled in [Munitions List] Category I(a)—and for all other items this rule removes from the [Munitions List]—sufficiently address the U.S. national security and foreign policy interests relevant to export controls.  In sum, while Commerce controls over such items and technology and software are appropriate, continued inclusion of them on the [Munitions List] is not.

*Id.*

Not only was it appropriate for the district court to consider Commerce's final rule in the analysis, but to ignore it would undoubtedly lead to the conclusion that DOS's final rule is arbitrary and capricious.  Agency action is arbitrary and capricious if the agency fails to explain or acknowledge a change in policy.  *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (explaining that an agency must "provide [a] reasoned explanation for its action . . . [and] may not, for example, depart from a prior policy *sub silentio* . . .").  Considered in isolation, DOS's final rule removes certain 3D gun files from the Munitions List and does not provide for any replacement regulatory controls.  *See generally* ITAR, 85 Fed. Reg. at 3,819–33.  So absent Commerce's final rule, the subject 3D gun files would become completely unregulated, a clear change in DOS policy that would be arbitrary and capricious.

### III.

As to the remaining bases raised by the parties in this appeal, I agree with the district court's disposition.  In particular, I would affirm the district court's determination that the States have demonstrated a likelihood of success on

the merits as to their claims that DOS's final rule is arbitrary and capricious, and the district court's finding that DOS failed to comply with the notice requirement under the APA before implementing its rule.

The rulemaking at issue in this case must be considered in the context of DOS's prior litigation and eventual settlement with Defense Distributed, a private company intent on publishing 3D gun files on the internet. *See Def. Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680, 686–87 (W.D. Tex. 2015). In defending the lawsuit, DOS contended that Defense Distributed's files could be used to create "virtually undetectable" firearms that presented a "serious risk of acts of violence," specifically that the "proposed export of undetectable firearms technology could be used in an assassination, for the manufacture of spare parts by embargoed nations, terrorist groups, or guerrilla groups, or to compromise aviation security overseas in a manner specifically directed at U.S. persons."

The district court denied Defense Distributed's motion for a preliminary injunction, and the Fifth Circuit affirmed. *See Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451, 458–61 (5th Cir. 2016). The Fifth Circuit determined that "[DOS's] stated interest in preventing foreign nationals— including all manner of enemies of this country—from obtaining technical data on how to produce weapons and weapon parts is not merely tangentially related to national defense and national security; it lies squarely within that interest." *Id.* at 458. The Fifth Circuit subsequently denied rehearing the case en banc, *Def. Distributed v. U.S. Dep't of State*, 865 F.3d 211, 212 (5th Cir. 2017), and the Supreme Court declined to review the case, *Def. Distributed v. Dep't of State*, 138 S. Ct. 638 (2018).

After the denial of certiorari, DOS suddenly and secretly changed course.  DOS settled with Defense Distributed and agreed to initiate rulemaking that would remove Defense Distributed's 3D gun files from the Munitions List. According to an expert declaration provided by the States in the present case, the terms of the settlement permitting the export of Defense Distributed's 3D gun files could lead to the proliferation of untraceable "ghost guns."  This potential increase in the accessibility of "ghost guns" presents a serious threat to public safety, as "ghost guns" have already been linked to multiple mass shootings in the United States. Despite the threat to public safety posed by the settlement, the terms of the settlement were not publicly disclosed until after the comment period on DOS's proposed rule had ended.

This history between DOS and Defense Distributed demonstrates both the arbitrariness and capriciousness of DOS's final rule and the lack of adequate notice.  First, with regard to the arbitrary and capricious standard, DOS argued to this Court that its final rule was simply the result of a "decade-long effort to revise the Munitions List," and that DOS's position on regulating 3D gun files has never changed.  Yet the terms of the settlement belie that assertion, as it appears that DOS's settlement with Defense Distributed was the driving force behind DOS's rulemaking.  On this record, it is difficult to view DOS's final rule as anything but a change in policy, since that is what the settlement required. *See Int'l Rehab. Sciences Inc. v. Sebelius*, 688 F.3d 994, 1001 (9th Cir. 2012) (explaining when an unexplained agency inconsistency can lead to a finding that the agency acted arbitrarily).

Furthermore, it appears that DOS deliberately kept its settlement with Defense Distributed a secret.  According to

the States' allegations, Defense Distributed and DOS finalized their settlement agreement in April 2018, DOS and Commerce filed their notices of proposed rulemaking on May 24, 2018, and then the notice-and-comment period closed on July 9, 2018. Around 3,000 comments were received during the comment period, only a small fraction of which pertained to 3D gun files.

However, rather than announcing the settlement that compelled this proposed rulemaking, DOS delayed making the settlement public until after the comment period closed. Neither at oral argument nor in its briefing to this Court has DOS explained that delay. And once the settlement did become public a few weeks after the comment period had ended, the federal government received over 106,000 emails from concerned members of the public regarding the deregulation of 3D gun files. This outpouring of public comments after the terms of the settlement came to light indicates that an ordinary interested member of the public likely did not understand that the proposed rules implicated the regulation of 3D gun files. *See Nat. Res. Def. Council v. EPA*, 279 F.3d 1180, 1187 (9th Cir. 2002) (adequate notice depends on whether interested parties reasonably could have anticipated the final rulemaking from the proposed rule.).

Further, the language of DOS's proposed rule obscured its true intent to deregulate 3D gun files, as was required under the settlement. *See Louis v. U.S. Dep't of Labor*, 419 F.3d 970, 975–76 (9th Cir. 2005) (explaining that even if "each of the components . . . are technically present" in the proposed rule, notice is still deficient if it "obscures the intent of the agency" such that it would allow "potentially controversial subject matter . . . to go unnoticed buried deep in a non-controversial publication."). For instance, although DOS's proposed rule generally refers to "technical data," it

never mentions "3D gun files" or any of the other terms used to describe this technology, even though the settlement agreement specifically required rulemaking that would exclude such items from the Munitions List. *See* International Traffic in Arms Regulations: U.S. Munitions List Categories I, II, and III [hereinafter "Proposed Rule"], 83 Fed. Reg. 24,198, 24,201 (Dep't of State May 24, 2018). Additionally, rather than being transparent about the connection between the settlement and the proposed rulemaking, DOS's proposed rule stated only that small-caliber firearms were being removed from the Munitions List because they did not "provide the United States with a critical military or intelligence advantage," primarily because they are "widely available in retail outlets in the United States and abroad." Proposed Rule, 83 Fed. Reg. at 24,198. Yet this stated rationale clearly did not apply to the 3D gun files that were the subject of the settlement, as these files were not widely available in retail outlets.

On a fundamental level, I question DOS's candor in this case. DOS has never explained why, after securing several victories in the litigation with Defense Distributed, it decided to settle and agreed to permit the export of 3D gun files, even though DOS had argued that the export of these files would irreparably harm the United States' national security interests. It also appears that DOS deliberately hid the settlement from the public until after the comment period had closed, as DOS's proposed rule never mentions "3D gun files" and instead misleadingly stated that the rule was aimed at munitions that were already widely available at retail establishments. Given this lack of explanation about the settlement and the failure to publicly disclose the settlement until after the notice-and-comment period had ended, the States were likely to succeed in showing that DOS's final

rule was arbitrary and capricious and violated the APA's notice-and-comment requirements.

For these reasons, I would affirm the district court's order granting the States' request for a preliminary injunction.

April 30, 2021
Declaration of Cody Wilson
Exhibit B

**General Docket**
**United States Court of Appeals for the Ninth Circuit**

| | |
|---|---|
| **Court of Appeals Docket #:** 20-35391 | **Docketed:** 05/06/2020 |
| **Nature of Suit:** 2899 Other Statutes - APA Review/Appeal | **Termed:** 04/27/2021 |
| State of Washington, et al v. U.S. Dept. of State, et al | |
| **Appeal From:** U.S. District Court for Western Washington, Seattle | |
| **Fee Status:** USA - No Fee Req | |

**Case Type Information:**
  **1)** civil
  **2)** united states
  **3)** null

**Originating Court Information:**
  **District:** 0981-2 : 2:20-cv-00111-RAJ
  **Court Reporter:** Nancy Lynn Bauer, Official Court Reporter
  **Trial Judge:** Richard A. Jones, District Judge
  **Date Filed:** 01/23/2020

| **Date Order/Judgment:** | **Date Order/Judgment EOD:** | **Date NOA Filed:** | **Date Rec'd COA:** |
|---|---|---|---|
| 03/06/2020 | 03/06/2020 | 05/05/2020 | 05/05/2020 |

**Prior Cases:**
  None

**Current Cases:**
  None

---

| | |
|---|---|
| STATE OF WASHINGTON<br>        Plaintiff - Appellee, | Kristin Beneski, Attorney<br>Direct: 206-464-7459<br>[COR LD NTC Dep State Aty Gen]<br>AGWA - OFFICE OF THE WASHINGTON ATTORNEY GENERAL (SEATTLE)<br>800 Fifth Avenue<br>Suite 2000<br>Seattle, WA 98104-3188<br><br>Jeffrey George Rupert, Attorney<br>Direct: 206-389-2116<br>[COR LD NTC Dep State Aty Gen]<br>AGWA - OFFICE OF THE WASHINGTON ATTORNEY GENERAL (SEATTLE)<br>800 Fifth Avenue<br>Suite 2000<br>Seattle, WA 98104-3188<br><br>Brendan Selby, ASATG<br>Direct: 206-254-4270<br>[COR NTC Dep State Aty Gen]<br>AGWA - OFFICE OF THE WASHINGTON ATTORNEY GENERAL (SEATTLE)<br>800 Fifth Avenue<br>Suite 2000<br>Seattle, WA 98104-3188 |
| STATE OF CALIFORNIA<br>        Plaintiff - Appellee, | Kristin Beneski, Attorney<br>Direct: 206-464-7459<br>[COR LD NTC Dep State Aty Gen]<br>(see above)<br><br>John W. Killeen, Esquire, Attorney<br>[COR LD NTC Dep State Aty Gen]<br>AGCA-Office of the California Attorney General<br>1300 I Street<br>Suite 125<br>Sacramento, CA 95814 |
| STATE OF COLORADO | Kristin Beneski, Attorney |

Plaintiff - Appellee,

Direct: 206-464-7459
[COR LD NTC Dep State Aty Gen]
(see above)

Grant T. Sullivan, Assistant Solicitor General
Direct: 720-508-6349
[COR LD NTC Dep State Aty Gen]
Colorado Department of Law
6th Floor
1300 Broadway
Denver, CO 80203

STATE OF CONNECTICUT
    Plaintiff - Appellee,

Kristin Beneski, Attorney
Direct: 206-464-7459
[COR LD NTC Dep State Aty Gen]
(see above)

STATE OF DELAWARE
    Plaintiff - Appellee,

Kristin Beneski, Attorney
Direct: 206-464-7459
[COR LD NTC Dep State Aty Gen]
(see above)

Christian Douglas Wright
Direct: 302-577-8944
[COR LD NTC Dep State Aty Gen]
OFFICE OF THE ATTORNEY GENERAL
Department of Justice
820 N. French Street
Wilmington, DE 19801

DISTRICT OF COLUMBIA
    Plaintiff - Appellee,

Kristin Beneski, Attorney
Direct: 206-464-7459
[COR LD NTC Dep State Aty Gen]
(see above)

Loren L. AliKhan, Deputy Solicitor General
Direct: 202-727-6287
[COR NTC Dep State Aty Gen]
Office of the Attorney General
Office of the Solicitor General
400 6th Street, NW
Suite 8100
Washington, DC 20001

STATE OF HAWAII
    Plaintiff - Appellee,

Kristin Beneski, Attorney
Direct: 206-464-7459
[COR LD NTC Dep State Aty Gen]
(see above)

Robert Tadao Nakatsuji, Esquire
[COR LD NTC Dep State Aty Gen]
AGHI - OFFICE OF THE HAWAII ATTORNEY GENERAL
Firm: 808-568-1180
425 Queen Street
Honolulu, HI 96813

STATE OF ILLINOIS
    Plaintiff - Appellee,

Kristin Beneski, Attorney
Direct: 206-464-7459
[COR LD NTC Dep State Aty Gen]
(see above)

Darren Bernens Kinkead
Direct: 312-814-5700
[COR LD NTC Dep State Aty Gen]
Office of the Illinois Attorney General
11th Floor
100 W. Randolph Street
Chicago, IL 60601

Sarah A . Hunger, Attorney

|  | Direct: 312-814-5202<br>[COR NTC Dep State Aty Gen]<br>OFFICE OF THE ATTORNEY GENERAL<br>12th Floor<br>100 West Randolph Street<br>Chicago, IL 60601 |
|---|---|
| **STATE OF MAINE**<br>        Plaintiff - Appellee, | Kristin Beneski, Attorney<br>Direct: 206-464-7459<br>[COR LD NTC Dep State Aty Gen]<br>(see above) |
|  | Jillian Renee O'Brien<br>Direct: 207-626-8582<br>[COR NTC Dep State Aty Gen]<br>Office of the Attorney General<br>6 State House Station<br>Augusta, ME 04333 |
| **STATE OF MARYLAND**<br>        Plaintiff - Appellee, | Kristin Beneski, Attorney<br>Direct: 206-464-7459<br>[COR LD NTC Dep State Aty Gen]<br>(see above) |
|  | Jeffrey Paul Dunlap<br>Direct: 913-449-5049<br>[COR LD NTC Dep State Aty Gen]<br>OFFICE OF THE ATTORNEY GENERAL<br>Floor 20<br>200 St. Paul Place<br>Baltimore, MD 21202 |
| **COMMONWEALTH OF MASSACHUSETTS**<br>        Plaintiff - Appellee, | Kristin Beneski, Attorney<br>Direct: 206-464-7459<br>[COR LD NTC Dep State Aty Gen]<br>(see above) |
| **STATE OF MICHIGAN**<br>        Plaintiff - Appellee, | Kristin Beneski, Attorney<br>Direct: 206-464-7459<br>[COR LD NTC Dep State Aty Gen]<br>(see above) |
|  | Joseph Froehlich, Esquire<br>Direct: 517-373-6434<br>[COR LD NTC Dep State Aty Gen]<br>MICHAGAN DEPARTMENT OF ATTORNEY GENERAL<br>525 W. Ottawa Street<br>P.O. Box 30736<br>Lansing, MI 48909 |
| **STATE OF MINNESOTA**<br>        Plaintiff - Appellee, | Kristin Beneski, Attorney<br>Direct: 206-464-7459<br>[COR LD NTC Dep State Aty Gen]<br>(see above) |
|  | Jacob Campion<br>Direct: 651-757-1459<br>[COR LD NTC Dep State Aty Gen]<br>OFFICE OF THE ATTORNEY GENERAL<br>445 Minnesota Street<br>St. Paul, MN 55101 |
| **STATE OF NEW JERSEY**<br>        Plaintiff - Appellee, | Kristin Beneski, Attorney<br>Direct: 206-464-7459<br>[COR LD NTC Dep State Aty Gen]<br>(see above) |
|  | Glenn Moramarco, Esquire, Assistant Attorney General<br>Direct: 609-376-3235<br>[COR LD NTC Dep State Aty Gen] |

|  | Office of the New Jersey Attorney General<br>Hughes Justice Complex<br>25 Market Street<br>First Floor<br>Trenton, NJ 08625 |
|---|---|
| STATE OF NEW YORK<br>      Plaintiff - Appellee, | Kristin Beneski, Attorney<br>Direct: 206-464-7459<br>[COR LD NTC Dep State Aty Gen]<br>(see above)<br><br>Steven C. Wu, Deputy Solicitor General<br>Direct: 212-416-6312<br>[COR LD NTC Dep State Aty Gen]<br>New York State Office of the Attorney General<br>23rd Floor<br>28 Liberty Street<br>New York, NY 10005 |
| STATE OF NORTH CAROLINA<br>      Plaintiff - Appellee, | Kristin Beneski, Attorney<br>Direct: 206-464-7459<br>[COR LD NTC Dep State Aty Gen]<br>(see above)<br><br>Sripriya Narasimhan<br>Direct: 919-716-6421<br>[COR LD NTC Dep State Aty Gen]<br>North Carolina Department of Justice<br>114 W. Edenton Street<br>Raleigh, NC 27603 |
| STATE OF OREGON<br>      Plaintiff - Appellee, | Kristin Beneski, Attorney<br>Direct: 206-464-7459<br>[COR LD NTC Dep State Aty Gen]<br>(see above) |
| COMMONWEALTH OF PENNSYLVANIA<br>      Plaintiff - Appellee, | Kristin Beneski, Attorney<br>Direct: 206-464-7459<br>[COR LD NTC Dep State Aty Gen]<br>(see above) |
| STATE OF RHODE ISLAND<br>      Plaintiff - Appellee, | Kristin Beneski, Attorney<br>Direct: 206-464-7459<br>[COR LD NTC Dep State Aty Gen]<br>(see above)<br><br>Justin James Sullivan, Esquire, Special Assistant Attorney General<br>Direct: 401-274-4400<br>[COR LD NTC Dep State Aty Gen]<br>OFFICE OF ATTORNEY GENERAL<br>State of Rhode Island<br>150 South Main Street<br>Providence, RI 02903 |
| STATE OF VERMONT<br>      Plaintiff - Appellee, | Benjamin Daniel Battles, Solicitor General<br>Direct: 802-828-5500<br>[COR LD NTC Dep State Aty Gen]<br>OFFICE OF THE ATTORNEY GENERAL<br>109 State Street<br>Montpelier, VT 05609-1001<br><br>Kristin Beneski, Attorney<br>Direct: 206-464-7459<br>[COR LD NTC Dep State Aty Gen]<br>(see above) |
| COMMONWEALTH OF VIRGINIA<br>      Plaintiff - Appellee, | Kristin Beneski, Attorney<br>Direct: 206-464-7459<br>[COR LD NTC Dep State Aty Gen]<br>(see above) |

|  | Samuel Thurston Towell, Deputy Attorney General<br>Direct: 804-786-6731<br>[COR LD NTC Dep State Aty Gen]<br>OFFICE OF THE ATTORNEY GENERAL<br>202 North Ninth Street<br>Richmond, VA 23219 |
|---|---|
| STATE OF NEW MEXICO<br>      Plaintiff - Appellee, | Kristin Beneski, Attorney<br>Direct: 206-464-7459<br>[COR LD NTC Dep State Aty Gen]<br>(see above) |
| STATE OF WISCONSIN<br>      Plaintiff - Appellee, | Kristin Beneski, Attorney<br>Direct: 206-464-7459<br>[COR LD NTC Dep State Aty Gen]<br>(see above) |
|   v. | |
| UNITED STATES DEPARTMENT OF STATE<br>      Defendant - Appellant, | Daniel Aguilar, Attorney<br>[COR NTC Government]<br>DOJ - U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530<br><br>Sharon Swingle<br>[COR NTC Government]<br>DOJ - U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530 |
| MICHAEL POMPEO, in his official capacity as Secretary of State<br>**Terminated:** 04/27/2021<br>      Defendant - Appellant, | |
| ANTONY J. BLINKEN, in his official capacity as Secretary of State<br>      Defendant - Appellant, | Daniel Aguilar, Attorney<br>[COR NTC Government]<br>(see above)<br><br>Sharon Swingle<br>[COR NTC Government]<br>(see above) |
| DIRECTORATE OF DEFENSE TRADE CONTROLS<br>      Defendant - Appellant, | Daniel Aguilar, Attorney<br>[COR NTC Government]<br>(see above)<br><br>Sharon Swingle<br>[COR NTC Government]<br>(see above) |
| MIKE MILLER, in his official capacity as Deputy Assistant<br>Secretary of Defense Trade<br>      Defendant - Appellant, | Daniel Aguilar, Attorney<br>[COR NTC Government]<br>(see above)<br><br>Sharon Swingle<br>[COR NTC Government]<br>(see above) |
| SARAH HEIDEMA, in her official capacity as Director of Policy,<br>Office of Defense Trade Controls Policy<br>      Defendant - Appellant, | Daniel Aguilar, Attorney<br>[COR NTC Government]<br>(see above)<br><br>Sharon Swingle<br>[COR NTC Government]<br>(see above) |
| UNITED STATES DEPARTMENT OF COMMERCE | Daniel Aguilar, Attorney |

|  | |
|---|---|
| Defendant - Appellant, | [COR NTC Government]<br>(see above)<br><br>Sharon Swingle<br>[COR NTC Government]<br>(see above) |
| GINA RAIMONDO, in her official capacity as Secretary of Commerce<br>Defendant - Appellant, | Daniel Aguilar, Attorney<br>[COR NTC Government]<br>(see above)<br><br>Sharon Swingle<br>[COR NTC Government]<br>(see above) |
| WILBUR ROSS, in his official capacity as Secretary of Commerce<br>**Terminated:** 04/27/2021<br>Defendant - Appellant, | |
| BUREAU OF INDUSTRY AND SECURITY<br>Defendant - Appellant, | Daniel Aguilar, Attorney<br>[COR NTC Government]<br>(see above)<br><br>Sharon Swingle<br>[COR NTC Government]<br>(see above) |
| MATTHEW S. BORMAN, in his official capacity as Acting Assistant Secretary of Commerce for Export Administration<br>Defendant - Appellant, | Daniel Aguilar, Attorney<br>[COR NTC Government]<br>(see above)<br><br>Sharon Swingle<br>[COR NTC Government]<br>(see above) |
| RICH ASHOOH, in his official capacity as Assistant Secretary of Commerce for Export Administration<br>**Terminated:** 04/27/2021<br>Defendant - Appellant, | |
| CORDELL HULL<br>Defendant - Appellant, | Daniel Aguilar, Attorney<br>[COR NTC Government]<br>(see above)<br><br>Sharon Swingle<br>[COR NTC Government]<br>(see above) |
| NATIONAL SHOOTING SPORTS FOUNDATION, INC.<br>Intervenor-Defendant - Appellee, | Rachel Bayefsky<br>Direct: 202-887-4477<br>[COR NTC Retained]<br>Akin Gump Strauss Hauer & Feld LLP<br>2001 K Street, N.W.<br>Washington, DC 20006<br><br>Pratik A. Shah, Attorney<br>Direct: 202-887-4000<br>[COR NTC Retained]<br>Akin Gump Strauss Hauer & Feld LLP<br>2001 K Street, N.W.<br>Washington, DC 20006<br><br>James Edward Tysse, Esquire, Attorney<br>Direct: 202-887-4000<br>[COR NTC Retained]<br>Akin Gump Strauss Hauer & Feld LLP<br>2001 K Street, N.W.<br>Washington, DC 20006 |
| FREDRIC'S ARMS & SMITHS, LLC | Rachel Bayefsky |

Intervenor-Defendant - Appellee,                    Direct: 202-887-4477
                                                    [COR NTC Retained]
                                                    (see above)

                                                    Pratik A. Shah, Attorney
                                                    Direct: 202-887-4000
                                                    [COR NTC Retained]
                                                    (see above)

                                                    James Edward Tysse, Esquire, Attorney
                                                    Direct: 202-887-4000
                                                    [COR NTC Retained]
                                                    (see above)

------------------------------

BRADY                                               Neal Kumar Katyal
                Amicus Curiae - Pending,            [COR LD NTC Retained]
                                                    Hogan Lovells US LLP
                                                    Firm: 202-637-5600
                                                    555 Thirteenth Street, NW
                                                    Washington, DC 20004

STATE OF WASHINGTON; STATE OF CALIFORNIA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF HAWAII; STATE OF ILLINOIS; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEW JERSEY; STATE OF NEW YORK; STATE OF NORTH CAROLINA; STATE OF OREGON; COMMONWEALTH OF PENNSYLVANIA; STATE OF RHODE ISLAND; STATE OF VERMONT; COMMONWEALTH OF VIRGINIA; STATE OF NEW MEXICO; STATE OF WISCONSIN,

       Plaintiffs - Appellees,

  v.

UNITED STATES DEPARTMENT OF STATE; ANTONY J. BLINKEN, in his official capacity as Secretary of State; DIRECTORATE OF DEFENSE TRADE CONTROLS; MIKE MILLER, in his official capacity as Deputy Assistant Secretary of Defense Trade; SARAH HEIDEMA, in her official capacity as Director of Policy, Office of Defense Trade Controls Policy; UNITED STATES DEPARTMENT OF COMMERCE; GINA RAIMONDO, in her official capacity as Secretary of Commerce; BUREAU OF INDUSTRY AND SECURITY; MATTHEW S. BORMAN, in his official capacity as Acting Assistant Secretary of Commerce for Export Administration; CORDELL HULL,

       Defendants - Appellants,

NATIONAL SHOOTING SPORTS FOUNDATION, INC.; FREDRIC'S ARMS & SMITHS, LLC,

       Intervenor-Defendants - Appellees.

| | | |
|---|---|---|
| 05/06/2020 | ☐ 1<br>28 pg, 1.6 MB | DOCKETED CAUSE AND ENTERED APPEARANCES OF COUNSEL. SEND MQ: Yes. The schedule is set as follows: to be set. Preliminary Injunction Appeal. C.R. 3-3. [11682452] (RT) [Entered: 05/06/2020 12:38 PM] |
| 05/06/2020 | ☐ 2<br>2 pg, 125.77 KB | Filed clerk order (Deputy Clerk: TSP): The appeal filed May 5, 2020 is a preliminary injunction appeal. Accordingly, Ninth Circuit Rule 3-3 shall apply. The mediation questionnaire is due three days after the date of this order. If they have not already done so, within 7 calendar days after the filing date of this order, the parties shall make arrangements to obtain from the court reporter an official transcript of proceedings in the district court that will be included in the record on appeal. The briefing schedule shall proceed as follows: the opening brief and excerpts of record are due not later than June 2, 2020; the answering brief is due June 30, 2020 or 28 days after service of the opening brief, whichever is earlier; and the optional reply brief is due within 21 days after service of the answering brief. See 9th Cir. R. 3-3(b). No streamlined extensions of time will be approved. See 9th Cir. R. 31-2.2(a)(3). Any request for an extension of time to file a brief must be made by written motion under Ninth Circuit Rule 31-2.2(b). Failure to file timely the opening brief shall result in the automatic dismissal of this appeal by the Clerk for failure to prosecute. See 9th Cir. R. 42-1. [11682832] (AF) [Entered: 05/06/2020 03:31 PM] |
| 05/06/2020 | ☐ 3 | Filed (ECF) notice of appearance of Daniel J. Aguilar (U.S. Department of Justice, Civil Division, Appellate Staff) for Appellants Rich Ashooh, Bureau of Industry and Security, Directorate of Defense Trade Controls, DOS, Sarah Heidema, Cordell Hull, Mike Miller, Michael Pompeo, Wilbur Ross and USDOC. Date of service: 05/06/2020. (Party was previously proceeding with counsel.) [11682995] [20-35391] (Aguilar, Daniel) [Entered: 05/06/2020 05:32 PM] |
| 05/07/2020 | ☐ 4 | Filed (ECF) notice of appearance of Sharon Swingle (U.S. Department of Justice, Civil Division, Appellate Staff, 950 Pennsylvania Ave., N.W., Room 7250, Washington, D.C. 20530-0001) for Appellants Rich Ashooh, Bureau of Industry and Security, Directorate of Defense Trade Controls, DOS, Sarah Heidema, Cordell Hull, Mike Miller, Michael Pompeo, Wilbur Ross and USDOC. Date of service: 05/07/2020. (Party was previously proceeding with counsel.) [11683068] [20-35391] (Swingle, Sharon) [Entered: 05/07/2020 06:03 AM] |
| 05/07/2020 | ☐ 5 | Added Attorney(s) Daniel Aguilar, Sharon Swingle for party(s) Appellant Directorate of Defense Trade Controls Appellant Michael Pompeo Appellant Wilbur Ross Appellant Mike Miller Appellant Rich Ashooh Appellant Sarah Heidema Appellant Cordell Hull Appellant USDOC Appellant DOS Appellant Bureau of Industry and Security, in case 20-35391. [11683095] (NAC) [Entered: 05/07/2020 07:14 AM] |
| 05/07/2020 | ☐ 6<br>2 pg, 10.3 KB | Filed (ECF) Appellants Rich Ashooh, Bureau of Industry and Security, Directorate of Defense Trade Controls, DOS, Sarah Heidema, Cordell Hull, Mike Miller, Michael Pompeo, Wilbur Ross and USDOC Mediation Questionnaire. Date of service: 05/07/2020. [11683981] [20-35391] (Aguilar, Daniel) [Entered: 05/07/2020 02:22 PM] |
| 05/07/2020 | ☐ 7 | The Mediation Questionnaire for this case was filed on 05/07/2020.<br>To submit pertinent **confidential** information directly to the Circuit Mediators, please use the following **link**. Confidential submissions may include any information relevant to mediation of the case and settlement potential, including, but not limited to, settlement history, ongoing or potential settlement discussions, non-litigated party related issues, other pending actions, and timing considerations that may impact mediation efforts.[11684359]. [20-35391] (AD) [Entered: 05/07/2020 06:44 PM] |
| 05/11/2020 | ☐ 8<br>2 pg, 158.41 KB | Filed (ECF) Appellee State of Washington Mediation Questionnaire. Date of service: 05/11/2020. [11685894] [20-35391] (Beneski, Kristin) [Entered: 05/11/2020 08:23 AM] |
| 05/11/2020 | ☐ 9<br>1 pg, 91.53 KB | MEDIATION ORDER FILED: This case is NOT SELECTED for inclusion in the Mediation Program. Counsel are requested to contact the Circuit Mediator should circumstances develop that warrant further settlement discussions. The briefing schedule previously established by the court remains in effect. [11686239] (LW) [Entered: 05/11/2020 10:47 AM] |
| 05/11/2020 | ☐ 10 | The Mediation Questionnaire for this case was filed on 05/11/2020.<br>To submit pertinent **confidential** information directly to the Circuit Mediators, please use the following **link**. Confidential submissions may include any information relevant to mediation of the case and settlement potential, including, but not limited to, settlement history, ongoing or potential settlement discussions, non-litigated party related issues, other pending actions, and timing considerations that may impact mediation efforts.[11686488]. [20-35391] (AD) [Entered: 05/11/2020 12:44 PM] |
| 05/12/2020 | ☐ 11<br>5 pg, 105.93 KB | Filed (ECF) Appellants Rich Ashooh, Bureau of Industry and Security, Directorate of Defense Trade Controls, DOS, Sarah Heidema, Cordell Hull, Mike Miller, Michael Pompeo, Wilbur Ross and USDOC Unopposed Motion to extend time to File Opening brief until 07/02/2020. Date of service: 05/12/2020. [11688938] [20-35391] (Aguilar, Daniel) [Entered: 05/12/2020 07:26 PM] |
| 05/13/2020 | ☐ 12<br>2 pg, 93.58 KB | Filed clerk order (Deputy Clerk: LKK): (ECF Filing) filed by Appellants DOS, USDOC, Mike Miller, Michael Pompeo, Wilbur Ross, Directorate of Defense Trade Controls, Sarah Heidema, Bureau of Industry and Security, Rich Ashooh and Cordell Hull; Granting Motion [11] (ECF Filing) motion to extend time to file brief filed by Appellants DOS, USDOC, Mike Miller, Michael Pompeo, Wilbur Ross, Directorate of Defense Trade Controls, Sarah Heidema, Bureau of Industry and Security, Rich Ashooh and Cordell Hull. Appellants Rich Ashooh, Bureau of Industry and Security, Directorate of Defense Trade Controls, Sarah |

Heidema, Cordell Hull, Mike Miller, Michael Pompeo, Wilbur Ross, United States Department of Commerce and United States Department of State opening brief due 07/02/2020. Appellees Commonwealth of Massachusetts, Commonwealth of Pennsylvania, Commonwealth of Virginia, District of Columbia, State of California, State of Colorado, State of Connecticut, State of Delaware, State of Hawaii, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of North Carolina, State of Oregon, State of Rhode Island, State of Vermont, State of Washington and State of Wisconsin answering brief due 08/03/2020. The optional reply brief is due 21 days after service of the answering brief. [11689256] (LKK) [Entered: 05/13/2020 09:27 AM]

| 05/13/2020 | ☐ 13 | COURT CORRECTION: Changed National Shooting Sports Foundation, Inc. and Fredric's Arms & Smiths, LLC to Appellees. Added attorneys James Tysse, Pratik Shah, and Rachel Bayefsky as counsel to mentioned parties. [11689652] (SLM) [Entered: 05/13/2020 12:22 PM] |
| 05/13/2020 | ☐ 14 | Filed (ECF) notice of appearance of Pratik A. Shah (Akin Gump Strauss Hauer & Feld LLP, 2001 K Street, N.W., Washington, D.C. 20006) for Appellees Fredric's Arms & Smiths, LLC and National Shooting Sports Foundation, Inc.. Date of service: 05/13/2020. (Party was previously proceeding with counsel.) [11689685] [20-35391] (Shah, Pratik) [Entered: 05/13/2020 12:40 PM] |
| 05/13/2020 | ☐ 15 | Filed (ECF) notice of appearance of James E. Tysse (Akin Gump Strauss Hauer & Feld LLP, 2001 K Street, N.W., Washington, D.C. 20006) for Appellees Fredric's Arms & Smiths, LLC and National Shooting Sports Foundation, Inc.. Date of service: 05/13/2020. (Party was previously proceeding with counsel.) [11689695] [20-35391] (Tysse, James) [Entered: 05/13/2020 12:45 PM] |
| 05/13/2020 | ☐ 16 | Filed (ECF) notice of appearance of Rachel Bayefsky (Akin Gump Strauss Hauer & Feld LLP, 2001 K Street, N.W., Washington, D.C. 20006) for Appellees Fredric's Arms & Smiths, LLC and National Shooting Sports Foundation, Inc.. Date of service: 05/13/2020. (Party was previously proceeding with counsel.) [11689699] [20-35391] (Bayefsky, Rachel) [Entered: 05/13/2020 12:48 PM] |
| 05/13/2020 | ☐ 17 | Added Attorney(s) James Edward Tysse, Pratik A. Shah, Rachel Bayefsky for party(s) Appellee National Shooting Sports Foundation, Inc. Appellee Fredric's Arms & Smiths, LLC, in case 20-35391. [11689749] (NAC) [Entered: 05/13/2020 01:14 PM] |
| 06/01/2020 | ☐ 18 | Filed (ECF) notice of appearance of Sarah Ann Hunger (Office of the Illinois Attorney General, 100 West Randolph Street, Chicago, Illinois 60601) for Appellee State of Illinois. Date of service: 06/01/2020. (Party was previously proceeding with counsel.) [11706959] [20-35391] (Hunger, Sarah) [Entered: 06/01/2020 01:52 PM] |
| 06/01/2020 | ☐ 19 | Added Attorney(s) Sarah A. Hunger for party(s) Appellee State of Illinois, in case 20-35391. [11707138] (NAC) [Entered: 06/01/2020 02:47 PM] |
| 07/02/2020 | ☐ 20<br>100 pg, 876.3 KB | Submitted (ECF) Opening Brief for review. Submitted by Appellants Rich Ashooh, Bureau of Industry and Security, Directorate of Defense Trade Controls, DOS, Sarah Heidema, Cordell Hull, Mike Miller, Michael Pompeo, Wilbur Ross and USDOC. Date of service: 07/02/2020. [11740622] [20-35391] (Aguilar, Daniel) [Entered: 07/02/2020 09:17 AM] |
| 07/02/2020 | ☐ 21<br>457 pg, 10.08 MB | Submitted (ECF) excerpts of record. Submitted by Appellants Rich Ashooh, Bureau of Industry and Security, Directorate of Defense Trade Controls, DOS, Sarah Heidema, Cordell Hull, Mike Miller, Michael Pompeo, Wilbur Ross and USDOC. Date of service: 07/02/2020. [11740626] [20-35391]--[COURT UPDATE: Attached separated PDF of excerpts vols. 1-3. 07/08/2020 by KWG] (Aguilar, Daniel) [Entered: 07/02/2020 09:20 AM] |
| 07/07/2020 | ☐ 22<br>4 pg, 269.98 KB | Filed (ECF) Appellee State of Washington Unopposed Motion to extend time to file Answering brief until 09/02/2020. Date of service: 07/07/2020. [11744254] [20-35391] (Beneski, Kristin) [Entered: 07/07/2020 11:31 AM] |
| 07/07/2020 | ☐ 23<br>2 pg, 93.46 KB | Filed clerk order (Deputy Clerk: LKK): (ECF Filing) filed by Appellee State of Washington; Granting Motion [22] (ECF Filing) motion to extend time to file brief filed by Appellee State of Washington. Appellees Commonwealth of Massachusetts, Fredric's Arms & Smiths, LLC, National Shooting Sports Foundation, Inc., Commonwealth of Pennsylvania, Commonwealth of Virginia, District of Columbia, State of California, State of Colorado, State of Connecticut, State of Delaware, State of Hawaii, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of North Carolina, State of Oregon, State of Rhode Island, State of Vermont, State of Washington and State of Wisconsin answering brief due 09/02/2020. The optional reply brief is due 21 days after service of the answering brief. [11744600] (LKK) [Entered: 07/07/2020 01:44 PM] |
| 07/08/2020 | ☐ 24<br>2 pg, 96.58 KB | Filed clerk order: The opening brief [20] submitted by appellants is filed. Within 7 days of the filing of this order, filer is ordered to file 6 copies of the brief in paper format, accompanied by certification (attached to the end of each copy of the brief) that the brief is identical to the version submitted electronically. Cover color: blue. The excerpts of record [21] submitted by appellants are filed. Within 7 days of this order, filer is ordered to file 3 copies of the excerpts in paper format securely bound on the left side, with white covers. The paper copies shall be submitted to the principal office of the Clerk. [11745446] (KWG) [Entered: 07/08/2020 08:38 AM] |
| 07/13/2020 | ☐ 25 | Received 3 paper copies of excerpts of record [21] in 3 volume(s) filed by Appellants. [11751017] (KWG) |

|            |   |     |                                                                                                                                                                                                                                                                                                                                                                                                                                                                           |
|------------|---|-----|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|            |   |     | [Entered: 07/13/2020 03:01 PM]                                                                                                                                                                                                                                                                                                                                                                                                                                            |
| 07/13/2020 | ☐ | 26  | Received 6 paper copies of Opening Brief [20] filed by Appellants. [11751991] (KWG) [Entered: 07/14/2020 09:49 AM]                                                                                                                                                                                                                                                                                                                                                         |
| 08/31/2020 | ☐ | 27<br>3 pg, 211.48 KB | Filed (ECF) Appellees Fredric's Arms & Smiths, LLC and National Shooting Sports Foundation, Inc. Correspondence: Letter re: Scope of Remedy. Date of service: 08/31/2020 [11807864] [20-35391] (Shah, Pratik) [Entered: 08/31/2020 01:08 PM]                                                                                                                                                                                                                                |
| 09/02/2020 | ☐ | 28<br>86 pg, 548.11 KB | Submitted (ECF) Answering Brief for review. Submitted by Appellees Commonwealth of Massachusetts, Commonwealth of Pennsylvania, Commonwealth of Virginia, District of Columbia, State of California, State of Colorado, State of Connecticut, State of Delaware, State of Hawaii, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of North Carolina, State of Oregon, State of Rhode Island, State of Vermont, State of Washington and State of Wisconsin. Date of service: 09/02/2020. [11811633] [20-35391] (Beneski, Kristin) [Entered: 09/02/2020 05:25 PM] |
| 09/02/2020 | ☐ | 29<br>450 pg, 41.75 MB | Submitted (ECF) supplemental excerpts of record. Submitted by Appellees Commonwealth of Massachusetts, Commonwealth of Pennsylvania, Commonwealth of Virginia, District of Columbia, State of California, State of Colorado, State of Connecticut, State of Delaware, State of Hawaii, State of Illinois, State of Maine, State of Maryland, State of Michigan, State of Minnesota, State of New Jersey, State of New Mexico, State of New York, State of North Carolina, State of Oregon, State of Rhode Island, State of Vermont, State of Washington and State of Wisconsin. Date of service: 09/02/2020. [11811668] [20-35391]--[COURT UPDATE: Updated entry to reflect all filers of the excerpts. 09/03/2020 by SML] (Beneski, Kristin) [Entered: 09/02/2020 05:46 PM] |
| 09/03/2020 | ☐ | 30<br>2 pg, 96.14 KB | Filed clerk order: The answering brief [28] submitted by Commonwealth of Massachusetts; et al., is filed. Within 7 days of the filing of this order, filer is ordered to file 6 copies of the brief in paper format, accompanied by certification (attached to the end of each copy of the brief) that the brief is identical to the version submitted electronically. Cover color: red. The supplemental excerpts of record [29] submitted by Commonwealth of Massachusetts; et al., are filed. Within 7 days of this order, filer is ordered to file 3 copies of the excerpts in paper format securely bound on the left side, with white covers. The paper copies shall be submitted to the principal office of the Clerk. [11812870] (SML) [Entered: 09/03/2020 04:07 PM] |
| 09/08/2020 | ☐ | 31  | Received 3 paper copies of supplemental excerpts of record [29] in 2 volume(s) filed by Appellees Commonwealth of Massachusetts, et al.. [11815851] (KWG) [Entered: 09/08/2020 12:52 PM]                                                                                                                                                                                                                                                                                    |
| 09/08/2020 | ☐ | 32  | Received 6 paper copies of Answering Brief [28] filed by Commonwealth of Massachusetts, et al. [11816184] (DB) [Entered: 09/08/2020 02:52 PM]                                                                                                                                                                                                                                                                                                                              |
| 09/09/2020 | ☐ | 33  | COURT DELETED INCORRECT ENTRY. Notice about deletion sent to case participants registered for electronic filing. Correct Entry: [34]. Original Text: Submitted (ECF) Amicus brief for review (by government or with consent per FRAP 29(a)). Submitted by Brady. Date of service: 09/09/2020. [11818171] [20-35391] (Katyal, Neal) [Entered: 09/09/2020 04:22 PM]                                                                                                            |
| 09/09/2020 | ☐ | 34<br>37 pg, 433.67 KB | Submitted (ECF) Amicus brief for review and filed Motion to become amicus curiae. Submitted by Brady. Date of service: 09/11/2020. [11820466] [20-35391]--[COURT UPDATE: Backdated entry to reflect original submission of the brief. 09/11/2020 by SML] (Katyal, Neal) [Entered: 09/11/2020 11:22 AM]                                                                                                                                                                      |
| 09/11/2020 | ☐ | 35  | Entered appearance of Amicus Curiae - Pending Brady. [11821390] (SML) [Entered: 09/11/2020 05:12 PM]                                                                                                                                                                                                                                                                                                                                                                       |
| 09/21/2020 | ☐ | 36<br>2 pg, 103.96 KB | Filed clerk order (Deputy Clerk: SSR): Appellees' correspondence (Docket Entry No. [27] ) is referred to the panel that will consider the merits of this case for whatever consideration the panel deems appropriate. The motion (Docket Entry No. [34] ) of Brady for leave to file an amicus brief and any responses are referred for resolution to the panel that will consider the merits of the case. Within 7 days after the date of this order, amicus curiae is ordered to file 6 copies of the brief in paper format, with a green cover, accompanied by certification (attached to the end of each copy of the brief) that the brief is identical to the version submitted electronically. The Form 18 certificate is available on the court's website at http://www.ca9.uscourts.gov/forms/. The paper copies shall be submitted to the principal office of the Clerk. The address for regular U.S. mail is P.O. Box 193939, San Francisco, CA 94119-3939. The address for overnight mail is 95 Seventh Street, San Francisco, CA 94103-1526. [11830295] (RT) [Entered: 09/21/2020 09:40 AM] |
| 09/23/2020 | ☐ | 37  | This case is being considered for an upcoming oral argument calendar in San Francisco<br><br>Please review the San Francisco sitting dates for January 2021 and the 2 subsequent sitting months in that location at http://www.ca9.uscourts.gov/court_sessions. If you have an unavoidable conflict on any of the dates, please file Form 32 within 3 business days of this notice using the CM/ECF filing type **Response to Case Being Considered for Oral Argument**. Please follow the form's instructions carefully.<br><br>When setting your argument date, the court will try to work around unavoidable conflicts; the court is not able to accommodate mere scheduling preferences. You will receive notice that your case has been assigned to a calendar approximately 10 weeks before the scheduled oral argument date. |

| | | |
|---|---|---|
| | | If the parties wish to discuss settlement before an argument date is set, they should jointly request referral to the mediation unit by filing a letter **within 3 business days of this notice**, using CM/ECF (**Type of Document**: Correspondence to Court; **Subject**: request for mediation).[11833701]. [20-35391] (AW) [Entered: 09/23/2020 08:33 AM] |
| 09/23/2020 | ☐ [38](#) <br> 34 pg, 302.42 KB | Submitted (ECF) Reply Brief for review. Submitted by Appellants DOS, Rich Ashooh, Bureau of Industry and Security, Directorate of Defense Trade Controls, Sarah Heidema, Cordell Hull, Mike Miller, Michael Pompeo, Wilbur Ross and USDOC. Date of service: 09/23/2020. [11834248] [20-35391] (Aguilar, Daniel) [Entered: 09/23/2020 11:49 AM] |
| 09/23/2020 | ☐ 39 | Received 6 paper copies of Amicus Brief [34] filed by Brady. [11834316] (DB) [Entered: 09/23/2020 12:22 PM] |
| 09/24/2020 | ☐ [40](#) <br> 2 pg, 95.84 KB | Filed clerk order: The reply brief [38] submitted by appellants is filed. Within 7 days of the filing of this order, filer is ordered to file 6 copies of the brief in paper format, accompanied by certification (attached to the end of each copy of the brief) that the brief is identical to the version submitted electronically. Cover color: gray. The paper copies shall be submitted to the principal office of the Clerk. [11835821] (SML) [Entered: 09/24/2020 01:52 PM] |
| 09/28/2020 | ☐ 41 | Received 6 paper copies of Reply Brief [38] filed by appellants. [11839042] (MAE) [Entered: 09/28/2020 12:07 PM] |
| 10/26/2020 | ☐ 42 | Filed text clerk order (Deputy Clerk: OC): The motion to become amicus curiae [34], is granted. [11871871] (OC) [Entered: 10/26/2020 02:41 PM] |
| 10/26/2020 | ☐ [43](#) <br> 1 pg, 91.54 KB | Filed clerk order: The amicus brief [34] submitted by Brady is filed. No additional paper copies are required. [11872216] (SML) [Entered: 10/26/2020 04:39 PM] |
| 11/01/2020 | ☐ 44 | Notice of Oral Argument on Monday, January 11, 2021 - 09:00 A.M. - Courtroom 1 - Scheduled Location: San Francisco CA. <br> The hearing time is the local time zone at the scheduled hearing location, even if the argument is fully remote. <br><br> View the Oral Argument Calendar for your case **here**. <br><br> NOTE: Although your case is currently scheduled for oral argument, the panel may decide to submit the case on the briefs instead. *See* Fed. R. App. P. 34. Absent further order of the court, if the court does determine that oral argument is required in this case, any argument may be held **remotely** with all of the judges and attorneys appearing by video or telephone. Travel to a courthouse will not be required. If the panel determines that it will hold oral argument, the Clerk's Office will be in contact with you directly at least two weeks before the set argument date to make any necessary arrangements for remote appearance. <br><br> Be sure to review the **GUIDELINES** for important information about your hearing, including when to be available (30 minutes before the hearing time) and when and how to submit additional citations (filing electronically as far in advance of the hearing as possible). <br><br> If you are the specific attorney or self-represented party who will be arguing, use the **ACKNOWLEDGMENT OF HEARING NOTICE** filing type in CM/ECF no later than 21 days before Monday, January 11, 2021. No form or other attachment is required. If you will not be arguing, do not file an acknowledgment of hearing notice.[11878010]. [20-35391] (AW) [Entered: 11/01/2020 06:11 AM] |
| 11/02/2020 | ☐ 45 | Filed (ECF) notice of appearance of Loren Linn AliKhan (Office of the Attorney General for the District of Columbia, 400 6th Street, NW, Suite 8100, Washington, D.C. 20001) for Appellee District of Columbia. Date of service: 11/02/2020. (Party was previously proceeding with counsel.) [11879017] [20-35391] (AliKhan, Loren) [Entered: 11/02/2020 01:34 PM] |
| 11/02/2020 | ☐ 46 | Added Attorney(s) Loren L. AliKhan for party(s) Appellee District of Columbia, in case 20-35391. [11879068] (NAC) [Entered: 11/02/2020 01:43 PM] |
| 11/02/2020 | ☐ 47 | Filed (ECF) Acknowledgment of hearing notice by Attorney Daniel Aguilar for Appellants Rich Ashooh, Bureau of Industry and Security, Directorate of Defense Trade Controls, Sarah Heidema, Cordell Hull, Mike Miller, Michael Pompeo, Wilbur Ross, USDOC and DOS. Hearing in San Francisco on 01/11/2021 at 09:00 A.M. (Courtroom: Courtroom 1). Filer sharing argument time: No. (Argument minutes: 20.) Special accommodations: NO. Filer admission status: I certify that I am admitted to practice before this Court. Date of service: 11/02/2020. [11879729] [20-35391] (Aguilar, Daniel) [Entered: 11/02/2020 05:58 PM] |
| 12/15/2020 | ☐ 48 | Filed (ECF) notice of appearance of Brendan C. Selby (Attorney General of Washington, 800 Fifth Avenue, Suite 2000, Seattle, WA 98104-3188) for Appellee State of Washington. Date of service: 12/15/2020. (Party was previously proceeding with counsel.) [11928268] [20-35391] (Selby, Brendan) [Entered: 12/15/2020 12:37 PM] |
| 12/15/2020 | ☐ 49 | Added Attorney(s) Brendan Selby for party(s) Appellee State of Washington, in case 20-35391. [11928346] (NAC) [Entered: 12/15/2020 01:18 PM] |

| 12/15/2020 | ☐ 50 | Filed (ECF) Acknowledgment of hearing notice by Attorney Brendan Selby for Appellee State of Washington. Hearing in San Francisco on 01/11/2021 at 09:00 A.M. (Courtroom: 1, 3rd Floor Rm 338). Filer sharing argument time: No. (Argument minutes: 20.) Special accommodations: NO. Filer admission status: I certify that I am admitted to practice before this Court. Date of service: 12/15/2020. [11928733] [20-35391] (Selby, Brendan) [Entered: 12/15/2020 03:25 PM] |
|---|---|---|
| 12/17/2020 | ☐ 51 | Filed (ECF) notice of appearance of Jillian Renee O'Brien (Office of the Attorney General of Maine, 6 State House Station, Augusta, ME 04333-0006) for Appellee State of Maine. Substitution for Attorney Ms. Susan P. Herman for Appellee State of Maine. Date of service: 12/17/2020. (Party was previously proceeding with counsel.) [11930841] [20-35391] (O'Brien, Jillian) [Entered: 12/17/2020 08:51 AM] |
| 12/17/2020 | ☐ 52 | Attorney Susan P. Herman in 20-35391 substituted by Attorney Jillian Renee O'Brien in 20-35391 [11930857] (NAC) [Entered: 12/17/2020 09:03 AM] |
| 01/11/2021 | ☐ 53 | ARGUED AND SUBMITTED TO JAY S. BYBEE, RYAN D. NELSON and ROBERT H. WHALEY. [11958768] (WWP) [Entered: 01/11/2021 11:34 AM] |
| 01/11/2021 | ☐ 58<br>1 pg, 20.82 MB | Filed Audio recording of oral argument.<br>**Note:** Video recordings of public argument calendars are available on the Court's website, at<br>http://www.ca9.uscourts.gov/media/<br>[11986966] (BJK) [Entered: 01/30/2021 12:54 PM] |
| 01/16/2021 | ☐ 54 | Filed (ECF) Notice of withdrawal of counsel. Filed by Attorney Matthew Colangelo for Appellee State of New York. Party proceeding without counsel: No. Date of service: 01/16/2021. [11966752] [20-35391] (Colangelo, Matthew) [Entered: 01/16/2021 05:59 PM] |
| 01/18/2021 | ☐ 55 | Filed (ECF) Notice of withdrawal of counsel. Filed by Attorney Matthew J. Glover for Appellants Rich Ashooh, Bureau of Industry and Security, Directorate of Defense Trade Controls, Sarah Heidema, Cordell Hull, Mike Miller, Michael Pompeo, Wilbur Ross, USDOC and DOS. Party proceeding without counsel: No. Date of service: 01/18/2021. [11966860] [20-35391] (Glover, Matthew) [Entered: 01/18/2021 05:34 PM] |
| 01/18/2021 | ☐ 56 | Terminated Matthew J. Glover for DOS, USDOC, Wilbur Ross, Michael Pompeo, Mike Miller, Cordell Hull, Sarah Heidema, Directorate of Defense Trade Controls, Bureau of Industry and Security and Rich Ashooh in 20-35391 [11966868] (NAC) [Entered: 01/18/2021 07:26 PM] |
| 01/18/2021 | ☐ 57 | Terminated Matthew Colangelo for State of New York in 20-35391 [11966869] (NAC) [Entered: 01/18/2021 07:28 PM] |
| 02/01/2021 | ☐ 59 | Terminated Eric Soskin for DOS, USDOC, Wilbur Ross, Michael Pompeo, Mike Miller, Cordell Hull, Sarah Heidema, Directorate of Defense Trade Controls, Bureau of Industry and Security and Rich Ashooh in 20-35391 (due to incorrect ECF contact information) [11988041] (RY) [Entered: 02/01/2021 12:17 PM] |
| 04/27/2021 | ☐ 60 | Appellants Michael Pompeo, Wilbur Ross and Rich Ashooh in 20-35391 substituted by Appellants Antony J. Blinken, Gina Raimondo and Matthew S. Borman in 20-35391 [12087785] (TYL) [Entered: 04/27/2021 08:48 AM] |
| 04/27/2021 | ☐ 61<br>40 pg, 376.14 KB | FILED OPINION (JAY S. BYBEE, RYAN D. NELSON and ROBERT H. WHALEY) VACATED and REMANDED with instructions to dismiss. Judge: RDN Authoring, Judge: RHW Dissenting. FILED AND ENTERED JUDGMENT. [12087805] (AKM) [Entered: 04/27/2021 08:56 AM] |
| 04/27/2021 | ☐ 62<br>1 pg, 90.49 KB | Filed clerk order (Deputy Clerk: AKM): At the direction of the Court, the parties shall bear their own costs. [12087809] (AKM) [Entered: 04/27/2021 08:57 AM] |

Clear All

● **Documents and Docket Summary**
○ **Documents Only**

☑ **Include Page Numbers**

**Selected Pages:** 0     **Selected Size:** 0 KB

View Selected

---

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| U.S. Court of Appeals for the 9th Circuit - 04/29/2021 13:13:49 | | | |
| **PACER Login:** | cflores6861 | **Client Code:** | 2281.004 |
| **Description:** | Docket Report (filtered) | **Search Criteria:** | 20-35391 |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |