IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, INC., | § § § § | Case No. 1:18-CV-637 |
| Plaintiffs, | § § § | |
| v. | § § | |
| UNITED STATES DEPARTMENT OF STATE, ANTHONY BLINKEN, in his official capacity as Secretary of State; DIRECTORATE OF DEFENSE TRADE CONTROLS; MIKE MILLER, in his official capacity as Deputy Assistant Secretary of Defense Trade Controls; SARAH HEIDEMA, in her official capacity as Director of Policy, Office of Defense Trade Controls Policy, | § § § § § § § § § § § § § | Plaintiffs' Motion for a Temporary Restraining Order Against the State Department |
| and | § § | |
| GURBIR GREWAL, Attorney General of the State of New Jersey | § § § | |
| Defendants. | § § | |

Plaintiffs Defense Distributed and the Second Amendment Foundation, Inc. ("SAF") move against the United States Department of State, Anthony Blinken, Directorate of Defense Trade Controls, Mike Miller, and Sarah Heidema ("the State Department") for the Court to immediately (1) issue an emergency temporary restraining order, and (2) issue an order setting an expedited preliminary injunction briefing and hearing schedule. Without this relief, law abiding citizens will have their Constitutional rights trampled by federal officials engaged in blatantly illegal censorship—all with respect to computer files that *are already online and always will be*.

## SUMMARY OF THE ARGUMENT

Two days ago (April 28, 2021) Defense Distributed began publishing a set of ~16,000 computer files regarding 3D–printed firearms on the internet for free download by the public ("the April 2021 Files").  Doc. 148-74 at 2-3.  Defense Distributed is still publishing the April 2021 Files, which are a subset of the case's overall subject: digital firearms information—First Amendment speech about the Second Amendment.  Powerful legal doctrines protect this speech. But if the State Department has its way, arbitrary censorship will bring this freedom to a halt.

Yesterday (April 29, 2021) the State Department unabashedly threatened to punish Defense Distributed for publishing the April 2021 Files.  Attorneys called Defense Distributed's counsel to declare that the State Department deems Defense Distributed's publication of the April 2021 Files a violation of the International Traffic in Arms Regulations, 22 C.F.R. Parts 120-130, and demand that Defense Distributed immediately cease publication of the files.  Exactly how gravely the State Department plans to punish Defense Distributed is unknown, except that President Biden less than twenty-four hours earlier told the nation that he would wield "everything in my power."[1]

Ultimately, this litigation will show that the State Department cannot censor any of the digital firearms information that Defense Distributed shares with upstanding citizens like SAF's members.  The attack on the April 2021 Files is an exemplary beginning, in that it reveals the fundamentally lawless nature of the State Department's doctrine and the dire need for fast relief.

First and foremost, Defense Distributed's publication of the April 2021 Files was and is protected from the federal censorship by the First Amendment.  Core First Amendment speech is at issue, and it is undoubtedly being sanctioned because its subject is firearms.  The State Department cannot possibly satisfy the strict scrutiny triggered by ITAR's content-based restraint.

---

[1] The White House, Briefing Room: Remarks as Prepared for Delivery by President Biden — Address to a Joint Session of Congress (April 28, 2021), *available at* https://bit.ly/2S793Uu.

Federal censorship of the April 2021 Files also violates the Settlement Agreement, and by extension the Administrative Procedure Act and Fifth Amendment.  By refusing to comply with the Settlement Agreement for no good reason, the State Department is materially breaching a contract, acting arbitrarily and capriciously, and failing to comply with basic Due Process precepts.

Furthermore, Defense Distributed's publication of the April 2021 Files was and is authorized by regulatory changes that, while once the subject of a district court's nationwide preliminary injunction, ***were revived by the Ninth Circuit on April 27***.  No one disputes this decision's substance.  All agree that it protects Defense Distributed's publication of the April 2021 Files from ITAR scrutiny.  The quibble is about timing.  Did it take effect already, as the decision itself says; or does it only matter after mandate issues, as the State Department says?  The State Department's hypertechnical delay idea is plainly wrong, as well as too little to justify its actions.  This may be the first case ever in which a federal agency *that just won an appeal upholding its regulations* turns around on political foes to say that *those same regulations are not the law*.

What legitimate end would punishing Defense Distributed serve?  None.  The cat is out of the bag.  After just two days online, total downloads of the April 2021 Files exceeded ~40,000 and users downloaded every single one of the ~16,000 April 2021 Files at least once.  Regardless of whether or not defcad.com continues to publish the April 2021 Files, the independent re-publishers that have already obtained the files will freely re-publish them on new site after new site forever.  Whatever goals ITAR controls are supposed to achieve cannot possibly be achieved here.

Unless and until the State Department's draconian censorship campaign is enjoined, Defense Distributed, SAF, and the entire citizenry will suffer massive amounts of irreparable harm.  Thus, Plaintiffs request that the Court immediately (1) issue a temporary restraining order stopping the State Department's enforcement of ITAR controls against Defense Distributed's publication

of the April 2021 Files, and (2) issue an order setting an expedited preliminary injunction briefing and hearing schedule. Without this relief, Plaintiffs' free speech rights will be trampled by blatantly illegal censorship—all with respect to files that *are already online and always will be*.

## STATEMENT OF THE CASE

Plaintiffs' Second Amended Complaint states the facts. Doc. 117 (hereinafter "Compl."). Plaintiffs adopt that pleading here by reference. *See* Fed. R. Civ. P. 10(c). Evidentiary exhibits proving the allegations are submitted in Plaintiffs' Appendix, Doc. 148 (hereinafter "PX").[2]

This case concerns extraordinarily important questions of free speech regarding the First Amendment right to speak about the Second Amendment. Defense Distributed and the Second Amendment Foundation are peaceful, law-abiding organizations committed to preserving, protecting, and promoting the American individual right to keep and bear arms in both traditional and modern contexts. At stake now is the modern right to speak about the Second Amendment by sharing computer files with digital firearms information. Even though longstanding American free speech principles protect this right, the United States Department of State has for years been subjecting Defense Distributed and SAF to arbitrary, capricious, and unconstitutional censorship.

The United States of America can never abridge the freedom of speech—especially where, as here, the State Department made a legally-enforceable contract to protect Defense Distributed and SAF's right to engage in the speech at issue by performing a series of administrative obligations. But instead of performing those critical protective obligations, the State Department violated the Constitution, administrative law, and more in failing to comply. Hence, Defense

---

[2] The Court should employ Federal Rule of Evidence 201 to take judicial notice of facts such as other courts' dockets, *Orabi v. Att'y Gen. of the U.S.*, 738 F.3d 535, 537 & n.1 (3d Cir. 2014), and pertinent internet websites *see United States v. Flores*, 730 F. App'x 216, 221 n.1 (5th Cir. 2018) (unpublished) (Haynes, J., concurring); *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005); *Helen of Troy, L.P. v. Zotos Corp.*, 235 F.R.D. 634, 640 (W.D. Tex. 2006).

Distributed and SAF sued the State Department to halt this wrongdoing and obtain remedies due to them under the Constitution, the Administrative Procedure Act, and other federal laws.

## I.      Digital Firearms Information is Speech.

This action concerns digital firearms information.  *See* Compl. at 10-12, ¶¶ 36-41.  Digital firearms information in general, and Defense Distributed's digital firearms information in particular, has all of the following properties:

- It is "digital" because it exists in the form of coded computer files, as opposed to analog media like printed books.  *See* Compl. at 10, ¶ 36.

- It is "information" because it conveys knowledge without advocating, inciting, or producing any action.  *See* Compl. at 10, ¶ 36.

- It pertains to both entire firearms and individual firearm components, and addresses their physical properties, production methods, and uses.  *See* Compl. at 10, ¶ 36.

- It exists in a wide variety of computer file formats.  *See* Compl. at 10, ¶ 37.  Common formats include portable document format (.pdf) files, DWG (.dwg) files, Standard for the Exchange of Product Data ("STEP") (.stp) files, stereolithography (.stl) files, Initial Graphics Exchange Specification (.igs) files, SoLiDworks PaRT (.sldprt) files, and SketchUp (.skp) files, as well as plain text (.txt) files with notes, instructions, and comments. *See* Compl. at 10, ¶ 37.

- It includes, but is not limited to, what authorities refer to as "Computer Aided Design files" or "CAD files."   *See* Compl. at 10-11, ¶ 38; Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List (USML), 85 Fed. Reg. 4136, 4140-42, 4172 (Jan. 23, 2020).  CAD files are used primarily for abstract design.  *See* Compl. at

10-11, ¶ 38.  Users with the requisite computer hardware, software, and expertise can employ CAD files to construct and manipulate complex two- and three-dimensional digital models of physical objects.  *See* Compl. at 10-11, ¶ 38.  These models serve a wide variety of important purposes apart from object fabrication.  *See* Compl. at 10-11, ¶ 38.  Examples include the computerized study of object properties, rendition of object images for product visualization, and parametric modeling of object families.  *See* Compl. at 10-11, ¶ 38.  According to authorities, CAD files are not ready for insertion into object-producing equipment such as computer numerically controlled machine tools and additive manufacturing equipment (e.g., 3D printers).  *See* Compl. at 10-11, ¶ 38; Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List (USML), 85 Fed. Reg. 4136, 4140-42, 4172 (Jan. 23, 2020).

- It includes, but is not limited to, what authorities refer to as "Computer Aided Manufacturing files" or "CAM files."  *See* Compl. at 11, ¶ 39; Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List (USML), 85 Fed. Reg. 4136, 4140-42, 4172 (Jan. 23, 2020).  Like CAD files, CAM files can be used to construct and manipulate the digital two- and three-dimensional models of physical objects that serve design purposes apart from production.  *See* Compl. at 11, ¶ 39.  According to authorities, unlike CAD files, CAM files are ready for insertion into object-producing equipment such as computer numerically controlled machine tools and additive manufacturing equipment (*e.g.*, 3D printers).  *See* Compl. at 11, ¶ 39;  Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer

Warrant Control Under the United States Munitions List (USML), 85 Fed. Reg. 4136, 4140-42, 4172 (Jan. 23, 2020).

- It includes, but is not limited to, non-CAD and non-CAM files such as plain text (.txt) files with notes, instructions, and comments. *See* Compl. at 12-13, ¶ 44-46.

With respect to 3D-printing processes, digital firearms information in general and Defense Distributed's digital firearms information in particular do *not* produce anything automatically. *See* Compl. at 11, ¶ 40; Doc. 148-75. The files at issue are not functional software. *See id.* They do not self-execute. *See id.* They are mere information stores. *See id.* To fabricate an object as designed in such a CAD or CAM file, a user must know how and choose to orchestrate a process involving substantial additional software (to interpret and implement the files into the motions of a 3D print head), substantial additional hardware (e.g., the computer running the software, the 3D printer), substantial physical labor, substantial amounts of time, and the requisite raw materials. *See id.*

The physical laws governing 3D-printer fabrication processes apply to all objects, including firearms. *See* Compl. at 12, ¶ 41. Even with a perfectly accurate set of digital firearms information, the most powerful software, and a state-of-the-art 3D printer, the digital model of a firearm component does not fabricate the component on its own. *See* Compl. at 12, ¶ 41. Firearm component fabrication is not an automatic process. *See* Compl. at 12, ¶ 41. It occurs only if and when a person chooses to perform a complex series of actions entailing considered volition and judgment, such as adapting and tailoring the design, selecting suitable component materials, choosing an effective manufacturing process, and opting to personally complete an extensive set of fabrication steps with the requisite software, hardware, and raw materials. *See* Compl. at 12, ¶ 41.

6

## II.     Defense Distributed Publishes Digital Firearms Information.

Defense Distributed exists to promote the Second Amendment's individual right to keep and bear Arms.  *See* Compl. at 12, ¶ 42.  To that end, Defense Distributed has published, is publishing, and intends to continue publishing a wide variety of digital firearms information to the American public.  *See* Compl. at 12, ¶ 42; Doc. 148-71; Doc. 148-73; Doc. 148-76.

All of Defense Distributed's past, present, and future publications constitute an important expression of technical, scientific, artistic, and political matter in the abstract, apart from any application that the information's recipient might choose to devote it to.  *See* Compl. at 12, ¶ 43. They do not and are not intended to advocate, incite, or produce action.  *See* Compl. at 13, ¶¶ 48-50.  And they especially do not and are not intended to advocate, incite, or produce any *imminent* action.  *See id.*  To fabricate an object addressed by Defense Distributed's publications, the 3D-printing technologies at issue necessarily require a user to knowingly apply deliberate, focused will over the course of an extended period of time.  *See* Compl. at 13-14, ¶ 51.

Defcad.com (hereinafter "DEFCAD") is a website for which Defense Distributed is and at all relevant times has been responsible.  *See* Compl. at 14, ¶ 52; Ex. 1 at 1.  DEFCAD was, is, and will continue to be Defense Distributed's primary (though not exclusive) publication medium.  *See* Compl. at 14, ¶ 52; Ex. 1 at 1-2.

### A.     Defense Distributed's 2012–2013 Publications.

From approximately December 2012 to May 2013, Defense Distributed published a substantial set of computer files with digital firearms information to DEFCAD by letting any site visitor download them directly for free.  *See* Compl. at 14-15, ¶ 53; Ex. 1 at 1-2; Ex. 2 at 1-4.  The computer files that Defense Distributed published to DEFCAD during this period were downloaded millions of times.  *See* Compl. at 15, ¶ 54.

**B.      Defense Distributed's July 2018 Publications.**

From the evening of July 27, 2018 until the afternoon of July 31, 2018, Defense Distributed published a substantial set of computer files with digital firearms information to DEFCAD by letting any site visitor download them directly for free.  *See* Compl. at 15-16, ¶ 55.  The State Department provided advance approval of these publications.  *See* Compl. at 15-16, ¶ 55.  The computer files that Defense Distributed published to DEFCAD during this period were downloaded hundreds of thousands of times.  *See* Compl. at 16, ¶ 56.  During this period, Defense Distributed also published the same computer files with digital firearms information at a brick-and-mortar public library in Austin, Texas by hosting the computer files in formats that patrons could access via computer workstations.  *See* Compl. at 16, ¶ 57.

**C.      Defense Distributed's August–November 2018 Publications.**

From approximately August 2018 to November 2018, Defense Distributed distributed a substantial set of computer files with digital firearms information via the mail by making its computer files available for shipment on physical storage devices.  *See* Compl. at 16, ¶ 58.  Defense Distributed did so by using an ecommerce platform on DEFCAD to facilitate the transaction and using the U.S. Postal Service as its means of delivering the information.   *See* Compl. at 16, ¶ 58.  After customers entered an order using DEFCAD's online ecommerce platform, Defense Distributed put the information on a USB drive or SD card and mailed the drive or card to customers via the U.S. Postal Service.  *See* Compl. at 16, ¶ 58.

During this period, Defense Distributed also offered and advertised its mailed distribution of digital firearms information to potential recipients.  *See* Compl. at 16, ¶ 59.  These efforts included advertisements and offers on DEFCAD itself, participation in trade shows, and e-mail advertisements.  *See* Compl. at 16, ¶ 59.

8

For anyone dealing with digital firearms information, the postal mail alternative to internet publication is not an adequate substitute. *See* Compl. at 16-17, ¶ 60. Internet communication of and about Defense Distributed's digital firearms information is essential for many reasons. *See* Compl. at 16-17, ¶ 60. Moreover, internet communication is important because it is the *only* way to ensure open source development and commitment to the public domain placement outside the bounds of intellectual property strictures. *See* Compl. at 16-17, ¶ 60.

### D.  Defense Distributed's 2020-April 2021 Publications.

From March 27, 2020, until April 2021, Defense Distributed published a substantial set of computer files with digital firearms information via DEFCAD. *See* Compl. at 17, ¶ 61. The computer files with digital firearms information published via DEFCAD during this period included original and legacy firearms models, CAD data, CAM data, blueprints and drawings. *See* Compl. at 17, ¶ 61.

This publication period entailed vast differences from prior publication periods. Unlike Defense Distributed's prior periods of publication on DEFCAD, Defense Distributed in this publication period did not let DEFCAD visitors download files freely. *See* Compl. at 17, ¶ 62. In this publication period, Defense Distributed used DEFCAD to facilitate secure file transfer via electronic transmissions that comply with current federal law by, *inter alia*, utilizing secure end-to-end encryption. *See* Compl. at 17, ¶ 62. Unlike Defense Distributed's prior periods of publication on DEFCAD, Defense Distributed in this publication period did not let DEFCAD visitors access the files at issue without any screening. *See* Compl. at 17, ¶ 63. In this publication period, Defense Distributed's screening procedures deemed certain DEFCAD visitors ineligible for file distribution. *See* Compl. at 17, ¶ 63. Unlike Defense Distributed's prior periods of publication on DEFCAD, Defense Distributed in this publication period did not let DEFCAD make

files available to foreign persons or persons outside the United States.  *See* Compl. at 17, ¶ 64.
And unlike Defense Distributed's prior periods of publication on DEFCAD, Defense Distributed
in this publication period did *not* make its files available to residents of and persons in the State of
New Jersey who lack a federal firearms license.  *See* Compl. at 17, ¶ 65

As compared to Defense Distributed's prior methods of publication on DEFCAD, this
method of publication on DEFCAD substantially burdened Defense Distributed's exercise of free
speech and would not be utilized but for the wrongful actions of the State Department.  *See* Compl.
at 18, ¶ 66.

### E.   Defense Distributed's April 2021 Files—*at issue now*

Beginning on April 28, 2021, and continuing to the present, Defense Distributed published
another substantial set of computer files with digital firearms information via DEFCAD ("the April
2021 Files").  *See generally* Doc. 148-74 at 2-3.  The April 2021 Files include original and legacy
firearms models, CAD data, blueprints, and drawings.  *See id.*  The April 2021 Files amount to
approximately 16,000 digital files.  *Id.*  Approximately 40,000 downloads of the April 2021 Files
have occurred as of this date.  *Id.*  All of the April 2021 Files have been downloaded at least once.
*Id.*  All of the April 2021 Files have been irrevocably committed to the public domain.  Regardless
of whether or not defcad.com continues to publish the April 2021 Files, independent re-publishers
with no relationship whatsoever to Defense Distributed will freely re-publish the April 2021 Files
on the internet for anyone to download forever.  *Id.*  None of the April 2021 Files constitute what
the regulations refer to as "Computer Aided Manufacturing files" or "CAM files" in Control of
Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant
Control Under the United States Munitions List (USML), 85 Fed. Reg. 4136, 4139-42, 4172 (Jan.
23, 2020).  Doc. 148-074.

**F.      Defense Distributed's Future Publications.**

To the extent that and as soon as it is legal to do so, Defense Distributed currently intends to publish a wide variety of additional computer files with digital firearms information online at DEFCAD by letting any site visitor download them directly for free.  *See* Compl. at 18-19, ¶69; Doc. 148-74 at 3.  These files include the following:

(a) The computer files that Defense Distributed published online via DEFCAD from December 2012 to May 2013.  These include CAD files, CAM files, and non-CAD and non-CAM files.

(b) The computer files that Defense Distributed published online via DEFCAD from July 27, 2018, to July 31, 2018.  These include CAD files, CAM files, and non-CAD and non-CAM files.

(c) The computer files that Defense Distributed published via the mail from late August 2018 through early November 2018.  These include CAD files, CAM files, and non-CAD and non-CAM files.

(d) The computer files that Defense Distributed published online via DEFCAD from March 27, 2020, to present.  These include CAD files, CAM files, and non-CAD and non-CAM files.

(e) Computer files authored by Defense Distributed that Defense Distributed has not published before.  These include CAD files, CAM files, and computer files with other digital firearms information.

*See* Compl. at 18-19, ¶ 69; Doc. 148-74 at 3.

**G.      Published files will always remain online.**

The computer files with digital firearms information that Defense Distributed published in the past will always be available on the internet, regardless of whether or not Defense Distributed itself continues to publish them. *See* Compl. at 18, ¶ 68; Doc. 148-74 at 2. Without any coordination, many recipients of Defense Distributed's digital firearms information have persistently republished those same files online via their own websites. *See id.*

The independently-republished versions of Defense Distributed's files are not hidden in dark or remote recesses of the internet. *See* Compl. at 18, ¶ 68. Simple Google searches yield the republished Defense Distributed files with ease. *See* Compl. at 18, ¶ 68.

## II.   The State Department Violates Defense Distributed & SAF's Rights

### A.   *Defense Distributed I*

"*Defense Distributed I*" refers to a federal civil action docketed in the United States District Court for the Western District of Texas, Austin Division as *Defense Distributed, et al. v. United States Department of State, et al.*, No. 1:15-CV-372-RP (W.D. Tex.), and in the United States Court of Appeals for the Fifth Circuit first as *Defense Distributed, et al. v. United States Department of State, et al.*, No. 15-50759 (5th Cir.) and later as *Defense Distributed, et al. v. United States Department of State, et al.*, No. 18-50811 (W.D. Tex.). *Defense Distributed I* yielded the following reported opinions:

> *Def. Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680 (W.D. Tex. 2015)
> *Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451 (5th Cir. 2016) (panel opinion)
> *Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451, 461–76 (Jones, J., dissenting)
> *Def. Distributed v. U.S. Dep't of State*, 865 F.3d 211 (5th Cir. 2017) (Elrod, Jones, Smith and Clement, JJ., dissenting from the denial of rehearing en banc)
> *Def. Distributed v. United States Dep't of State*, 947 F.3d 870 (5th Cir. 2020).

The plaintiffs in *Defense Distributed I* were Defense Distributed, SAF, and an individual SAF member, Conn Williamson. The defendants matched the defendants in this case: the United States Department of State, the Secretary of State, the State Department's Directorate of Defense Trade

Controls, the Acting Deputy Assistant Secretary of State for Defense Trade Controls in the Bureau of Political-Military Affairs, and the Acting Director of the Office of Defense Trade Controls Policy Division.  They are referred to collectively as "the State Department."

*Defense Distributed I* concerned four categories of computer files defined by that action's pleadings: the "Published Files," the "Ghost Gunner Files," "CAD Files," and the "Other Files." *See* Compl. at 22-23, ¶¶ 81.  Together, these are referred to as the "*Defense Distributed I* Files."

*Defense Distributed I* began after the State Department used the Arms Export Control Act of 1976, 22 U.S.C. ch. 22 (the "AECA"), and its primary implementing regulations, the International Traffic in Arms Regulations, 22 C.F.R. Parts 120-130 ("ITAR"), to impose an illegal prior restraint on public speech concerning technical firearms data, including the *Defense Distributed I* Files.  *See* Compl. at 23, ¶¶ 82; Ex. 1.  Under this regime, the State Department required that Defense Distributed obtain prior United States government approval before publication of the *Defense Distributed I* Files could occur on the internet and at other public venues.  *See* Compl. at 23, ¶¶ 82; Ex. 1.

The *Defense Distributed I* plaintiffs challenged the legality of the State Department's enforcement of the AECA/ITAR regime vis-à-vis the *Defense Distributed I* Files.  *See* Compl. at 23-24, ¶ 83.  In particular, they challenged the State Department's governance of the *Defense Distributed I* Files as ultra vires action not authorized by the laws at issue, and as violations of the First, Second, and Fifth Amendments of the Constitution.  *See* Compl. at 23-24, ¶ 83.

At a preliminary stage, the district court in *Defense Distributed I* denied the *Defense Distributed I* plaintiffs' motion for a preliminary injunction. *Def. Distributed v. Dep't of State*, 121 F. Supp.3d 680 (W.D. Tex. 2015).  An interlocutory appeal of the *Defense Distributed I* preliminary injunction denial was taken to the Fifth Circuit.  A divided Fifth Circuit panel affirmed

the district court's decision. *Def. Distributed v. United States Dep't of State*, 838 F.3d 451 (5th Cir. 2016). But it declined to reach the merits, ruling solely based on "the balance of harm and the public interest." *Id.* at 461.

The merits of *Defense Distributed I*'s preliminary injunction were, however, reached by two important opinions. Judge Jones emphasized the protected nature of this speech in a panel dissent: "the State Department's application of its 'export' control regulations to this domestic Internet posting appears to violate the governing statute, represents an irrational interpretation of the regulations, and violates the First Amendment as a content-based regulation and a prior restraint." *Id.* at 463–64. (Jones, J. dissenting). The judges dissenting from the denial of rehearing en banc also reached the merits. *Def. Distributed v. U.S. Dep't of State*, 865 F.3d 211 (5th Cir. 2017). Their opinion explained that the lower court's "flawed preliminary injunction analysis permits perhaps the most egregious deprivation of First Amendment rights possible: a content based prior restraint." *Id.* at 212.

### B.    The Settlement Agreement Resolved *Defense Distributed I*

After the *Defense Distributed I* interlocutory appeal concluded, the district court in *Defense Distributed I* ordered the parties to engage in settlement negotiations. *See* Compl. at 24, ¶ 87. The parties did so successfully and settled their dispute by agreement. *See* Compl. at 24, ¶ 87.

The *Defense Distributed I* settlement amounted to a victory for the plaintiffs. *See* Compl. at 25, ¶ 88. Press reports correctly understood that the State Department's decision to settle "essentially surrenders" to the constitutional challenge Defense Distributed and SAF had been pressing all along; that the settlement "promises to change the export control rules surrounding any firearm below .50 caliber – with a few exceptions like fully automatic weapons and rare gun designs that use caseless ammunition – and move their regulation to the Commerce Department,

which won't try to police technical data about the guns posted on the internet"; and that, in the meantime, the settlement "gives [Defense Distributed] a unique license to publish data about those weapons anywhere [it] chooses."  Andy Greenberg, *A Landmark Legal Shift Opens Pandora's Box for DIY Guns*, Wired Magazine (July 18, 2018), available at https://bit.ly/2QK3is6.

The *Defense Distributed I* settlement agreement is memorialized by the "Settlement Agreement": a written contract that all sides executed validly on June 29, 2018.  *See* Compl. at 25-28, ¶ 89.  Among other things, the Settlement Agreement obligates the State Department to do the following:

(a)      Settlement Agreement Paragraph 1(a) - New Rule

Settlement Agreement Paragraph 1(a) requires the State Department to draft and fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed rulemaking and final rule, revising United States Munitions List ("USML") Category I to exclude the *Defense Distributed I* Files.  *See* Compl. at 25-28, ¶ 89.  The pertinent text provides as follows: "Defendants agree to the following . . . : (a) Defendants' commitment to draft and to fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed rulemaking and final rule, revising USML Category I to exclude the technical data that is the subject of the Action."

(b)      Settlement Agreement Paragraph 1(b) - Temporary Modification:

Settlement Agreement Paragraph 1(b) requires the State Department to announce, while the above-referenced final rule is in development, a temporary modification, consistent with International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the *Defense Distributed I* Files; and to publish the

announcement on the Directorate of Defense Trade Controls website on or before July, 27, 2018.  *See* Compl. at 25-28, ¶ 89.  The pertinent text provides as follows: "Defendants agree to the following . . . (b) Defendants' announcement, while the above-referenced final rule is in development, of a temporary modification, consistent with the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that is the subject of the Action.  The announcement will appear on the DDTC website, www.pmddtc.state.gov, on or before July 27, 2018."

(c)        Settlement Agreement Paragraph 1(c) - License

Settlement Agreement Paragraph 1(c) requires the State Department to issue a license to the *Defense Distributed I* plaintiffs on or before July 27, 2018, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that the Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13).  *See* Compl. at 25-28, ¶ 89.  The pertinent text provides as follows: "Defendants agree to the following . . . (c) Defendants' issuance of a letter to Plaintiffs on or before July 27, 2018, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that the Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution ) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13). For the purposes of 22 C.F.R. § 125.4(b)(13) the Department of State is the cognizant U.S. Government department or agency, and the Directorate of Defense Trade Controls has delegated authority to issue this approval."

16

(d)      Settlement Agreement Paragraph 1(d) - Acknowledgement

Settlement Agreement Paragraph 1(d) requires the State Department to acknowledge and agree that the temporary modification of USML Category I permits any United States person, to include Defense Distributed's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the *Defense Distributed I* Files, and that the license issued to the *Defense Distributed I* plaintiffs permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files.  *See* Compl. at 25-28, ¶ 89.  The pertinent text provides as follows: "Defendants agree to the following . . . (d)  Defendants' acknowledgment and agreement that the temporary modification of USML Category I permits any United States person, to include DD's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the letter to Plaintiffs permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files."

The Settlement Agreement binds all of the parties to *Defense Distributed I* and all of this action's parties.  *See* Compl. at 28, ¶ 90.  Settlement Agreement paragraph 7 provides that the "Settlement Agreement" shall be binding upon and inure to the benefit of Plaintiffs and Defendants, and the respective heirs, executors, successors, assigns and personal representatives, including any persons, entities, departments or agencies succeeding to the interest of obligations of the Parties."

## C.      Settlement Agreement Fulfillment Begins

After the Settlement Agreement's execution on July 27, 2018, the State Department began to fulfill—temporarily—certain of its Settlement Agreement obligations:

(a)      Settlement Agreement Paragraph 1(a) - New Rule

By July 27, 2018, the State Department had taken steps to comply with the obligation imposed by Settlement Agreement Paragraph 1(a).  *See* Compl. at 28-29, ¶ 91. It published in the Federal Register a notice of proposed rulemaking revising USML Category I to exclude the *Defense Distributed I* Files.  *See* 83 Fed. Reg. 24,198 (May 24, 2018).

(b)      Settlement Agreement Paragraph 1(b) - Temporary Modification

By July 27, 2018, the State Department had taken steps to comply with the obligation imposed by Settlement Agreement Paragraph 1(b).  *See* Compl. at 28-29, ¶ 91. It made a temporary modification to USML Category I, pursuant to 22 C.F.R. § 126.2, to "exclude" the *Defense Distributed I* Files from Category I.

(c)      Settlement Agreement Paragraph 1(c) – License

By July 27, 2018, the State Department had taken steps to comply with the obligation imposed by Settlement Agreement Paragraph 1(c).  *See* Compl. at 28-29, ¶ 91. It issued Defense Distributed a license—a letter issued by the State Department's Acting Deputy Assistant Secretary for the Directorate of Defense Trade Controls—authorizing the Defendants to publish the Published Files, Ghost Gunner Files, and CAD Files for "unlimited distribution."

(d)      Settlement Agreement Paragraph 1(d) - Acknowledgement

By July 27, 2018, the State Department had taken steps to comply with the obligation imposed by Settlement Agreement Paragraph 1(d).  *See* Compl. at 28-29, ¶ 91. It acknowledged and agreed that the temporary modification permits any United States person to access, discuss, use, reproduce, or otherwise benefit from the *Defense Distributed*

*I* Files; and that the license issued to the *Defense Distributed I* plaintiffs permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files.

On June 29, 2018, the parties to *Defense Distributed I* filed a joint stipulation of dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(ii).  *See* Compl. at 29, ¶ 92.  The filing provided as follows: "Pursuant to Federal Rule of Civil Procedure 41 (a)( I )(A)(ii) and 41(a)( I )(B), and a settlement agreement among Plaintiffs (Defense Distributed, Second Amendment Foundation, Inc., and Conn Williamson) and Defendants (the United States Department of State, the Secretary of State, the Directorate of Defense Trade Controls, the Deputy Assistant Secretary, Defense Trade Controls. and the Director, Office of Defense Trade Controls Policy), the Plaintiffs and the Defendants hereby stipulate to the dismissal with prejudice of this action."  *See* Compl. at 29, ¶ 92. On July 30, 2018, the *Defense Distributed I* district court entered an order providing that "the case is **DISMISSED WITH PREJUDICE**" and the "action is **CLOSED**."  *See* Compl. at 29, ¶ 92.

The State Department's temporary fulfillment of the Settlement Agreement obligations lasted from July 27, 2018 until the afternoon of July 31, 2018.  *See* Compl. at 30, ¶ 94.  During that period, Defense Distributed engaged in the publication addressed above ("Defense Distributed's July 2018 Publications").  *See* Compl. at 30, ¶ 94.

### D.    The State Department Stopped Fulfilling the Settlement Agreement

On July 30, 2018, Grewal and a group of state attorneys general (hereinafter "the States") initiated a civil action against the State Department, Defense Distributed, SAF, and Conn Williamson.  *See* Compl. at 30, ¶ 95.  The States chose to sue in their forum of choice, the Western District of Washington's Seattle division, before Judge Robert Lasnik.  *See* Compl. at 30, ¶ 95.

The suit was docketed in the district court as *State of Washington et al., v. United States Department of State et al.*, No. 2:18-cv-1115-RSL.

The States' *Washington* complaint alleged that, by issuing the Temporary Modification and license, the State Department had violated the Administrative Procedure Act (APA). *See* Compl. at 30, ¶ 97. The suit sought a preliminary nationwide injunction and a final judgment vacating the Temporary Modification and license. *See* Compl. at 30, ¶ 97. These claims went against the State Department alone. *See* Compl. at 30, ¶ 97.

The Settlement Agreement was never the subject of any claim in the *Washington* case. *See* Compl. at 30, ¶ 98. The States never claimed that the Settlement Agreement was illegal and never sought relief against the Settlement Agreement. *See* Compl. at 30, ¶ 98. Their only claims targeted two of the actions the State Department took in an attempt to fulfill the Settlement Agreement. *See* Compl. at 30, ¶ 98.

Nor were Defense Distributed and SAF the subject of any claim. *See* Compl. at 31, ¶ 99. The States asserted no cause of action and sought no relief against Defense Distributed or SAF. *See* Compl. at 31, ¶ 99. The APA claim about the license went against the State Department alone, did not allege that Defense Distributed or SAF did anything wrong, and did not seek relief against them. Likewise for the APA claim about the Temporary Modification. *See* Compl. at 31, ¶ 99. It too went against the State Department alone, did not allege that Defense Distributed or SAF did anything wrong, and did not seek relief against Defense Distributed or SAF. *See* Compl. at 31, ¶ 99.

On July 31, 2018, the States obtained from the United States District Court for the Western District of Washington a temporary restraining order against the State Department: "The federal government defendants and all of their respective officers, agents, and employees are hereby

enjoined from implementing or enforcing the 'Temporary Modification of Category I of the United States Munitions List' and the letter to Cody R. Wilson, Defense Distributed, and Second Amendment Foundation issued by the U.S. Department of State on July 27, 2018, and shall preserve the status quo ex ante as if the modification had not occurred and the letter had not been issued." *See* Compl. at 31, ¶ 100.

A key concession occurred during the preliminary injunction proceedings: Both the State Department and the States conceded that there *is nothing inherently illegal about the computer files at issue*. *See* Compl. at 31-32, ¶ 101. Aside from concerns about Defense Distributed's files being *on the internet*, the States and State Department took no issue with anyone's right to distribute the very same computer files via other channels. *See* Compl. at 31-32, ¶ 101. At the preliminary injunction hearing, counsel for the States took the position that, apart from internet publication, Defense Distributed had a right to distribute digital firearms information via the mail or otherwise "hand them around domestically" without violating any law. *See* Compl. at 31-32, ¶ 101. Counsel for the State Department agreed, stating that, "even if the Court were to grant plaintiffs every ounce of relief that they seek in this case, Defense Distributed could still mail every American citizen in the country the files that are at issue here." *See* Compl. at 31-32, ¶ 101. In light of this concession, Defense Distributed engaged in the publication addressed *supra* at ____ ("Defense Distributed's August-November 2018 Publications").

On August 27, 2018, the States obtained from the United States District Court for the Western District of Washington a preliminary injunction against the State Department: "The federal defendants and all of their respective officers, agents, and employees are hereby enjoined from implementing or enforcing the 'Temporary Modification of Category I of the United States Munitions List' and the letter to Cody R. Wilson, Defense Distributed, and the Second Amendment

Foundation issued by the U.S. Department of State on July 27, 2018, and shall preserve the status quo ex ante as if the modification had not occurred and the letter had not been issued until further order of the Court." *Washington v. U.S. Dep't of State*, 318 F. Supp. 3d 1247, 1264 (W.D. Wash. 2018).

Even though the State Department had a right to appeal the *Washington* case's preliminary injunction decision, and even though it had preserved arguments that would have succeeded in having the district court's judgment vacated or reversed, the State Department refused to appeal. *See* Compl. at 32, ¶ 103. It let the deadline for that interlocutory appeal come and go without taking any appellate action. *See* Compl. at 32, ¶ 103. The State Department refused to appeal this preliminary injunction because of partisan politics and in spite of federal legal advisors that deemed an appeal legally necessary. *See* Compl. at 32, ¶ 103.

The rest of the *Washington* case's key decisions occurred on summary judgment. On the merits, the *Washington* district court accepted both of the States' APA claims. First, the *Washington* district court held that the State Department's issuance of the Temporary Modification was "without observance of procedure required by law," 5 U.S.C. § 706, because a Congressional notice requirement had not been met. *Washington v. U.S. Dep't of State*, 420 F. Supp. 3d 1130, 1141-43 (W.D. Wash. 2019). Second, the *Washington* district court held that the State Department's issuance of both the Temporary Modification and the license were "arbitrary and capricious," 5 U.S.C. § 706, because of insufficient explanation and evidentiary support in the administrative record. *Id.* at 1144-47. Neither of these claims are meritorious.

The *Washington* action's final judgment orders as follows: "The July 27, 2018, 'Temporary Modification of Category I of the United States Munitions List' and letter to Cody R. Wilson, Defense Distributed, and the Second Amendment Foundation were unlawful and are hereby

VACATED."  Part of the *Washington* district court's decision addressed the First Amendment implications of vacating the Temporary Modification and license.  It held the Constitution's First Amendment was "not relevant to the merits": "Whether or not the First Amendment precludes the federal government from regulating the publication of technical data under the authority granted by the AECA is not relevant to the merits of the APA claims plaintiffs assert in this litigation." *Washington v. U.S. Dep't of State*, 420 F. Supp. 3d 1130, 1147 (W.D. Wash. 2019).  It also held that the First Amendment can be "abridged" so long as it is not "abrogated."  *Washington v. U.S. Dep't of State*, 318 F. Supp. 3d 1247, 1264 (W.D. Wash. 2018).

Defense Distributed and SAF demanded that the State Department appeal.  *See* Compl. at 33, ¶ 106.  The demand asserted that a failure to appeal constituted a breach of the Settlement Agreement.  *See* Compl. at 33, ¶ 106.  The demand occurred in a January 15, 2020, letter from counsel for Defense Distributed and SAF to the State Department.  *See* Compl. at 33, ¶ 106.

Even though the State Department had a right to appeal the final judgment, and even though it had preserved arguments that would have succeeded in having the district court's judgment vacated or reversed, the State Department refused to appeal.  *See* Compl. at 33-34, ¶ 107.  It let the deadline for that appeal come and go without taking any action.  *See* Compl. at 33-34, ¶ 107.  The State Department refused to appeal this final injunction because of partisan politics and in spite of federal legal advisors that deemed an appeal legally necessary. *See* Compl. at 33-34, ¶ 107.

Defense Distributed and SAF appealed the *Washington* action's final judgment.  *See* Compl. at 34, ¶ 108.  Defense Distributed's appellant's brief showed that the district court both lacked subject-matter jurisdiction because of multiple Article III shortcomings and was wrong on the merits because the APA cannot require abridgement of the First Amendment.  *See* Compl. at 34, ¶ 108.  So rather than be squarely defeated, the States moved to dismiss both appeals as moot.

*See* Compl. at 34, ¶ 108.  Defense Distributed and SAF responded jointly, opposing the dismissal request with several categories of argument.  *See* Compl. at 34, ¶ 108.  First, the response defeated the States' mootness suggestion on its own terms.  *See* Compl. at 34, ¶ 108.  Second, it showed that mootness-based dismissals cannot occur unless and until disputes regarding the district court's subject-matter jurisdiction are resolved.  *See* Compl. at 34, ¶ 108.  Third, the response showed that, if the case were moot, *Munsingwear* required vacatur of the district court's judgment. *See* Compl. at 34, ¶ 108.

The *Washington* action's Ninth Circuit panel accepted the mootness suggestion and dismissed the appeal.  *See* Compl. at 34, ¶ 109.  *Washington v. Def. Distributed*, No. 20-35030, 2020 WL 4332902 (9th Cir. July 21, 2020).  Its order gives no meaningful indication of the mootness reasoning.  It says nothing about the district court's jurisdiction.  And it says nothing about *Munsingwear*, silently leaving the district court's judgment intact.

### E.    The State Department disavowed the license and refused to supply a new one.

On or before August 2, 2018, the State Department disavowed the license it had originally issued to Defense Distributed and SAF in July 2018.  *See* Compl. at 34-35, ¶¶ 110-114.  The disavowal of the July 2018 license is reflected in an August 2, 2018, letter from counsel for the State Department.  *See* Compl. at 34-35, ¶¶ 110-114.  The letter establishes that, as of August 2, 2018, the State Department had decided to proceed as though the July 2018 license "had not been issued" and was a "nullity."  *See* Compl. at 34-35, ¶¶ 110-114.

After the State Department disavowed the license it had originally issued to Defense Distributed and SAF in July 2018, the State Department refused to supply Defense Distributed and SAF with the license that Settlement Agreement Paragraph 1(c) requires the State Department to supply.  *See* Compl. at 35, ¶ 115.  This despite multiple clear and express demands to do so.

Defense Distributed and SAF demanded that the State Department issue a license in compliance with Settlement Agreement Paragraph 1(c) on January 15, 2020. *See* Compl. at 35, ¶ 117. They did so by transmitting a letter from counsel for Defense Distributed and SAF to counsel for the State Department. *See* Compl. at 35, ¶ 117.

Defense Distributed and SAF also demanded that the State Department issue a license in compliance with Settlement Agreement Paragraph 1(c) on February 11, 2020. *See* Compl. at 35-36, ¶ 118. They did so by transmitting a letter from counsel for Defense Distributed and SAF to counsel for the State Department. *See* Compl. at 35-36, ¶ 118.

### F. The State Department disavowed the Temporary Modification and refused to supply a new one.

On or before August 2, 2018, the State Department disavowed the Temporary Modification that it had originally issued in July 2018. *See* Compl. at 36, ¶ 119. The State Department's disavowal of the July 2018 Temporary Modification is reflected in the August 2, 2018, letter from counsel for the State Department. *See* Compl. at 36, ¶ 121. The letter establishes that, as of August 2, 2018, the State Department had decided to cease "implementing or enforcing" the July 2018 Temporary Modification and decided to proceed as though the July 2018 Temporary Modification "had not occurred." *See* Compl. at 36, ¶ 122-123. The State Department removed the July 2018 Temporary Modification from its website on July 31, 2018. *See* Compl. at 36, ¶ 124.

After the State Department disavowed the July 2018 Temporary Modification, the State Department refused to supply Defense Distributed and SAF with the temporary modification that Settlement Agreement Paragraph 1(b) requires the State Department to supply. *See* Compl. at 37, ¶ 125.

G.      **The State Department failed to supply the required regulatory changes.**

The State Department refused to supply Defense Distributed and SAF with the regulatory results that Settlement Agreement Paragraph 1(a) requires the State Department to supply. *See* Compl. at 37-38, ¶¶ 125-131. Instead, the State Department issued a new final rule that pertains to the Settlement Agreement in January 2020. *See* International Traffic in Arms Regulations: U.S. Munitions List Categories I, II, and III, 85 Fed. Reg. 3819 (Jan. 23, 2020). It did so in conjunction with a new rule issued by the Commerce Department. *See* Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List (USML), 85 Fed. Reg. 4136, 4140-42, 4172 (Jan. 23, 2020).

The regulations promulgated in 2020 by the State and Commerce Departments change the treatment of so-called "3D-printed guns and their associated electronic files," shifting them from the State Department's regime of prior restraints, the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. Parts 120-130, to a different regime at the Commerce Department, the Export Administration Regulations ("EAR"), 15 C.F.R. ch. IV, subch. C. These new rules do *not* fully discharge the State Department's obligations under Settlement Agreement Paragraph 1(a) because they do not exclude *all* of the technical data that was the subject of *Defense Distributed I* from United States Munitions List ("USML") Category I. *See* Compl. at 37-38, ¶¶ 130. They go part of the way towards satisfying the Settlement Agreement, but not all of the way. So on April 29, 2020, Defense Distributed and SAF demanded that the State Department supply Defense Distributed and SAF with the regulatory results that Settlement Agreement Paragraph 1(a) requires the State Department to supply. *See* Compl. at 38, ¶ 131. They did so by transmitting a letter from counsel for Defense Distributed and SAF to counsel for the State Department. *See* Compl. at 38, ¶ 131.

Critically, it is agreed by both Defense Distributed and the State Department that the effect of the 2020 regulatory changes is to make Defense Distributed's publication of the April 2021 Files perfectly legal.  Though the parties disagree about *other possible sources* of legal cover for Defense Distributed's April 2021 Files (e.g., the Constitution), the parties *do not dispute* that the effect of the 2020 regulatory changes is to legalize publication of the April 2021 Files.

### H.     The 2020 regulatory changes are enjoined and then revived.

The 2020 regulatory changes did *not* take hold at first.  Right after promulgation, a federal court in Seattle preliminarily enjoined the 2020 regulatory changes, halting the regime change. *See* Compl. at 37-38, ¶¶ 130; *Washington v. United States Dep't of State*, 443 F. Supp. 3d 1245 (W.D. Wash. 2020).  But the State Department appealed, seeking to defend the 2020 regulatory changes and have them take effect to provide (in part) the cover it promised Defense Distributed in the Settlement Agreement.

Just three days ago, on April 27, ***the State Department won the appeal in full***.  In *State of Washington  v. United States Department of State*, No 20-35391, 2021 WL 1621320 (9th Cir. Apr. 27, 2021), the Ninth Circuit held that its lower court lacked jurisdiction to enjoin the 2020 regulatory changes and vacated the injunction: "Because Congress expressly precluded review of the relevant agency actions here, we vacate the injunction and remand with instructions to dismiss."  *Id*. at 2.  That the Ninth Circuit itself performed the vacatur immediately, as opposed to instructing the district court to do so after mandate issuance, is plainly evident.  *See id.*; *id.*  at *9 ("**VACATED and REMANDED with instructions to dismiss**.").  By accomplishing the vacatur itself and immediately, the Ninth Circuit revived the 2020 regulatory changes that all parties here agree legalize Defense Distributed's most recent publications.

I.       **The State Department's illegal conduct causes irreparable harm.**

Despite all of this, the State Department imminently threatens to punish Defense

Distributed for sustaining the April 2021 publications and for publishing anything else like them.

*See* Doc. 148-74 at 3; Doc. 148-83 at 1.  The State Department both denies Defense Distributed's

constitutional protection for the April 2021 publications *and denies the protection afforded by the*

*2020 regulatory changes that the State Department itself just successfully defended in the Ninth*

*Circuit.  Id.*  The given reason for the State Department to ignore the Ninth Circuit's result is a

hypertechnical and erroneous view of mandate significance.  It is an obvious pretext.

The threat of censorship's irreparable harm posed to Defense Distributed by the State

Department is now extraordinarily evident and imminent.  Justice Department lawyers actualized

the threat yesterday (April 29, 2021) in  a phone call to Defense Distributed's counsel.  In that call,

the State Department's lawyers made the following representations to Defense Distributed:

(a)       The position of the State and Commerce Departments is that, after the Ninth Circuit issued the decision and judgment in *State of Washington et al. v. United States Department of State et al.*, No 20-35391 (9th Cir. Apr. 27, 2021), Defense Distributed began to publish on the internet and is still publishing on the internet computer files with digital firearms information that are the subject of that litigation.

(b)       The position of the State and Commerce Departments is that Defense Distributed's publication of these computer files violates the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. Parts 120 130.

(c)       The position of the State and Commerce Departments is that Defense Distributed should immediately cease publication of these computer files.

(d)       The State Department does not agree to cease or alter in any way or for any amount of time its enforcement of ITAR controls against Defense Distributed.

(e)       The position of the State and Commerce Departments is as stated above notwithstanding the pendency of Defense Distributed et al. v. Grewal et al., No. 1:18-cv-637-RP (W.D. Tex.), an active case in which Defense Distributed is suing the State Department and its relevant officials to secure

28

Defense Distributed's right to publish the files at issue in the Ninth Circuit
decision (as well as other files).

Doc. 148-83 at 1.

## ARGUMENT

Defense Distributed and SAF move[3] for the Court to issue a temporary restraining order
and an expedited preliminary injunction schedule.  First, the Court should issue a temporary
restraining order requiring the State Department to cease and desist enforcement of the
International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. Parts 120-130, regime against
Plaintiffs with respect to the ~16,000 "April 2021 Files" Defense Distributed published to
defcad.com for free download by the public on April 28, 2021, and April 29, 2021.  Second, the
Court should set a schedule for preliminary injunction proceedings that goes fast enough to have
the matter heard and decided before the TRO's expiration:

> Plaintiffs' motion for a preliminary injunction is due on or before May 5, 2021
> The State Department's response is due on or before May 10, 2021.
> Plaintiffs' reply is due on or before  May 12, 2021.
> The preliminary injunction hearing will be held on May 13, 2021.

Motions for preliminary injunctions and temporary restraining orders entail the same
substantive requirements.  *See generally* 11A Charles Alan Wright & Arthur R. Miller et al.,
Federal Practice & Procedure § 2951 (West 2018).  In either case, the movant has to establish "that
he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of
preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the
public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  But "none of the
four prerequisites has a fixed quantitative value."  *Tex. v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180

---

[3] To the extent necessary, Plaintiffs request authorization for this motion to exceed the 10-page length limit of Local
Rule CV-7 because of the situation's compressed time frame and high issue complexity.  Plaintiffs consent to the State
Department filing a response of any length.

(5th Cir. 1975)." "Rather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Id.* With respect to the State Department's censorship of Defense Distributed's April 2021 Files, the test is clearly met.

## I.      There is a sufficient likelihood of success on the merits.

For the instant motion's "likelihood of success on the merits" inquiry, the question presented is whether Defense Distributed has the right to publish the April 2021 Files despite the State Department's insistence that publication violates its ITAR control regime. The Court should hold that Plaintiffs are likely to succeed in showing that multiple legal doctrines protect the April 2021 Files from State Department's censorship via ITAR.

### A.      Defense Distributed's publication of the April 2021 Files was and is protected from federal censorship by the First Amendment.

Most importantly, the Court should hold that the Plaintiffs are likely to succeed on the merits of their claim that Defense Distributed's publication of the April 2021 Files was and is protected from federal censorship by the First Amendment.

First, the State Department's application of ITAR controls to Defense Distributed's April 2021 Files violates the First Amendment doctrine regarding prior restraints. *See, e.g.*, *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963). The State Department's conduct constitutes a prior restraint of expression; as such, it is an unconstitutional abridgement of First Amendment freedoms because the State Department cannot carry the heavy burden of justifying a prior restraint and because the prior restraint does not operate under sufficient judicial superintendence.

Second, the State Department's application of ITAR controls to Defense Distributed's April 2021 Files violates the First Amendment doctrine regarding content-based speech restrictions. *See, e.g.*, *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015). The State Department's conduct imposes content-based speech restrictions; as such, the conduct is an

unconstitutional abridgement of First Amendment's freedoms because the State Department cannot carry the heavy burden of justifying a content-based speech restriction and because it does not serve a compelling governmental interest and is not narrowly drawn to serve any such interest.

Third, the State Department's application of ITAR controls to Defense Distributed's April 2021 Files violates the First Amendment doctrine regarding overbreadth. *See, e.g., City of Houston, Tex. v. Hill*, 482 U.S. 451 (1987). The State Department's conduct forbids a substantial amount of constitutionally protected speech and is not narrowly tailored to prohibit only constitutionally unprotected speech; as such, it is an unconstitutional abridgement of First Amendment's freedoms.

In this context, the government can only prohibit speech to prevent illegal conduct when the speech is "*integral* to criminal conduct," *United States v. Stevens*, 559 U.S. 460, 468 (2010) (emphasis added). But speech cannot be "integral to criminal conduct" if it has only a "contingent and indirect" relationship to that conduct. *Ashcroft*, 535 U.S. at 250. It is not enough to contend, as State Department might do here, that there is "some unquantified potential for subsequent criminal acts." *Id.* Indeed, the Supreme Court has recognized that "it would be quite remarkable to hold that speech by a law-abiding possessor of information can be suppressed in order to deter conduct by a non-law abiding third party." *Bartnicki*, 532 U.S. at 529-30.

Another reason that the State Department's application of ITAR controls to Defense Distributed's April 2021 Files does not survive strict scrutiny is because they cannot prove that their requested relief will actually advance their aims. In the First Amendment context, justifications backed by mere "anecdote and supposition" do not suffice, *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 822 (2000), and neither does "ambiguous proof," *Brown v. Entm't Merchs. Ass'n.*, 564 U.S. 786, 800 (2011). Compelling "empirical support" of efficacy must be

given. *Globe Newspaper Co. v. Sup. Ct. for Norfolk Cty.*, 457 U.S. 596, 609 (1982).  None exists here. *Cf. Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2313-14 (2016) ("Determined wrongdoers, already ignoring existing statutes and safety measures, are unlikely to be convinced to adopt safe practices by a new overlay of regulations.").

> **B.**     **Defense Distributed's publication of the April 2021 Files was and is protected from federal censorship by the Settlement Agreement.**

Separately, the State Department's application of ITAR controls to Defense Distributed's April 2021 Files constitutes a blatant and material breach of the Settlement Agreement.  By disavowing the temporary modification it had originally issued to Defense Distributed and SAF in July 2018, by disavowing the license it had originally issued to Defense Distributed and SAF in July 2018, and by refusing to re-issue a new Temporary Modifications and new license, the State Department in one fell swoop violated the contract *and* the APA *and* the Due Process Clause.  It violated the APA because the Settlement Agreement proves the actions to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A).  These same actions also constitute APA violations because the Settlement Agreement makes them "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(B), "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C), and "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

The same conclusions obtain as a matter of simple contract law.  The State Department committed an unexcused material breach of the Settlement Agreement by disavowing the license and Temporary Modification (and refusing to issue new ones), all of which would have kept Defense Distributed out of the present predicament.  When the *Department of Justice* is making contracts to settle litigation it is about to lose, its feet have to be held to the fire just as strictly as anyone else.

**C.    Defense Distributed's publication of the April 2021 Files was and is protected from federal censorship by the 2020 regulatory changes.**

Additionally, the Court should conclude that the Plaintiffs are likely to succeed on the merits because of how the 2020 regulatory changes protect the April 2021 Files.  In this respect, the parties agree about what the 2020 regulatory changes do if effective; the only pertinent dispute is about whether and when they 2020 regulatory changes took effect.

It is beyond dispute that, if and when effective, the 2020 regulatory changes stop the State Department from subjecting the April 2021 Files to any ITAR controls.  *See State of Wash. v. U.S. Dep't of State*, 20-35391, 2021 WL 1621320, at *8 (9th Cir. Apr. 27, 2021).  What the State Department itself convinced the Ninth Circuit to hold is correct: The 2020 regulatory changes "remov[e] 3D-printed guns and their associated files from the U.S. Munitions List" that the State Department controls with ITAR.  *Id.* at *2.  "These and other removed items were to be placed on the [Commerce Control List] CCL and regulated by Commerce under the EAR instead."  *Id.*

While once the subject of a district court's preliminary injunction, the 2020 regulatory changes were restored to full effect by the Ninth Circuit on April 27, 2021.  *Id.*  In no uncertain terms, the Ninth Circuit held that the lower court lacked jurisdiction to enjoin the 2020 regulatory changes and vacated the injunction: "Because Congress expressly precluded review of the relevant agency actions here, we vacate the injunction and remand with instructions to dismiss."  *Id*. at 2.

The State Department's view is that the Ninth Circuit's decision to vacate the district court's injunction lacks effect until the mandate issues (after the time for rehearing efforts expires). That might be so *if* the Ninth Circuit had *assigned* the task of vacating the district court's injunction to the district court for *future accomplishment*.  But the Ninth Circuit rendered no such decision here.  It very clearly did *not* tell the district court to vacate the injunction on remand.  Instead, the Ninth Circuit opted to perform the vacatur *itself* and to do so *immediately*.

Every part of the Ninth Circuit decision evidences this view—that the vacatur has already occurred because the Ninth Circuit did so itself immediately, on April 27. The decision's first paragraph accomplishes an immediate vacatur by saying "we *vacate* the injunction and remand with instructions to dismiss." *Id*. at 2 (emphasis added). The decision's last line accomplishes an immediate vacatur by saying "**VACATED**." *Id.* at *9. And the docket sheet accords by showing that these announcements constitute the Court's judgment. *See* Doc. 148-74 at 2.

The State Department is therefore wrong to say that the Ninth Circuit's decision does not yet do what it says. As a matter of law, the Ninth Circuit's vacatur took effect immediately, giving the 2020 regulations full effect as of the decision's April 27 issuance date. And because Defense Distributed waited until after then to publish its April 2021 Files, the State Department has no justification for continuing to apply its ITAR regime of prior restraints.

Furthermore, even if the Ninth Circuit's decision did not technically vacate the injunction at issue just yet, the State Department still cannot justify its continued application of ITAR controls to the April 2021 Files. The argument advanced by the State Department that the Ninth Circuit has accepted works with full force in all courts—including this one. The Washington district court's injunction of the 2020 regulations is *void for lack of subject-matter jurisdiction*, and void judgments are to be disregarded at all times no matter what. *See, e.g.*, *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988). Just as all courts are required to disregard void injunctions, so too are all arms of the Executive Branch; and no one could ever be held in contempt for violating such an injunction. *See id.*

## II. The balance of equities favors an immediate TRO.

The balance of equities favors a TRO. The risk of erroneously denying the TRO entails the "potential for extraordinary harm and a serious chill upon protected speech." *Ashcroft v. ACLU*, 542 U.S. 656, 671 (2004). "The harm done from letting [an] injunction stand pending a

trial on the merits, in contrast, will not be extensive," especially where, as here, the bell has already been rung.  In just two days, Defense Distributed has already fully committed the April 2021 Files to the internet's public domain, where independent republishers beyond anyone's control have made and will continue to make those files readily accessible on one website or another forever. It therefore does the government no harm whatsoever to temporarily stall whatever punitive enforcement actions they have in mind.

Meanwhile, with every passing day, the State Department's illegal actions and threats are both directly violating constitutional rights and chilling the exercise of others.  But for the State Department's imminent threat of adverse legal action, Defense Distributed would both maintain its ongoing publication of the April 2021 Files on defcad.com indefinitely *and* publish many more files that are like the April 2021 Files in the same manner as it is publishing April 2021 Files.  Doc. 148-74 at 3.   But because of the State Department's imminent threat of adverse legal action, Defense Distributed will no longer both maintain its ongoing publication of the April 2021 Files on defcad.com indefinitely and publish many more files that are like the April 2021 Files in the same manner as it is publishing April 2021 Files.  *Id.*  As of April 30, 2021, the State Department's imminent threat of adverse legal action has caused Defense Distributed to cease publishing more files that are like the April 2021 Files in the same manner as it is publishing April 2021 Files.  *Id.*

The Constitutional rights that the State Department is violating can never be untrampled.

## III.    The public interest favors an immediate TRO.

The final factor—whether the public interest favors an immediate TRO.—is easily met. Preserving constitutional rights always serves the public interest.  *See, e.g.*, *O'Donnell v. Goodhart*, 900 F.3d 220, 232 (5th Cir. 2018).

35

**CONCLUSION**

The motion should be granted.

The Court should issue a temporary restraining order requiring the State Department to cease and desist from any effort to enforce ITAR controls against the ~16,000 "April 2021 Files" Defense Distributed published to defcad.com for free download by the public on April 28, 2021, and April 29, 2021.

The Court should also order an expedited schedule for preliminary injunction briefs and a hearing that is at least as fast as the following:

Plaintiffs' motion for a preliminary injunction is due on or before May 5, 2021

The State Department's response is due on or before May 10, 2021.

Plaintiffs' reply is due on or before  May 12, 2021.

The preliminary injunction hearing will be held on May 13, 2021.

Date: April 30, 2021.

Respectfully submitted,

BECK REDDEN LLP
By /s/ Chad Flores
Chad Flores
cflores@beckredden.com
State Bar No. 24059759
Daniel Nightingale
dhammond@beckredden.com
State Bar No. 24098886
Hannah Roblyer
hroblyer@beckredden.com
State Bar No. 24106356
1221 McKinney St., Suite 4500
Houston, TX 77010
(713) 951-3700 | (713) 952-3720 (fax)

CLARK HILL PLC
Matthew A Goldstein
1001 Pennsylvania Avenue Northwest
Suite 1300 South
Washington, DC 20004
(202) 550-0040

Josh Blackman
joshblackman@gmail.com
Texas Bar No. 24118169
1303 San Jacinto Street
Houston, TX 77002
(202) 294-9003 | (713) 646-1766 (fax)

Attorneys for Plaintiffs Defense Distributed
and Second Amendment Foundation, Inc.

## CERTIFICATE OF SERVICE

I certify that a copy of this filing was served on all parties and/or their counsel of record through a manner authorized by Federal Rule of Civil Procedure 5(b) on April 30, 2021.


/s/ Chad Flores
Chad Flores