IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, INC., | § § § § | Case No. 1:18-CV-637 |
| Plaintiffs, | § § | |
| v. | § § | |
| UNITED STATES DEPARTMENT OF STATE, ANTHONY BLINKEN, in his official capacity as Secretary of State; DIRECTORATE OF DEFENSE TRADE CONTROLS; MIKE MILLER, in his official capacity as Deputy Assistant Secretary of Defense Trade Controls; SARAH HEIDEMA, in her official capacity as Director of Policy, Office of Defense Trade Controls Policy, | § § § § § § § § § § § § | Plaintiffs' Reply in Support of Plaintiffs' Motion for a Preliminary Injunction Against the State Department |
| and | § § | |
| GURBIR GREWAL, Attorney General of the State of New Jersey | § § § | |
| Defendants. | § | |

Plaintiffs Defense Distributed and the Second Amendment Foundation, Inc. ("SAF") file this reply in support of their motion for a preliminary injunction against the United States Department of State, Anthony Blinken, Directorate of Defense Trade Controls, Mike Miller, and Sarah Heidema ("the State Department"). *See* Doc. 152 (motion).

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS...................................................................................................... i

SUMMARY OF THE ARGUMENT .................................................................................. 1

ARGUMENT .................................................................................................................... 3

I.     Standing exists. ........................................................................................................ 3

     A.     Causation exists. ........................................................................................ 3

     B.     Redressability Exists. ................................................................................ 4

II.     There is a sufficient likelihood of success on the merits. ..................................... 6

     A.     Defense Distributed's publication of the April 2021 Files was and is protected from federal censorship by the First Amendment................................... 6

          1.     No preclusion occurred. ................................................................ 6

          2.     No release occurred........................................................................ 7

          3.     No forfeiture occurred.................................................................... 8

          4.     The APA cannot require abridgement of the First Amendment. ............... 8

     B.     Defense Distributed's publication of the April 2021 Files was and is protected from federal censorship by Settlement Agreement................................. 9

          1.     The jurisdictional arguments are wrong. .................................... 9

          2.     The Settlement Agreement is not being fulfilled..................................... 10

          3.     The excuse argument is wrong. ............................................................. 12

     C.     Defense Distributed's publication of the April 2021 Files was and is protected from federal censorship by the 2020 regulatory changes. ................................... 13

CERTIFICATE OF SERVICE ....................................................................................... 16

## SUMMARY OF THE ARGUMENT

June 18, 2021, is the anticipated date of mandate issuance for *Washington II*.  Assuming for the sake of argument that the Ninth Circuit's decision has not already taken effect, all sides now agree that it will take effect upon mandate issuance—in probably just thirty-six days.

When that happens, the State Department will by its own admission engage in a dramatic about face that turns this litigation on its head.  Today the State Department says that the ITAR regime's "world peace" goals require censorship of the April 2021 Files.  But in just about thirty six days, the State Department's only given basis for ordering takedowns of the April 2021 Files will vanish.  In thirty-six days the State Department will reverse course and say that the ITAR regime and its executive branch enforcers no longer care about the April 2021 Files being online.

Meanwhile, the April 2021 Files are already online and completely beyond State Department control.  A critical fact that the State Department's response *never deals with* is that Defense Distributed's prior publication of the April 2021 Files irrevocably committed them to the internet's public domain, where independent republishers beyond anyone's control will continue to make them readily accessible forever.  Ex. A at 1.  And the State Department even helpfully concedes that Americans have always been "free to disseminate the computer files at issue domestically in public or private forums, including via the mail."  Doc. 155 at 33.

Hence, the balance of equities and public interest overwhelmingly favor Plaintiffs.  Defense Distributed seeks nothing but the freedom to do *what it has already done* in full with April's publication and what the State Department concedes it *will be able to do again* in just about thirty-six days.  Holding Defense Distributed's right to free speech hostage for another thirty-six days serves no legitimate interest.  These lopsided equities mean that the slightest likelihood of success on the merits is all that need be shown, and here the likelihood is extraordinarily high.

1

A crucial factual mistake defeats the State Department's entire First Amendment argument. Their entire argument tries to show that the State Department can legitimately use ITAR to censor so-called "functional files that direct 3-D printers to produce firearms and their components." Doc. 155 at 27. But there is no such thing as a computer file that *directs itself* at to produce a firearm; the idea of self-executing 3D gun files is a myth. *See* Doc. 152 at 7-8. And in any event, the so-called "functional files that direct 3-D printers to produce firearms and their components" that the State Department fights so hard to justify censoring are *not* amongst the April 2021 Files at issue here. Their entire First Amendment argument defends the power to censor what regulations call "CAM" files. *But none of the April 2021 Files are CAM files.* Plaintiffs' motion makes that perfectly clear and proves it with unrebutted evidence:

### E.    Defense Distributed's April 2021 Files—*at issue now*

> From April 28, 2021, to May 5, 2021, Defense Distributed published another substantial set of computer files with digital firearms information via DEFCAD ("the April 2021 Files"). *See generally* Doc. 148-74 at 2-3; Ex. A at 1. The April 2021 Files included original and legacy firearms models, CAD data, blueprints, and drawings. *See id.* The April 2021 Files amounted to approximately 16,000 digital files. *Id.* Approximately 60,000 downloads of the April 2021 Files occurred as of this date. *Id.* All of the April 2021 Files have been downloaded at least once. *Id.* All of the April 2021 Files have been irrevocably committed to the public domain. Regardless of whether or not defcad.com continues to publish the April 2021 Files, independent re-publishers with no relationship whatsoever to Defense Distributed will freely re-publish the April 2021 Files on the internet for anyone to download forever. *Id.* ***None of the April 2021 Files constitute what the regulations refer to as "Computer Aided Manufacturing files" or "CAM files" in Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List (USML), 85 Fed. Reg. 4136, 4139-42, 4172 (Jan. 23, 2020). Doc. 148-074.***

Doc. 152 at 11 (emphasis added). Thus, the government's only defense of ITAR's prior restraints pertains to computer files that are *not at issue* in this motion. There is no meaningful defense of the censorship that is actually occurring because the State Department officials that have been censoring Defense Distributed didn't even look to see what speech they were censoring.

2

## ARGUMENT

I.      **Standing exists.**

A.      **Causation exists.**

First, the State Department says that the injuries at issue are caused and redressable not by the State Department, but by the district court in *Washington II*.  Doc. 155 at 2.  But the district judge in *Washington II* did not make the phone call demanding that Defense Distributed take down the April 2021 files.  The State Department's lawyers did.  Doc. 148-83 at 1.  And when those State Department's lawyers issued their censorship command, they did not back it up by saying that publishing the April 2021 files would violate *an injunction* or *the Commerce Department's EAR regime*.  The backed up their threat by saying that publication of the April 2021 files cannot occur because of *the State Department's own ITAR regime*.  *Id.*

The State Department wrongly suggests that the courts in *Washington II* issued orders directed at Defense Distributed and SAF.  *E.g.,* Doc. 155 at 1.  Not so.  Defense Distributed and SAF are not now and never were parties to *Washington II*.  The courts there *never* purported to tell Defense Distributed and SAF what they could or could not do.  The only people being ordered around by *Washington II* are the State Department.

It is likewise wrong to say that because of *Washington II* the files at issue in this case—the April 2021 Files—"remain enjoined as subject to the ITAR."  Doc. 155 at 10.  The *Washington II* injunction addressed the 2020 rule changes *at large*—as they pertained to the entire public, without regard to any specific people or any specific circumstances.  *Washington II* did not render any decision about whether the April 2021 Files are subject to ITAR, and if so whether subjecting the April 2021 Files to ITAR would be illegal because of the Constitution, Settlement Agreement, and other federal free speech protections.

3

The State Department has also never been "enjoined from continuing to implement the Settlement Agreement." Doc. 155 at 8. The *Washington I* injunction applied only to a particular attempt at implementing the Settlement Agreement—not the Settlement Agreement itself and not any other future attempts at implementing the Settlement Agreement.

At bottom, the State Department's causation argument confuses the issue of *whether* it is censoring the April 2021 files with the issue of *why* it is censoring the April 2021 files. Standing cares about *whether* the State Department used ITAR-enforcement threats to censor the April 2021 files, which they clearly did. *Why* they did so is a totally separate issue *for the merits*.

Apparently the State Department feels stuck between a rock and a hard place—between having to comply with the constitutional and other obligations at issue in this case and wanting to comply with the *Washington I* and/or *Washington II* district court injunctions. But for that they have only their own wrongdoing to blame. And in any event the law has a perfectly competent mechanism for dealing with situations where multiple courts truly do subject one party to conflicting obligations. When federal courts in two different circuits tell the same party to do two diametrically opposed things, the answer is not to dismiss either case for lack of standing. It is for the Supreme Court to grant certiorari and decide which obligation is paramount.

**B.    Redressability Exists.**

The State Department also says that redressability is missing because "[e]ven if this Court were to enjoin the State Department from enforcing the ITAR as to 3-D-gun files that were ordered to remain on the USML, the relevant functional 3-D-gun files would remain regulated under the Commerce final rule." Doc. at 155 at 3. This is wrong for multiple reasons.

First, the redressability argument is wrong because it has an empty premise.  The State Department's assertion of the April 2021 Files being covered by the Commerce Department's regime is conclusory and unexplained.  The Commerce Department's brand new EAR regime appears in apply to some digital firearms information, but not all of it, and the State Department never shows which side of the line the April 2021 Files fall on.  No one can know for sure whether and if so how the Commerce Department will enforce its new regime until the Commerce Department itself does so.  *Ipse dixit* from lawyers not representing them cannot suffice.

Second, the redressability argument is wrong because it ignores a key legal difference: The State Department's ITAR regime is *clearly more onerous* than the Commerce Department's regime.  So even if a favorable judgment would not get Defense Distributed and SAF out from *all* federal restrictions on their speech, a favorable judgment *would* get them out from the State Department's most onerous regulations that no other federal regime imposes.

Third, the redressability argument is wrong because it lacks support in precedent.  The State Department has no case holding that one wrongdoer gets out of trouble just because, if their wrongs are stopped, another wrongdoer might later fill their place and do slightly less harm.

The Commerce Department has never actually and imminently threatened Defense Distributed and SAF with censorship of the April 2021 files.  Unless and until that happens, the Court has no occasion to address the State Department's hypothetical scenario.  For now the only federal authority to have illegally censored Defense Distributed and SAF is the State Department, and stopping the injuries that they and they alone are inflicting supplies plenty of standing.

5

II.     **There is a sufficient likelihood of success on the merits.**

    A.     **Defense Distributed's publication of the April 2021 Files was and is protected from federal censorship by the First Amendment.**

        1.     **No preclusion occurred.**

The State Department's leading and presumably best argument about the Constitution is not about the merits at all. The leading argument instead says that the doctrine of claim preclusion bars Defense Distributed and SAF's current claims because of *Defense Distributed I*, the original case between them in this Court, No. 1:15-CV-372. Doc. 155 at 20-23. This is clearly wrong.

Claim preclusion requires the prior case to have rendered a *final* judgment *on the merits*. *See* Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 4406 (West 2021). This is black-letter law. All courts require a judgment that is *final* as opposed to interlocutory, *see, e.g.*, *Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1272–73 (5th Cir. 1986); *Hacienda Records, L.P. v. Ramos*, 718 F. App'x 223, 230 (5th Cir. 2018); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 395–96 (5th Cir. 1998); and all courts require that the judgment be on the merits and not some other ground, *see, e.g.*, *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 676 (5th Cir. 2003); *Miller v. Nationwide Life Ins. Co.*, No. 06-31178, 2008 WL 3086783, at *5 (5th Cir. Aug. 6, 2008); *Foster v. City of El Paso*, 308 Fed. Appx. 811, 812 (5th Cir. 2009).

The State Department does not disagree. It concedes the need to show that "the prior judgment was final and on the merits." Doc. 155 at 21. But then the State Department never makes that showing. It does not even try to make the showing. The showing is impossible.

*Defense Distributed I* has no claim preclusive effects whatsoever because it yielded no final judgment on the merits. The case was dismissed—not adjudicated. It produced no judgment at all, let alone one on the merits. The Fifth Circuit expressly held this—that *Defense Distributed*

*I* produced no judgment at all—in a decision the State Department itself procured, *Defense Distributed v. United States Dep't of State*, 947 F.3d 870, 873 (5th Cir. 2020) ("[T]here is no 'judgment' when the parties voluntarily dismiss the entire case under Rule 41(a)(1)(A)(ii). Under Rule 41(a)(1)(A), a stipulation of dismissal operates to dismiss the action 'without a court order.' Fed. R. Civ. P. 41(a)(1)(A). And '[a] stipulation of dismissal under that rule ordinarily—and automatically—strips the district court of subject-matter jurisdiction' over the dismissed action. *Nat'l City Golf Fin. v. Scott*, 899 F.3d 412, 415–16 (5th Cir. 2018). So the district court here had no jurisdiction to enter final judgment in this case.").[1] The State Department's failure to grapple with this is inexplicable and decisive. Its leading argument is dead on arrival.

### 2.   No release occurred.

No one released this case's constitutional claims. *See* Doc. 155 at 2. The 2018 Settlement Agreement is what supposedly did the releasing, and it applies only to preexisting claims—those that "were or could have been raised" in that case. Doc. 155 at 23. But all of the claims at issue here are *new*—they were not released *by* the Settlement Agreement because they *arise from* the Settlement Agreement—and a contract that predates claims cannot possibly release them. *See, e.g.*, *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 504 (2d Cir. 2014).

---

[1] That the dismissal was "without prejudice" is irrelevant. The *Defense Distributed I* dismissal is nonetheless *not* a judgment of any kind and certainly not a judgment *on the merits*. *See Miller v. Nationwide Life Ins. Co.*, No. 06-31178, 2008 WL 3086783, at *5 (5th Cir. Aug. 6, 2008) ("Nationwide argues that regardless of the grounds upon which Miller's prior claim was dismissed, the dismissal of Miller's suit "with prejudice" suffices to trigger a res judicata bar to the claim. Essentially, Nationwide urges that we hold that any "with prejudice" comment associated with a dismissal categorically triggers a res judicata bar. However, our precedent does not demonstrate such an unwavering categorical approach, and we decline to adopt one here.").

### 3.   No forfeiture occurred.

Plaintiffs put their constitutional claims in play with completely sufficient force. Arguments counting toward this include *both* those made in the motion for a preliminary injunction itself *and* the Second Amended Complaint that the Plaintiffs incorporated by reference into the motion by right under Rule 10(c).  *See* Doc. 152 at 4.  No known authority supports forfeiture in such circumstances.

Simplicity is not a fault for the constitutional claims.  It is a primary feature.  The State Department's censorship is so obviously unconstitutional that long explanations are unnecessary. A motion full of protracted arguments is especially unnecessary where, as here, the burden of winning arguments about whether strict scrutiny has been complied with falls *not on the movant citizens but on the government that is trying to censor them*.  *See, e.g.*, *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004).   Once Defense Distributed and SAF did the quick work of showing that strict scrutiny applied, they did not need to make *any extensive argument about strict scrutiny at all*, let alone a detailed one.

### 4.   The APA cannot require abridgement of the First Amendment.

APA compliance is a mainstay of the State Department's position.  No constitutional violations occurred, they say, because the State Department has been doing nothing but complying with the Administrative Procedure Act requires.  But even if the State Department is right that the APA required it to take the challenged actions, that is no excuse.

The Administrative Procedure Act could not possibly authorize the State Department to take actions that violate the First Amendment.  Nor does it.  Rather, the statute acknowledges constitutional limitations on the relief it can supply by providing that "[n]othing herein . . . affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny

relief on any other appropriate legal or equitable ground." 5 U.S.C. § 702; *see Saavedra Bruno v. Albright*, 197 F.3d 1153, 1158 (D.C. Cir. 1999).

**B.    Defense Distributed's publication of the April 2021 Files was and is protected from federal censorship by Settlement Agreement.**

**1.    The jurisdictional arguments are wrong.**

The State Department's Tucker Act and APA arguments are squarely defeated by *Normandy Apartments, Ltd. v. U.S. Dept. of Hous. & Urban Dev.*, 554 F.3d 1290, 1300 (10th Cir. 2009). Where, as here, "a party asserts that the government's breach of contract is contrary to federal regulations, statutes, or the Constitution, and when the party seeks relief other than money damages, the APA's waiver of sovereign immunity applies and the Tucker Act does not preclude a federal district court from taking jurisdiction." *Id.* at 1300; *see also Columbus Reg'l Hosp. v. Fed. Emergency Mgmt. Agency*, 708 F.3d 893, 897 (7th Cir. 2013) ("To the extent that [a] constitutional theory demands money as a remedy, it belongs in the Court of Federal Claims. To the extent that it seeks prospective relief, such as another hearing, it is within the scope of § 702."). Regardless of whether claims for money damages might belong elsewhere, *Normandy Apartments* makes clear that Defense Distributed and SAF's contract, APA, and Due Process claims for non-damages relief (such as the instant injunction) are fully within this Court's jurisdiction.

Damages for past misconduct are *not* an adequate remedy for the dangers posed by the State Department's *ongoing* and *threatened future censorship*. For those harms—which lie at the core of the case—only declaratory and injunctive relief can vindicate. *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). As a result, this is an action where the APA's declaratory and injunctive relief is proper under because there is "no other adequate remedy." 5 U.S.C. § 704. *See* Doc. 155 at 15.

9

The State Department's Tucker Act argument is also wrong because it contradicts the decision in *Washington I*. *If correct*, the State Department's Tucker Act argument would establish that jurisdiction was lacking in *Washington I* because that case implicated the Settlement Agreement just as much as this one. *See Washington v. United States Dep't of State*, No. C18-1115RSL, 2018 WL 5921011, at *2 (W.D. Wash. Nov. 13, 2018) ("the Court's findings will bind all of the interested parties and preclude collateral challenges to the APA determination (such as an action for specific performance of the settlement agreement)"). Yet the State Department in *Washington I* made no Tucker Act argument, the district court in *Washington I* rejected the Tucker Act argument, *Washington v. United States Dep't of State*, 420 F. Supp. 3d 1130, 1141 (W.D. Wash. 2019), and now the State Department is trying to use *Washington I* to its advantage. The Tucker Act cannot be had both ways, and the State Department made its choice. Unless and until the State Department concedes that the Tucker Act deprived *Washington I* of jurisdiction, it cannot succeed on the same theory here.

Finally, none of the Tucker Act arguments warrant denying a preliminary injunction because they go *not* to the question of *whether* Plaintiffs will succeed on the merits, but *where*. Even if some part of the case has to be transferred to another court, it remains meritorious and deserving of preliminary injunctive protection.

### 2.      The Settlement Agreement is not being fulfilled.

As it does with standing, the State Department's no-breach argument confuses the issue of *whether* it is breaching the Settlement Agreement with the issue of *why* it is breaching the Settlement Agreement. The *whether* question is easily answered. Defense Distributed and SAF do not possess the temporary modification that the Settlement Agreement requires the State Department to provide. Defense Distributed and SAF do not possess the license that the Settlement Agreement requires the State Department to provide. And Defense Distributed and SAF do not

possess the acknowledgements that the Settlement Agreement requires the State Department to provide.  Nor by the State Department's view do Defense Distributed and SAF have the final rule that the Settlement Agreement requires the State Department to provide.

The breach as to the temporary modification and license obligation is most vivid.  Although compliance *began* in July 2018 when the license and Temporary Modification were first supplied, it ended just as soon as the State Department acceded to Western District of Washington's preliminary injunction.  The State Department admits as much in saying that it "removed the [Temporary Modification] from its website and informed counsel for Plaintiffs that the letter to Mr. Wilson should be considered a nullity."  Doc. 155 at 8.

Furthermore, the State Department has ever since then been in breach of the Paragraph 1(d) requirement to "acknowledge[] and agree[]" that  "the license issued to the Plaintiffs permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files."  The breach occurred once the State Department deemed the license a "nullity" and continues through to today because the government will still not make the acknowledgement.   Indeed, the State Department's opposition to the instant motion for a preliminary injunction constitutes another breach of this obligation.   Once again, the State Department finds itself refusing to acknowledge that the license "permits" Defense Distributed to freely publish the digital firearms information at issue.

The Settlement Agreement *proviso* about "to the extent authorized by law (including the Administrative Procedure Act)" does not change this result for two reasons.  First, the *proviso* does not change this result because it lies solely within Paragraph 1(a) (the obligation about a new final rule).  More importantly, even if this *proviso* existed in every Settlement Agreement paragraph, it

would not stop the State Department from causing a breach because the obligation imposed by Paragraph 1(b) *is authorized by law*, including the Administrative Procedure Act.

Legally, the State Department has no excuse for making just one attempt at compliance with the Settlement Agreement. This is because the Settlement Agreement requires the State Department to deliver the Paragraph 1 substantive changes *without regard to how many attempts that takes*. It does not matter how the State Department accomplished the ends sets forth in Paragraphs 1(a), 1(b), 1(c), 1(d), and 1(e), so long as they are accomplished.

This holds true notwithstanding the *Washington I* injunction. The Settlement Agreement is not the same as actions the State Department took in its attempt to comply with the Settlement Agreement. The Western District of Washington's injunction acts not upon the latter, but upon the former. That case and its injunction are about *how* the State Department carried out its first attempt at Settlement Agreement compliance—not whether the State Department is allowed to comply. The *Washington I* injunction paused parts of the State Department's *first attempt* to comply with the Settlement Agreement. But it does not act upon the Settlement Agreement itself, and does not stop the State Department from taking new actions to comply with it.

Hence, the State Department remains perfectly free—and contractually obligated—to accomplish its Settlement Agreement Paragraph 1 undertakings by whatever legal means are necessary. If that means going through the motions not just once but twice because of an APA dustup in attempt number one, so be it. The State Department knew full well when it made the Settlement Agreement that multiple attempts might be required in the case of an APA fault.

### 3. The excuse argument is wrong.

In rare circumstances, a breach of contract can be excused by the occurrence of *unforeseeable* events that the parties did not contemplate in advance. But a breach of contract is never excused by the occurrence of a *foreseeable* event that the parties did contemplate in advance.

*See* Restatement (Second) of Contracts § 261 (1981).  If the State Department is right in saying over and over again that the Western District of Washington's injunction was foreseeable all along, then that event cannot possibly excuse the State Department's current breach of contract.

Furthermore, well-established law holds that, to claim this excuse, a party in the State Department's position must engage in a good faith and diligent effort to avoid the court order. *See generally* Restatement (Second) of Contracts § 264; Restatement (First) of Contracts § 458 (1932). "Clearly, when possible, one must make a diligent effort to dissolve outstanding injunctions to avoid being found at fault." 30 Williston on Contracts § 77:61 (West 4th ed. 2019); *accord* 14 Corbin on Contracts § 76.5 (2001). Under these authorities, the State Department failed to exhibit the requisite good faith and diligence by, among other things, opting not to appeal the preliminary injunction decision to at least the Ninth Circuit.

Additionally, the Court should reject the excuse argument because the parties contracted for the State Department to assume the risk of the injunction they now claim as the excuse. *See* Restatement (Second) of Contracts § 264 (1981); Restatement (First) of Contracts § 458, cmts. a, d (1932); Williston, *supra* § 77:61; Corbin, *supra* § 76.5. "Circumstances surrounding the formation of a contract may indicate the possibility of potential injunctive relief and, if so recognized, its risk may be assumed by the obligor." Williston, *supra* § 77:61. That rule fits this case neatly because the Settlement Agreement makes the State Department bear the risks of adverse litigation.

C.     **Defense Distributed's publication of the April 2021 Files was and is protected from federal censorship by the 2020 regulatory changes.**

Decision finality is different than decision effect.  Finality goes to the matter of when a decision can be *altered* by later court action.  Effect goes to the matter of when a decision really occurs.  Decision effect matters here.  But the government's only arguments are about finality.

The government's conflation is repeated.  It says that the Ninth Circuit's *Washington II* decision "will become final once the Ninth Circuit issues its mandate."  Doc. 155 at 12.  It cites cases for the proposition that "[u]ntil the mandate issues, a circuit court retains jurisdiction of the case and may modify or rescind its opinion."  *Id.* at 13.  Those assertions of *finality* do not answer the separate question here of whether the decision has legal effect now.  Final and non-final decisions alike often go into effect for a period of time only to be deprived of effect by later appellate review.  But in this case there is only a Ninth Circuit decision (a judgment) that by its plain terms goes int effect immediately.  *If* later appellate review vacates the Ninth Circuit's decision, *then* the district court's injunction would be revived.  But that simply has not happened.

Critically, the State Department has failed to answer the motion's argument that, "[r]egardless of mandate technicalities, the government cannot prosecute citizens under the guise of an order it knows and agrees is void."  Doc. 152 at 37-38.  Because the State Department knows that the 2020 rule changes are a practical *fait accompli*, it knows that censoring Defense Distributed and SAF with ITAR-enforcement threats will be illegal in a matter of days.  So even if the *Washington II* injunction *lets* the State Department continue enforcing ITAR for a few more days, that is a far cry from the far more momentous question of whether the State Department *should* do so as a matter of its prosecutorial discretion, which is bounded.  As a matter of law, the State Department clearly abused its discretion in choosing to censoring Defense Distributed and SAF with ITAR-enforcement threats that it knows will be undeniably  illegal in a matter of days.

## CONCLUSION

The motion should be granted.

Date: May 13, 2021.                       Respectfully submitted,

                                          BECK REDDEN LLP
                                          By /s/ Chad Flores
                                          Chad Flores
                                          cflores@beckredden.com
                                          State Bar No. 24059759
                                          Daniel Nightingale
                                          dhammond@beckredden.com
                                          State Bar No. 24098886
                                          Hannah Roblyer
                                          hroblyer@beckredden.com
                                          State Bar No. 24106356
                                          1221 McKinney St., Suite 4500
                                          Houston, TX 77010
                                          (713) 951-3700 | (713) 952-3720 (fax)

                                          CLARK HILL PLC
                                          Matthew A Goldstein
                                          1001 Pennsylvania Avenue Northwest
                                          Suite 1300 South
                                          Washington, DC 20004
                                          (202) 550-0040

                                          Josh Blackman
                                          joshblackman@gmail.com
                                          Texas Bar No. 24118169
                                          1303 San Jacinto Street
                                          Houston, TX 77002
                                          (202) 294-9003 | (713) 646-1766 (fax)

                                          Attorneys for Plaintiffs Defense Distributed
                                          and Second Amendment Foundation, Inc.

## CERTIFICATE OF SERVICE

I certify that a copy of this filing was served on all parties and/or their counsel of record through a manner authorized by Federal Rule of Civil Procedure 5(b) on May 13, 2021.

<u>/s/ Chad Flores</u>
Chad Flores