IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, INC., | § § § | |
| Plaintiffs, | § § | No. 1:18-cv-637-RP |
| v. | § § | |
| U.S. DEPARTMENT OF STATE, ANTHONY BLINKEN, in his official capacity as Secretary of State; DIRECTORATE OF DEFENSE TRADE CONTROLS; MIKE MILLER, in his official capacity as Deputy Assistant Secretary of Defense Trade Controls; SARAH HEIDEMA, in her official capacity as Director of Policy, Office of Defense Trade Controls Policy, | § § § § § § § § § § | |
| Defendants. | § | |

## DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

    A.     Statutory and Regulatory Background ........................................................... 2

    B.     The State Department No Longer Regulates the Export of the 3-D-Gun
Files ................................................................................................................. 3

    C.     History of this Litigation ................................................................................ 4

          1.     Defense Distributed I — Defense Distributed sued to remove 3-D-
gun files from USML Category I and the ITAR export control regime ........... 4

          2.     Washington I — States sue to block State's compliance with
Settlement Agreement. ...................................................................................... 5

          3.     Washington II — States challenge the final rules removing 3-D-gun
files from USML ................................................................................................ 6

          4.     Defense Distributed II — Plaintiffs sue to block State from
regulating 3-D-gun files and for alleged breaches of the Settlement
Agreement. ........................................................................................................ 8

ARGUMENT ..................................................................................................................... 9

I.     Plaintiffs' claims for injunctive and declaratory relief are moot because State no
longer regulates the 3-D-gun files under the ITAR. ............................................... 9

II.     Plaintiffs' claims for injunctive relief are also barred by the settlement agreement. .......... 14

    A. Plaintiffs' claims are barred by claim preclusion. ........................................... 15

    B. Plaintiffs' non-contract claims have been released. ......................................... 17

III.     This Court does not have jurisdiction over Plaintiffs' claims for breach of contract. ............. 18

    A. The United States has not waived sovereign immunity for contract claims seeking
relief other than money damages. ................................................................... 18

    B. Plaintiffs' claims for money damages should be transferred or dismissed. ............. 19

CONCLUSION ................................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*21st Century Telesis Joint Venture v. FCC,*
   318 F.3d 192 (D.C. Cir. 2003) ................................................................................10

*Ala. Rural Fire Ins. Co. v. Naylor,*
   530 F.2d 1221 (5th Cir. 1976) ...............................................................................19

*Already, LLC v. Nike, Inc.,*
   568 U.S. 85 (2013) ..........................................................................................10, 14

*Amawi v. Paxton,*
   956 F.3d 816 (5th Cir. 2020) ................................................................................13

*Arizonans for Off. English v. Arizona,*
   520 U.S. 43 (1997) ................................................................................................10

*Ayissi v. Kroger Tex., L.P.,*
   No. 20-0652, 2021 WL 1537702 (5th Cir. Apr. 19, 2021) ....................................15

*Bell BCI Co. v. United States,*
   570 F.3d 1337 (Fed. Cir. 2009) ............................................................................18

*Burke v. Barnes,*
   479 U.S. 361 (1987) ..............................................................................................11

*Church of Scientology of Cal. v. United States,*
   506 U.S. 9 (1992) ............................................................................................10, 13

*CIC Prop. Owners v. Marsh USA, Inc.,*
   460 F.3d 670 (5th Cir. 2006) ................................................................................18

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983) ................................................................................................12

*Clayton v. ConocoPhillips Co.,*
   722 F.3d 279 (5th Cir. 2013) ................................................................................17

*Davis v. Dallas Area Rapid Transit,*
   383 F.3d 309 (5th Cir. 2004) ................................................................................15

*Def. Distributed v. U.S. Dep't of State,*
   121 F. Supp. 3d 680 (W.D. Tex. 2015) ..................................................................4

*Def. Distributed v. U.S. Dep't of State,*
    138 S. Ct. 638 (2018) ...................................................................................................................4

*Def. Distributed v. U.S. Dep't of State,*
    838 F.3d 451 (5th Cir. 2016) .......................................................................................................4

*Def. Distributed v. U.S. Dep't of State,*
    865 F.3d 211 (5th Cir. 2017) .......................................................................................................4

*Def. Distributed v. United States Dep't of State,*
    947 F.3d 870 (5th Cir. 2020) ...............................................................................................6, 17

*Diffenderfer v. Central Baptist Church of Miami, Florida, Inc.,*
    404 U.S. 412 (1972) ..............................................................................................................10, 11

*Dubuc v. Green Oak Twp.,*
    312 F.3d 736 (6th Cir. 2002) .....................................................................................................16

*Ellis v. Amex Life Ins. Co.,*
    211 F.3d 935 (5th Cir. 2000) .....................................................................................................16

*Golden v. Zwickler,*
    394 U.S. 103 (1969) ....................................................................................................................14

*Holland v. United States,*
    621 F.3d 1366 (Fed. Cir. 2010) ................................................................................................18

*Honig v. Doe,*
    484 U.S. 305 (1988) ......................................................................................................................9

*Instituto Mexicano Del Seguro Soc. v. Orthofix Int'l N.V.,*
    No. 4:18-cv-121-ALM-KPJ, 2018 WL 4561621 (E.D. Tex. Sept. 24, 2018) ......................16

*Kremens v. Bartley,*
    431 U.S. 119 (1977) ....................................................................................................................11

*Lane v. Pena,*
    518 U.S. 187 (1996) ....................................................................................................................18

*Lewis v. Cont'l Bank Corp.,*
    494 U.S. 472 (1990) ....................................................................................................................11

*McCorvey v. Hill,*
    385 F.3d 846 (5th Cir. 2004) .....................................................................................................11

*Misischia v. St. John's Mercy Health Sys.,*
    457 F.3d 800 (8th Cir. 2006) .....................................................................................................16

*Murphy v. Hunt,*
    455 U.S. 478 (1982) ..................................................................................................................10

*Muskrat v. United States,*
    219 U.S. 346 (1911) ..................................................................................................................14

*N.Y. State Rifle & Pistol Ass'n, Inc. v. City of N.Y.,*
    140 S. Ct. 1525 (2020)............................................................................................................13

*Okpalobi v. Foster,*
    244 F.3d 405 (5th Cir. 2001) ................................................................................................14

*Oreck Direct, LLC v. Dyson, Inc.,*
    560 F.3d 398 (5th Cir. 2009) ................................................................................................18

*Ozinga v. Price,*
    855 F.3d 730 (7th Cir. 2017) ..........................................................................................10, 12

*Phillips v. McLaughlin,*
    854 F.2d 673 (4th Cir. 1988) ..........................................................................................10, 12

*Princeton Univ. v. Schmid,*
    455 U.S. 100 (1982) ..................................................................................................................11

*Sannon v. United States,*
    631 F.2d 1247 (5th Cir. 1980)........................................................................................10, 12

*Spell v. Edwards,*
    962 F.3d 175 (5th Cir. 2020) ..............................................................................10, 12, 13, 14

*State v. Def. Distributed,*
    No. 20-35030, 2020 WL 4332902 (9th Cir. July 21, 2020) ................................................6

*Telecare Corp. v. Leavitt,*
    409 F.3d 1345 (Fed. Cir. 2005) ............................................................................................19

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship,*
    513 U.S. 18 (1994)....................................................................................................................10

*U.S. Marine, Inc. v. United States,*
    478 F. App'x 106 (5th Cir. 2012) ....................................................................................18, 19

*United States v. Jones,*
    131 U.S. 1 (1889) ......................................................................................................................19

*Veasey v. Abbott,*
    888 F.3d 792 (5th Cir. 2018) ..........................................................................................10, 13

*Wash. v. U.S. Dep't of State,*
 318 F. Supp. 3d 1247 (W.D. Wash. 2018) ........................................................................5

*Wash v. U.S. Dep't of State,*
 420 F. Supp. 3d 1130 (W.D. Wash. 2019) ........................................................................6

*Wash. v. Dep't of State, ("Wash. II")*
 443 F. Supp. 3d 1245 (W.D. Wash. 2020) ...................................................................7, 12

*Wash. v. U.S. Department of State,*
 996 F.3d 552 (9th Cir. 2021) ....................................................................................7, 12

*Yarls v. Bunton,*
 905 F.3d 905 (5th Cir. 2018) ........................................................................................14

**Statutes**

5 U.S.C. § 704 ..........................................................................................................19

22 U.S.C. § 2751 ........................................................................................................2

22 U.S.C. § 2778 ...................................................................................................2, 3, 7

28 U.S.C. § 1346 ......................................................................................................19

28 U.S.C. § 1491 ...................................................................................................19, 20

28 U.S.C. § 1500 ......................................................................................................20

28 U.S.C. § 1631 ......................................................................................................20

50 U.S.C. § 4821 ........................................................................................................7

**Regulations**

3 C.F.R. § 223 (2014) ..................................................................................................2

3 C.F.R. § 224 (2014) ..................................................................................................2

15 C.F.R. § 734.7 ..................................................................................................1, 4, 13

22 C.F.R. parts 120-130 ................................................................................................2

22 C.F.R. § 120.6 ......................................................................................................2

22 C.F.R. § 120.10 ....................................................................................................3

22 C.F.R. § 121.1 ....................................................................................................2, 3

85 Fed. Reg. 3819 (Jan. 23, 2020) ........................................................................1, 3, 7, 12

85 Fed. Reg. 4136 (Jan. 23, 2020) ..............................................................................*passim*

86 Fed. Reg. 29,189 (June 1, 2021) ....................................................................................8, 12

86 Fed. Reg. 29,196 (June 1, 2021) ....................................................................................7, 12

Administration of Reformed Export Controls,
    Exec. Order No. 13,637 ...................................................................................................2

## Other Authorities

*Press Release*, The White House (Aug. 30, 2010), https://perma.cc/4URZ-N5TA ...................................3

## INTRODUCTION

In January 2020, the Department of State ("State") and Department of Commerce ("Commerce") issued a pair of final rules that modified the regulatory regime applicable to the export of certain firearms, firearm parts, and the related technical data for those firearms and parts. 85 Fed. Reg. 3819 (Jan. 23, 2020) (State Rule); 85 Fed. Reg. 4136 (Jan. 23, 2020) (Commerce Rule). State removed certain items and their technical data—including files related to the 3-D printing of certain types of guns described in Plaintiffs' Complaint ("3-D-gun files"). The export of these items is now controlled by the Export Administration Regulations, administered by Commerce, which established equivalent export controls over these items and related technical data files. *See* 15 C.F.R. § 734.7; 85 Fed. Reg. 4136. Although the State and Commerce rules were temporarily paused by proceedings in the Ninth Circuit, the rules have now gone into full effect. Consequently, the State Department no longer regulates the export of 3-D-gun files, the regulation of which is central to Plaintiffs' Complaint.

Plaintiffs ask this court to issue declaratory and injunctive relief against State to forestall State from regulating the export of 3-D-gun files. Plaintiffs also seek money damages and specific performance for an alleged breach of a Settlement Agreement between Plaintiffs and State. But Plaintiffs' claims cannot proceed because this case must be dismissed for lack of jurisdiction.

First, Plaintiffs' APA and constitutional claims, which challenge State's regulation of 3-D-gun files, are moot: State no longer regulates 3-D-gun files. Second Am. Compl. ("SAC"), Dkt. 117 (Counts 1–4, 6–8). Plaintiffs cannot seek relief from a regulation that no longer applies to them or against an agency that no longer regulates their conduct. In the language of Article III, there is no longer a live controversy between the parties. An opinion about the validity of a since-rescinded regulation would be an advisory opinion, and any action by this court in declaring State's actions unlawful would afford no relief to Plaintiffs. These claims should therefore be dismissed as moot.

Plaintiffs' non-contract claims are also subject to dismissal because they are barred by *res judicata* and the broad release contained in the Settlement Agreement. Those claims are barred because they could have been—and in fact were—raised by Plaintiffs in their prior lawsuit. That lawsuit was dismissed with prejudice. The doctrine of *res judicata* prohibits Plaintiffs from filing a new action

alleging the same purported violation, seeking the same remedies. Plaintiffs' non-contract claims are also barred because Plaintiffs executed a broad release when the parties settled the prior lawsuit alleging that State could not lawfully regulate the export of 3-D-gun files.

Finally, this court has no jurisdiction over Plaintiffs' contract claim and the related claims for monetary damages arising from a purported breach of the Settlement Agreement. Claims for monetary relief over $10,000 for a breach of contract can only be heard in the United States Court of Federal Claims—not this Court. As set forth below, these claims must be transferred to the Court of Federal Claims or, in the alternative, dismissed without prejudice.

## BACKGROUND

### A.  Statutory and Regulatory Background

Plaintiffs challenge since-rescinded regulations promulgated under the Arms Export Control Act ("AECA"), 22 U.S.C. § 2751 *et seq.* The Act authorizes the President, "[i]n furtherance of world peace and the security and foreign policy of the United States," to "control the import and the export of defense articles and defense services." *Id.* § 2778(a)(1). "[T]he President is authorized . . . to promulgate regulations for the import and export of such articles and services," and "to designate those items which shall be considered as defense articles and defense services," by describing them on the "United States Munitions List" ("USML"). *Id.* With exceptions not relevant here, "no defense articles or defense services . . . may be exported or imported without a license for such export or import." 22 U.S.C. § 2778(b)(2).

Under authority delegated by the President, State administers the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. parts 120–130, which control, among other things, the export of defense articles and defense services described on the USML. *See* Administration of Reformed Export Controls, Exec. Order No. 13,637, § 1(n) (Mar. 8, 2013), 3 C.F.R. §§ 223, 224 (2014) (delegation of authority). The USML includes both physical articles and "technical data . . . directly related" to those articles. 22 C.F.R. § 121.1(a)(1); *see also id.* § 120.6. "Technical data" includes "[i]nformation . . . which is required for the design, development, production, manufacture, assembly, operation, repair, testing, maintenance or modification of defense articles," such as "information in the form of blueprints,

drawings, photographs, plans, instructions or documentation." *Id.* § 120.10(a)(1). The technical data the ITAR previously controlled included the files at issue in this litigation: the 3-D-gun files.

B.   The State Department No Longer Regulates the Export of the 3-D-Gun Files

Under the AECA, the President "periodically review[s] the items on the [USML] to determine what items, if any, no longer warrant export controls." 22 U.S.C. § 2778(f)(1). Since 2010, at the direction of then-President Obama, State has engaged in an interagency effort to streamline the USML to only those defense articles that provide the United States with a critical military or intelligence advantage. *Press Release*, The White House (Aug. 30, 2010), https://perma.cc/4URZ-N5TA. As part of this effort, State published 26 rules between 2013 and 2017, revising 18 of the 21 USML categories by removing some items from the USML; for those items, the Department of Commerce has assumed regulatory authority.[1] *See* Miller Decl., Dkt. 155-1 ¶ 36. Thus, as of 2017, only three USML categories—Categories I–III—had not yet been revised. Among the items then-controlled under Category I were non-automatic and semi-automatic firearms up to .50 caliber, and as a result, any technical data related to those items. 22 C.F.R. § 121.1, Category I(a), (i) (2019). By early 2015, however, State had begun drafting regulations to remove these items from the USML. *See* Miller Decl. ¶ 50.

Importantly, and fatally, State no longer regulates the export of 3-D-gun files central to Plaintiffs' complaint. In a final rule published January 23, 2020, State removed certain items and their technical data—including that related to the 3-D-gun files at issue here—from the USML. 85 Fed. Reg. 3819. A preliminary injunction delayed the removal of these files, but effective May 26, 2021, that injunction was lifted by the Ninth Circuit, and the final rule removing certain technical data, including the 3-D-gun files, went into full effect. Consequently, State no longer has authority to regulate the export of the 3-D-gun files. Instead, the export of these items removed from the USML, including the 3-D-gun files, is now controlled by the Export Administration Regulations, administered by the Department of Commerce. *See* 15 C.F.R. § 734.7; 85 Fed. Reg. 4136.

---

[1] The Department of Commerce regulates exports through a similar regulatory scheme—the Export Control Regulations (EAR) sets the rules for export of items on the Commerce Control List (CCL).

C. History of this Litigation

This Court is familiar with the relevant litigation involving the 3-D-gun files as set forth fully in Defendants' previous briefing, see Dkt. 155 at 10–19. Defendants summarize the relevant portions of this history below.

1. *Defense Distributed I* — Defense Distributed sued to remove 3-D-gun files from USML Category I and the ITAR export control regime

In 2012, Defense Distributed posted computer files on the internet that enabled individuals with 3-D printers to produce operable plastic firearms. *See Def. Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680, 687 (W.D. Tex. 2015) ("*Def. Distributed I*"). In May 2013, the State Department advised Defense Distributed that it may have exported technical data regulated under then-operable USML Category I without the authorization required by the ITAR. *Id.* Defense Distributed removed the technical data and submitted a commodity jurisdiction request. *Id.* State ultimately determined that some files were subject to the ITAR, while others were not. *Id.* at 687–88.

Defense Distributed, together with the Second Amendment Foundation (the same Plaintiffs in this case), sued State, contending that the ITAR export regulations, including the requirement of obtaining a license before publishing 3-D-gun files on the internet violated the First, Second, and Fifth Amendments. *Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451, 456 (5th Cir. 2016). Defense Distributed moved for a preliminary injunction that would allow it to post the regulated files on the internet without a license; it also sought the ability to publish similar files in the future. *Def. Distributed I*, 1:15-cv-372, Dkt. 7-1. This Court denied the requested injunction. 121 F. Supp. 3d at 687. The Fifth Circuit affirmed. *Def. Distributed*, 838 F.3d at 469 n.12 (Jones, J., dissenting). The Fifth Circuit denied rehearing *en banc*, over a four-judge dissent, 865 F.3d 211, 212 (5th Cir. 2017), and the Supreme Court declined to review the denial of the preliminary injunction, 138 S. Ct. 638 (2018).

This Court subsequently ordered the parties to exchange written settlement demands, *Def. Distributed I*, 1:15-cv-372, Dkt. 88, that culminated in a Settlement Agreement executed on June 29, 2018. *Def. Distributed II*, 1:18-cv-637, Compl., Ex. A, Dkt. 117-1. Under the Agreement, State agreed to take temporary actions concerning State's regulation of technical data in the form of certain 3-D-

gun files, to the extent authorized by law, including the Administrative Procedure Act. Plaintiffs agreed to stipulate to dismissal of their claims with prejudice and executed a broad release of claims that discharged State "from any and all claims, demands and causes of action of every kind, nature or description, whether currently known or unknown, which Plaintiffs may have had, may now have, or may hereafter discover that were or could have been raised in the Action." Settlement Agreement ¶ 3.

Consistent with the Settlement Agreement, on July 27, 2018, State announced it was temporarily modifying the Munitions List to exclude the 3-D-gun files at issue in the Defense Distributed litigation and sent a letter to Defense Distributed approving the 3-D-gun files for public release. Plaintiffs acknowledged that these actions complied with the Settlement Agreement. *See Def. Distributed I*, Dkt. 117 at 6. On July 27, 2018, the parties filed a stipulation of dismissal with prejudice pursuant to Rule 41(a)(1)(A)(ii) and 41(a)(1)(B). *Id.*, Dkt. 112. The parties did not submit the Settlement Agreement to the Court, did not ask the Court to adopt the Settlement Agreement in an order, and did not ask the Court to retain jurisdiction over the matter. On July 30, 2018, this Court entered an order dismissing the case with prejudice. *Id.*, Dkt. 113.

2.   *Washington I* — States sue to block State's compliance with Settlement Agreement.

That same day, a coalition of States sued under the APA, challenging State's actions related to its settlement with Plaintiffs. *See State of Wash., et al. v. U.S. Dep't of State, et al.*, No. 2:18-cv-1115-RSL (W.D. Wash. 2018) ("*Wash. I*"). The State Department defended its actions as lawful, but that court entered a temporary restraining order against the Government, followed by a preliminary injunction. *See Wash. v. U.S. Dep't of State,* 318 F. Supp. 3d 1247, 1264 (W.D. Wash. 2018). The court enjoined the Government "from implementing or enforcing the 'Temporary Modification of Category I of the [USML]' and the letter to Cody R. Wilson . . . issued by the U.S. Department of State on July 27, 2018." *Id.* The court also ordered the Government to "preserve the status quo *ex ante* as if the modification had not occurred and the letter had not been issued." *Id.* This enjoined State from continuing to implement the Settlement Agreement. *See Def. Distributed I*, Dkt. 136 at 1.

Based on the injunctive relief ordered by the court in *Wash. I*, State removed the

announcement from its website and informed counsel for Plaintiffs that the letter to Mr. Wilson should be considered a nullity during the pendency of the injunction. *See Def. Distributed II*, 1:18-cv-637, Compl., Ex. D, 117-4. After the *Wash. I* court issued its injunction, the *Def. Distributed I* Plaintiffs moved to set aside the dismissal with prejudice and reopen the case in the Western District of Texas, arguing that the *Wash. I* court order rendered the Agreement a legal "nullity." *Id.*, Dkt. 117 at 11. This Court denied the request, Dkt. 136, and that decision was affirmed on appeal. *Def. Distributed v. United States Dep't of State*, 947 F.3d 870 (5th Cir. 2020).

On November 12, 2019, the *Wash. I* court granted summary judgment in favor of plaintiffs, finding that State had violated the APA. *Wash. v. U.S. Dep't of State*, 420 F. Supp. 3d 1130, 1135 (W.D. Wash. 2019). As a result, the court permanently vacated State's temporary modification of the USML and its letter to Defense Distributed. *Id.* at 1148. The State Department did not appeal that final decision, and would not need to because it planned to publish a final rule that would remove the relevant 3-D-gun files from USML Category I. *See State v. Def. Distributed*, No. 20-35030, 2020 WL 4332902, at *1 (9th Cir. July 21, 2020) (dismissing appeal as moot).

3.   *Washington II* — States challenge the final rules removing 3-D-gun files from USML.

The litigation in the Western District of Washington, together with comments from the public and from members of Congress, called attention to the effect of proposed State and Commerce rules on the regulation of the export of certain 3-D-printed firearms files. To address the "national security and foreign policy" concerns with such exports, Commerce's final rule closed the gaps between its own regulations and the prior State export regulation of such files under the ITAR. 85 Fed. Reg. at 4136; Miller Decl., ¶ 70–78. And so, in a pair of final rules published January 23, 2020, State removed certain items and their technical data, including the 3-D-gun files, from the USML and the Commerce Department effectively added the same items and files to the CCL. 85 Fed. Reg. 3819; 85 Fed. Reg. 4136. Under Commerce's final rule, a license is required to export certain 3-D-gun files defined in the rule, including by public posting on the internet.

A coalition of several States sued the Departments of State and Commerce after those agencies

published final rules removing certain items, including 3-D-gun files, from Category I of the USML and adding them to the EAR, alleging that the final rules violated the APA. *Wash. v. U.S. Dep't of State*, 2:20-cv-111 (W.D. Wash 2020) ("*Wash. II*"). The Government argued, among other things, that the court lacked jurisdiction to review those rules. *Wash. II*, 443 F. Supp. 3d 1245, 1253 (W.D. Wash. 2020). The court rejected this jurisdictional argument, and issued a preliminary injunction enjoining State's rule "insofar as it alters the status quo restriction on technical data and software directly related to the production of firearms or firearm parts using a 3-D-printer or similar equipment." *Id.* at 1262–63. The court severed those enjoined provisions from the rest of the challenged rules, reasoning that the other modifications made by the rules "are part of a decade-long reform to the export-control system," and would have been promulgated even without the changes to the regulation of 3-D printed firearm files. *Id.* at 1256. The court did not enjoin the Commerce Rule.

The Government appealed, and on April 27, 2021, the Ninth Circuit held that "Congress expressly precluded review of the relevant agency actions here" in 22 U.S.C. § 2778(h) and 50 U.S.C. § 4821(a). *Wash. v. U.S. Department of State*, 996 F.3d 552, 557 (9th Cir. April 27, 2021). Because the "district court erred in reviewing" the final rules, *id.* at 565, the Court "vacate[d] the injunction and remand[ed] with instructions to dismiss," *id.* at 557. On May 26, 2021, the Ninth Circuit issued its mandate, Dkt. 65, effectuating that court's judgment—vacating the preliminary injunction and instructing the district court to dismiss. *Wash. v. U.S. Dep't of State*, No. 20-35391, Dkts. 65 & 66 (9th Cir. May 26, 2021). As a result, the entirety of State's final rule went into effect, and State no longer regulates the export of technical data related to producing certain 3-D printed firearms or components.

On June 1, 2021, State published a notice in the Federal Register making clear that it no longer regulates 3-D-printed firearms files. *International Traffic in Arms Regulations: U.S. Munitions List Categories; Preliminary Injunction Vacated by a Federal Court of Appeals*, 86 Fed. Reg. 29,196 (June 1, 2021). And the Department of Commerce published a notice in the Federal Register explaining that it regulates certain 3-D-gun files under its export control regime, the EAR. *Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List (USML); Notifying the Public of the Transfer of Jurisdiction of Certain Technology and Software as a Result of a Vacated March*

*6, 2020 Injunction*, 86 Fed. Reg. 29,189 (June 1, 2021).

> 4. *Defense Distributed II* — Plaintiffs sue to block State from regulating 3-D-gun files and for alleged breaches of the Settlement Agreement.

This case was not originally brought against the current State Department defendants. Rather, on July 29, 2018, Defense Distributed filed this lawsuit against Gurbir Grewal, the Attorney General of New Jersey. *Def. Distributed II*, 1:18-cv-637 (W.D. Tex. 2018). Plaintiffs' claims against the New Jersey AG "revolved around the NJAG's 2018 cease-and-desist letter warning Defense Distributed that its dissemination of printable gun files to New Jersey residents constituted a violation of New Jersey law." Dkt. 145 at 1–2. After litigation in this Court and the Fifth Circuit about the court's jurisdiction over the New Jersey Attorney General, Plaintiffs filed a second amended complaint on November 11, 2020, adding the State Department, the Secretary of State, the Directorate of Defense Trade Controls, the Deputy Assistant Secretary of Defense Trade Controls, and the Director for the Office of Defense Trade Controls Policy as Defendants. *See* SAC, Dkt. 117. This court severed the claims against the New Jersey AG and transferred them to the District of New Jersey, while retaining the claims against State. Dkt. 145.

Plaintiffs' current claims against State in the Complaint fall into two categories: (1) requests for injunctive relief to the remove 3-D-gun files from the ITAR export regulations, and (2) claims for damages arising from alleged breaches of contract. Plaintiffs bring four claims under the APA, seeking injunctive, declaratory, and monetary relief. SAC, ¶¶ 184–215 (Counts 1–4). Count Five is for Breach of Contract, which seeks over $5 million in damages and specific performance. *Id.* ¶¶ 216–24 (Count 5). The remaining claims allege that State violated Plaintiffs' constitutional rights under the First, Second, and Fifth Amendments through State's regulation of the 3-D-gun files and in State's actions to carry out the Settlement Agreement. *Id.* ¶¶ 225–54 (Counts 6–8). Those constitutional claims seek a judgment declaring State's conduct unlawful, injunctive relief, and monetary relief. *Id.*

Nearly six months after filing an amended complaint, and fourteen months after the *Wash. II* court's preliminary injunction ordered that 3-D-printed firearm files remain on the USML, Plaintiffs moved for emergency injunctive relief, after they posted approximately 16,000 3-D-gun files on the

internet for free download by the public. Dkt. 149. This Court denied the TRO. Dkt. 151. Plaintiffs then moved for a preliminary injunction on May 5, 2021, seeking an injunction against State to: "(1) cease and desist from enforcing the International Traffic in Arms Regulations … against Defense Distributed and the Second Amendment Foundation, Inc., and (2) cease and desist from otherwise censoring Defense Distributed and the Second Amendment Foundation, Inc. by way of civil or criminal enforcement efforts and threats of the same." Dkt. 152-2. The Government opposed that motion. Dkt. 155. Oral argument was held on May 14, 2021. Dkt. 157. That motion remains pending.

After the Ninth Circuit issued its mandate, the Government submitted a suggestion of mootness, advising the court that the motion for preliminary injunction and the case should be dismissed in light of the lifted injunction on the State Rule. Dkt. 159. The Government now moves to dismiss on that basis and others described below.

## ARGUMENT

This case must be dismissed for lack of jurisdiction. Plaintiffs' APA and constitutional claims, which challenge State's regulation of the 3-D-gun files, are moot: State no longer regulates the 3-D-gun files under the ITAR. SAC (Counts 1–4, 6–8). Consequently, there is no longer a live controversy between the parties, and any action by this court in declaring State's actions unlawful would afford no relief to Plaintiffs. Plaintiffs' claims for injunctive and monetary relief are also subject to dismissal because they are barred by *res judicata* and the broad release contained in the Settlement Agreement. Finally, this Court has no jurisdiction over Plaintiffs' contract claim (Count 5) and the related claims arising from purported breaches of the Settlement Agreement in other counts. Any claim for monetary relief over $10,000 must be filed in the Court of Federal Claims, because the Government has not waived sovereign immunity over claims for specific performance; and in any event, any claim for specific performance is also moot because State no longer regulates exports of the 3-D-gun files.

## I.   Plaintiffs' claims for injunctive and declaratory relief are moot because State no longer regulates the 3-D-gun files under the ITAR.

Article III of the Constitution limits federal courts to the resolution of only "actual, ongoing controversies," *Honig v. Doe,* 484 U.S. 305, 317 (1988), and a court cannot "decide the merits of a legal

question not posed in an Article III case or controversy." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 21 (1994). A court has no authority "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (citation omitted). In particular, "[a] case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (*per curiam*)). A live legal question must exist "at all stages of review, not merely at the time the complaint is filed." *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 67 (1997) (citation omitted). Thus, even if there is a live controversy when the case is filed, courts cannot decide claims if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *21st Century Telesis Joint Venture v. FCC*, 318 F.3d 192, 198 (D.C. Cir. 2003) (citation omitted).

A lawsuit "challenging a statute, executive order, or local ordinance usually becomes moot if the challenged law has expired or been repealed." *Spell v. Edwards*, 962 F.3d 175, 178–79 (5th Cir. 2020) (citing *Veasey v. Abbott*, 888 F.3d 792, 799 (5th Cir. 2018) ("[A] lawsuit challenging a statute would become moot by the legislature's enactment of a superseding law.")). That is because "[o]nce the law is off the books, there is nothing injuring the plaintiff and, consequently, nothing for the court to do." *Id.* There can be "no live controversy" over a repealed regulation "because it is no longer in force." *Veasey*, 888 F.3d at 799 (citing *Diffenderfer v. Central Baptist Church of Miami, Florida, Inc.*, 404 U.S. 412, 414–15 (1972) (*per curiam*)); *see also Phillips v. McLaughlin*, 854 F.2d 673, 678 (4th Cir. 1988) ("Because plaintiffs have requested only prospective relief from a regulation which no longer applies to them . . . our judgment on the merits would not resolve an extant case or controversy."); *Ozinga v. Price*, 855 F.3d 730, 734 (7th Cir. 2017) (holding a regulatory revision rendered moot a pre-enforcement claim for declaratory and injunctive relief); *Sannon v. United States*, 631 F.2d 1247, 1250 (5th Cir. 1980) ("That newly promulgated regulations immediately applicable to litigants in a given case can have the effect of mooting what once was a viable case is without doubt."); *id.* (collecting 5th Circuit cases)).

This common-sense jurisdictional principle "that suits regarding the constitutionality" of a since-repealed regulation are moot is firmly rooted in a number of Supreme Court decisions. *McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004) (citing *Diffenderfer*, 404 U.S. at 414–15). In *Diffenderfer*, a constitutional challenge to a repealed statute providing a tax exemption for church property was determined to be moot because no court could grant the relief sought—a declaratory judgment that the statute was unconstitutional and an injunction barring its application to the property in question. 404 U.S. at 414–15. In another case, *Burke v. Barnes*, 479 U.S. 361, 362–65 (1987), several individual members of the House of Representatives challenged a bill subjected to the President's "pocket veto," but the bill expired before the case reached the Court. Analyzing the claim regarding the unsigned bill "as if" the action "had originally sought to litigate the validity of a statute which by its terms had already expired," the Court readily held that the case was moot. *Id.* at 363. Whether or not the President's action was a "pocket veto," the Court reasoned, the expiration resulted in the "failure of the bill to have any present effect," and the Court accordingly vacated the judgment below and remanded with instructions to dismiss the complaint. *Id.* at 363–64. Numerous other Supreme Court decisions have reinforced the *Diffenderfer* principle. *See, e.g.*, *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 474, 478 (1990) (mootness stemmed from amendment of federal law that deprived challenger of "personal stake in the outcome" of suit by authorizing state agency's decision even if agency's pre-amendment conduct had violated federal constitution); *Kremens v. Bartley*, 431 U.S. 119, 128–29 (1977) (expiration of bill during pendency of appeal rendered moot a legal challenge to validity of that bill); *Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (*per curiam*) (similar).

As Plaintiffs made clear in their motion for preliminary injunction, they challenge "the validity," *id.*, of State's since-repealed regulation of the export of technical data related to certain firearms. *See* Pls.' Mot. at 27, Dkt. 152. Their challenges include claims under the APA, and the First, Second, and Fifth Amendments. *See* SAC ¶¶ 184–215, 225–54. As relief, their Complaint seeks a "judgment that [] declares this conduct unlawful" and "enjoins . . . further wrongdoing." *See* SAC ¶¶ 184–215, 225–54. They also seek an injunction requiring State to "cease and desist from enforcing the International Traffic in Arms Regulations" and to "cease and desist from otherwise censoring Defense

Distributed and the Second Amendment Foundation." Dkt. 152-2.

But Plaintiffs may not obtain this relief because the regulation at the center of this controversy is "off the books," *Spell*, 962 F.3d at 178–79, and State no longer regulates the export of the 3-D-gun files. Under well-established principles, Plaintiffs' requests for prospective relief regarding the ITAR's regulation of technical data, and declarations regarding State's authority to act under the ITAR, no longer present a live case or controversy under Article III. *See, e.g., Phillips*, 854 F.2d at 678 ("Because plaintiffs have requested only prospective relief from a regulation which no longer applies to them . . . our judgment on the merits would not resolve an extant case or controversy."); *Ozinga*, 855 F.3d at 734; *Sannon*, 631 F.2d at 1250; *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

As outlined above, in January 2020, State and Commerce promulgated a pair of final rules which modified the regulatory regime for controlling the export of certain firearms, firearm parts, and related technical data for those firearms and parts. *See* 85 Fed. Reg. 3819 (Jan. 23, 2020); 85 Fed. Reg. 4136 (Jan. 23, 2020). State's final rule removed certain firearms, related items, and associated technical data from the USML. The Department of Commerce, which is not a party to this action, added the relevant firearms and data to the Commerce Control List through its final rule.

Several States sued to enjoin those rules, alleging that the rules violated the APA. The district court granted a preliminary injunction that enjoined State's rule as it related to 3-D-gun files. *Wash. II*, 443 F. Supp. 3d at 1262–63. On appeal, the Ninth Circuit reversed, vacated the injunction, and remanded. *Wash. II*, 996 F.3d at 557. On May 26, the Ninth Circuit issued its mandate, Dkt. 65, and that court's judgment became effective—vacating the preliminary injunction and instructing the district court to dismiss. As a result of the Ninth Circuit's mandate, State's previously issued final rule went into full effect. *Washington v. U.S. Dep't of State*, No. 20-35391, Dkts. 65 & 66 (9th Cir. May 26, 2021); *see also* State Notice, 86 Fed. Reg. 29,196; Commerce Notice, 86 Fed. Reg. 29,189.

The export of technical data related to producing certain 3-D-printed firearms or components is no longer controlled under the ITAR. Instead, the export of software or technology is now controlled by the Export Administration Regulations, administered by the Department of Commerce. *See* 15 C.F.R. § 734.7; 85 Fed. Reg. 4136. Thus, the Defendants no longer regulate the export of 3-D-

gun files and there remains no live case or controversy between the parties.

Plaintiffs cannot seek relief from a regulation that no longer applies to them or seek respite from an agency that no longer regulates their conduct. Indeed, now that State's final rule has taken effect, Plaintiffs have received the very relief they seek from the Court in this lawsuit: that: "3D-printed guns and their associated electronic files" be removed from the USML and no longer regulated by State under the ITAR. Pls.' Mot. at 27; *see also Amawi v. Paxton*, 956 F.3d 816, 821 (5th Cir. 2020) (dismissing an appeal as moot because a statutory amendment "provided the plaintiffs the very relief their lawsuit sought"); *N.Y. State Rifle & Pistol Ass'n, Inc. v. City of N.Y.*, 140 S. Ct. 1525, 1526 (2020) (per curiam) (holding that a claim for "declaratory and injunctive relief" against a law was moot when the law was amended to give "the precise relief that [the plaintiffs] requested"). For this reason, Plaintiffs' claims regarding the validity of the ITAR's regulation their 3-D-gun files are moot, and a declaratory judgment about the validity of a regulation that is "no longer in force" would constitute an impermissible advisory opinion, *Veasey*, 888 F.3d at 799, because "declar[ing] principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology*, 506 U.S. at 12.

Likewise, Plaintiffs' claims which seek as relief a judgment declaring State's conduct unlawful also do not present a live case or controversy. *See* Comp., Requests for Relief, ¶¶ 330–35 (requesting "a judgment against the State Department declaring unlawful": State's disavowal of the license and temporary modification issued in July 2018, ¶¶ 330–31; "State Department's refusal to issue a letter" to Defense Distributed approving certain files for public release, ¶ 332; State's refusal to publish an NPRM excluding certain technical data from the USML, ¶ 333; and State's refusal to announce and acknowledge a temporary modification to the USML ¶¶ 334–35). Any action by this Court in declaring State's actions unlawful would afford no relief to Plaintiffs, and Plaintiffs' challenges to State's actions (or lack thereof) are now moot. *See Spell*, 962 F.3d at 178–79 ("Once the law is off the books, there is nothing injuring the plaintiff and, consequently, nothing for the court to do."); *see also* Tr. of Oral Arg. at 6 (conceding that State's final rule will "stop the State Department from engaging in the censorship" and "give us the win"). Indeed, "[n]o matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer

embedded in any actual controversy about the plaintiffs' particular legal rights." *Yarls v. Bunton*, 905 F.3d 905, 909–10 (5th Cir. 2018) (quoting *Already, LLC*, 568 U.S. at 91).[2]

Nor is there any serious question about whether "the controversy is actually extinguished," such that State's "allegedly wrongful behavior could not reasonably be expected to recur." *Spell*, 962 F.3d at 178–79. As Defendants previously explained, Dkt. 155 at 12–13, State's Final Rule was promulgated as part of a long-running interagency effort to review and revise the entire USML to limit its scope to those defense articles that provide the United States with a critical military or intelligence advantage. *See also* Miller Decl., Dkt. 155-1 ¶¶ 33–39, 50. The State Department had already begun drafting regulations to remove certain firearms and related technical data from the USML by early 2015, *see* Miller Decl. ¶ 50, *before* this litigation began. State did not "automatically moot [the] case simply by ending its unlawful conduct once sued," and so the exception for voluntary cessation does not apply. *Already, LLC*, 568 U.S. at 91.

## II. Plaintiffs' claims for injunctive relief are also barred by the settlement agreement.

Plaintiffs' APA and Constitutional claims are subject to dismissal for additional reasons. First, Plaintiffs agreed to dismiss their prior case *with prejudice*, so the doctrine of claim preclusion prevents them from filing a new suit with the same nucleus of operative facts—objections to the validity of State's regulation of 3-D-gun files. Second, as part of the Settlement Agreement in *Def. Distributed I*, Plaintiffs "waive[d], release[d], and forever discharge[d] Defendants . . . from any and all claims, demands and causes of action of every kind, nature or description, whether currently known or unknown, which Plaintiffs may have had, may now have, or may hereafter discover that were or could have been raised in the Action." Settlement Agreement ¶ 3. That release covers all non-contract claims raised in Plaintiffs' current Complaint.

---

[2] Because State no longer regulates the 3-D-gun files under the ITAR, Plaintiffs likewise "fail to satisfy the 'redressability' requirement of the case or controversy analysis." *Okpalobi v. Foster*, 244 F.3d 405, 426–27 (5th Cir. 2001) ("Because these defendants have no powers to redress the injuries alleged, the plaintiffs have no case or controversy with these defendants that will permit them to maintain this action in federal court." (citing *Muskrat v. United States*, 219 U.S. 346 (1911))); *see also Golden v. Zwickler*, 394 U.S. 103 (1969). As the Supreme Court recently explained in another context, "[t]here is no one, and nothing, to enjoin." *Texas v. California*, No. 19-1019, 2021 WL 2459255, at *6 (U.S. June 17, 2021).

A. Plaintiffs' claims are barred by claim preclusion.

Defense Distributed cannot raise claims in this lawsuit that they previously raised or could have raised in an action that was dismissed with prejudice. "Res judicata 'forecloses relitigation of claims that were or could have been raised in a prior action.'" *Ayissi v. Kroger Tex., L.P.*, No. 20-0652, 2021 WL 1537702, at *1 (5th Cir. Apr. 19, 2021) (citing *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 312–13 (5th Cir. 2004)). "A claim is barred by res judicata when (1) the parties in both the prior and current suits are identical, (2) a court of competent jurisdiction rendered the prior judgment, (3) the prior judgment was final and on the merits, and (4) the plaintiff raises the same cause of action in both suits." *Id.* When considering whether "[a] plaintiff raises the same cause of action," the focus is whether "both claims arise out of 'the same nucleus of operative facts'"; a court "consider[s] factors such as whether 'the facts are related in time, space, origin, or motivation, [and] whether they form a convenient trial unit.'" *Id.*

In *Def. Distributed I*, the same Plaintiffs—Defense Distributed and the Second Amendment Foundation, Inc.—sued the same Defendants—the State Department, the Secretary of State, the Deputy Assistant Secretary Defense Trade Controls, and the Director, Office of Defense Trade Controls Policy—in the same court—the United States District Court for the Western District of Texas. *Compare Def. Distributed I*, Dkt. 90 ("Prior Compl."), *with* SAC. ¶ 80.

And Plaintiffs raise the same claims in this case as they did in the prior one, and the allegations in both cases arise from the same nucleus of operative facts. Plaintiffs in *Def. Distributed I* challenged State regulation of 3-D-gun files through the ITAR. *See* Prior Compl. They claimed State violated the APA and "the First, Second, and Fifth Amendments" and sought "declaratory and injunctive relief barring any further application of" the ITAR to 3-D-gun files, and "to recover money damages to compensate for the harm such application has already caused." Prior Compl. at 2.

Those same facts—State's regulation of 3-D-gun files—forms the basis of all of Plaintiffs' non-contract claims in this case. Plaintiffs raise the same First, Second, and Fifth Amendment facial challenges to the entire ITAR regime's regulation of the 3-D-gun files. *Compare* Prior Compl. ¶¶ 54–65 (Counts 2, 3, & 4), *with* SAC. ¶¶ 225–254 (Counts 6, 7, & 8). And Plaintiffs previously claimed that

State regulation of 3-D-gun files was *ultra vires*, or contrary to law, which aligns with the APA claims raised in this case. *Compare* Prior Compl. ¶¶ 51–52 (Count 1) *with* SAC. ¶¶ 184–215 (Counts 1–4). All claims in the current complaint based on State's regulation of the 3-D-gun files are therefore barred by claim preclusion.

The supposedly new factual allegations in this action cannot save Plaintiffs' claims from being dismissed because of claim preclusion. "The doctrine of res judicata would become meaningless if a party could relitigate the same issue . . . by merely positing a few additional facts that occurred after the initial suit." *Misischia v. St. John's Mercy Health Sys.,* 457 F.3d 800, 805 (8th Cir. 2006) (quoting *Dubuc v. Green Oak Twp.,* 312 F.3d 736, 751 (6th Cir. 2002)). The only new facts alleged in the Complaint that form the basis of any claims are that Defendants' conduct allegedly breached the Settlement Agreement. Those new facts have no bearing on the core claims for declaratory and injunctive relief regarding the ITAR's regulation of the 3-D-gun files. Aside from being subject to dismissal on separate grounds (discussed below), the existence of contract claims for alleged breach of the Settlement Agreement has no bearing on whether Plaintiffs' original claims for declaratory and injunctive relief are subject to claim preclusion. *See Instituto Mexicano Del Seguro Soc. v. Orthofix Int'l N.V.,* No. 4:18-cv-121-ALM-KPJ, 2018 WL 4561621, at *2 (E.D. Tex. Sept. 24, 2018). In *Orthofix,* the Plaintiff argued that "because Defendant breached the settlement agreement, Plaintiff is entitled to reassert its original claims." *Id.* at *1. The *Orthofix* court disagreed, explaining that "Plaintiff's argument fails because it rests solely on inapplicable state law cases governing settlement agreements entered into outside of litigation, where no *res judicata* was involved . . . The preclusive effect of a prior federal court judgment is controlled by federal *res judicata* rules.'" *Id.* at *2 (quoting *Ellis v. Amex Life Ins. Co.,* 211 F.3d 935, 937 (5th Cir. 2000)).

In addition, although not included in the Complaint, any allegation involving Plaintiffs' publishing of a new cache of 3-D-gun files (like those that were the subject of Plaintiffs' motion for preliminary injunction) also cannot save this case from dismissal. Plaintiffs' ability to post "new" files in the future without having to seek a license or other approval is based on State's application of the ITAR to 3-D-gun files and was squarely at issue in *Defense Distributed I*: "Defense Distributed *has and*

*will continue to create and possess other files* that contain technical information . . . that Defense Distributed intends to post to public forums on the Internet." Prior Compl. ¶ 44 (emphasis added); *see also id.* ¶45. Any allegations in the Complaint that Plaintiffs seek to post new 3-D-gun files fall within the same nucleus of facts from the prior suit.

Claim preclusion applies with even more force here because Plaintiffs already tried—and failed—to re-open the underlying *Defense Distributed I* litigation after the *Wash. I* court issued an injunction. *See Def. Distributed I*, 1:15-cv-372-RP, Dkt. 136, *aff'd* 947 F.3d 870 (5th Cir. 2020). Both this Court and the Fifth Circuit held that Defendants' compliance with the *Wash. I* injunction was not enough to set aside the judgment, as plaintiffs were sophisticated parties who knew that an APA suit could lead to the Government being enjoined from compliance with the settlement and had not asked the district court to retain jurisdiction after dismissal with prejudice or over the settlement. *Id.*

B. Plaintiffs' non-contract claims have been released.

Plaintiffs' non-contract claims are also barred by the release in the Settlement Agreement. Plaintiffs released Defendants from all claims "whether currently known or unknown, which Plaintiffs may have had, may now have, or may hereafter discover that were or could have been raised in the Action." Settlement Agreement ¶ 3. All non-contract claims fall easily within that broad release provision.

The Fifth Circuit "employ[s] a two-step burden-shifting framework to assess a waiver's validity and enforceability." *Clayton v. ConocoPhillips Co.*, 722 F.3d 279, 292 (5th Cir. 2013). "Once a party establishes that his opponent signed a release that addresses the claims at issue, received adequate consideration, and breached the release, the opponent has the burden of demonstrating that the release was invalid because of fraud, duress, material mistake, or some other defense." *Id.* Here, there is no question that Plaintiffs signed the release, that the release is valid, that the release covers the non-contract claims at issue, and that Plaintiffs breached the release by reasserting the same claims again this action.

"[B]ecause a release is contractual in nature, it is interpreted in the same manner as any other

contract term or provision." *Bell BCI Co. v. United States*, 570 F.3d 1337, 1341 (Fed. Cir. 2009). "If the provisions of a release are 'clear and unambiguous, they must be given their plain and ordinary meaning.'" *Holland v. United States*, 621 F.3d 1366, 1378 (Fed. Cir. 2010) (quoting *Bell BCI*, 570 F.3d at 1341); *see CIC Prop. Owners v. Marsh USA, Inc.*, 460 F.3d 670, 671–73 (5th Cir. 2006) (a release of known and unknown claims "that have been or could have been brought" was enforceable, and precluded claim brought by plaintiff after an agreement was executed).

The release covers the claims raised in this litigation. In *Def. Distributed* I, Plaintiffs raised a facial challenge to the ITAR's regulation of all 3-D-gun files. Prior Compl. ¶ 44. The core claim in the current Complaint is the same: that the ITAR's regulation of 3-D-gun files violates the First, Second, and Fifth Amendments, or is otherwise contrary to law. Every non-contract claim in the Complaint is based on the ITAR's application to 3-D-gun files, and any claim based on the application of the ITAR's regulation of 3-D-gun files *could have* been raised in the prior suit and was released. *See Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009).

### III.     This Court does not have jurisdiction over Plaintiffs' claims for breach of contract.

This Court also lacks jurisdiction over Plaintiffs' claims for breach of the settlement agreement. It should dismiss Plaintiffs' contract claims to the extent they seek relief other than money damages, and should transfer to the Court of Federal Claims the claims to the extent they seek money damages.

#### A. The United States has not waived sovereign immunity for contract claims seeking relief other than money damages.

Defendants are federal agencies and officials sued in their official capacities, so they may be sued only to the extent that Congress has waived sovereign immunity. *U.S. Marine, Inc. v. U. S.*, 478 F. App'x 106, 109 (5th Cir. 2012). Waivers of sovereign immunity are strictly construed in the Government's favor, and must unambiguously extend to the type of relief sought by the plaintiff. *Lane v. Pena*, 518 U.S. 187, 192 (1996). The Government has not waived sovereign immunity for claims arising from contract that seek relief other than money damages.

18

The Court therefore lacks jurisdiction over Plaintiffs' claims seeking injunctive or declaratory relief that arise from the Settlement Agreement. "Any claims stemming from the alleged breach of such provisions clearly sound in contract." *United States Marine, Inc.*, 478 F. App'x at 110. This includes Plaintiffs' claims under the APA and their claims seeking specific performance. Under 5 U.S.C. § 704, "the APA waives sovereign immunity only if there is 'no other adequate remedy'" but "[t]he availability of an action for money damages under the Tucker Act or Little Tucker Act is presumptively an 'adequate remedy' for § 704 purposes." *Telecare Corp. v. Leavitt*, 409 F.3d 1345, 1349 (Fed. Cir. 2005). And the Fifth Circuit has held that the United States has not waived sovereign immunity for claims seeking specific performance of a contract. *Ala. Rural Fire Ins. Co. v. Naylor,* 530 F.2d 1221, 1229–30 (5th Cir. 1976); *see also United States v. Jones*, 131 U.S. 1, 18 (1889) (Tucker Act did not authorize specific performance). In any event, any claim for prospective relief is now moot because State no longer regulates the 3-D-gun files.

B. Plaintiffs' claims for money damages should be transferred or dismissed.

Congress has waived sovereign immunity for some contract claims, but it requires most claims (including this one) to be brought in the United States Court of Federal Claims. While the Tucker Act provides a limited waiver of sovereign immunity for breach of contract claims against the federal government seeking money damages, it authorizes suit only in the Court of Federal Claims. 28 U.S.C. § 1491. The Little Tucker Act authorizes district court jurisdiction over only such claims "not exceeding $10,000 in amount." *Id.* § 1346(a)(2). Thus, "the Tucker Act vests the Court of Federal Claims with exclusive jurisdiction over any claim that exceeds $10,000 and is founded upon an express or implied contract." *U.S. Marine, Inc.*, 478 F. App'x at 109. Plaintiffs have sued for breach of contract and have claimed damages "in an amount no less than five million dollars." SAC ¶ 220. Five million dollars greatly exceeds the $10,000 threshold in the Little Tucker Act, so Plaintiffs' claims sounding in contract must be transferred to the Court of Federal Claims.[3]

Nothing in the Settlement Agreement gives this Court jurisdiction over claims that the

---

[3] While the Court of Federal Claims generally has jurisdiction over breach of contract claims for money damages against the United States, the Government will contest any breach of contract claim that Plaintiffs might assert in that court. *See* Dkt. 155 part II.B at 24–28.

Government breached that Agreement. Plaintiffs argue that "[t]he State Department waived any and all grounds of opposition to court enforcement of the Settlement Agreement. Settlement Agreement paragraph 4 entails State's consent to 'any civil, criminal, or administrative action . . . permitted by law, if any, that may be necessary to consummate or enforce this Settlement Agreement." SAC ¶ 224. The full sentence shows that Plaintiffs stretch the text beyond what it can reasonably bear.

> *No Admission of Liability:* . . . None of the terms of the Settlement Agreement may be offered or received in evidence or in any way referred to in any civil, criminal or administrative action other than proceedings permitted by law, if any, that may be necessary to consummate or enforce this Settlement Agreement.

Settlement Agreement ¶ 4. That sentence reflects the parties' intent to limit the situations in which the terms of the Settlement Agreement may be offered into evidence. *Id.* The State Department did not waive "any and all grounds of opposition to court enforcement." *See* SAC ¶ 224. In fact, the parties *specifically contemplated* that there were preexisting limits on enforcement, and that there may not be *any* proceedings (*i.e.* "if any") permitted by law to enforce this contract. *Id.*

This Court therefore lacks jurisdiction over Plaintiffs' claims for money damages. Under 28 U.S.C. § 1631, this Court "shall, if it is in the interest of justice, transfer such action" to a court with jurisdiction. These claims may be brought, if at all, in the Court of Federal Claims; this Court should transfer Plaintiffs' claims for money damages related to the alleged breach of the Settlement Agreement to the Court of Federal Claims , where jurisdiction is proper under the Tucker Act.[4] *See id.*; *see also* 28 U.S.C. § 1491.

## CONCLUSION

For the foregoing reasons, the Court lacks jurisdiction over Plaintiffs' claims. Plaintiffs' non-contract claims and their contract claims for nonmonetary relief must be dismissed for lack of jurisdiction. The Court should transfer Plaintiffs' contract claims for monetary relief to the Court of Federal Claims, or else dismiss them without prejudice.

---

[4] If the Court does not dismiss Plaintiffs' claims for *non*-monetary relief, however, it should not transfer the claims for monetary relief but should instead dismiss them without prejudice so that Plaintiffs may refile them in a court with proper jurisdiction. That is because 28 U.S.C. § 1500 would bar jurisdiction in the Court of Federal Claims if Plaintiffs' other claims brought in this action remain pending.

Dated: June 21, 2021

Respectfully submitted,

BRIAN D. NETTER
Deputy Assistant Attorney General
Civil Division

ANTHONY J. COPPOLINO
Deputy Branch Director
Federal Programs Branch

*/s/ Lisa Newman*
Zachary A. Avallone
Michael Knapp
Lisa Newman
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 514-5578
Fax: (202) 616-8470
Email: lisa.n.newman@usdoj.gov

*Attorneys for U.S. Government Defendants*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served on the other parties to this action and their counsel of record through electronic filing in the Court's ECF system on June 21, 2021.

*/s/ Lisa Newman*
Lisa Newman