IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF STATE, ANTHONY BLINKEN, in his official capacity as Secretary of State;[1] DIRECTORATE OF DEFENSE TRADE CONTROLS; MIKE MILLER, in his official capacity as Deputy Assistant Secretary of Defense Trade Controls; SARAH HEIDEMA, in her official capacity as Director of Policy, Office of Defense Trade Controls Policy,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | No. 1:18-cv-637-RP |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

[1] Secretary Anthony Blinken has been substituted for Michael R. Pompeo as a Defendant in his official capacity in this case pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## TABLE OF CONTENTS

**ARGUMENT** .......... **1**

I. The voluntary-cessation exception to mootness does not apply to a formal rule promulgated before State was a party to this lawsuit. .......... 1

II. Plaintiffs' new allegation concerning fully automatic weapons does not establish jurisdiction. .......... 3

III. State does not control licensing of files described under the EAR. .......... 6

IV. *Res judicata* bars Plaintiffs' non-contract claims. .......... 7

V. The Settlement Agreement release bars Plaintiffs' non-contract claims. .......... 9

VI. This Court lacks jurisdiction over Plaintiffs' breach of contract claims. .......... 9

# TABLE OF AUTHORITIES

**Cases**

*Ala. Rural Fire Ins. Co. v. Naylor*,
530 F.2d 1121 (5th Cir. 1979) ....10

*Alford v. Kuhlman Elec. Corp.*,
716 F.3d 909 (5th Cir. 2013) ....9

*Allied Home Mortg. Corp. v. HUD*,
618 F. App'x 781 (5th Cir. 2015) ....7

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) ....1

*Amawi v. Paxton*,
956 F.3d 816 (5th Cir. 2020) ....1, 2

*Boyle v. United Techs. Corp.*,
487 U.S. 500 (1988) ....10

*California v. Texas*,
141 S. Ct. 2104 (2021) ....4

*Car Carriers, Inc. v. Ford Motor Co.*,
745 F.2d 1101 (7th Cir. 1984) ....4

*Carney v. Adams*,
141 S. Ct. 493 (2020) ....4

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ....6

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) ....9

*DT Apartment Grp., LP v. CWCapital, LLC*,
No. 3:12-CV-0437-D, 2012 WL 6693192 (N.D. Tex. Dec. 26, 2012) ....9

*Fernandez–Montes v. Allied Pilots Ass'n*,
987 F.2d 278 (5th Cir. 1993) ....8

*In re W. Tex. Mktg. Corp.*,
12 F.3d 497 (5th Cir.1994) ....8

*Kaspar Wire Works v. Leco Engineering*,
575 F.2d 530 (5th Cir. 1978) ....8

*Laird v. Tatum*,
408 U.S. 1 (1972) .......... 4, 7

*Lawrence v. United States*,
378 F.2d 452 (5th Cir. 1967) .......... 10

*McCarthy v. Madigan*,
503 U.S. 140 (1992) .......... 6

*McIntyre v. Ben E. Keith Co.*,
754 F. App'x 262 (5th Cir. 2018) .......... 8

*Mowbray v. Cameron Cnty., Tex*,
274 F.3d 269 (5th Cir. 2001) .......... 8

*New York State Rifle & Pistol Ass'n, Inc. v. City of New York, New York*,
140 S. Ct. 1525 (2020) .......... 2, 3

*Normandy Apts., Ltd. v. HUD*,
554 F.3d 1290 (10th Cir. 2009) .......... 10

*Oreck Direct LLC v. Dyson, Inc.*,
560 F.3d 398 (5th Cir. 2009) .......... 8

*Sivertson v. Clinton*,
2011 WL 4100958 (N.D. Tex. Sept. 14, 2011) .......... 9

*Sossamon v. Lone Star State of Texas*,
560 F.3d 316 (5th Cir. 2009) .......... 1

*Speech First, Inc. v. Fenves*,
979 F.3d 319 (5th Cir. 2020) .......... 2, 3

*Spell v. Edwards*,
962 F.3d 175 (5th Cir. 2020) .......... 1, 2

*Staples v. United States*,
511 U.S. 600 (1994) .......... 4

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .......... 4

*Texas Office of Pub. Util. Counsel v. F.C.C.*,
183 F.3d 393 (5th Cir.1999) .......... 7

*Texas v. United States*,
523 U.S. 298 (1998) .......... 6

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
137 S. Ct. 2012 (2017) .......... 3

*Trudeau v. FTC*,
456 F.3d 178 (D.C. Cir. 2006) .......... 10

*Trump v. Hawaii*,
138 S. Ct. 377 (2017) .......... 2

*U.S. Marine, Inc. v. U.S.*,
478 F. App'x 106 (5th Cir. 2012) .......... 10

*United Launch Servs., LLC v. U.S.*,
139 Fed. Cl. 664 (2018) .......... 9

*Virginia v. American Booksellers Assn. Inc.*,
484 U.S. 383 (1988) .......... 5

*White v. Padgett*,
475 F.2d 79 (5th Cir. 1973) .......... 9

*Yarls v. Bunton*,
905 F.3d 905 (5th Cir. 2018) .......... 1

**Statutes**

5 U.S.C. § 702 .......... 10

22 U.S.C. § 2778(k) .......... 7

**Regulations**

22 C.F.R. § 120.4 .......... 5

22 C.F.R. § 120.5(b) .......... 7

22 C.F.R. § 121.1 .......... 5

81 Fed. Reg. 54,732 (Aug. 17, 2016) .......... 7

81 Fed. Reg. 54 .......... 7

**Other Authorities**

"A Brief History of the AR-15," National Public Radio, Feb. 28, 2018,
https://www.npr.org/2018/02/28/588861820/a-brief-history-of-the-ar-15 .......... 1

## ARGUMENT

Plaintiffs' opposition to Defendants' motion to dismiss fails to establish any jurisdictional basis on which this case may proceed. First, Plaintiffs' APA and constitutional claims are moot. The doctrine of voluntary cessation, on which Plaintiffs rely, does not apply to this case. Even if it did, the Department of State's revised regulation transferring export authority over non- and semi-automatic firearms and related technical data negates any claim that the challenged conduct could reasonably be expected to recur. Jurisdiction is not salvaged by Plaintiffs' pivot to a new legal theory nor supported by factual allegations in their complaint. Second, Plaintiffs are wrong that the issue of *res judicata* is not properly before this Court on a Rule 12 motion; that principle, as well as the language of the Settlement Agreement, bar Plaintiffs' non-contract claims. Further, this Court has no jurisdiction over the contract claims. For all these reasons, the Second Amended Complaint should be dismissed without leave to amend.

### I. The voluntary-cessation exception to mootness does not apply to a formal rule promulgated before State was a party to this lawsuit.

Plaintiffs do not contest the well-established line of cases holding that a formal change in governmental policy renders a challenge to that policy moot. Instead, Plaintiffs contend that Defendants cannot overcome the voluntary-cessation exception to mootness. But this exception does not apply in this case.

"A case challenging a statute, executive order, or local ordinance usually becomes moot if the challenged law has expired or been repealed." *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020). The voluntary-cessation exception to mootness serves as a test to determine whether a "defendant's actions are 'litigation posturing' or whether the controversy is actually extinguished." *Yarls v. Bunton*, 905 F.3d 905, 910 (5th Cir. 2018). Thus, while "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued," *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013), an amendment to a law or regulation "combined with the presumption of good faith that we afford government actors, overcomes concerns of voluntary cessation," *Amawi v. Paxton*, 956 F.3d 816, 821 (5th Cir. 2020).[2] If a

[2] Contrary to Plaintiffs' suggestion, *see* Mot. at 3 n.2, the law distinguishes private defendants who voluntarily cease challenged conduct, *cf. Already, LLC*, 568 U.S. at 92, from government defendants who act in their "sovereign capacity" to amend a law or regulation. *See Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th

change in policy is "a response to litigation," *Spell*, 962 F.3d at 179, a defendant must demonstrate that it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."[3] *Amawi*, 956 F.3d at 821 (citation omitted). In *Spell*, the court determined that a statute that expired on its own terms did not implicate the concerns behind voluntary cessation "[b]ecause its lapse was predetermined and thus not a response to litigation." 962 F.3d at 179.

The voluntary-cessation exception does not apply here. State's Final Rule, which affected the kind of technical data controlled by the ITAR, was published in the Federal Register in January 2020, nearly a year *before* Defense Distributed added State as a party in this case in November 2020. This pre-suit change in policy was not "a response to litigation," and therefore "does not implicate" the voluntary-cessation doctrine. *Id.*; *see also Trump v. Hawaii*, 138 S. Ct. 377 (2017) (challenge to executive order moot without considering voluntary cessation); *New York State Rifle & Pistol Ass'n, Inc. v. City of New York, New York*, 140 S. Ct. 1525, 1526 (2020) (same). Under these circumstances, State's formal change in regulatory policy readily satisfies the condition that the challenged policy "could not reasonably be expected to recur." *Id.*[4]

Plaintiffs rely on one inapposite case, *Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020). That case did not involve a change in government regulation through the formal-rulemaking process, but instead concerned a challenge to a public university's speech code. The Fifth Circuit explicitly noted that, when considering "voluntary cessation by a public university," the court would "not adopt the relaxed standard" that otherwise applies to a formal change to government regulation. *Id.* at 328.

Plaintiffs are simply incorrect that *Speech First* requires a "controlling statement of future intention" or "sworn testimony" for the sort of change in regulatory policy at issue here. Mot at. 3. Indeed, the court there contrasted a change to the university's speech code, which was announced in a brief on appeal, with a situation in which a government defendant has "exercised its formal legislative

Cir. 2009); *Amawi*, 956 F.3d at 821. The Fifth Circuit has repeatedly applied "the presumption of good faith" to "government actors" when assessing mootness. *Amawi*, 956 F.3d at 821.

[3] Defendants expressly argued that "the exception for voluntary cessation does not apply." Dkt. 162 at 14.

[4] Plaintiffs point to a statement made by a Senator to argue that "federal efforts to undo the 2020 regulatory changes are underway at this very moment." Mot. at 3. But the legislature does not control the Executive Branch's rulemaking process, and Congress is not a defendant.

powers to change an ordinance." *Speech First*, 979 F.3d at 329 n.3 (citing *New York State Rifle*, 140 S. Ct. at 1526).[5] Nor is there anything "suspicious" about the timing of State's change in policy, as in *Speech First*, where the "University did not commence review, much less change its policies, until after the district court decision," and this change in position was "first announced only in the University's appellate brief." *Id.* at 329. By contrast, State's change in export-control policy concerning non- and semi-automatic firearms was promulgated as part of a long-running interagency effort to review and revise the entire USML which culminated in the Final Rule that was issued nearly a year before this litigation commenced. *See, e.g.*, Dkt. 155 at 12–13; Dkt. 155-1 ¶¶ 33–39, 50, Dkt. 162 at 14.

### II. Plaintiffs' new allegation concerning fully automatic weapons does not establish jurisdiction.

In an attempt to avoid the clear mootness effected by State's Final Rule as it relates to the claims at issue, Plaintiffs seek to recast this suit as challenging a *different* provision of the ITAR that governs fully automatic firearms and specific parts, components, accessories, or attachments (referred to as "fully automatic firearm files").[6] Plaintiffs perfunctorily insist that their files fall within this set of controlled articles and "were part of Plaintiffs' action against State from the very beginning," citing principally to a "CAD file for a fully automatic AR-15 receiver" supposedly described in their complaint. Mot. at 7; *see also* Dkt. 148-6 (letter seeking State approval to publish CAD files "for a lower receiver to the AR-15 rifle" on Defense Distributed's website).

This is entirely inconsistent with their pleadings and prior representations. The complaint says nothing about fully automatic firearm files, and includes no specific allegations about any such files Plaintiffs seek to export. The complaint describes computer "files concerning a firearm receiver for AR-15 rifles," and other similar references to computer files for AR-15 rifles. Compl. ¶ 53(b). But it contains no reference to a "CAD file for a *fully automatic* AR-15 receiver." Mot. at 7 (emphasis added). Rather, the complaint refers to files relating to "*the*" AR-15 rifle. Compl. ¶ 55(b). Leaving aside that

[5] Plaintiffs assert that "a real evidentiary showing is needed" to show mootness. Mot at 3 (citing *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017)). *Trinity Lutheran* says nothing of an evidentiary showing; the parties merely agreed nothing prevented the Defendant from reenacting the policy. That has no bearing here, where the policy change was formally promulgated through a public-regulatory process.

[6] Parts, components, accessories, and attachments are referred to collectively as "parts."

the AR-15 is a semi-automatic rifle,[7] Plaintiffs have admitted that the AR-15 files presented in the complaint were included within a set of files they previously sought permission from State to export, and that those files did not pertain to fully automatic firearms. *See* Mot. at 7; Dkt. 148-6. As Plaintiffs concede, the 2018 NPRM (which mirrors in every relevant respect the Final Rule now in effect) "exclude[d] the technical data that [was] the subject of the [*Defense Distributed I*] Action." Compl. ¶ 91(a). Simply put, the files at issue in the prior action—which includes the files at issue in this litigation—fall into a category that is no longer subject to export control under the ITAR.

In any event, this Court lacks jurisdiction over any challenge to the ITAR's regulation of certain automatic weapons. Plaintiffs cannot rely on conduct that post-dates the filing of their complaint, in this case by six months, in order to supplement their pleadings. *See Carney v. Adams*, 141 S. Ct. 493, 499 (2020) (Plaintiff "bears the burden of establishing standing as of the time he brought this lawsuit and maintaining it thereafter"). Specifically, Plaintiffs now contend that some number of the 16,000 files that they posted in April 2021 are controlled by the USML's provisions regarding fully automatic firearm files. Mot. at 7 n.6. But it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984).

In addition, Plaintiffs do not have standing to challenge the fully automatic firearm controls because the complaint makes no allegation that Plaintiffs sought to export fully automatic firearm files, or that State prevented them from doing so. Plaintiffs must demonstrate standing for *each* "provision they attack as unconstitutional," *California v. Texas*, 141 S. Ct. 2104, 2120 (2021). A plaintiff can bring a pre-enforcement suit only "when he has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160 (2014) (citation omitted). A plaintiff must demonstrate its action is subject to "regulation" or "proscriptions." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972); *see, e.g.*, *Driehaus*, 573 U.S. 160 (plaintiffs alleged "specific

[7] *See, e.g.*, "A Brief History of the AR-15," National Public Radio, Feb. 28, 2018, https://www.npr.org/2018/02/28/588861820/a-brief-history-of-the-ar-15 ("The "AR-15 has become the umbrella term for a range of semi-automatic rifles …"); *Staples v. United States*, 511 U.S. 600, 603 (1994) ("The AR–15 is the civilian version of the military's M–16 rifle, and is, unless modified, a semiautomatic weapon.").

statements" covered by challenged statute); *Virginia v. American Booksellers Assn. Inc.,* 484 U.S. 383 (1988) (introducing specific books). Without any allegation in the complaint about the fully automatic firearm files they wish to export, or ever submitting such files to State for a commodity-jurisdiction request (CJ), Plaintiffs have not established that the files are ITAR-controlled, much less that there is a credible threat that this provision could or would be enforced against them.

State has made no determination concerning these files, underscoring why those new claims are not presently fit for judicial review under both Article III and the prudential-ripeness doctrine. State, which "seeks to ensure appropriate compliance with, and enforcement of," the ITAR, does not rely on an exporter's supposition that an item is or is not described on the USML. Miller Decl. ¶ 5. The CJ process exists so that State can determine whether certain data is, in fact, controlled under the ITAR. *See* 22 C.F.R. § 120.4; Miller Decl. ¶ 27. A careful determination is made on a case-by-case basis, taking into account technical specifications, "[t]he form and fit of the article," and "[t]he function and performance capability of the article." 22 C.F.R. § 120.4(d)(2); *see also* Miller Decl. ¶ 28. Importantly, State's Final Rule narrowed the scope of articles described by Category I's provisions regarding fully automatic weapons.[8] Not all fully automatic firearm parts or their technical data are presently described by the USML. Only those fully automatic firearm parts described in either Category I(g) or I(h) are controlled, and almost all of them must be "specially designed." 22 C.F.R. § 121.1(b), Cat. I(g) & (h); *id.* § 120.41(b)(3).

State has not examined the April 2021 files Plaintiffs now seek to put at issue in their brief, because Plaintiffs have not applied for a license or sought a CJ determination. Plaintiffs simply speculate that the items generically labeled in Plaintiffs' response brief, such as "suppressors" or "automatic firearm receivers," are still described in USML Category I, and that such files constitute related technical data so that State "continues to control files" that Plaintiffs wish to export. Mot. at 7. The conjectural nature of Plaintiffs' allegations presumes several steps that are not answerable on this record, including that: (1) the new files are described by the USML's detailed provisions applying to fully automatic firearm files; (2) the files are also "specially designed"; (3) Defense Distributed will

[8] Before the 2020 Final Rule, USML Category I(h) broadly controlled "Components, parts, accessories and attachments for the articles in paragraphs (a) through (g) of this category [I]," which included non-automatic, semi-automatic, and fully automatic weapons. 22 C.F.R. § 121.1, Cat. I(h) (2019).

apply for a license or approval to export these items; (4) it will not be able to obtain one; and (5) State will take enforcement action against Defense Distributed. None of this was pled in the operative complaint, and Plaintiffs' claims of future enforcement thus rest on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 298, 300 (1998); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("Imminence . . . cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending."). Because Plaintiffs offer nothing more than speculative assertions that some of the files posted in April 2021 might be ITAR controlled, they cannot establish the requisite standing to challenge Category I's provisions concerning fully automatic weapons.

The regulatory process exists to identify whether particular items an individual seeks to export are controlled under the ITAR. Plaintiffs cannot establish this Court's jurisdiction to adjudicate such questions in the first instance without a clear indication that they are in fact subject to the ITAR's restrictions. *See, e.g.*, *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (prudential exhaustion prevents "frequent and deliberate flouting of administrative processes," and the production of "a useful record for subsequent judicial consideration, especially in a complex or technical factual context."). State has not made a determination whether it regulates the fully automatic firearm files that Plaintiff seeks to put at issue in their brief, and this Court should not assume, at Plaintiffs' behest, the role of a technical-data expert to determine which if any of the 16,000 files remain controlled by the ITAR.[9]

## III. State does not control licensing of files described under the EAR.

Plaintiffs also erroneously assert that "regulatory power" over items controlled by the EAR "resides with both the Commerce Department and the State Department." Mot. at 8–10. But Plaintiffs' strained attempt to invoke a policy process not at issue in this lawsuit to maintain their now-moot suit against State falls flat. This argument involves a regulatory regime not challenged (the EAR), promulgated by an agency that is not a party to this action (Commerce), and a regulatory process under the EAR that Defense Distributed has not invoked. The Fifth Circuit considered and rejected

[9] Plaintiffs also do not explain why, if they believe these files were controlled under the ITAR prior to the transfer of export controls to Commerce and are controlled under the ITAR after the transfer of regulatory control to Commerce, they believed that the Ninth Circuit opinion permitted their posting.

a similarly strained argument that a court retains jurisdiction over a mooted case because a government agency "may engage in unspecified subsequent administrative actions" different than those challenged. *Allied Home Mortg. Corp. v. HUD*, 618 F. App'x 781, 785–86 (5th Cir. 2015). As the court reasoned:

> The potential for a future dispute of another nature, presenting other issues, is immaterial. Should such a subsequent dispute arise, it is a matter for another lawsuit, not a reason to keep this one alive. *See Texas Office of Pub. Util. Counsel v. F.C.C.,* 183 F.3d 393, 414 (5th Cir.1999) ("We cannot assume jurisdiction to decide a case on the ground that it is the *same* case as one presented to us, when it is admitted that it is not and when it presents different issues.") (citation omitted). To the extent that the appellants seek to use *this* case . . . it is obvious that the issues are unripe. We do not yet know what, if any, action HUD will take against the appellants following such proceedings, and it is impossible to anticipate upon what administrative record such action would be based and what justifications would be offered.

*Id.* Plaintiffs' invocation of a hypothetical future scenario in which State participates in an interagency review process fails for much the same reason as their challenge to the fully automatic firearm provisions fail. Plaintiffs lack standing to bring such a pre-enforcement challenge to an entirely speculative agency action, and such a claim is not ripe until the action has been taken.

In addition, Plaintiffs' supposition that State has "an errant view" of what it can do under the EAR regime is incorrect and does not confer this Court with jurisdiction over this dispute. Participation in the interagency review process cannot be equated to "control" over Commerce's licensing process. And no provision of law allows State to independently license EAR-controlled items. Plaintiffs' selective quotation of 22 C.F.R. § 120.5(b) omits a key qualifier: "[a]n exemption … may only be used to export an item subject to the EAR *that is for use in or with a defense article and is included in the same shipment as any defense article*." 22 C.F.R. § 120.5(b) (emphasis added). In plain terms, that means § 120.5(b) is inapplicable unless an export is: (1) an ITAR controlled item, and (2) the EAR-controlled item is shipped with it. Because there are no allegations in the complaint about items that are ITAR controlled, this subsection has no bearing on *this* suit.[10]

**IV. *Res judicata* bars Plaintiffs' non-contract claims.**

As Defendants have explained, Plaintiffs' stipulation of dismissal as part of a settlement acts as a judgment on the merits for *res judicata*. Mot. at 15. In response, Plaintiffs misstate the law in

[10] The AECA is clear on this point: State "may also authorize the export of items subject to the [EAR] *if such items are to be used in or with defense articles*." 22 U.S.C. § 2778(k) (emphasis added); *see also* 81 Fed. Reg. 54,732 (Aug. 17, 2016) ("[W]hen the EAR items are shipped with items subject to the ITAR"); *id.* at 54,733 ("ITAR exemptions may not be used for the independent export of items subject to the EAR").

asserting that *res judicata* cannot be raised in a motion to dismiss. Mot. at 11. While *res judicata* generally "must be pled as an affirmative defense," the Fifth Circuit recognizes "[t]wo limited exceptions" to this principle. *McIntyre v. Ben E. Keith Co.*, 754 F. App'x 262, 264 (5th Cir. 2018). "The first exception permits dismissal by the court *sua sponte* on res judicata grounds in the interest of judicial economy where both actions were brought before the same court." *Id.* at 264–65 (cleaned up) (quoting *Mowbray v. Cameron Cnty., Tex*, 274 F.3d 269, 281 (5th Cir. 2001)). Here, "[b]oth actions were brought in the same federal district court," and this Court has the authority to dismiss. *See Mowbray*, 274 F.3d at 281.

"The second exception holds that where all of the relevant facts are contained in the record before us and all are uncontroverted, we may not ignore their legal effect[.]" *Id.*; *McIntyre*, 754 F. App'x at 265. This second exception also applies here because the facts necessary to demonstrate claim preclusion are contained in the record and are uncontroverted. The only dispute is the legal effect of those undisputed facts, and that legal issue can—and should—be resolved now.

In the Fifth Circuit, a stipulated dismissal with prejudice operates as a final judgment on the merits. *See Oreck Direct LLC v. Dyson, Inc.*, 560 F.3d 398, 401 n.2 (5th Cir. 2009) (applying *res judicata* from settled dismissal); *In re W. Tex. Mktg. Corp.*, 12 F.3d 497, 500 (5th Cir.1994) ("a consent judgment is a judgment on the merits"); *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 n. 8 (5th Cir. 1993) (similar); *Kaspar Wire Works v. Leco Engineering*, 575 F.2d 530 (5th Cir. 1978) (similar).

Plaintiffs do not identify a single case where a court refused to apply *res judicata* because a plaintiff dismissed its case with prejudice as part of a settlement agreement. Instead, they cite irrelevant cases involving dismissals for jurisdictional reasons like lack of jurisdiction, *forum non conveniens*, or abstention. The Fifth Circuit has clarified that while jurisdictional dismissals (even with prejudice) cannot form the basis of *res judicata*, when a party stipulates to dismissal pursuant to a settlement, that dismissal acts as a judgment on the merits for purposes of *res judicata*. *Oreck*, 560 F.3d at 401 n.2.

Finally, Plaintiffs never dispute the key facts relevant to *res judicata*. The claims in the past litigation and the non-contract in this current case both challenge the application of the ITAR regulatory regime to certain files. Plaintiffs never dispute that the prior claims alleged future harms based on the application of that same ITAR regulatory regime. And Plaintiffs do not dispute that the

"new" harms they allege here—posting the same types of files—also challenge the application of the ITAR regulatory regime to certain files. The principles of *res judicata* prevent them from posting a handful of supposedly "new" files on the internet and then re-filing claims they stipulated to dismiss.

**V. The Settlement Agreement release bars Plaintiffs' non-contract claims.**

The Settlement Agreement also bars Plaintiffs' non-contract claims, an issue that the Court can decide now. A defendant may move to dismiss "if a successful affirmative defense appears clearly on the face of the pleadings." *Sivertson v. Clinton*, 2011 WL 4100958, at *2 (N.D. Tex. Sept. 14, 2011); *see also White v. Padgett*, 475 F.2d 79, 82 (5th Cir. 1973) (similar); *DT Apartment Grp., LP v. CWCapital, LLC*, No. 3:12-CV-0437-D, 2012 WL 6693192, at *23 (N.D. Tex. Dec. 26, 2012) (dismissing certain claims based on contractual release). The Court may also rely on documents attached to the complaint, including the Agreement. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

There is no factual dispute that the contract terms bind the Plaintiffs. They allege that "[t]he Settlement Agreement is an existing, valid contract between the *Defense Distributed I* Plaintiffs and the State Department." Compl. ¶ 319, ¶ 89. There is no allegation that Plaintiffs never "received adequate consideration" or that the Agreement "was invalid because of fraud, duress, material mistake, or some other defense." Mot. at 17.[11] Based on just the complaint and its attachments, the Court can rule that Plaintiffs' non-contract claims fall within the scope of that release.

The State Department did not waive its right to enforce the release in ¶ 4 of the Agreement, and Plaintiffs make no effort to defend their atextual interpretation of that paragraph. Mot. at 19–20. Instead, they ask the Court not to reach that issue by arguing that contract interpretation is a factual issue. *Id.* Not so. "A settlement agreement is a contract" and "interpretation of an unambiguous contract is a question of law." *See, e.g.*, *Alford v. Kuhlman Elec. Corp.*, 716 F.3d 909, 912 (5th Cir. 2013).

**VI. This Court lacks jurisdiction over Plaintiffs' breach of contract claims.**

The United States has not waived sovereign immunity over claims seeking specific performance of a contract. *Ala. Rural Fire Ins. Co. v. Naylor*, 530 F.2d 1121 1229–30 (5th Cir. 1979).[12]

[11] If Plaintiffs allege the Agreement is invalid, they cannot state a claim for breach of contract. *See United Launch Servs., LLC v. U.S.*, 139 Fed. Cl. 664, 681 (2018) (breach of contract requires "existence of a valid contract").

[12] Plaintiffs suggest that they alleged a "retrospective damages claim," Mot. at 10, but Section 702 of the APA does not waive the government's sovereign immunity for money damages. *See* 5 U.S.C. § 702; *Trudeau v. FTC*,

Plaintiffs cite no case to the contrary. There is also no dispute that "the Tucker Act vests the Court of Federal Claims with exclusive jurisdiction over any [contract] claim that exceeds $10,000," *U.S. Marine, Inc. v. U.S.*, 478 F. App'x 106, 109 (5th Cir. 2012), and that the current complaint seeks damages far higher. That is enough to show this Court lacks jurisdiction over those claims.

In response, Plaintiffs contend that state law might apply to their claims—but there is no question that federal law governs the claims for breach of contract. The Supreme Court is unambiguous on this point: "We have held that obligations to and rights of the United States under its contracts are governed exclusively by federal law." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988); *see also Lawrence v. United States*, 378 F.2d 452, 461 (5th Cir. 1967). If Plaintiffs allege that their claims sound in Texas contract law, those claims must be dismissed for failure to plead a valid claim.

Finally, Plaintiffs fail to demonstrate why Defendants should be estopped from asserting sovereign immunity or the Tucker Act. Plaintiffs identify no argument that Defendants raised in *Wash. I* that contradicts arguments raised in this case. Instead, it is *Plaintiffs* who now advance inconsistent arguments. In *Wash. I*, Plaintiffs argued that the court lacked jurisdiction over APA claims, explaining:

> [T]his action should be dismissed for lack of subject matter jurisdiction because of how the Tucker Act interacts with the APA. … Except for "contract claims against the United States for less than $10,000," the Tucker Act "gives the Court of Federal Claims *exclusive jurisdiction* to award money damages, and "'*impliedly forbids' declaratory and injunctive relief* and precludes a § 702 waiver of sovereign immunity."' To the extent that this action adjudicates the Settlement Agreement's meaning or continuing legal effect, the Court lacks jurisdiction because the action is subject to the Tucker Act's bar on declaratory and injunctive relief and is not part of APA Section 702's waiver of sovereign immunity.

*Wash. I*, Dkt. 174, at 6.[13] For these reasons—including those advanced by Plaintiffs themselves in *Wash. I*—this Court lacks jurisdiction over all contract-based claims in this case.

456 F.3d 178, 186-87 (D.C. Cir. 2006) (no damages for constitutional or statutory claims brought under the APA). And claims for damages arising out of contract belong exclusively in the Court of Federal Claims.

13 In a footnote, Plaintiffs dispute that their APA claims based on breaches of the Agreement sound in contract. In the Fifth Circuit, when APA claims "stem[] from the alleged breach" they "clearly sound in contract" and the only available relief is monetary damages under the Tucker Act. *See U.S. Marine, Inc.*, 478 F. App'x at 109. Plaintiffs' citation to *Normandy Apts., Ltd. v. HUD*, 554 F.3d 1290, 1300 (10th Cir. 2009) does not save their claims. In *Normandy*, the existence of a contract did not divest the court's authority to consider separate, stand-alone violations of regulations. 554 F.3d at 1298. But that reasoning does not apply here because Plaintiffs' contract claims are not based on any purported violation of regulation, statute, or law.

Dated: July 26, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

BRIAN D. NETTER
Deputy Assistant Attorney General
Civil Division

ANTHONY J. COPPOLINO
Deputy Branch Director
Federal Programs Branch

*/s/ Lisa Newman*
Lisa Newman
Zachary A. Avallone
Michael Knapp
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 514-5578
Fax: (202) 616-8470
Email: lisa.n.newman@usdoj.gov

*Attorneys for U.S. Government Defendants*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was served on the other parties to this action and their counsel of record through electronic filing in the Court's ECF system on July 26, 2021.

*/s/ Lisa Newman*
Lisa Newman