IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, INC., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:18-CV-637-RP |
| UNITED STATES DEPARTMENT OF STATE, ANTHONY BLINKEN, *in his official capacity as Secretary of State*, DIRECTORATE OF DEFENSE TRADE CONTROLS, MIKE MILLER, *in his official capacity as Deputy Assistant Secretary of Trade Controls*, and SARAH HEIDEMA, *in her official capacity as Director of Policy, Office of Defense Trade Controls Policy*, | § § § § § § § § § § | |
| Defendants. | § § | |

**ORDER**

Before the Court is Defendants U.S. Department of State, et al.'s ("Defendants") Motion to Dismiss for Lack of Jurisdiction. (Dkt. 162). Plaintiffs Defense Distributed and Second Amendment Foundation, Inc. ("Plaintiffs") filed a response, (Dkt. 168), and Defendants filed a reply, (Dkt. 170). Having considered the parties' briefs, the record, and the relevant law, the Court finds that the motion should be granted.

**I. BACKGROUND**

**A. *Defense Distributed I***

In 2012, Defense Distributed posted computer files on the internet that enabled individuals with 3-D printers to produce operable plastic firearms or firearm components. *See Def. Distributed v. U.S. Dep't of State*, No. 1:15-CV-372-RP (W.D. Tex. filed May 6, 2015) ("*Def. Distributed I*"). In May 2013, the State Department advised Defense Distributed that it may have exported technical data regulated under then-operable United States Munitions List ("USML") Category I without the

1

authorization required by the International Traffic in Arms Regulations ("ITAR"). *Id.* Defense Distributed removed the technical data and submitted a commodity jurisdiction request. *Id.* State ultimately determined that some files were subject to the ITAR, while others were not. *Id.* at 687–88.

After this Court denied Plaintiffs' motion for a preliminary injunction (and was affirmed by the Fifth Circuit), the Court ordered the parties to exchange written settlement demands, *Def. Distributed I*, 1:15-cv-372, (Order, Dkt. 88), that culminated in a Settlement Agreement executed on June 29, 2018. (Settlement Agreement, Dkt. 117-1). Under the Settlement Agreement, State agreed, among other things, to take temporary actions concerning State's regulation of technical data in the form of certain 3-D- gun files, to the extent authorized by law, including the Administrative Procedure Act. Plaintiffs agreed to stipulate to dismissal of their claims with prejudice and executed a broad release of claims that discharged State "from any and all claims, demands and causes of action of every kind, nature or description, whether currently known or unknown, which Plaintiffs may have had, may now have, or may hereafter discover that were or could have been raised in the Action." (*Id.*).

Consistent with the Settlement Agreement, on July 27, 2018, State announced it was temporarily modifying the USML to exclude the 3-D-gun files at issue in the Defense Distributed litigation and sent a letter to Defense Distributed approving the 3-D-gun files for public release. Plaintiffs acknowledged that these actions complied with the Settlement Agreement. *See Def. Distributed I*, 1:15-cv-372, (Mot. Amend, Dkt. 117, at 6). On July 27, 2018, the parties filed a stipulation of dismissal with prejudice pursuant to Rule 41(a)(1)(A)(ii) and 41(a)(1)(B). *Def. Distributed I*, 1:15-cv-372, (Stip. of Dismissal, Dkt. 112). The parties did not submit the Settlement Agreement to the Court, did not ask the Court to adopt the Settlement Agreement in an order, and did not ask the Court to retain jurisdiction over the matter. On July 30, 2018, this Court entered an order dismissing the case with prejudice. *Id.*, (Order, Dkt. 113).

### B. *Defense Distributed II*

Plaintiffs filed this suit on July 29, 2018, originally against only the Attorney General for the State of New Jersey and the Los Angeles City Attorney. (Compl., Dkt. 1) ("*Defense Distributed II*"). On November 10, 2020, Plaintiffs filed their second amended complaint against the Attorney General of New Jersey and the Department of State ("State Department" or "State") and related officials. (2d. Am. Compl., Dkt. 117).[1] Plaintiffs ask the Court to issue declaratory and injunctive relief against the State Department to stop the agency from regulating the export of 3-D-gun files. (*Id.* at 82). They also seek monetary damages for an alleged breach of the Settlement Agreement. (*Id.* at 84). On April 30, 2021, Plaintiffs filed a motion for a temporary restraining order, which the Court denied the same day. (Mot. TRO, Dkt. 149; Order, Dkt. 151). On May 5, 2021, Plaintiffs filed a motion for a preliminary injunction and the Court held a hearing on the motion on May 14. (Mot. Prelim. Inj., Dkt. 152; Minute Entry, Dkt. 157).[2]

However, before the Court could rule on the preliminary injunction, Defendants filed a notice of suggestion of mootness. (Dkt. 159).[3] Shortly after, on June 21, 2021, Defendants filed this motion to dismiss for lack of jurisdiction. (Dkt. 162).[4] Defendants argue that Plaintiffs' Administrative Procedure Act ("APA") and constitutional claims are moot because the agency no longer regulates the export of 3-D gun files under the ITAR. (*Id.* at 3). According to Defendants,

---

[1] On April 19, 2021, the Court severed Plaintiffs' claims against the New Jersey Attorney General and transferred them to the United States District Court of the District of New Jersey. (Order, Dkt. 145). Plaintiffs appealed, and while the Fifth Circuit agreed that the case was improvidently transferred, the New Jersey court declined to transfer the claim back to the Western District of Texas. (Dkts. 171, 181). On January 6, 2023, the Fifth Circuit affirmed this Court's dismissal of Plaintiffs' claims against the New Jersey Attorney General. (Dkt. 181). Accordingly, only the claims against the State Department Defendants are before the Court.
[2] Following the motion to dismiss and a separate writ of mandamus, Plaintiffs filed a withdrawal of their motion for a preliminary injunction. (Dkt. 166).
[3] In addition to the suggestion of mootness, Plaintiffs petitioned for a writ of mandamus before the Fifth Circuit on June 21, 2021, related to the Court's orders on the New Jersey Attorney General.
[4] Because this Court's orders regarding the New Jersey Attorney General have effectively been on appeal since June 2021, litigation in this case was stayed until the Fifth Circuit's decision in January 2023. (Dkt. 181).

3

that regulatory authority has been transferred by final administrative rules to the Department of Commerce. (*Id.*).[5]

Defendants also argue that Plaintiffs' claims for injunctive relief are subject to dismissal because they are barred by res judicata. (*Id.* at 15). They argue that Plaintiffs' request for an injunction are barred by this Court's prior dismissal in *Defense Distributed I*, which dealt with the same parties, the same allegations, in the same court. (*Id.*). Further, Defendants argue that Plaintiffs' non-contract claims have been released by the Settlement Agreement. (*Id.* at 17).

Finally, Defendants argue that the Court lacks jurisdiction over Plaintiffs' breach of contract claims. (*Id.* at 18). They state that Plaintiff's contract-based claims for declaratory and injunctive relief are barred because the United States has not waived sovereign immunity for breach of contract claims beyond money damages. (*Id.*). Further, Defendants argue that the remaining money damages claims should either be dismissed or transferred to the Court of Federal Claims under the Tucker Act. (*Id.* at 19).

In response, Plaintiffs argue that the injunctive and declaratory claims are not moot for several reasons. (Pls.' Resp., Dkt. 168, at 1). First, they posit that the State Department has failed the voluntary cessation test, so the agency cannot moot the case. (*Id.*). Second, they argue that the State Department's ITAR regime still applies to their speech. (*Id.* at 5). Moreover, they argue that the State Department still controls licensing under the relevant export administration regulations ("EAR"). (*Id.* at 8). Plaintiffs also contest the idea that res judicata bars their claims because it is premature at the motion to dismiss stage and that *Defense Distributed I* did not render a final judgment and dealt with different claims. (*Id.* at 12–15). Moreover, they argue that the Settlement Agreement did not bar claims to enforce its terms or claims falling under the Constitution or APA. (*Id.* at 16–17). Finally,

---

[5] Defendants motion to dismiss summarizes the history of Defense Distributed's litigation well, and as it is effectively uncontested, the Court need not repeat that history here. The relevant point is that, in June 2021, the State Department ended its regulation of 3-D-gun file exports via a final rule. (*Id.* at 7).

4

they argue that the Tucker Act does not apply because they potentially bring a state law contract claim, and that transfer to the Court of Federal Claims is barred by the Settlement Agreement. (*Id.* at 18–19). In the alternative, Plaintiffs ask for leave to amend their complaint to limit damages to the $10,000 threshold authorized by the Little Tucker Act. (*Id.* at 19 n.13).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

## III. DISCUSSION

Defendants' motion to dismiss contains three distinct arguments: (1) Plaintiffs' injunctive claims are moot because the State Department no longer regulates the export of 3-D gun files, (2) Plaintiffs' injunctive claims are barred by res judicata and the Settlement Agreement, and (3) the remaining monetary claims should be transferred or dismissed. The Court will address each in turn.

5

**A. Mootness**

Defendants argue that Plaintiffs' injunctive claims are moot because the State Department issued a final rule in 2020 which transferred regulatory authority over the exports at issue to the Department of Commerce. (Mot. Dismiss, Dkt. 162, at 9–14). The facts here are not seriously contested. In January 2020, State and Commerce promulgated a pair of final rules that modified the regulatory regime controlling the exports of certain firearms, firearm parts, and related technical data, effectively transferring regulatory authority from State to Commerce. (*Id.* at 12 (citing (85 Fed. Reg. 3819 (Jan. 23, 2020); 85 Fed. Reg. 4136 (Jan. 23, 2020)))). The Department of Commerce—which is not a party to this suit—added the relevant firearms and data at issue in this litigation to the Commerce Control list in its final rule. (*Id.*). While the State Department's final rule was briefly enjoined by the United States District Court for the Western District of Washington, the Ninth Circuit reversed the district court's ruling and allowed the State Department's rule to go into full effect. *See Washington v. U.S. Dep't of State*, No. 20-35391, Dkts. 65 & 66 (9th Cir. May 26, 2021); *see also* State Notice, 86 Fed. Reg. 29,196; Commerce Notice, 86 Fed. Reg. 29,189. As a result, the Defendants argue that they "no longer regulate the export of 3-D gun files and there remains no live case or controversy between the parties." (Mot. Dismiss, Dkt. 162, at 12–13).

It is well-established that suits regarding the constitutionality of a since-repealed regulation are moot. *Diffenderfer v. Central Baptist Church of Miami, Florida, Inc.*, 404 U.S. 412, 414–15 (1972) (per curiam). Here, Plaintiffs seek an injunction and declaratory judgment that Defendants' enforcement of ITAR with respect to 3-D gun files is unconstitutional and in violation of the APA. (2d. Am. Compl., Dkt. 117, at 49–57). But Defendants' motion to dismiss—and indeed the federal regulations themselves—make clear that Defendants no longer regulate the export of 3-D gun files. (Mot. Dismiss, Dkt. 162, at 12; State Notice, 86 Fed. Reg. 29,196). As a result, there is no live controversy which would allow Plaintiffs to obtain prospective relief. *See, e.g., Phillips v. McLaughlin*, 854 F.2d 673,

678 (4th Cir. 1988) ("Because plaintiffs have requested only prospective relief from a regulation which no longer applies to them . . . our judgment on the merits would not resolve an extant case or controversy."); *Ozinga v. Price*, 855 F.3d 730, 734 (7th Cir. 2017); *Spell v. Edwards*, 962 F.3d 175, 178–79 (5th Cir. 2020) ("Once the law is off the books, there is nothing injuring the plaintiff and, consequently, nothing for the court to do."); *Sannon v. United States*, 631 F.2d 1247, 1255 (5th Cir. 1980) ("[O]nce the oft delayed amendments to the INS regulations granted the same relief as ordered by the court, the legal issue became moot.").

### 1. Voluntary Cessation

In response, Plaintiffs argue that Defendants fail the voluntary cessation test. (Pls.' Resp., Dkt. 168, at 1–2). The voluntary cessation test serves as an exception to mootness to determine whether a "defendant's actions are 'litigation posturing' or whether the controversy is actually extinguished." *Yarls v. Bunton*, 905 F.3d 905, 910 (5th Cir. 2018). Although "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued," *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013), an amendment to a law or regulation "combined with the presumption of good faith that we afford government actors, overcomes concerns of voluntary cessation," *Amawi v. Paxton*, 956 F.3d 816, 821 (5th Cir. 2020). The Fifth Circuit has noted that "a voluntary governmental cessation of possibly wrongful conduct" should be treated "with some solicitude." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009) *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011).

The Fifth Circuit's holding in *Spell* is instructive. In that case, the court held that a defendant must generally show that it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur" if there is a change in policy during litigation that results in a cessation of the challenged conduct. *Spell*, 962 F.3d at 179. However, the Fifth Circuit clarified that voluntary cessation will not apply if the change in policy was "predetermined." *Id.* (citing *Trump v. Hawaii*, 138

S. Ct. 377, 377 (2017)); *Yarls*, 905 F.3d at 910. In other words, a court should only require this higher showing when the policy change was made in "response to litigation." *Spell*, 962 F.3d at 179.

Here, the State Department's Final Rule was not a "response to litigation" so the voluntary cessation doctrine does not apply. The State Department published its Final Rule in the Federal Register in January 2020—ten months *before* it was added as a party in the instant suit. (Defs.' Reply, Dkt. 170, at 2; 2d. Am. Compl., Dkt. 117). Moreover, the effort to change regulations to remove the relevant firearm-export regulations from the State Department's purview had been an ongoing effort since 2015. (Mot. Dismiss, Dkt. 162, at 14). The only reason that the Final Rule *did not* take effect before 2021 is because it was enjoined by another federal court in Washington state until the Ninth Circuit reversed the lower court. (*Id.* at 12).

Plaintiffs rely on another Fifth Circuit case for the proposition that the State Department has never issued a controlling statement of future intention regarding its policy change. (Pls.' Resp., Dkt. 168, at 3–4 (citing *Speech First, Inc. v. Fenves*, 979 F.3d 319, 328 (5th Cir. 2020)). In that case, a plaintiff challenged the constitutionality of a university's speech policy. The circuit court held that the university's "unexpected" modification of the policy at issue did not moot the plaintiff's challenge to the original policy because (1) the university had issued no controlling statement of future intention, (2) its timing was suspicious, (3) and the university continued to defend the policies. *Speech First*, 979 F.3d at 328–30. But the Fifth Circuit in *Speech First* explicitly distinguished university policy from other governmental cessations. *Id.* at 328 ("[T]his relaxed standard has not been applied to voluntary cessation by a public university."). As Defendants argue, (Reply, Dkt. 170, at 2–3), a single university's change in policy following the commencement of a lawsuit is far different from a long-running interagency review which ended in the promulgation of several final rules. Multiple final interagency rules are not as easily revoked as a single university policy and are far less likely to change purely in response to litigation.

Even assuming the Fifth Circuit's test in *Speech First* did apply, the factors still counsel in favor of mootness. First, the State Department could not have issued a controlling statement of future intention because it issued its final rule *before* it was added as a Defendant in this case. (Mot. Dismiss, Dkt. 162, at 12). The State Department is legally bound by that rule under the APA, creating a similar effect to a "controlling statement of future intention." Second, nothing about the State Department's timing was suspicious. As stated in Defendants' motion to dismiss, the Final Rule at issue has been part of an interagency process dating back to 2015. It was issued before Plaintiffs added the State Department as a party to this litigation. In this case especially, nearly two years have passed since Defendants filed their suggestion of mootness. (Notice, Dkt. 159). Since that time, this Court is not aware of any actions by the State Department to revoke its Final Rule, making it difficult to believe that the State Department will suddenly do so once this litigation ends. Finally, Plaintiffs argue that *Speech First* applies because the State Department "is still defending the legality of its original policies." (Pls.' Resp., Dkt. 168, at 5). But Plaintiffs cite no portion of the record where Defendants defend the former State Department rule since the Ninth Circuit's ruling introduced the question of mootness. The question is not whether Defendants once defended their policies, but whether they continued to do so after the issue became moot. Plaintiffs cite no such defense, and the motion to dismiss is focused entirely on jurisdiction—not the merits of the suit. Accordingly, even if the Court applied the *Speech First* factors, it would still find that Plaintiffs' claims are moot.

## 2. ITAR Regime

As an alternative, Plaintiffs argue that the State Department still has regulatory jurisdiction over the speech at issue. (Pls.' Resp., Dkt. 168, at 5). Plaintiffs argue that the Commerce Department's final rule declined to take regulatory jurisdiction for "defense articles . . . that are either (i) inherently military and otherwise warrant control on the UMSL or (ii) if of a type common

9

to nonmilitary firearms applications, possess parameters or characteristics that provide a military or intelligence advantage to the United States." (*Id.* at 5–6 (citing 85 Fed. Reg. 4136)). They argue that "3D files for fully automatic firearms, silencers, and certain other articles were not transferred to the Commerce Department and remain subject to State Department regulation." (*Id.* at 6). In their reply, Defendants argue that nothing in Plaintiffs' complaint alleges an intent to export automatic firearm files. (Defs.' Reply, Dkt. 170, at 3–4). And, because they have not sought a determination from the State Department regarding such files, Plaintiffs cannot show that they would in fact be regulated under ITAR, much less that the provision would be enforced against them. (*Id.* at 5).

Here, Plaintiffs' claims run into two key issues: (1) their complaint does not allege any intent to export the files that allegedly remain under the State Department's jurisdiction and (2) Plaintiffs' complaint is unripe because they have not submitted the files to the State Department for a commodity-jurisdiction ("CJ") request.

First, Plaintiffs improperly raise the new files for the first time in their response. "It is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504 (S.D. Tex. 2011) (citing *In re Baker Hughes Sec. Litig.*, 136 F.Supp.2d 630, 646 (S.D.Tex.2001)). *See also Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984) *cert. denied*, 470 U.S. 1054 (1985) (holding same). Plaintiffs' complaint alleges that certain gun files are still regulated by the State Department, and therefore the request for injunctive relief is not moot. (Pls.' Resp., Dkt. 168, at 6–7). But whether the State Department maintains some regulatory authority is a different question from whether Plaintiffs have challenged that authority. Nothing in Plaintiffs' complaint mentions the automatic rifles they now claim are

regulated, and Plaintiffs point only to their motion for a preliminary injunction as evidence that State regulates fully automatic firearms. (*Id.* at 7).[6]

More problematically, Plaintiffs do not show that they have sought to export fully automatic firearm files or sought permission from the State Department to do so. Plaintiffs do not allege that they have submitted a CJ to the State Department regarding these files. (*Id.* at 7; Defs.' Reply, Dkt. 170, at 4–5). As a result, the State Department has not made determinations about Plaintiffs' files, so it is only speculative whether they even would fall under the category of firearm parts that continue to be included on the USML. In short, Plaintiffs have not exhausted their administrative remedies, and there is a significant question whether the files in question would be regulated by the State Department under the USML. Accordingly, it would be premature to assert jurisdiction purely because the State Department *might* regulate the files.

Beyond administrative exhaustion, Plaintiffs' alleged injury does not meet the requirements for standing. An injury in fact must be "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). But Plaintiffs' stated injury is several steps away from becoming reality. Plaintiffs assume that USML applies to the files in question, that the files will be deemed "specially designed", that Plaintiffs will apply for an export license, and that the State Department will deny the license. This is not an imminent injury. Plaintiffs must first submit a CJ before asserting that their conduct is prohibited. But this Court will not assume the role of a technical advisor to determine which files remain subject to highly complex regulations, much less do so based on a response to a motion to dismiss. Because the injury is not alleged in their

---

[6] Plaintiffs cite to Docket 177, which is a notice of appeal. (Pls.' Resp., Dkt. 168, at 7). The remainder of their relevant cites are to exhibits in their motion for a preliminary injunction. (*Id.* (citing Dkt. 148)). Beyond the fact that these exhibits do not appear in the complaint, the motion for a preliminary injunction has been withdrawn. (Notice, Dkt. 166).

11

complaint, is not prudentially ripe, and is not actual or imminent, Plaintiffs lack standing to sue the State Department for the remaining files purportedly regulated by ITAR.

### 3. EAR Regime

Finally, Plaintiffs argue that their complaint is not moot because the State Department still controls licensing of speech (i.e., firearm file exports) under the EAR regime. The 2020 Commerce Department Final Rule entails "an interagency review process that includes review by the Departments of State, Defense, and Energy." (Pls.' Resp., Dkt. 168, at 8 (citing 85 Fed. Reg. 4136)). But Plaintiffs cite no authority for the proposition that participating in an interagency review subjects that agency to jurisdiction—and Plaintiffs' injury is even more attenuated by the fact that the hypothetical interagency review has yet to take place. As the Fifth Circuit held in *Allied Home Mortgage Corp. v. HUD*, "The potential for a future dispute of another nature, presenting other issues, is immaterial. Should such a subsequent dispute arise, it is a matter for another lawsuit, not a reason to keep this one alive." 618 F. App'x 785–86 (5th Cir. 2015). Similarly here, the notion that State might one day deny Plaintiffs a license is precisely the sort of conjectural injury that falls outside of Article III jurisdiction.

Nor does 22 C.F.R. § 120.5(b)(2) convey jurisdiction. That regulation states that a "license or other approval . . . from the Department of State . . . may also authorize the export of items subject to the EAR." *Id.* Plaintiffs argue that this provision gives State "overlapping" jurisdiction with the Commerce Department, rather than giving Commerce "exclusive" jurisdiction. (Pls.' Resp., Dkt. 168, at 8). But the provision also states that an "exemption may only be used to export an item subject to the EAR that is for use in or with a defense article and is included in the same shipment as any defense article. . . . No exemption under this subchapter may be utilized to export an item subject to the EAR if not accompanied by a defense article." 22 C.F.R. § 120.5(b)(2) (internal citations omitted). In other words, the export must still be an ITAR-controlled item with an EAR-

12

controlled item shipped with it. As previously discussed, Plaintiffs do not allege a desire to ship ITAR-controlled items. *See infra*, Section III.A.2. For the same reasons that Plaintiffs do not plead a claim for their new files under ITAR, State's limited regulatory power to grant an exception under EAR is not before the Court. Because Plaintiffs fail to identify how the State Department still regulates their desired conduct, Plaintiffs' non-monetary claims are moot.

### B. Res Judicata and Settlement Agreement

Defendants raise two additional arguments: that the suit is precluded by res judicata and barred by the Settlement Agreement. Because the Court finds that Plaintiffs lack Article III standing to sue Defendants for injunctive relief, it does not reach these remaining defenses.

### C. Plaintiffs' Breach of Contract Claims

Defendants assert that this Court lacks jurisdiction over Plaintiffs' breach of contract claim because the federal government has not waived sovereign immunity for injunctive relief, and any monetary claims belong in the Court of Federal Claims. (Mot. Dismiss, Dkt. 162, at 19). Again, the Court need not reach the sovereign immunity question because the claim is moot. For the same reasons that the Court lacks jurisdiction over Plaintiffs' APA and constitutional claims, their request for specific performance under the Settlement Agreement was mooted once State stopped regulating the relevant 3-D gun files.

As to the claims for monetary damages, State argues that the claims belong to the exclusive jurisdiction of the Court of Federal Claims. (*Id.* at 19). The Tucker Act (28 U.S.C. § 1491) authorizes breach of contract claims against the federal government only in the Court of Federal Claims, while the Little Tucker Act (28 U.S.C. § 1346) allows district courts to assert jurisdiction over damages claims of less than $10,000. Here, Plaintiffs assert $5 million in damages, far beyond the amount authorized by the Little Tucker Act. (2d. Am. Compl., Dkt. 117, at 58). Nonetheless, they argue that the Court of Federal Claims is not vested with exclusive jurisdiction over their claims because it is

not yet clear whether the breach of contract claim falls under federal or state law. (Pls.' Resp., Dkt. 168, at 18–19). But sovereign immunity cannot be avoided by failing to specify which law purportedly governs a claim. The Supreme Court has made clear that "obligations to and rights of the United States under its contracts are governed exclusively be federal law." *Boyle v. United Techs. Corp.*, 87 U.S. 500, 504 (1981); *see also Lawrence v. United States*, 378 F.2d 452, 461 (5th Cir. 1967). To the extent Plaintiffs assert state law claims, they are barred by sovereign immunity, and to the extent they assert federal law claims above $10,000, those claims belong at the Court of Federal Claims.

Nor has the State Department waived sovereign immunity for Plaintiffs' claims regarding enforcement of the Settlement Agreement. Plaintiffs argue that the Settlement Agreement shows the State Department's "consent" to "any civil, criminal, or administrative action . . . permitted by law, if any, that may be necessary to consummate or enforce this Settlement Agreement." (2d. Am. Compl., Dkt. 117, at 60; Pls.' Resp., Dkt. 168, at 19). This is misleading. Nowhere does the contract mention "consent to 'any'" action. In full, the Settlement Agreement reads:

> None of the terms of the Settlement Agreement may be offered or received in evidence or in any way referred to in any civil, criminal, or administrative action other than proceedings permitted by law, if any, that may be necessary to consummate or enforce this Settlement Agreement.

(Settlement Agreement, Dkt. 117-1, at 4).

Contrary to the notion that the Settlement Agreement provides consent to "any" action, it *disclaims* such suits unless "necessary" and "permitted by law." As claims exceeding $10,000 are not permitted by law outside the Court of Federal Claims, the Settlement Agreement does not waive sovereign immunity on that point. Nor does the provision appear to even allow monetary claims at all, as the necessary suits only pertain to those needed to "consummate or enforce" the Settlement Agreement.

Similarly, there is no basis to estop Defendants from asserting sovereign immunity based on past lawsuits. Plaintiffs argue that a Washington district court's holding that its "findings will bind all

of the interested parties and preclude collateral challenges to the APA determination" should estop Defendants from asserting sovereign immunity here. (Pls.' Resp., Dkt. 168, at 19 (citing *Washington v. United States Dep't of State*, 420 F. Supp. 3d 1130, 1141 (W.D. Wash. 2019)) ("*Wash. I*"). The holding of that court, which dealt with APA claims brought by different plaintiffs, does not contradict the position of the Defendants here. Even if it did, a separate court's ruling is not a sufficient basis to show that the defendants in that suit have taken the same position. Plaintiffs do not cite any position taken by Defendants in that case—only the holding of the Court on a motion for judgment on the pleadings, which the Department of State took no part in. *Id.* The fact that another district court found a waiver of sovereign immunity through Section 702 has no bearing on whether Defendants have waived their immunity through the Settlement Agreement in this suit.

In sum, Defendants are entitled to sovereign immunity, and Plaintiffs' claim for monetary damages belong in the Court of Federal Claims. In a footnote in their response, Plaintiffs request leave to amend to fall under the $10,000 threshold to maintain jurisdiction in this Court. (Pls.' Resp., Dkt. 168, at 19 n.13).[7] While it is highly unusual for a party to amend its damages to 1/500 of the original amount purely to avoid transfer, this Court is not aware of any authority which would bar such an amendment. Accordingly, Plaintiffs shall have 14 days to file a motion for leave to amend their complaint from the date of this order.[8] Absent an amendment after that time, the Court will transfer the monetary damages claim to the Court of Federal Claims as the district court with exclusive jurisdiction.

---

[7] Defendants do not mention this request in their reply.
[8] Because Plaintiffs' facts plainly allege damages worth more than $10,000, (*see* 2d. Am. Compl., Dkt. 117), Plaintiffs' amended complaint must waive any right to seek damages for more than $10,000 for the alleged contract breaches in order for the Court to maintain jurisdiction under the Little Tucker Act.

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Defendants' motion to dismiss, (Dkt. 162), is **GRANTED**. Plaintiffs' claims are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that Plaintiffs shall file a motion for leave to amend, if at all, on or before **March 29, 2023**.

**SIGNED** on March 15, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE